1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ANN P. WATHEN, State Bar No. 189314
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5972
    Fax:  (415) 703-1234
8   Email:  Ann.Wathen@doj.ca.gov

9  Attorneys for Respondent

10

            IN THE UNITED STATES DISTRICT COURT
11
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
12
               SAN FRANCISCO DIVISION
13

| | |
|---|---|
| 14  **TROY HAYLES,** | C 06-6909 MJJ (PR) |
| 15                            Petitioner, | **MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS AS UNTIMELY** |
| 16        **v.** | |
| 17  **ROSANN CAMBLE, Warden,** | |
| 18                            Respondent. | |

19

20        Respondent hereby moves to dismiss the petition for writ of habeas corpus for failure to

21  comply with the statute of limitations set forth in 28 U.S.C. § 2244(d).  A motion to dismiss in lieu

22  of an answer is appropriate where the petition is procedurally defective.  See *White v. Lewis*, 874

23  F.2d 599, 602 (9th Cir. 1989); Rules Governing 28 U.S.C. § 2254 cases, Rule 4, and Advisory

24  Committee Notes.  We have not noticed a hearing date because petitioner is an incarcerated state

25  prisoner who is representing himself in this case.

26  / / /

27  / / /

28  / / /

1

**STATEMENT OF THE CASE**

2      On August 2, 2000, following a jury trial in San Francisco County Superior Court,

3  petitioner was convicted of receiving stolen property (Cal. Penal Code, § 496(a)).  Exh. 1.  In a

4  separate proceeding, the jury found true that petitioner had suffered three prior serious felony

5  convictions.  Exh. 2.  On February 23, 2001, the trial court sentenced petitioner to 25 years to life

6  in state prison under California's Three Strikes Law.  Exh. 3.

7      On January 30, 2003, the California Court of Appeal affirmed the judgment of conviction

8  in case number A094429.  Exh. 4 at 6.

9      On March 4, 2003, petitioner filed a petition for review with the California Supreme Court

10  (S114068).  Exh. 5.  On April 9, 2003, the California Supreme Court denied the petition.  Exh. 6.

11      On December 24, 2003, petitioner filed a state habeas petition in the San Francisco

12  Superior Court in case number 177096, which was denied on January 23, 2004.  Exhs. 7, 8.

13      On June 10, 2004, petitioner filed a state habeas petition in Division Four of the California

14  Court of Appeal (A106747).  Exh. 9.  On June 17, 2004, the state appellate court denied the petition.

15  Exh. 10.

16      On August 13, 2004, petitioner filed a state habeas petition in the California Supreme

17  Court (S127064), which was denied on June 29, 2005.  Exhs. 11, 12.

18      On September 29, 2005, petitioner filed a "Motion to Vacate Judgment" in Division Four

19  of the California Court of Appeal (A111534).  Exh. 13.  On October 6, 2005, the state appellate

20  court denied the motion.  Exh. 14.

21      On November 7, 2005, petitioner filed another state habeas petition in the California

22  Supreme Court (S138648), which was denied on August 16, 2006.  Exhs. 15, 16.

23      On November 6, 2006, petitioner filed the instant petition in this Court, raising two claims

24  of error.  Petition at 10, 15.

25  / / /

26  / / /

27  / / /

28  / / /

Motion to Dismiss - *Hayles v. Camble* - C 06-6909 MJJ (PR)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ARGUMENT

## THE PETITION IS UNTIMELY

Petitioner's petition should be dismissed because it is untimely.  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides,  in relevant part:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of - -
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]

§ 28 U.S.C. § 2244(d).  The period of "direct review" after which the petitioner's state conviction becomes final includes the 90-day period within which a petitioner can file a petition for a writ of certiorari with the United States Supreme Court, even if the petitioner does not actually file such a petition.  *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999).

The AEDPA statute of limitations is subject to statutory tolling.  *Rouse v. Lee,* 339 F.3d 238, 243 (4th Cir. 2003).  Specifically, the AEDPA provides that the one-year statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2); *Smith v. Duncan,* 297 F.3d 809, 813 (9th Cir. 2001).  A petitioner is entitled to tolling only for petitions which are timely filed under state law.  *Evans v. Chavis,* 546 U.S. 189, 197 (2006); *Carey v. Saffold,* 536 U.S. 214, 225-27 (2002).  Under California law, a "petition is timely if filed within a 'reasonable time.'"  *Id.* at 193.  Whether a state petition is timely under California law must be decided on a case-by-case basis.  *Id.* at 199.  A state court's denial on the merits does not necessarily mean that the court concluded that the petition was timely filed.  *Id.* at 194.  In certain instances, a state court may address the merits of a claim even if it believes that it was not presented in a timely manner.  *Id.*; *Carey v. Saffold,* 536 U.S. at 225-26.

Here, the statute of limitations began to run on July 8, 2003, 90 days after the California Supreme Court denied the petition for review.  Exh. 6.  Consequently, petitioner had until July 9, 2004 to file a federal habeas petition.  Petitioner, however, did not file his federal habeas petition until November 6, 2006, two years and four months after the expiration of the AEDPA's statute of limitations.

Motion to Dismiss - *Hayles v. Camble* - C 06-6909 MJJ (PR)

Petitioner is not entitled to statutory tolling because he "unreasonably" delayed in seeking further review of his case after the state supreme court denied his petition for review.  This is evidenced by the fact that after the superior court denied petitioner's first state habeas petition, petitioner waited another 148 days before filing a habeas petition in the Court of Appeal.  Exhs. 8, 9.  Thereafter, petitioner filed a habeas petition in the state supreme court within 57 days of the Court of Appeal's denial, Exhs. 10, 11; however, he then waited another 92 days before filing a fourth petition in the Court of Appeal.. Exhs. 13, 14.  These 148- and 92-day delays were much longer than the "'short periods of time,' 30 to 60 days, that most States provide for filing an appeal to the state supreme court," and "far longer than the 10-day period California gives a losing party to file a notice," and thus, were unreasonable under California's standard of timeliness.  *Evans v. Chavis*, 546 U.S. at 201, quoting *Saffold*, 536 U.S. at 219.   Thus, petitioner is not entitled to any statutory tolling for the foregoing intervals of time between petitions.  *See Evans v. Chavis,* 546 U.S. at 201 (finding no bright right line rule, but concluding that the unexplained delay of six months was unreasonable); *Gatson v. Palmer*, 447 F.3d 1165, 1167 (9th Cir. 2006) (holding that the unexplained 18-, 15-, and 10-month delays between filings was unreasonable), *cert. denied Gatson v. Palmer*, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); *Lor v. Kramer*, 2007 U.S. Dist. LEXIS 42810, *3 (finding the 140-day delay unreasonable, especially in light of the fact that another 88 days passed between the denial of the trial court petition and the filing of the Court of Appeal petition); *Forrister v. Woodford*, 2007 U.S. Dist. LEXIS 18243, *6-*7 (E.D. Cal. 2007) (concluding that the petitioner was not entitled to statutory tolling because the 88-day delay was unreasonable and far exceeded the benchmark of 30 to 60 days noted in *Evans v. Chavis,* 546 U.S. 189); *Culver v. Director of Corrections,* 450 F.Supp.2d at 1140-41 (finding the 71-day and the 97-day delay unreasonable).  In addition, as explained more fully below, petitioner has not sufficiently explained the reason for the foregoing delays.

Petitioner is also not entitled to statutory tolling for the time between his state supreme court petition and his 2005 state appellate court petition, because he had completed one "round" of state collateral review and was starting another.  *See Carey v. Saffold*, 536 U.S. at 223 (state collateral proceedings are "pending" for purposes of § 2244(d)(2) only during "the intervals between

a lower court decision and the filing of a new petition in a higher court); *accord, Delhomme v. Ramirez*, 340 F.3d 817, 820 (9th Cir. 2003) ("each time a petitioner files a new habeas petition at the same or a lower level, as Delhomme did here, the subsequent petition has no effect on the already pending application, but triggers an entirely separate round of review"); *King v. Roe*, 340 F.3d 821, 823 (9th Cir. 2003) (per curiam) (after filing petition in California Supreme Court, petitioner filed petition in California Court of Appeal, which was not part of the "one full round" of collateral review).

Petitioner is also not entitled to any statutory tolling for the final state habeas petition that he filed in the California State Supreme Court on November 7, 2005. Exh. 15. This is because the court specifically denied that petition for its untimeliness, citing *In re Clark* (1993) 5 Cal.4th 750. Exh. 16. In cases where the state court's order clearly indicates that the habeas petition was denied due to its untimeliness, "that [is] the end of the matter." *Saffold*, 536 U.S. at 226. Such an untimely petition is clearly not considered "properly filed" for purposes of § 2244(d)(2). *Culver v. Director of Corrections,* 450 F.Supp.2d 1135, 1140 (C.D.Cal. 2006), citing *Saffold*, 536 U.S. at 226; *Pace v. Diguglielmo,* 544 U.S. 408, 414 (2005); *Bonner v. Carey,* 425 F.3d 1145, 1148-49 (9th Cir. 2005). Consequently, because petitioner "unreasonably" delayed in seeking further review of his case after the state supreme court denied his petition for review on April 9, 2003, he is not entitled to statutory tolling under 28 U.S.C.S. 2244(d)(2).

In rare cases, equitable tolling is available. *Rouse v. Lee,* 339 F.3d at 246; *Miles v. Prunty,* 187 F.3d. 1104, 1107 (9th Cir. 1999). Equitable tolling is only appropriate when extraordinary circumstances beyond the control of the petitioner prevents him from complying with the statutory time limit. *Fail v. Hubbard,* 315 F.3d 1059, 1061-62 (9th Cir. 2002). A "petitioner's lack of diligence precludes equity's operation." *Pace v. DiGuglielmo*, 544 U.S. at 419. Petitioner bears the burden of esta1blishing that he is entitled to equitable tolling. *Raspberry v. Garcia,* 448 F.3d 1150, 1153 (9th Cir. 2006); *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002). Petitioner has failed to meet his burden here.

Although petitioner requests equitable tolling based upon his mental condition, such a reason does not present a per se basis for equitable tolling. Petitioner must show that his mental

disability affected his ability to timely file his petition. *Nara v. Frank,* 264 F.3d 310, 320 (3rd Cir. 2001); *Boos v. Runyon,* 201 F.3d 178, 184-85 (2nd Cir. 2000). In other words, there must be a causal connection established between the mental disability and the petitioner's inability to timely file his petition. *See Spitsyn v. Moore,* 345 F.3d 796, 799 (9th Cir. 2003) (extraordinary circumstances must have "proximately caused" late filing); *see also Rosati v. Kernan,* 417 F.Supp.2d 1128, 1132 (C.D. Cal. 2006) (petitioner failed to establish causal connection between his late filing and his limited library access and the lock down). Generally, federal courts will apply equitable tolling based upon a petitioner's mental condition "only in cases of profound mental incapacity." *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004); *see Grant v. McDonnell Douglas Corp.,* 163 F.3d 1136, 1138 (9th Cir. 1998) (equitable tolling due to a mental condition is appropriate "only in exceptional circumstances, such as institutionalization or adjudged mental incompetence").

Here, there is no evidence that petitioner's mental condition affected his ability to timely file his petition. Although petitioner asserts that he has attached "a few pages of assessment from [his] medical file," no such documentation is included in his petition. Thus, there is little to support petitioner's claim that he suffered from a mental condition other than his bald statement and a few medical records attached to the last habeas petition that he filed in the California Supreme Court on November 7, 2005. Exh. 15. This evidence fails to support his claim for equitable tolling.

The medical records attached to the state habeas petition are sparse, showing only medical records of the following dates: September 24, 2002, January 14, 2003, September 24, 2004, March 17, 2005, July 27, 2005, and December 29, 2005. Exh. 15. At least two of these records (i.e., the records dated September 24, 2002, and January 14, 2003) are irrelevant as they have no tendency to make a connection between petitioner's mental condition and his alleged inability to file his federal petition in a timely manner. Those two records reflect petitioner's mental state prior to the state court of appeal deciding his direct appeal, Exh. 4, and long before petitioner filed his first state habeas petition. Exh. 7. Petitioner produced no records near or around the time that he filed his first state habeas petition indicating that he was mentally impaired at that time. Indeed, his suicidal state in September 2002 appears to have been brief and there is no evidence to show that it persisted. *See Fisher v. Johnson,* 174 F.3d 710, 715-16 (5th Cir. 1999) (the brief period of mental incapacity

Motion to Dismiss - *Hayles v. Camble* - C 06-6909 MJJ (PR)

1   while the one-year statute of limitations was running did not warrant equitable tolling where the

2   petitioner had more than ample time to complete his federal habeas petition after his release from

3   the psychiatric ward).

4        Furthermore, the September 24, 2004 medical record reflects that petitioner, although

5   depressed, anxious, and irritable, was "alert" and "oriented," had "good speech," and had no

6   apparent psychosis at that time. Exh. 15. The latter three medical records indicate that petitioner

7   was depressed, had "psychotic features," was taking medication, and attending therapy; however,

8   the records are incomplete as to the extent of petitioner's mental condition. Furthermore, by that

9   time, petitioner had already successfully filed three of his five state habeas petitions and never made

10  any reference to mental state. *See* Exhs. 7, 9, 11. Indeed, made no mention of his alleged mental

11  disability until he filed his last petition in the California Supreme Court, Exh. 15, and had explained

12  in other petitions that the reason for his delay was simply that he "needed time to research claimed

13  grounds." Exhs. 9, 11.

14       Moreover, petitioner's statement that his mental condition affected his ability to research

15  and apply the law is significantly undermined by the fact that he was obviously able to prepare a

16  number of habeas petition in state court between December 24, 2003 and November 7, 2005. *See*

17  Exhs. 7, 9, 11, 13, 15. Although the courts ultimately denied all of the petitions, the petitions

18  prepared by petitioner were extensive, detailed, coherent, and made relevant references to the record

19  and the law, indicating that petitioner's mental condition had absolutely no impact on his ability to

20  research and apply the law to the facts of his case. Thus, petitioner's claim that he is entitled to

21  equitable tolling should be rejected.

22

23

24

25

26

27

28

Motion to Dismiss - *Hayles v. Camble* - C 06-6909 MJJ (PR)

1

**CONCLUSION**

2        Respondent respectfully requests that the instant petition be dismissed with prejudice

3   because petitioner has failed to comply with the AEDPA's statute of limitations.

4        Dated:  July 9, 2007

5                            Respectfully submitted,

6                            EDMUND G. BROWN JR.
                             Attorney General of the State of California

7                            DANE R. GILLETTE
                             Chief Assistant Attorney General
8
                             GERALD A. ENGLER
9                            Senior Assistant Attorney General

10                           PEGGY S. RUFFRA
                             Supervising Deputy Attorney General
11

12                           /s/ Ann P. Wathen
                             ANN P. WATHEN
13                           Deputy Attorney General

                             Attorneys for Respondent
14

15   20095242.wpd
     SF2007400171

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion to Dismiss - *Hayles v. Camble* - C 06-6909 MJJ (PR)

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ANN P. WATHEN, State Bar No. 189314
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5972
    Fax:  (415) 703-1234
8   Email:  Ann.Wathen@doj.ca.gov

9  Attorneys for Respondent

10

                  IN THE UNITED STATES DISTRICT COURT
11
               FOR THE NORTHERN DISTRICT OF CALIFORNIA
12
                       SAN FRANCISCO DIVISION
13

14  **TROY HAYLES,**                              C 06-6909 MJJ (PR)

15                              Petitioner,       **EXHIBITS**

16          **v.**

17  **ROSANN CAMBLE, Warden,**

18                              Respondent.

19

20

21

22

23

24                    # EXHIBITS 1 - 8

25

26

27

28

# EXHIBIT 1

Page:    1

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
### CRIMINAL DIVISION

326

DATE: August 2, 2000
JUDGE: James L. Warren
BAILIFF: R. Joseph

DEPARTMENT 26
CLERK: J. Rios-Merida
REPORTER: Christina Paxton                    CSR# 1558
BUSINESS ADDRESS: 850 Bryant St. San Francisco, CA 94103

| The People of the State of California, Plaintiff | **M I N U T E S** | | |
|---|---|---|---|
| vs. | | | |
| TROY HAYLES                01 | **COURT NO:** | 1880412 | **SCN:**    177096 |
| Defendant(s) | Charge(s): | PC187, PC221.5(a), PC459, PC451(b), PC496a | |

Assistant D.A.: Gerald Norman

Defense Counsel: Kenneth Quigley, Esq.  (Appointed)

NATURE OF PROCEEDINGS: JURY TRIAL               Defendant(s). Status: CUST

At 11:37 a.m., all members of the jury are present and deliberations resume.

At 11:00 a.m., the jury recesses.

At 11:20 a.m., all members of the jury are present and deliberations resume.

At 12:00 p.m., the jury breaks for lunch.

At 01:30 p.m., all members of the jury are present and deliberations resume.

At 01:42 p.m., the jury announces it has reached a verdict.

At 02:27 p.m., all jurors, alternates, the defendant and counsel present, the verdicts are read and recorded in open court.

As to Counts 1 through and including 4, the jury finds the defendant "Not Guilty."

As to Count 5 the jury finds the defendant "Guilty" of the charge of PC496(a), Receipt of Stolen Property.

Polling of the jury is waived.  Re-reading of the verdict as recorded is waived.  The verdicts and jury instructions are filed.

The Court declares a recess .

At 03:23 p.m., the matter proceeds to trial as to the allegations of prior convictions.

Martinez Giger, sworn, testifies for the prosecution.

**Continued, please see Page 2.**

SUPERIOR COURT OF CALIFORNIA / COUNTY OF SAN FRANCISCO
CRIMINAL DIVISION

333

THE PEOPLE OF THE STATE OF CALIFORNIA,
Plaintiff

CASE No: 177096

Vs.

V E R D I C T
Count V

TROY HAYLES, Defendant

We, the Jury, in the above-entitled action, find the defendant, TROY HAYLES,

*GUILTY* of the crime of RECEIPT OF KNOWN STOLEN PROPERTY,

( Guilty )( Not Guilty )

in violation of Section 496(a) of the California Penal Code, a felony, as charged in

Count V of the Information.

F I L E D
San Francisco Court Superior Court

AUG - 2 2000

ALAN CARLSON, Clerk
BY: _____
Deputy Clerk

This 2nd day of August, 2000

Time: 1:40

signed: _____
Foreperson

ORIGINAL IS SEALED PER CCP 237 AND CAN
ONLY BE ACCESSED WITH A COURT ORDER

# EXHIBIT 2

## SUPERIOR COURT OF CALIFORNIA
### COUNTY OF SAN FRANCISCO
#### CRIMINAL DIVISION

327

Continued from Page 1 of 2
Department 26, Minutes
August 2, 2000

**Case(s):**    <u>177096 (1880412), People v. Troy Hayles</u>

===================================================================

People's exhibits 54, 55, and 56 (each a certified criminal record) are marked for identification and admitted in evidence.

Both sides rest.

The Court instructs the jury.

The cause is argued.

At 03:55 p.m., the jury retires to commence deliberations.

At 04:02 p.m., all jury members, alternates, counsel, the defendant present, the verdicts are read and recorded in open court.

The jury finds three allegations of prior convictions to be "True."

Polling of the jury is waived. Re-reading of the verdict as recorded is waived. The verdicts and jury instructions are filed.

The jury is thanked and discharged.

The matter is referred to the Adult Probation Department for preparation of a pre-sentence report.

The cause is continued to September 7, 2000 at 09:00 a.m., in this department for sentence.

**EXHIBIT 3**

CR-292

**ABSTRACT OF JUDGMENT - PRISON COMMITMENT - INDETERMINATE**
*[NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-292 ATTACHED]*

| [X] Superior | Superior Court of California, County of San Francisco |
|---|---|
| | Branch or Judicial District:  38 |

| People of the State of California vs. | DOB: 11/12/1967 | | 01880412 - A | **FILED** |
|---|---|---|---|---|
| ~~Defendant~~:  TROY HAYLES | SCN: 00177096 | | | San Francisco County Superior Court |
| Alias: | | | - B | |
| CII#: A07065575 | | | | **FEB 23 2001** |
| Booking #:  442183 | | [ ] Not Present | - C | |
| Commitment to State Prison | | [ ] Ammended | | GORDON PARK-LI, Clerk |
| Abstract of Judgment | | Abstract | | By: *Mary ...* |

| Date of Hearing  02/23/2001 | Dept No.  S26 | Judge  JAMES L. WARREN | Deputy Clerk |
|---|---|---|---|
| **Clerk**  MARY L MELVIN | **Reporter**  CHRISTINA PAXTON#1558 | **Probation No or Probation Officer**  442183 | |
| **Counsel for People**  G. NORMAN | | **Counsel for Defendant**  KEN QUIGLEY | [ ] Apptd |

1. Defendant was convicted of the commision of the following felonies:

   [ ] Additional counts are listed on attachment
       (number of pages attached)

| | | | | | | Convicted By | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Cnt | Code | Section No | Crime | Year Crime Committed | Date of Conviction (Mo/Day/Year) | Jury | Court | Plea | Concurrent | 654 Stay |
| 005 | PC | 496(A) | REC/ETC KNOWN STOLEN PROPERTY | 1998 | 08/02/2000 | x | x | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly 12022 series). List each count enhancement horizontally.  Enter time imposed for each "S" for stayed.  DO NOT LIST enhancements stricken under PC 1385.

| Enhancement | Y/S | Enhancement | Y/S | Enhancement | Y/S | Enhancement | Y/S | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly PC 667 series).  List all enhancements horizontally.  Enter time imposed for each "S" for stayed.  DO NOT LIST enhancements stricken under PC 1385.

| Enhancement | Y/S | Enhancement | Y/S | Enhancement | Y/S | Enhancement | Y/S | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Defendant was sentenced to State Prison for an INDETERMINATE TERM:

4. [ ]  For LIFE WITHOUT THE POSSIBILITY OF PAROLE on counts _____

5. [ ]  For LIFE WITH THE POSSIBILITY OF PAROLE on counts _____

6. [X]  For ___25___ years to life, WITH POSSIBILITY OF PAROLE on counts ___5___
        PLUS enhancement time shown above.

7. [ ]  Additional determinate term (see CR-290)

8. Defendant was sentenced pursuant to   [ ] PC 667(b)-(i) or PC 1170.12  [ ] PC 667.61  [ ] PC 667.7  [ ] PC 667.9
        [xx] other (specify):  1170.12 Penal Code

   This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences.  Attachments may be used but must be referred to in this document.

| Form Adopted by the Judicial Council of California CR-292 [Rev. January 1, 1999] | **ABSTRACT OF JUDGMENT - PRISON COMMITMENT - INDETERMINATE** *[NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-292 ATTACHED]* | Penal Code §§ 1213, 1213.5 |
|---|---|---|

Form Date: (09/21/1999) Version 1.21.02z      Print Date: 02/23/2001

# EXHIBIT 4





Filed 1/30/03

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

**FILED**
Court of Appeal - First App. Dist

JAN 3 0 2003

RON D. BARROW, CLERK
By _____
DEPUTY

THE PEOPLE,

     Plaintiff and Respondent,

v.

TROY HAYLES,

     Defendant and Appellant.

A094429

(San Francisco County
Super. Ct. No. 177096)

     The sole issue on this timely appeal is whether defendant Troy Hayles was the victim of prosecutorial vindictiveness.

     The District Attorney of San Francisco filed an information by which defendant was charged with first degree murder with special circumstances, robbery, burglary, arson, and receiving stolen property. It was also alleged in the information that defendant had four prior felony convictions (three for robbery, one for attempted robbery) for purposes of the three strikes statutes (Pen. Code, §§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)). A jury found defendant guilty of receiving stolen property, but acquitted him of the other charges. Thereafter the jury found three of the allegations of prior felony convictions (two of the robberies and the attempted robbery) to be true.

     In addition to moving for a new trial, defendant moved for "a dismissal of the allegations of prior convictions ['strikes'] on the ground that the prosecution's conduct in charging them after Mr. Hayles was convicted only of a non-violent and non-serious

1

felony is vindictive, an abuse of discretion, and violative of the due process and equal protection clauses of the United States and California Constitutions."

The dismissal motion was the basis of a hearing conducted by the trial court on the date set for sentencing. The evidence received at that hearing may be summarized as follows: Since Terence Hallinan became district attorney in 1994 it has been general office policy that if a defendant is currently charged with only a nonserious, nonviolent felony, it is not prosecuted as a three strikes case. Individual deputies with the appropriate authority may make the decision to *charge* three strikes, but the decision to actually proceed to trial as a three strikes case comes from the three strikes committee within the office, subject to approval by District Attorney Hallinan. The policy is not immutable, and the office's three strikes committee may make case-by-case exceptions depending on the circumstances of the latest offense and the nature of the defendant's criminal history. After the jury's verdicts were returned, the deputy who tried the case reported to Mr. Hallinan, who directed the deputy to "Proceed with all strikes."

The office's three strikes policy has never been reduced to writing. Exceptions to the policy are "few and far between." The policy did not address defendant's situation— an accused charged with violent and nonviolent felonies who is convicted only of a single nonviolent felony—which had never occurred before defendant's trial. In fact, he is the only person not convicted of a violent or serious felony the San Francisco District Attorney's Office has elected to prosecute under the three strikes statutes.

The trial court continued the hearing in order to allow the defense time to search court records to discover if defendant's situation truly was unique. When the hearing resumed, defendant's counsel advised that the situation had no precedent. The court heard argument and then ruled as follows: "We have never had a case like this before. The evidence was that even after the . . . jury came back and found the defendant not guilty of all the violent crimes but guilty of the nonviolent one, that the matter went before the Three Strikes Committee again. It was faced for the very first time with the issue that we have before us right now. They [*sic*] said we will continue to assert three strikes. The Court cannot find that this is abuse of discretion or vindictive or anything.

2

It's the first time they have ever done it. Nobody was being singled out at all and all of your argument that Mr. Hayles is being singled out are not persuasive. He is not. He has not been singled out for anything. He is in a position where having won a trial on . . . the violent crimes, we now find ourselves in a posture that has never been confronted in this system before. Nobody is being singled out. It just is not factually correct." The court then denied defendant's other motions and sentenced him to state prison for a term of 25 years to life.

At the outset it must be established that defendant is not asserting the usual type of prosecutorial vindictiveness (which is also known as discriminatory prosecution.) "[A] defendant's claim of discriminatory prosecution goes not to the nature of the charged offense, but to a defect of constitutional dimension in the initiation of the prosecution. [Citation.] The defect lies in the denial of equal protection to persons who are singled out for a prosecution that is 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' [Citation.] . . . [¶] Unequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement." (*Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 831-832.) The familiar settings for vindictiveness claims are singling out select groups or persons for prosecution (e.g., *Murgia v. Municipal Court* (1975) 15 Cal.3d 286 [harassing prosecution of UFW members]) or increasing the charges after the defendant either rejects a plea bargain (*Bordenkircher v. Hayes* (1978) 434 U.S. 357) or invokes a statutory remedy (*Blackledge v. Perry* (1974) 417 U.S. 21 [after defendant convicted of misdemeanor and asks for trial de novo, prosecutor gets felony indictment for same conduct]; *In re Bower* (1985) 38 Cal.3d 865 [after defendant charged with second degree murder successfully moves for mistrial, prosecutor retries for

3

first degree murder]). Defendant does not claim that any of these categories apply to him.[1]

Having shown that defendant's situation does not have an established slot in the analytical template, it remains to be determined what is the precise nature of defendant's complaint. Defendant's motion to dismiss the strikes referred to them as having been charged after defendant's conviction of the non-violent felony. This is incorrect. The allegations that he had prior convictions that qualified as strikes were in the case from the outset, so it cannot be maintained their introduction into the case was in any sense retaliatory. Because the prosecution did not "up the ante" by filing new charges in response to any action taken by defendant, either before or after the trial, there is no occasion to apply a presumption that the prosecution was acting vindictively. (See, e.g., *In re Bower, supra,* 38 Cal.3d 865, 876-878; *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 368-372; *People v. Bracey, supra,* 21 Cal.App.4th 1532, 1544-1547.) On the contrary, the focus of defendant's contention is not on what the prosecution did, but

---

[1] At the hearing on defendant's dismissal motion, his attorney testified that he discussed a possible plea bargain with the prosecutor prior to trial. The prosecutor was interested in getting defendant to testify against someone else. According to defendant's attorney, "the essence of it was if Troy will testify against Mojo Dumetz, he can have a nonstrike disposition, that is a determinate sentence. We did not get down to a period of years." Counsel also testified that the prosecutor told him, "If he does not testify against Mojo, . . . we are going to three strike him," to which defendant's counsel replied, "That is punishing him for going to trial on a very weak murder case." Although in arguing defendant's dismissal motion his counsel mentioned this incident, he never explicitly tied rejection of the inchoate "bargain" to the concept of vindictiveness. The trial court found "no evidence" of a completed bargain. Defendant does not rely on this pretrial event in his briefs. Moreover, our Supreme Court has stated that "a presumption of prosecutorial vindictiveness ordinarily would not arise from a prosecutor's failure to reinstate an offer." (*In re Alvernaz* (1992) 2 Cal.4th 924, 943; see *People v. Bracey* (1994) 21 Cal.App.4th 1532, 1546-1547 and authorities cited.)

Although not mentioned in his moving papers, at the hearing defendant asked the court to consider dismissing some of the strikes pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. This is another issue that defendant has not renewed for purposes of this appeal.

4

rather on what it did *not* do—discontinue the prosecution as a three strikes case once the jury returned its verdicts. He implicitly concedes that no reported decision addresses the subject of such inaction by a prosecutor amounting to vindictiveness. Our own research has found no similar or analogous situation. Nevertheless, we believe the trial court had ample justification for finding that no prosecutor vindictiveness was shown.

Defendant appears to be arguing that when District Attorney Hallinan and the three strikes committee reviewed the case and found that it still qualified as one appropriate for three strikes treatment—and when the trial court upheld that decision—a sort of end-run around the jury's acquittals was accomplished. We disagree. Defendant was not sentenced for murder, arson, robbery, or burglary. He was sentenced on the receiving count, plus the strike enhancement allegations, which the jury found true. Those allegations were completely independent of the substantive charges on which defendant was acquitted. Nor do we think it improper for District Attorney Hallinan and his staff to consider the state of the evidence in the case regarding murder even if the jury had determined that the same evidence was not sufficient to prove guilt beyond a reasonable doubt. A trial court is entitled to make decisions based on the facts of acquitted charges. (See, e.g., *In re Coughlin* (1976) 16 Cal.3d 52 [probation revocation allowed on same facts as criminal trial acquittal]; *In re Dunham* (1976) 16 Cal.3d 63 [parole revocation allowed on same facts as criminal trial acquittal]; *People v. Gragg* (1989) 216 Cal.App.3d 32, 42-46 [probation denial allowed on same facts as acquittal].) If it is permissible for a court to take account of the circumstances underlying acquitted charges, there is no reason why it should be impermissible for a prosecutor to do the same.

A final comment concerns the essence of prosecutorial vindictiveness—the denial of equal protection. In order to warrant judicial intervention, there must be a threshold showing that persons are "similarly situated" and are being treated differently before the law demands they be treated alike. (E.g., *In re Eric J.* (1979) 25 Cal.3d 522, 530-531; *People v. Poe* (1999) 74 Cal.App.4th 826, 835.) In this case, however, defendant has no point of comparison. Because he is the first and only person in his situation—charged

5

with violent and nonviolent offenses, convicted only of a single nonviolent charge, for which the prosecution asks for the maximum three strikes sentence—he cannot demonstrate that someone else was not treated in the same manner as he was.  Nothing in the district attorney's unwritten policy covered defendant's situation.  Without an actual instance of another defendant standing in the same situation who has been treated differently, no violation of equal protection, and thus prosecutorial vindictiveness, has been established.

The judgment of conviction is affirmed.

---
Kay, P.J.

We concur:

---
Sepulveda, J.

---
Rivera, J.

*People v. Hayles*
A094429

**EXHIBIT 5**

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

**PEOPLE OF THE STATE OF CALIFORNIA,**
Plaintiff and Respondent,

vs.

**TROY HAYLES,**
Defendant and Appellant.

A094429

## PETITION FOR REVIEW

Appeal from the Superior Court
City and County of San Francisco
Superior Court No. 177096



DOCKETED
SAN FRANCISCO
FEB 25 2003
By      D. VELASCO
No. SF2001R0784

### HONORABLE JAMES L. WARREN, JUDGE

**WILLIAM D. FARBER**
Attorney at Law

State Bar No. 45121
P.O. Box 2026
San Rafael, CA 94912

Telephone: (415) 472-7279

Attorney for Appellant

By Appointment of the
Court of Appeal under the
First District Appellate
Project's Independent-Case
System

# TOPICAL INDEX

| | Page |
|---|---|
| TABLE OF CASES | ii |
| TABLE OF STATUTES | iii |
| PETITION FOR REVIEW | 1 |
| ISSUE PRESENTED | 1 |
| STATEMENT OF THE CASE | 2 |
| STATEMENT OF FACTS | 3 |
| POINTS AND AUTHORITIES IN SUPPORT OF THE PETITION FOR REVIEW | 4 |
| I. THE PETITION FOR REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER THE ACTION OF THE PEOPLE IN PURSUING A THREE-STRIKES CASE AGAINST APPELLANT, CONTRARY TO THE PEOPLE'S POLICY IN ALL OTHER CASES INVOLVING CURRENT NONVIOLENT FELONIES, CREATED A PRESUMPTION OF VINDICTIVENESS IN VIOLATION OF DUE PROCESS OF LAW AND EQUAL PROTECTION GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 15 OF THE CALIFORNIA CONSTITUTION | 4 |
|     A. Factual and Procedural Background | 4 |
|     B. The Refusal to Dismiss Prior Strikes Allegations Following Appellant's Conviction of a Nonviolent Felony Created a Presumption of Vindictiveness | 7 |
| CONCLUSION | 12 |
| RULE 28.1(e)(1) CERTIFICATION | 12 |

i

# TABLE OF CASES

|  | Page |
|---|---|
| *Blackledge v. Perry*<br>(1974) 417 U.S. 21 | 7, 9, 10 |
| *Bordenkircher v. Hayes*<br>(1978) 434 U.S. 357 | 8 |
| *In re Bower*<br>(1985) 38 Cal.3d 865 | 8, 9, 10, 11 |
| *In re David B.*<br>(1977) 68 Cal.App.3d 931 | 8 |
| *North Carolina v. Pearce*<br>(1969) 395 U.S. 711 | 7 |
| *People v. Superior Court (Romero)*<br>(1994) 13 Cal.4th 497 | 2 |
| *Twiggs v. Superior Court*<br>(1983) 34 Cal.3d 360 | 8, 9, 10 |
| *United States v. Burt*<br>(9th Cir. 1980) 619 F.2d 831 | 10 |
| *United States v. Goodwin*<br>(1982) 457 U.S. 368 | 8 |
| *United States v. Griffin*<br>(9th Cir. 1980) 617 F.2d 1342 | 10 |
| *United States v. Jackson*<br>(1968) 390 U.S. 570 | 7 |

## TABLE OF STATUTES

|  | Page |
|---|---|
| **United States Constitution** | |
| Fourteenth Amendment | Passim |
| **California Constitution** | |
| Article I, section 15 | Passim |
| **Penal Code** | |
| Section 187 | 2 |
| Section 190.2, subd. (a)(17)(A) | 2 |
| Section 190.2, subd. (a)(17)(G) | 2 |
| Section 212.5, subd. (a) | 2 |
| Section 451, subd. (b) | 2 |
| Section 459.1 | 2 |
| Section 496, subd. (a) | 2 |
| Section 667, subd. (a)(1) | 2 |
| Section 667, subd. (d) | 1, 2 |
| Section 667, subd. (e) | 1, 2 |
| Section 1170.12, subd. (b) | 1, 2 |
| Section 1170.12, subd. (c) | 1, 2 |
| **California Rules of Court** | |
| Rule 29 | 1 |
| Rule 28.1(e)(1) | 12 |

## PETITION FOR REVIEW

**TO THE HONORABLE RONALD GEORGE, CHIEF JUSTICE, AND TO**

**THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF**

**THE STATE OF CALIFORNIA:**

Troy Hayles, hereafter appellant, petitions this Honorable Court for review of the

trial court's ruling denying appellant's motion to dismiss or strike at least two prior

serious felony convictions or juvenile adjudications within the meaning of the Three

Strikes law (Pen. Code section 667, subds. (d) and (e); section 1170.12, subds. (b) and (c))

on the ground of vindictive prosecution in violation of due process of law and equal

protection of the laws guaranteed by the Fourteenth Amendment to the United States

Constitution and Article I, section 15 of the California Constitution.

## ISSUE PRESENTED

Pursuant to California Rules of Court, rule 29, appellant petitions for review on the

following grounds of statewide and constitutional importance:

1. Whether the action of the People in pursuant a three-strikes case against

appellant, contrary to the People's policy in all other cases involving current nonviolent

felonies, created a presumption of vindictiveness in violation of due process of law and

equal protection of the laws guaranteed by the Fourteenth Amendment to the United

States Constitution and Article I, Section 15 of the California Constitution.

1

## STATEMENT OF THE CASE

Appellant was charged with first degree murder (Pen. Code section 187) (count 1) and two special circumstances -- robbery-murder (Pen. Code section 190.2, subd. (a)(17)(A)) and burglary-murder (Pen. Code section 190.2, subd. (a)(17)(G)). Appellant was also charged with robbery in an inhabited dwelling (Pen. Code section 212.5, subd. (a)) (count 2), burglary of an inhabited dwelling (Pen. Code section 459.1) (count 3), arson of an inhabited structure (Pen. Code section 451, subd. (b)) (count (4), and receiving stolen property (Pen. Code section 496, subd. (a)) (count 5). The information alleged four prior serious felony convictions or juvenile adjudications within the meaning of the Three Strikes law (Pen. Code sections 1170.12, subds. (b) and (c) and section 667, subds. (d) and (e)) and three prior serious convictions within the meaning of Penal Code section 667, subdivision (a)(1).

After a trial by jury, appellant was found guilty on count 5 of receiving stolen property (Pen. Code section 496, subd.(a)). The jury acquitted appellant on all other counts. Following trial to the jury of the alleged prior felony convictions, the jury found three prior serious felony convictions or juvenile adjudications to be true.

Appellant moved to strike the prior serious felony convictions or juvenile adjudications on grounds of prosecutorial vindictiveness in violation of due process and equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 15 of the California Constitution. Following evidentiary, the trial court denied appellant's motion and declined to exercise discretion, as additionally urged by appellant, by striking the prior serious felony convictions pursuant to *People v. Superior Court (Romero)* (1994) 13 Cal.4th 497. The court

2

sentenced appellant to 25-years-to-life imprisonment pursuant to the Three Strikes law.

On appeal to the Court of Appeal, First Appellate District, Division Four, in an opinion dated January 30, 2003, per Kay, P.J., with Sepulveda and Rivera, JJ., concurring, the Court of Appeal held that a presumption of vindictiveness did not occur in this case and affirmed the judgment of conviction. The Court of Appeal's opinion has not been certified for publication. A copy of the court's slip opinion is attached to this petition as Appendix A.

Appellant filed a petition for rehearing in the Court of Appeal on February 3, 2003. The petition of rehearing was denied by the Court of Appeal on February 14, 2003.

## STATEMENT OF FACTS

Appellant adopts for purposes of this petition, generally, the procedural facts summarized by the Court of Appeal. (See Slip Opinion at pp. 1-4.)

**POINTS AND AUTHORITIES IN SUPPORT OF THE PETITION FOR REVIEW**

**I**

**THE PETITION FOR REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER THE ACTION OF THE PEOPLE IN PURSUING A THREE-STRIKES CASE AGAINST APPELLANT, CONTRARY TO THE PEOPLE'S POLICY IN ALL OTHER CASES INVOLVING CURRENT NONVIOLENT FELONIES, CREATED A PRESUMPTION OF VINDICTIVENESS IN VIOLATION OF DUE PROCESS OF LAW AND EQUAL PROTECTION GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 15 OF THE CALIFORNIA CONSTITUTION**

**A. Factual and Procedural Background**

For several years the District Attorney of the City and County of San Francisco has consistently applied a policy in every case of declining to prosecute a current felony as a three-strikes case if the current felony were nonviolent.  Appellant was the only defendant during the administration of the current District Attorney to whom that policy has not been applied.  The action of the People in pursuing a three-strikes prosecution following appellant's conviction of a nonviolent felony created the presumption of vindictive prosecution and violated appellant's rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution.

At trial, appellant introduced the testimony Paul Cummins, an Assistant District Attorney for the City and County of San Francisco.  Cummins testified that he was the Chief Assistant District Attorney and Chief of the District Attorney's Criminal Division. He was a members of the Three Strikes Committee; since 1994, all three strikes cases were reviewed and personally approved by the District Attorney.  Cummins testified that the policy of the District Attorney and his office since 1994 was not to prosecute current nonviolent felonies as three-strikes cases. Cummins testified that the circumstances of the

4

present case had never before occurred where the defendant, although charged with both current violent and nonviolent felonies, was eventually convicted of but a single nonviolent felony. Cummins testified that this case was the only one of which he was aware in the last 6 or 7 years that deviated from the District Attorney's policy not to pursue three strikes in a case involving a current nonviolent felony.

Cummins testified that the intention of the District Attorney's office was to treat appellant's case as a three strikes case regardless of the jury's verdict in this case. Cummins acknowledged that in all other cases the felony of which appellant was convicted would not be treated as a three strikes case; appellant's case was the only exception to the District Attorney's general policy since 1994. Cummins also testified that the District Attorney's office consistently dismissed or agreed to strike allegations of prior serious felony convictions in current section 496 cases even in cases where the prior felony convictions involved very serious felonies. The strike allegations would either be dismissed or reduced to a single strike.

Deputy District Attorney Gerald Norman testified that he was the prosecutor assigned to this case. He took over this case approximately 6 weeks before trial. Before and after trial, Norman was informed that regardless of the outcome of trial, the decision whether to proceed as a three-strikes case had to be reviewed by the District Attorney. After the jury convicted appellant solely of a nonviolent felony, he told defense counsel that despite the District Attorney's policy of not prosecuting such cases as a three-strikes case, he would have to discuss the matter with his supervisors.

Norman personally met with the District Attorney after appellant's conviction to discuss this case. At that meeting, the District Attorney expressed the view that appellant

5

participated in the "totality of the crimes" -- obviously meaning those of which he had been acquitted -- and thus instructed Norman to "proceed with all strikes."

Appellant's trial counsel testified that he and the original prosecutor assigned to the case discussed a disposition of the case; the prosecutor agreed to a non-strikes disposition if appellant would testify against MoJo Dumetz believed by the prosecutor to have been the actual killer. The prosecutor told defense counsel that if appellant did not testify against Dumetz, the People were going to proceed with a three-strikes prosecution. Defense counsel strenuously objected at the time, asserting that the People were punishing appellant for going to trial.

John Dwyer, a San Francisco prosecutor for approximately 30 years, testified that he was unaware of any current nonviolent felony that was prosecuted as a three-strikes case in San Francisco under the administration of the current District Attorney.

Both the trial court and the Court of Appeal (see Slip Opinion at pp. 4-5) considered the issue of vindictive prosecution solely from the perspective of whether the case initially had been properly charged as a three-strikes case. As stated by the trial court, for example, "I looked very carefully at the question of whether or not the case was properly charged as a three strikes case in the beginning. That is where the question of the vindictive prosecution comes in, ... ." The trial court denied appellant's motion to strike the prior serious felony convictions or juvenile adjudications on grounds of vindictive prosecution at the conclusion of the evidentiary proceedings. The trial court's ruling was affirmed by the Court of Appeal.

### B. The Refusal to Dismiss Prior Strikes Allegations Following Appellant's Conviction of a Nonviolent Felony Created a Presumption of Vindictiveness

The constitutional protection against prosecutorial vindictiveness is based on the fundamental notion that it would be "patently unconstitutional" to "chill the assertion of constitutional rights by penalizing those who choose to exercise them." (*United States v. Jackson* (1968) 390 U.S. 570, 581.) In *North Carolina v. Pearce* (1969) 395 U.S. 711, the United States Supreme Court held that the due process clause of the United States Constitution protects a defendant from both actual vindictiveness and the *apprehension of retaliation* for exercising a fundamental constitutional right. (*Id.* at p. 669 [emphasis added].)

In *Blackledge v. Perry* (1974) 417 U.S. 21, the High Court held that due process required that a person convicted of an offense is entitled to pursue his right to a trial de novo without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration. (*Id.* at p. 28.) Although noting that due process is not offended by all possibilities of increased punishment, the Court found such a violation in *Perry* because the circumstances in that case presented a "realistic likelihood" of vindictiveness. (*Id.* at p. 27.) Significantly, the High Court recognized that the rationale underpinning a finding of vindictiveness is not grounded upon the proposition that actual retaliatory motivation must inevitably exist. The Supreme Court emphasized in *Perry* that no evidence of bad faith or maliciousness on the part of the prosecutor was produced or required. "Due process of law requires that such a potential for vindictiveness must not enter" into the process. (*Ibid.*)

In later cases, a presumption of vindictiveness was held not to arise where charges were increased prior to the attachment of jeopardy. (See *Bordenkircher v. Hayes* (1978) 434 U.S. 357, 362.) In *United States v. Goodwin* (1982) 457 U.S. 368, the Supreme Court found prosecutorial vindictiveness inapplicable in the context of pre-jeopardy plea negotiations. The Court declined to apply a presumption of vindictiveness in such cases deeming the presumption to apply "only in cases in which a reasonable likelihood of vindictiveness exists." (*Id.* at p. 373.)

This Court has also recognized a due process protection of a similar scope under the state constitution. Thus, the due process clause of the California Constitution has been interpreted to prohibit increased charges motivated by prosecutorial vindictiveness. (*In re Bower* (1985) 38 Cal.3d 865, 873.) In *Bower*, the Court discussed with approval *In re David B.* (1977) 68 Cal.App.3d 931 in which the due process guarantee was similarly held to preclude a prosecutor from seeking a hearing on a juvenile's fitness to stand trial as an adult after the minor successfully challenged the juvenile court hearings and orders. The appellate court found that the prosecutor clearly retaliated and thereby exposed the minor to a significantly increased potential period of incarceration. (*Id.* at p. 936.)

On discussing *In re David B.*, the Court in *Bower* significantly observed that the Court of Appeal in that case did not discuss whether there was any evidence of retaliation or apprehension but noted, as had the United States Supreme Court, that the rationale underpinning the doctrine of prosecutorial vindictiveness "was not grounded upon the proposition that actual retaliatory motive must inevitably exist." (*In re Bower, supra,* 38 Cal.3d at p. 876, quoting *In re David B., supra,* 68 Cal.App.3d at p. 935.)

In *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, the defendant's first trial

8

resulted in a mistrial. After the defendant declined a proffered plea bargain and invoked his right to a retrial, the prosecution amended the information to include prior felony convictions as sentence enhancements. These convictions did not constitute new information; the prosecution knew of the convictions before the first trial and showed no interest in them until after the retrial. The Court concluded that these were circumstances that plainly gave rise to a presumption of vindictiveness. (*Id.* at p. 372.) The presumption was applicable because the "prophylactic rule enunciated [by the United States Supreme Court] in *Perry* [was needed to] protect against both the possibility that defendant will be deterred from exercising a legal right, as well as the danger that the state might be retaliating against defendant for maintaining his innocence and facing a retrial." (*Id.* at pp. 369-370.) Significantly, the Court in *Twiggs* observed that no new facts had been developed through the preliminary hearing or trial. (*Id* at p. 373.)

In *In re Bower, supra*, the petitioner was charged with a more severe crime after he moved for a mistrial. As in the present case, jeopardy had attached. The prosecution offered no new facts but, as in *Twiggs*, relied upon facts available at the time of the first trial. This Court ruled that those circumstances presented a reasonable likelihood of vindictiveness and that the increase in the severity of charges gave rise to a presumption of vindictiveness which had not been rebutted by the prosecution It is noteworthy that the Court also held that "[r]egardless of the actual motive of the individual prosecutor, a judicial process which permitted the prosecution to increase the charges against a defendant who successfully exercised a constitutional or procedural right at trial would have a chilling effect upon the assertion of those rights and could undermine the integrity of the entire proceedings." (*In re Bower, supra*, 38 Cal.3d at p. 878.)

9

Here, the action of the People in pursuing a three-strikes case against appellant after he elected to proceed to trial by jury, after he had been acquitted of all charges except a single nonviolent felony, and contrary to the People's consistently applied policy not to pursue a three-strikes prosecution in every other case involving a current nonviolent felony, created a presumption of vindictiveness in this case.

This Court went into great detail in *In re Bower, supra,* as to the manner by which the prosecution may rebut the presumption of vindictiveness. The Court noted that prior cases "sometime referred to the prosecutor's burden of rebutting the presumption with 'an explanation that adequately eliminates actual vindictiveness'" (*Twiggs*), or to the burden of proving that the increase in the severity of the charges did not result from any vindictive motive (*United States v. Burt* (9th Cir. 1980) 619 F.2d 831, 836), or to the need to show that the more severe charge was "justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness." (*United States v. Griffin* (9th Cir. 1980) 617 F.2d 1342, 1347.) The Court stressed, however, that courts have "consistently refused to attempt to ascertain the subjective intent of the prosecutor." (*In re Bower, supra,* 38 Cal.3d at p. 878.) Similarly, in *Blackledge v. Perry, supra,* 417 U.S. at p. 28, the United States Supreme Court emphasized that the rationale is not grounded upon the proposition that actual retaliatory motivation must inevitably exist.

This Court in *Bower* further held that the presumption of vindictiveness cannot be rebutted by the prosecutor's declaration that he or she was motivated by a reassessment of the evidence against the defendant rather than by any desire to punish the exercise of a protected right. To rebut the presumption of vindictiveness, the prosecution must demonstrate "that (1) the increase in charge was justified by some objective change in

10

circumstances or in the state of the evidence which legitimately influenced the charging

process and (2) that the new information could not reasonably have been discovered at the

time the prosecution exercised its discretion to bring the original charge." (*In re Bower,*

*supra,* 38 Cal.3d at p. 879.)

   In the present case, no new facts were developed at trial to justify the deviation in

this case from the consistently applied policy not to pursue three-strikes in cases involving

current nonviolent felonies. Appellant elected a trial by jury. He was acquitted of all

alleged violent felonies. Nevertheless, the People sought to increase appellant's

punishment solely because the District Attorney -- despite the jury's verdict -- reassessed

the case after the jury trial and deemed that appellant had been involved in the totality

of the crimes despite his acquittals. This Court explicitly rejected such a justification as

offered by the People in this case. (See *In re Bower, supra,* 36 Cal.3d at p. 880, fn. 7.)

   Under the circumstances of this case, there was a reasonable likelihood of

vindictiveness. The prosecution failed to demonstrate that its decision to pursue three-

strikes against appellant after he had been convicted of a single nonviolent felony was

justified by some objective change in circumstances or in the state of the evidence which

legitimately influenced the People's decision. Accordingly, it should not have been

constitutionally permissible under the Fourteenth Amendment to the United States

Constitution and Article I, section 15 of the California Constitution for the state to respond

to appellant's exercise of his right to trial by jury and his acquittals of all current violent

felonies by pursuing three-strikes in a current nonviolent felony case contrary to the

People's policy in every other nonviolent felony case in the City and County of San

Francisco under the administration of its current District Attorney.

**CONCLUSION**

By reason of the foregoing, appellant Troy Hayles respectfully requests that the

petition for review be granted and the judgment of the Court of Appeal reversed.

DATED: February 24, 2003.

Respectfully submitted,

WILLIAM D. FARBER

Attorney for Appellant

**RULE 28.1(e)(1) CERTIFICATION**

I, William D. Farber, certify that the number of words in this petition, excluding

tables, Court of Appeal opinion, proof of service, and cover, as authorized by Cal. Rules

of Court, rule 28.1(e)(3), total 3,134 words.  In counting the words, I have relied on the

word count of the computer program used to prepare this document as authorized by rule

28.1(e)(1).

I declare under penalty of perjury that the foregoing is true and correct.

DATED: February 24, 2003.

WILLIAM D. FARBER

12

**APPENDIX A**



Filed 1/30/03

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

**FILED**
Court of Appeal - First App. Dist

JAN 3 0 2003

RON D. BARROW, CLERK
By_____
                              DEPUTY

THE PEOPLE,

      Plaintiff and Respondent,

v.

TROY HAYLES,

      Defendant and Appellant.

A094429

(San Francisco County
Super. Ct. No. 177096)

      The sole issue on this timely appeal is whether defendant Troy Hayles was the victim of prosecutorial vindictiveness.

      The District Attorney of San Francisco filed an information by which defendant was charged with first degree murder with special circumstances, robbery, burglary, arson, and receiving stolen property. It was also alleged in the information that defendant had four prior felony convictions (three for robbery, one for attempted robbery) for purposes of the three strikes statutes (Pen. Code, §§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)). A jury found defendant guilty of receiving stolen property, but acquitted him of the other charges. Thereafter the jury found three of the allegations of prior felony convictions (two of the robberies and the attempted robbery) to be true.

      In addition to moving for a new trial, defendant moved for "a dismissal of the allegations of prior convictions ['strikes'] on the ground that the prosecution's conduct in charging them after Mr. Hayles was convicted only of a non-violent and non-serious

1

felony is vindictive, an abuse of discretion, and violative of the due process and equal protection clauses of the United States and California Constitutions."

The dismissal motion was the basis of a hearing conducted by the trial court on the date set for sentencing. The evidence received at that hearing may be summarized as follows: Since Terence Hallinan became district attorney in 1994 it has been general office policy that if a defendant is currently charged with only a nonserious, nonviolent felony, it is not prosecuted as a three strikes case. Individual deputies with the appropriate authority may make the decision to *charge* three strikes, but the decision to actually proceed to trial as a three strikes case comes from the three strikes committee within the office, subject to approval by District Attorney Hallinan. The policy is not immutable, and the office's three strikes committee may make case-by-case exceptions depending on the circumstances of the latest offense and the nature of the defendant's criminal history. After the jury's verdicts were returned, the deputy who tried the case reported to Mr. Hallinan, who directed the deputy to "Proceed with all strikes."

The office's three strikes policy has never been reduced to writing. Exceptions to the policy are "few and far between." The policy did not address defendant's situation— an accused charged with violent and nonviolent felonies who is convicted only of a single nonviolent felony—which had never occurred before defendant's trial. In fact, he is the only person not convicted of a violent or serious felony the San Francisco District Attorney's Office has elected to prosecute under the three strikes statutes.

The trial court continued the hearing in order to allow the defense time to search court records to discover if defendant's situation truly was unique. When the hearing resumed, defendant's counsel advised that the situation had no precedent. The court heard argument and then ruled as follows: "We have never had a case like this before. The evidence was that even after the . . . jury came back and found the defendant not guilty of all the violent crimes but guilty of the nonviolent one, that the matter went before the Three Strikes Committee again. It was faced for the very first time with the issue that we have before us right now. They [*sic*] said we will continue to assert three strikes. The Court cannot find that this is abuse of discretion or vindictive or anything.

2

It's the first time they have ever done it. Nobody was being singled out at all and all of your argument that Mr. Hayles is being singled out are not persuasive. He is not. He has not been singled out for anything. He is in a position where having won a trial on . . . the violent crimes, we now find ourselves in a posture that has never been confronted in this system before. Nobody is being singled out. It just is not factually correct." The court then denied defendant's other motions and sentenced him to state prison for a term of 25 years to life.

At the outset it must be established that defendant is not asserting the usual type of prosecutorial vindictiveness (which is also known as discriminatory prosecution.) "[A] defendant's claim of discriminatory prosecution goes not to the nature of the charged offense, but to a defect of constitutional dimension in the initiation of the prosecution. [Citation.] The defect lies in the denial of equal protection to persons who are singled out for a prosecution that is 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' [Citation.] . . . [¶] Unequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement." (*Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 831-832.) The familiar settings for vindictiveness claims are singling out select groups or persons for prosecution (e.g., *Murgia v. Municipal Court* (1975) 15 Cal.3d 286 [harassing prosecution of UFW members]) or increasing the charges after the defendant either rejects a plea bargain (*Bordenkircher v. Hayes* (1978) 434 U.S. 357) or invokes a statutory remedy (*Blackledge v. Perry* (1974) 417 U.S. 21 [after defendant convicted of misdemeanor and asks for trial de novo, prosecutor gets felony indictment for same conduct]; *In re Bower* (1985) 38 Cal.3d 865 [after defendant charged with second degree murder successfully moves for mistrial, prosecutor retries for

first degree murder]). Defendant does not claim that any of these categories apply to him.[1]

Having shown that defendant's situation does not have an established slot in the analytical template, it remains to be determined what is the precise nature of defendant's complaint. Defendant's motion to dismiss the strikes referred to them as having been charged after defendant's conviction of the non-violent felony. This is incorrect. The allegations that he had prior convictions that qualified as strikes were in the case from the outset, so it cannot be maintained their introduction into the case was in any sense retaliatory. Because the prosecution did not "up the ante" by filing new charges in response to any action taken by defendant, either before or after the trial, there is no occasion to apply a presumption that the prosecution was acting vindictively. (See, e.g., *In re Bower, supra*, 38 Cal.3d 865, 876-878; *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 368-372; *People v. Bracey, supra,* 21 Cal.App.4th 1532, 1544-1547.) On the contrary, the focus of defendant's contention is not on what the prosecution did, but

---

[1] At the hearing on defendant's dismissal motion, his attorney testified that he discussed a possible plea bargain with the prosecutor prior to trial. The prosecutor was interested in getting defendant to testify against someone else. According to defendant's attorney, "the essence of it was if Troy will testify against Mojo Dumetz, he can have a nonstrike disposition, that is a determinate sentence. We did not get down to a period of years." Counsel also testified that the prosecutor told him, "If he does not testify against Mojo, . . . we are going to three strike him," to which defendant's counsel replied, "That is punishing him for going to trial on a very weak murder case." Although in arguing defendant's dismissal motion his counsel mentioned this incident, he never explicitly tied rejection of the inchoate "bargain" to the concept of vindictiveness. The trial court found "no evidence" of a completed bargain. Defendant does not rely on this pretrial event in his briefs. Moreover, our Supreme Court has stated that "a presumption of prosecutorial vindictiveness ordinarily would not arise from a prosecutor's failure to reinstate an offer." (*In re Alvernaz* (1992) 2 Cal.4th 924, 943; see *People v. Bracey* (1994) 21 Cal.App.4th 1532, 1546-1547 and authorities cited.)

Although not mentioned in his moving papers, at the hearing defendant asked the court to consider dismissing some of the strikes pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. This is another issue that defendant has not renewed for purposes of this appeal.

4

rather on what it did *not* do—discontinue the prosecution as a three strikes case once the jury returned its verdicts. He implicitly concedes that no reported decision addresses the subject of such inaction by a prosecutor amounting to vindictiveness. Our own research has found no similar or analogous situation. Nevertheless, we believe the trial court had ample justification for finding that no prosecutor vindictiveness was shown.

Defendant appears to be arguing that when District Attorney Hallinan and the three strikes committee reviewed the case and found that it still qualified as one appropriate for three strikes treatment—and when the trial court upheld that decision—a sort of end-run around the jury's acquittals was accomplished. We disagree. Defendant was not sentenced for murder, arson, robbery, or burglary. He was sentenced on the receiving count, plus the strike enhancement allegations, which the jury found true. Those allegations were completely independent of the substantive charges on which defendant was acquitted. Nor do we think it improper for District Attorney Hallinan and his staff to consider the state of the evidence in the case regarding murder even if the jury had determined that the same evidence was not sufficient to prove guilt beyond a reasonable doubt. A trial court is entitled to make decisions based on the facts of acquitted charges. (See, e.g., *In re Coughlin* (1976) 16 Cal.3d 52 [probation revocation allowed on same facts as criminal trial acquittal]; *In re Dunham* (1976) 16 Cal.3d 63 [parole revocation allowed on same facts as criminal trial acquittal]; *People v. Gragg* (1989) 216 Cal.App.3d 32, 42-46 [probation denial allowed on same facts as acquittal].) If it is permissible for a court to take account of the circumstances underlying acquitted charges, there is no reason why it should be impermissible for a prosecutor to do the same.

A final comment concerns the essence of prosecutorial vindictiveness—the denial of equal protection. In order to warrant judicial intervention, there must be a threshold showing that persons are "similarly situated" and are being treated differently before the law demands they be treated alike. (E.g., *In re Eric J.* (1979) 25 Cal.3d 522, 530-531; *People v. Poe* (1999) 74 Cal.App.4th 826, 835.) In this case, however, defendant has no point of comparison. Because he is the first and only person in his situation—charged

_____
Kay, P.J.

We concur:


_____
Sepulveda, J.


_____
Rivera, J.

*People v. Hayles*
A094429

## PROOF OF SERVICE

**People v. Hayles**
A094429


I, William D. Farber, declare under penalty of perjury that I am counsel of record for defendant and appellant Troy Hayles in this case, and further that my business address is William D. Farber, Attorney at Law, P.O. Box 2026, San Rafael, CA 94912-2026. On February 24, 2003, I served the within **Petition for Review** by depositing copies each in a sealed envelope with postage thereon fully prepaid, in the United States Postal Service, at San Rafael, California, addressed respectively as follows:


Bill Lockyer, Esq.
Attorney General
State of California
455 Golden Gate Ave.
Suite 11000
San Francisco, CA 94102-3664

First District Appellate Project
730 Harrison Street
Suite 201
San Francisco, CA 94107

Troy Hayles
E-16711
Calipatria State Prison
P.O. Box 5001
Calipatria, CA 92233

Terrance Hallinan, Esq.
District Attorney
City and County of San Francisco
850 Bryant Street
San Francisco, CA 94102

Clerk, Court of Appeal
First Appellate District, Div. 4
350 McAllister Street
San Francisco, CA 94102

Clerk
City and County of San Francisco
Criminal Appeals
850 Bryant Street
San Francisco, CA 94103


I declare under penalty of perjury that the foregoing is true and correct.

DATED: February 24, 2003.


WILLIAM D. FARBER
Declarant

**EXHIBIT 6**

Court of Appeal, First Appellate District, Division Four - No. A094429
**S114068**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

TROY HAYLES, Defendant and Appellant.

Petition for review DENIED.

SUPREME COURT
FILED

APR - 9 2003

Frederick K. Ohlrich Clerk

_____
Deputy

APR 0 9 2003

By: J. CABRANZANA
No. SF2001DA0784

_Georga_
Chief Justice

**EXHIBIT 7**

MC-275

Name    **Troy Hayles**

Address    **P.O. Box 5002**

**Calipatria, California 92233**

CDC or ID Number    **E-16711**

# FILED
**San Francisco County Superior Court**

### DEC 24 2003

**GORDON PARK-LI, Clerk**

BY: _____ *Deputy Clerk*

**San Francisco**

**Superior court**

*(Court)*

**PETITION FOR WRIT OF HABEAS CORPUS**

**Troy Hayles**

Petitioner

vs.

**San Francisco Superior court**

Respondent

No. _____ *4810*

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS - READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]
*Martin Dean's Essential Forms* ™

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.
Cal. Rules of Court, rules 56.5, 201(h,

**This petition concerns:**

- [x] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [ ] Other *(specify)*: _____

- [ ] Parole
- [ ] Credits
- [ ] Prison discipline

1. Your name: **Troy Hayles**

2. Where are you incarcerated? **Calipatria SAT State Prison**

3. Why are you in custody? [X] Criminal Conviction   [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   **Receiving stolen property. Three Strikes law, enhancement/25 years-life**

b. Penal or other code sections: **P.C. Section 1170.12,subds./Section 667,subds.**

c. Name and location of sentencing or committing court: **Superior Court.Dept.26 850 Bryant st. San Francisco,California,94103**

d. Case number: **177096**

e. Date convicted or committed: **February 27, 2001**

f. Date sentenced: **February 23,2001**

g. Length of sentence: **25 years-life**

h. When do you expect to be released? **2024**

i. Were you represented by counsel in the trial court? [X] Yes.   [ ] No.   If yes, state the attorney's name and address:

   **Kenneth M. Quigley 650 Fifth st,Suite 502 San Francisco California 94107-1521**

4. What was the LAST plea you entered? *(check one)*

   [X] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [X] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6.  GROUNDS FOR RELIEF
    **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Insufficient Evidence.

Inefective Assistance of appellant counsel.

a.  Supporting facts:
    Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Petitioner was charged with first degree murder and two special circumstances--robbery-murder, burglary-murder,robbery,arson, receiving stolen property.Allegations of prior conviction were found to be true. Petitioner was acquitted at jury trial of all charges except the last; he was found guilty of receiving stolen property. Trial by jury commenced July 11,2000. The evidence at trial showed that petitioner was present at the time the credit cards of the deceased were being used on the morning of her death,(Joyce Ruger.) and that he possibly possessed some of her jewelry in the weeks following her death. The evidence also showed that petitioner was a friend of Ms.Ruger. There was no evidence/testimony adduced at trial as to whether or not petitioner had permission to allegedly possess or use Ms.Ruger's property. There was also evidence that Ms.Ruger was a generous and

b.  Supporting cases, rules, or other authority (optional):
    *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

outgoing individual who(1) was interested in the welfare of pititioner,
(2) knew and corresponded with members of his family(specifically two aunts
who had raised him.), and(3) received telephone calls from petitioner, in-
cluding requests for monetary assistance.

## II. INTRODUCTION OF FACTS.

It is petitioners claim that each element of receiving stolen property has
not been established by competent evidence, nor, independent of petitioners
admission or confession. To support such claim, petitioner logically focu-
ses on all evidence adduced during trial, that should not only have esta-
blished facts to sustain petitioners conviction of receiving stolen prop-
erty, but also proved every essential element of the crime. In addressing
the elements of this crime, petitioner follows the same guidelines given
to the jury of his trial by the Judge, under Jury Instructions.(Id.P-307)
It is through this scope petitioner illustrates his claim of insufficient
evidence, and supporting facts.

(1) No evidence adduced at trial, pinpoints petitioner receiving or, poss-
essing alleged stolen property. (2) However, the trial recoreds does refl-
ect the attempts, and failure to prove the elements of receiving stolen
property. The petitioner hereby directs the attention to an illustration
of such reflection.

Petitioners sister, Selena Jimenez, testified at trial that she gave the
police some jewelry that she received from petitioner. Which was marked
as people's exhibit #38.(RT.P-272) Here, the prosecutor is suggesting the
jewelry belongs to the victim. (Joyce Ruger.) The prosecutor asked the
witness a question regarding another piece of jewelry. Question: "okay.
Now what about people's #39? Where did that come from?" Answer:" I have ne-
er   seen this."(RT P-273.)

(Continued facts.)                                              (Page 3)

In the testimony of Christina Palma, (RT.P-326.) at trial the prosecutor
brought forth this witness to identify the victims property, and to estab-
lish the element of theft. The prosecutor showed this witness three yellow
chains, marked as people's exhibit #38. The ending question was of the fo-
llowing: "but you can't say for sure that they were her's?" (Refering to the
victim.) Answer: "yes."
Christina Palma, could not identify exhibit #38 as property of the victim.
As for exhibit #39, it was never mentioned again.
In the midst of each of these witnesses testimony, the prosecutor ~~attracted~~ extracted
information of a pendant. Ms.Palma, described a pendant that belong to the
Joyce Ruger. Ms.Jimenez, gave a similar description of a pendant that she
claimed to have seen petitioner with. With these combined testimonies, the
prosecutor insinuates to the jury that petitioner possessed property that
belong to the victim.(Ms.Ruger.) However, there is no record of a pendant
ever being submitted or, obtained as evidence for identification. Hence,
the prosecutor's insinuation is without the legal support necessery to com-
plete the element of possession in receiving stolen property.
At petitioners trial, in the testimony of Theresa Yee Ting, the prosecutor
attempts to establish dominion or control of alleged stolen credit cards.
(Id.RT.P-294.) He asked the following question: did either one of them seem
to be in charge of what was going on? Answer: no, I don't recall that.

In regards to the testimony of Charrisse Wells, the prosecutor's witness.
Ms.Wells made a deal with the prosecutor out-side of petitioners trial.
(Id.RT.P-136.) The deal consisted of excluding her from the responsibility
of her crimes surrounding petitioners case, in exchange that she give test-
imony that would include petitioner in her own crimes. However, at trial
Ms.Wells elected to reject the prosecutors deal, by refusing to testify.

She then pled the Fifth Amendment, in fear that she would incriminate herself without the prosecutors deal to protect her. The prosecutor then submitted a petition of immunity, hereby forcing her to testify through the order of the court.(Id.RT.P-137.) After being assured by the prosecutor that nothing she said in court would ever be used against her, Ms.Wells then proceeded to take full responsibility for her criminal activities surrounding petitioners case. Ms.Wells admitted to placing the blame on petitioner to take the heat off herself.(Id.RT.P-220.) Throughout her testimony, she confirmed petitioners innocence of the alleged crime of receiving stolen property. The prosecutor acknowledged through his own statement, that Ms.Wells was the only one seen in possession and usage of alleged stolen credit cards.(Id.RT.P-228.) The prosecutor brought forth this witness not by force, but by his own willful choice with hopes of extracting testimony that would implicate petitioner in alleged crimes, discriminate his character and incriminate him in the alleged crime of receiving stolen property; to no avail.

In regards to petitioners statement made outside of his trial, where he gave an asumption to the nature of the property he claimed to have found, the prosecutor moves to turn this asumption into an established fact.
In doing so, he presented to the jury a two-way theory that composed two reasonable interpretation, and two reflections of the matter.

(Continued Facts.)                                    (Page 5)

From here, petitioner shines a brighter light on the facts, through a finer scope of the matter. Starting with petitioners concept of a two-way theory, presented by the prosecutor, and the existing inconsistent facts with the theory. The prosecutor draws the first fact to his theory from two pieces of circumstantial evidence: Ms.Wells and petitioners statement made outside of trial. His theory reflects the two statements corroberating, hence establishing a fact that is consistent with the theory, and closing the door to any other rational conclusion.

Then the prosecutor uses the same theory to draw his second fact from one of the two pieces of circumstances, the petitioners statement. Combined with circumstantial evidence, he establishs that petitioners statement is false. In doing so, his theory then begins to interpretate specific reasonable plausibilities, such as: petitioner did not find the property in the manner he stated, and, if he did in fact ever possess any property at all, then it was obtained in another manner. This is where the prosecutor re-opens the door to his own theory, and allows inconsistency to enter. He logically attempts to establish guilt to other crimes, by proving petitioners statement is false. Hereby introducing, a rational conclusion that is inconsistent with his own theory. However, since the prosecutor could not adduce sufficent evidence to establish that petitioner was guilty of other alledged crimes, in collaboration with petitioners proven false statement, he again attempts to close the door to his theory and displayed rational conclusion; then he simply urges the jury to find petitioner guilty of receiving stolen property, based on his own statement out side of trial.

(Continued Facts.)                                    (Page 6)

The final and most important fact that in itself, reflects the insufficiency
of evidence is the absent of essential facts; from whom, where, or how was
such property allegenly received or, obtained. Moreover, every theft case
includes the elements necessarily of somebody testifying that the property
is stolen, either the victim, or someone who knows that that was the victims
property. The prosecutor did not produce such evidence. Nobody was able to
testify to facts showing that such property was taken away from Joyce Ruger
without her consent. No one stated that such property was not given to some-
body or that there was not permission to hold or use the property. There is no
substantial evidence shown that any property was received, conceald or with-
eld by petitioner. The prosecutor offers presence and access to alleged stol-
en property as a sufficient basis for establishing possession, rather then
dominion or control, which are essential of possession.


(Conclusion of Facts.)

The prosecutors case against petitioner is so circumstancially speculated,
that he is compelled to take leaps into assumptions that are not bridged
with competent evidence. Leaps, over the petitioners constitutional right to
presumption of innocence, without sufficient evidence of proof reflecting
guilt to every existing element of receiving stolen property. Without such
evidence, the petitioners conviction can not stand.

7.  Ground 2 or Ground _____ (if applicable):

Ineffective appellate counsel.

a.  Supporting facts:

Appellate counsel was ineffective when he failed to rase maritting
issues on appeal, that arguably could have resulted in reversal.
The assignments of error not rased by appellate counsel are of the
following: (1) Insufficient evidence in the conviction of receiving
stolen property. (2) Abuse of discretion, by the prosecutor. (3) THE
merger of equal protection.  More over, appellate counsel failed to
acknowledge and rase vital errors made by trial counsel, that by themselves
subjected petitioner to an unfair trial, and had they been rased, arguably
might have resulted in reversal. Even more so, the existence of so many
trial errors, harmless or not, in petitioners case amounted to a collect-
ive of errors that reflected a   fundamental miscarriage of justice, and
an unfair trial.

SEE AMENDED PAGE.

b.  Supporting cases, rules, or other authority:

(Continued , supporting facts.)                    (Page 2)

It was ineffective assistence for trial counsel not to object to the following issues for the purpose of preserving them for appeal:

(1) Trial counsel should have objected to allowing juror member to remain a jury participant after admitting to the judge that he had read partial publication concerning matters in petitioners trial, in the news papers. Specifically, because the juror was the foreman, which boosted his influence in  weighing the facts and, he held in his mind information the other members did not. The fairness of the system is based on 12 unbiased, and impartial people making a decision based on the same information. The appearance or possibility of such an influence based on personal information, no matter how unintentional, should have compelled trial counsel to ask that the juror be excused. The juror was no longer in compliance with the fairness of the system, and the court or, trial counsel should have never allowed ONE juror to enjoin nor enter deliberation with priviledged information.

(2) It was ineffective assistance, for trial counsel not to object to juror reuniting with the rest of the jury members, after expressing her concerns to the judge in regards to her encounterment out side of the court room, with prosecutors witness Ms.Wells. (The next day.) The juror told the court that she had been addressed by Ms.Wells as she was exiting the court house, and Ms.Wells whom had just finished testifying, expressed words to her (the juror.) or, within her hearing range, that left her very concern for her safty. The judge, at first allowed her to remain a juror and excused her to her duty. Then the judge held a court conference (absent the juror.) in which all parties expressed their concerns as to the nature of the matter, and in conclusion, the judge decided to excuse the juror based on the possibility of the influence such an impact may have instilled in the juror. However, this decision was made "after" the juror was allowed to reunite with the jury. Trial counsel should have ask that the juror remain in the

(Continued Facts.)                                    (Page 3)

conference until the conclusion of the judges decision. Hence, arose the
strong probability that the juror's impact and concerns influenced the remain-
ing jury members in their decision to convict petitioner of receiving stolen
property. For this reason, trial counsel should have asked for a mistrial.
(3) It was incompetent trial strategy and forther ineffective assistance for
counsel to introduce petitioners priors to the jury in his opening arguement.
In doing so, he argued the case against petitioner.
(4) It was incompetent trial stategy for counsel to bring forth Kendra Rodig-
uez as a witness, after the prosecutor had excluded her from his own witness
list. The prosecutor, and trial counsel were well aware of the contents of her
testimony, and considering the nature of it, the strong probability existed
that her statements made outside of court were obtained illegally. Her testi-
mony was more damaging than rewarding for petitioner. More so, because the
circumstances surrounding Ms. Rodriguez testimony became strong factors for infe
ences to be drawn from by the jury, and by the prosecutor in his reassessment
of the totality of the case and in his decision to pursue 3-strikes against
petitioner. The same inferences were adduced by the judge in his consideration
of the mitigating and aggravating factors. More over, trial consel failed to
adduce the video tape of Ms. Rodriguez statements to Homicide Detectives for
the purpose of contradicting or, supporting her claim that she was given
information, (by Homicide Detectives.) rather than held actual knowledge about
any aspects of the case. Even farther, in his closing arguements he insinuates
that she is lying. Again, he argued against petitioner.
(5) It was incompettent trial strategy and ineffective assistance, for trial
counsel to inform the jury in his opening arguement of the 3-strike sentence
petitioner would be subjected to upon being found guilty of receiving stolen
property, in correlation with the information he had already given them regard-
ing petitioners priors; despite the judges instruction for the jury to disrega-
rd his statements.

(Continued facts.)                                                    (Page 4)

(6) In considering the amount of publicity and politics surrounding petitioners case, it was incompetent trial strategy for counsel not to ask for a change of vendor, to insure petitioner a fair and impartial trial.

(7) It was OPEN incompetent trial strategy, and ineffective assistance for counsel not to cross examine prosecutors witness Ms.Wells, after she had admitted to placing all the blame on petitioner to save herself. Trial counsel should have confronted her testimony, rather than allow it to rest entirely in the hands of the jury. In Ms.Wells testimony, arose an opportunity for counsel to shine light on a much speculated and circumstantial case, an opportunity, to exstract a defending theory, equally, one that contradicted the prosecutors theory in regards to receiving stolen property. More over, in counsels closing arguement, for him to suggest that Ms.Wells entire testimony was a lie, was a prejudicial statement that by itself influenced the jury to disregard Ms.Wells testimony.

(8) It was ineffective assistance for counsel not to research the statue concerning receiving stolen property, for credit cards. Had he done so, he would have descovered that the facts of the offense paralled the acts proscribed by a specific credit card statue, and prevents credit cards from being the subject of prosecution, in the offense of reciving stolen property.

(Conclusion.)

For the above metioned reasons, petitioners simply ask's for a new trial.

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No.  If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

     Court of Appeal.

   b. Result: Appeal denied.      c. Date of decision: 3 Jan 2003

   d. Case number or citation of opinion, if known: _____

   e. Issues raised: (1) Vindictive prosecution.

      (2) _____

      (3) _____

   f. Were you represented by counsel on appeal?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

     William D. Farber.

9. Did you seek review in the California Supreme Court?  ☒ Yes.  ☐ No.  If yes, give the following information:

   a. Result: Review denied.      b. Date of decision: 9 April 2003

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) Vindictive prosecution.

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   Ineffective assistance by appellate counsel.

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

_____

_____

_____

_____

_____

_____

_____

_____

   b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.
     *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  ☐ Yes. If yes, continue with number 13.   ☒ No. If no, skip to number 15.

13. a.  (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised:  (a) _____

        (b) _____

    (4) Result *(Attach order or explain why unavailable):* _____

    (5) Date of decision: _____

  b.  (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised:  (a) _____

        (b) _____

    (4) Result *(Attach order or explain why unavailable):* _____

    (5) Date of decision: _____

  c.  *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)    Petitioner needed time to research the claimed grounds.

_____

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☒ No.  If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _15 December 2003_     ▶ *Troy Hughes* _____
                              (SIGNATURE OF PETITIONER)

# VERIFICATION

STATE OF CALIFORNIA
COUNTY OF IMPERIAL

(C.C.P. SEC. 446 & 2015.5; 28 U.S.C. SEC. 1746)

I, _Troy Hayles_ DECLARE UNDER PENALTY OF PERJURY THAT: I AM THE _Petitioner_ IN THE ABOVE ENTITLED ACTION; I HAVE READ THE FOREGOING DOCUMENTS AND KNOW THE CONTENTS THEREOF AND THE SAME IS TRUE OF MY OWN KNOWLEDGE, EXCEPT AS TO MATTERS STATED THEREIN UPON INFORMATION, AND BELIEF, AND AS TO THOSE MATTERS, I BELIEVE THEM TO BE TRUE.

EXECUTED THIS _14_ DAY OF _12_, 2003, AT CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002.

(SIGNATURE) _Troy Hayles_
(DECLARANT/PRISONER)

# PROOF OF SERVICE BY MAIL

(C.C.P. SEC. 1013 (a) & 2015.5; 28 U.S.C. SEC 1746)

I _Troy Hayles_ AM A RESIDENT OF CALIPATRIA STATE PRISON, IN THE COUNTY OF IMPERIAL, STATE OF CALIFORNIA; I AM OVER THE AGE OF EIGHTEEN (18) YEARS OF AGE AND AM / AM NOT A PARTY OF THE ABOVE ENTITLED ACTION.          MY STATE PRISON ADDRESS IS P.O. BOX 5002, CALIPATRIA, CALIFORNIA 92233-5002

ON _____, 20___, IS SERVED THE FOREGOING:

_____

_____

(SET FORTH EXACT TITLE OF DOCUMENTS SERVED)
ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY(S) THEREOF, ENCLOSED IN A SEALED ENVELOPE (S), WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO PROVIDED AT CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002

SAN FRANCISCO COUNTY SUPERIOR COURT

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED, AND THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO ADDRESSED, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATE: _12-14_, 20 _03_          _Troy Hayles_
(DECLARANT/PRISONER)

# EXHIBIT 8

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE CITY AND COUNTY OF SAN FRANCISCO**

Department No. 22

FILED
San Francisco County Superior Court

JAN 2 3 2004

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

IN THE MATTER OF THE APPLICATION )
OF                                )
                                  )   WRIT NO. 4810
                                  )
**TROY HAYLES**,                  )   SUPERIOR COURT NO. 177096
                                  )
        Petitioner,               )
                                  )
FOR A WRIT OF **HABEAS CORPUS**   )
                                  )

A petition for habeas corpus has been received.

Petitioner was convicted in a jury trial in the Superior Court, San Francisco County, of receiving stolen property. He was sentenced under Three Strikes Law to state prison for a term of 25 years to life. Petitioner appealed, and the Court of Appeal, First District, affirmed the judgment of conviction on January 30, 2003.

Petitioner complains he is unlawfully detained because the prosecution failed to prove all the elements of receiving stolen property at trial, and because he received ineffective assistance of trial and appellate counsel. He requests a new trial.

As to his first claim, the issue of insufficiency of the evidence to support a conviction is not cognizable in and of itself in a habeas corpus proceeding. (In re Spears (1984) 157 Cal.App.3d 157; In re Lindley (1947) 29 Cal.2d 709, 723.)

As to Petitioner's claims of ineffective assistance of trial and appellate counsel, Petitioner does not provide a copy of the trial transcript, the appellate brief filed on his behalf, or the entire unpublished decision of the Court of Appeal. Petitioner has the burden of providing documentary evidence to support his claim. Without these documents a decision regarding the ineffective assistance of his trial and appellate counsel is impossible. A petition for writ of habeas corpus should both (1) state fully and with particularity the facts upon which relief is sought, and (2) include copies of reasonably available documentary evidence supporting the claim, including affidavits or declarations. (People v. Duvall (1995) 9 Cal.4th 464, 474.) "Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing." (Ibid., quoting People v. Karis (1988) 46 Cal.3d 612, 656.)

1

For the foregoing reason(s), Petitioner's writ of habeas corpus is DENIED.

Dated: _January 23, 2004_

_____
Judge of the Superior Court

2

## §40.3    Judicial Council Form: Petition for Writ of Habeas Corpus

### GENERAL INFORMATION ON JUDICIAL COUNCIL FORMS

Judicial Council forms are created by (but not available from) the California Judicial Council. They are standard printed forms that are sent to court clerks and to publishers like CEB.

An attorney who wants to use a Judicial Council form may:

- Photocopy the relevant form in this Forms Manual.

- Obtain the form from the clerk's office and use or photocopy it.

- Use a software program, such as CEB's SmartLaser™, which has the Judicial Council forms on it, fill them in, and print them out. (Judicial Council forms are not reproduced on the disc that accompanies this Manual.)

### PHOTOCOPYING THE FORMS IN THIS MANUAL

To photocopy a form from this Manual, cover the CEB page number and section number at the top of the page and the three punch holes at the side of the page before photocopying. This can be done most efficiently by covering the section and page numbers and holes with removable tape and then photocopying the form.

A photocopy that is filed with a court must be (Cal Rules of Ct 201, 501):

- Clear and permanent;

- Equal to typewritten material in legibility;

- In type not smaller than pica size (applicable to filled-in, not to pre-printed, matter);

- On opaque, unglazed white paper of standard quality not less than 13-pound weight;

- 8-1/2 by 11 inches in size.

Many Judicial Council forms are printed on the front and back of a single sheet of paper with the matter on the back inverted so that it can be read when clipped at the top in a file folder. The backs of the forms in this Forms Manual are not inverted in order to facilitate reading them. Most court clerks will accept a photocopy of a two-sided form on two sheets. A few court clerks insist that a form be reproduced on the front and back of a single sheet with the back inverted. Check with the local court clerk.

Note: Occasionally a local court clerk refuses to accept a photocopy or a printed blank form that was not obtained from the clerk. Some courts insist on the use of local forms that, *e.g.*, have been printed on colored paper, in carbonized sets, or with local additions. It is important that you check with the local clerk to find out local court practice.

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ANN P. WATHEN, State Bar No. 189314
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5972
    Fax:  (415) 703-1234
8   Email:  Ann.Wathen@doj.ca.gov

9  Attorneys for Respondent

10

IN THE UNITED STATES DISTRICT COURT

11

FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO DIVISION

13

14  **TROY HAYLES,**                                      C 06-6909 MJJ (PR)

15                                        Petitioner,     **EXHIBITS**

16          **v.**

17  **ROSANN CAMBLE, Warden,**

18                                        Respondent.

19

20

21

22

23

24          # EXHIBIT 9 (PART 1 OF 2)

25

26

27

28

**EXHIBIT 9 (PART 1 OF 2)**

MC-275

Name __Troy Hayles__

Address __P.O. Box-5002/D-4/113__

__Calipatria, CA 92233__

**ORIGINAL**

CDC or ID Number __E-16711__ **DIVISION FOUR** **FILED**

__Court of Appeal's__

__First Appellate District, Div. 4__ DIANA HERBERT
_(Court)_

JUN 10 2004

Court of Appeal - First App. Dist.
By_____
DEPUTY

PETITION FOR WRIT OF HABEAS CORPUS

__Troy Hayles__
Petitioner

vs.

__People of The State of California__
Respondent

No. _____

**A106747**

_(To be supplied by the Clerk of the Court)_

020 94429

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form _before_ answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

**PETITION FOR WRIT OF HABEAS CORPUS**
WEST GROUP
Official Publisher
Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

**This petition concerns:**

[x] A conviction            [ ] Parole

[ ] A sentence              [ ] Credits

[ ] Jail or prison conditions    [ ] Prison discipline

[ ] Other *(specify):* _____

1. Your name: Troy Hayles

2. Where are you incarcerated? Calipatria ~~Sta~~ State Prison

3. Why are you in custody? [X] Criminal Conviction  [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Receiving stolen property. Three Strikes law, enhancement/25 years-life

b. Penal or other code sections: P.C. Section 1170.12,subds./Section 667,subds.

c. Name and location of sentencing or committing court: Superior Court.Dept.26 850 Bryant st.

San Francisco,California,94103

d. Case number: 177096

e. Date convicted or committed: February 27, 2001

f. Date sentenced: February 23,2001

g. Length of sentence: 25 years-life

h. When do you expect to be released? 2024

i. Were you represented by counsel in the trial court? [x] Yes.  [ ] No.  If yes, state the attorney's name and address:

Kenneth M. Quigley 650 Fifth st,Suite 502 San Francisco California 94107-1521

4. What was the LAST plea you entered? *(check one)*

[X] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[X] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

---

MC-275 [Rev. January 1, 1999]
*Martin Dean's Essential Forms* TM

**PETITION FOR WRIT OF HABEAS CORPUS**

Page two of six

6. GROUNDS FOR RELIEF
   **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Plain Error: COURT ERROR.

SEE AMENDED PAGE.

a. Supporting facts:
   Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

SEE AMENDED PAGE.

b. Supporting cases, rules, or other authority (optional):
   *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

PITITIONER IS CLAIMING
INEFFECTIVE COUNSEL IN
VIOLATION OF THE 6TH AMENDMENT.

<u>Supporting case.</u>
Citing:
People V. Williams.
137 Cal,R 70.

"A person chargered with a felony by complaint subscribed under penalty
of perjury and on file in a Court in the County where the felony is
triable SHALL be taken without unnecessary delay before a Magistrate
of that Court." (Article I,Sec. 14 of the California Constitution.)

7. Ground 2 or Ground _____ (*if applicable*):

Ineffective Appellate Counsel.

a. Supporting facts:

Appellate counsel was ineffective when failed to rase maritting issues on appeal, that arguably could have resulted in reversal. The assignment of errors not rased by appellate counsel are of the following: (1) Insufficient evidence in the conviction of receiving stolen property; in pursuant to Motion filed by trial counsel. (2) Abuse of discretion, by prosecutor. (3) The merger of Equal Protection. Moreover, appellate counsel failed to acknowledge and rase vital errors made by trial counsel, that by themselves subjected petitioner to an unfair trial, and had they been rased, arguably might have resulted in reversal. Evevn more so, the existence of so many trial errors, harmless or not, in petitioner's case amounted to a collective of errors that reflected a fundamental miscarriage of justice and an unfair trial.

b. Supporting cases, rules, or other authority:

Because these errors are on the records, petitioner rely's on the application of the law by reviewing Court.

(Page 1)

COURT ERROR.

DELAY IN ARRAIGMENT WAS CONSTITUTIONALLY
IMPROPER, AND WAS PREJUDICIAL, AND CREATED
A PROCEDURAL DEFAULT IN VIOLATION OF THE FOUR=
TEENTH AMENDMENT TO THE UNITED STATES CONSTITU-
TION AND ARTICLE L, SECTION 14 OF THE CALIFORNIA
CONSTITUTION.


A. Factual and procedural background.

Petitioner was arrested on October 6,1999, for the following allegation:
Murder, Robbery, Burglary, Arson and Receiving Stolen Property.
Petitioner's arraigment was held around/about October 8,1999, for all
the above allegations except...receiving stolen property.
(The Court errored in failing to render an oral reading in open Court
for the allegation of receiving stolen property, wherein, petitioner was
not afforded an opportunity to enter a plea for thus charge.)

Assumedly, error went unnoticed until preliminary hearing was held, (Nov,19,
1999.) where at the end of the hearing, the Judge stated the charges
neede to be re-read, for the purpose of correcting the Court error.
Two things happen here: (1) trial counsel objected to the reading, arguing
that the charges had already been read in arraigment; wherein, the Judge
over ruled trial counsel's objection, and stipulated the objection would
be noted for the records. (2)Trial counsel waved the right to the oral
re-read, and avised petitioner to do like wise.

B. Error Intervened With Trial Strategy.

Petitioner has no factual knowledge of reason, the Judge elected to re-read
the allegations; it is his assumtion, to correct the error. If so, the
court should have stated the neccessity for the re-reading to assure
petitioner fully understood that he was now also, being charged with
receiving stolen property.
With the waving of the re-read, combined with the Court error, petitioner
entered trial in a state of uncertainty towards the actual allegation.
This error delivered a crucial blow to a competent trial strategy: the ele-
ction to re-read the allegation, came after petitioner waved his confront-
ational rights to face his accuser, (for the allegations of: murder, robbery,
burglary and arson.) and elected a speedy trial, based on the infirmness
in the prosecutor's case.
Had the error been corrected in an earlier stage, that was in accordance
with Court Procedures, petitioner would have been presented with an
opportunity to re-evaluate trial strategy(S), such as: petitioner might not
have waved confrontation right, wherein, accuser where abouts were unknown
to prosecutor.

C. Error Proceurally Effected trial.

Moreover, had a reading for receiving stolen property been given
at petitioner's initial arraigment, he would have been afforded his const-
itional right to enter a plea of guilty or, not guilty; wherein, he could
have decided it to be an effective/competent trial strategy to enter a plea
of guilt to receiving stolen property, hereby severing the allegations.
Thence, petitioner would have waved sentence, pending trial outcome for
the remaining allegations.

(continued Error.)                    (Page 2)

Never a less, a guilty plea for receiving stolen property solely, would have been favorable to San Francisco's 3-strike policy:  not to pursue 3-strikes against non-violent offenses.

It is reasonable and likely, that this would/could have effected the prosecutor's decision to pursue 3-strike liability for a non-violent crime, for the first time. Moreover, an assessment of the matter, before the forthcoming of petitioner's ad acquittal, would have been based solely on receiving stolen property--absent the evidence adduced at trial; in which inferences were drawn from other circumstances and applied. Specific testimony, not only strengthen the inferences, they also supported and persuade the decision to pursue 3-strikes in a reassessment of the matter after petitioner's acquittal for the violent allegations; such as the constradictions in the testimony of: Charrisse Wells, Donald Hamilton, and Kendra Rodriguez.

With a guilty plea entered, presumably along with a delayed sentencing, even if prosecutor still elected to pursue 3-strikes against petitioner, he could/would have withdrew his plea, justifiably declaring unfairness in light of the 3-strike policy, and elected a trial solely for receiving stolen property; in which alot of the circumstances surrounding the other allegations would not have been adduced.

Hence, it is petitioner's claim that such a procedural error on behalf of the Court was not harmless, and in fact so damaging, that it not only intervened on competent trial strategies, but, subjected petitioner to a prejudicial and unfair trial that concluded in a fundamental miscarriage of justice.

By the reason of the foregoing, petitioner respectfully request that his sentence be reversed.

(Page 1)

## STATEMENT OF THE CASE.

Petitioner was charged with first degree murder and two special circum-
stances--robbery-murder, burglary-murder, robbery, arson and receiving
stolen property. Allegations of prior convictions were found to be true.
Petitioner was acquitted at jury trial of all charges except the last;
he was found guilty of receiving stolen property. Trial by jury commenced
July 11, 2000.
The evidence showed that petitioner was present at the time the credit cards
of the deceased were being used on the morning of her death. (Joyce Ruger)
The evidence also showed his relative Charrisse Wells, in possession
and control of credit cards and jewelry; but not petitioner.

(Continued , supporting facts.)                    (Page 2)

It was ineffective assistence for trial counsel not to object to the following
issues for the purpose of preserving them for appeal:

(1) Trial counsel should have objected to allowing juror member to remain a
jury participant after admitting to the judge that he had read partial pub-
lication concerning matters in petitioners trial, in the news papers.
Specifically, because the juror was the foreman, which boosted his influen-
ce in  weighing the facts and, he held in his mind information the other
members did not. The fairness of the system is based on 12 unbiased, and
impartial people making a decision based on the same information. The app-
earance or possibility of such an influence based on personal information,
no matter how unintential, should have compelled trial counsel to ask
that the juror be excused. The juror was no longer in compliance with the
fairness of the system, and the court or, trial counsel should have never
allowed ONE juror to enjoin nor enter deliberation with priviledged inform-
ation.

(2) It was ineffective assistance, for trial counsel not to object to juror
reuniting with the rest of the jury members, after expressing her concerns
to the judge in regards to her encounterment out side of the court room,
with prosecutors witness Ms.Wells. (The next day.) The juror told the court
that she had been addressed by Ms..Wells as she was exiting the court house,
and Ms.Wells whom had just finished testifying, expressed words to her (the
juror..) or, within her hearing range, that left her very concern for her
safty. The judge, at first allowed her to remain a juror and excused her
to her duty. Then the judge held a court conference (absent the juror.) in
which all parties expressed their concerns as to the nature of the matter,
and in conclusion, the judge decided to excuse the juror based on the possi
bility of the influence such an impact may have instilled in the juror.
However, this decision was made "after" the juror was allowed to reunite
with the jury. Trial counsel should have ask that the juror remain in the

(Continued Facts.)                                          (Page 3)

conference until the conclusion of the judges decision. Hence, arose the
strong probability that the juror's impact and concerns influenced the remain-
ing jury members in their decision to convicted petitioner of receiving stolen
property. For this reason, trial counsel should have asked for a mistrial.

(3) It was incompetent trial strategy and forther ineffective assistance for
counsel to introduce petitioners priors to the jury in his opening arguement.
In doing so, he argued the case against petitioner.

(4) It was incompetent trial stategy for counsel to bring forth Kendra Rodrig-
uez as a witness, after the prosecutor had excluded her from his own witness
list. The prosecutor, and trial counsel were well aware of the contents of her
testimony, and considering the nature of it, the strong probability existed
that her statements made outside of court were obtained illegally. Her testi-
mony was more damaging than rewarding for petitioner. More so, because the
circumstances surrounding Ms. Rodriguez testimony became strong factors for infer
ences to be drawn from by the jury, and by the prosecutor in his reassessment
of the totality of the case and in his decision to pursue 3-strikes against
petitioner. The same inferences were adduced by the judge in his consideration
of the mitigating and aggravating factors. More over, trial consel failed to
adduce the video tape of Ms. Rodriguez statements to Homicide Detectives for
the purpose of contradicting or, supporting her claim that she was given
information, (by Homicide Detectives.) rather than held actual knowledge about
any aspects of the case. Even farther, in his closing arguements he insinuates
that she is lying. Again, he argued against petitioner.

(5) It was incompettent trial strategy and ineffective assistance, for trial
counsel to inform the jury in his opening arguement of the 3-strike sentence
petitioner would be subjected to upon being found guilty of receiving stolen
property, in correlation with the information he had already given them regard-
ing petitioners priors; despite the judges instruction for the jury to disrega-
rd his statements.

(Continued Facts)                                    (Page 4)

(6) In considering the amount of publicity and politics surrounding petit-
ioner's case, it was incompetent trial strategy for counsel not  to ask
for a change of vender to insure petitioner a fair and impartial trial.

(7) It was Open incompetent trial strategy and ineffective assistance
for counsel not to cross examine prosecutor's witness Ms.Wells, after she
had admitted to placing all the blame on petitioner to save herself.
Trial counsel should have confronted her testimony, rather than allow it
to rest entirely in the hands of the jury. In Ms.Wells testimony, arose an
opportunity for counsel to shine light on a much speculated and circumstant-
ial case; an opportunity to exstract a defending theory, equally, one that
contradicted the prosecutor's theory in regards to receiving stolen property.
Moreover, in counsel's closing statements, for him to suggest that Ms.Wells
entire testimony was a lie, was a prejudicial statement that by itself
influenced the jury to disregard Ms.Wells testimony.

(8) It was incompetent trial strategy and ineffective assistance for trial
counsel to suppress "half" of petetioner's statements made outside of Court
to Homicide Detectives; Wherein, petitioner Miranda rights were ignored
when he decline to answer farther questions without representation.
Trial counsel suppressed the Miranda violation part of the statements.
In doing so, he paved a path for the prosecutor to introduce petitioner's
self-incriminating statements; which was the foundation in the prosecutor's
theory for receiving stolen property, and the primary basis for the jury's
guilty verdict. Without such suppression, it is likely the entire tapped
statements would have been deemed inadmissiable because of the Miranda
violation, or, counsel could have objected to its admission based on such
grounds. AgAIN, counsel argued the case against petitioner.

(9)It was incompetent trial strategy for counsel to advise petitioner to
wave confrontational rights for his accuser, because the accuser's where-

(Continued Facts.)                                          (Page 5)

abouts were unknown to the prosecutor, and remain so for at least 6 months.
Had petitioner not waved his rights, prosecutor would have been compelled
to dismiss charges after a reasonable amount of time.

(10) Trial counsel was ineffective when he faild to address/object to
prosecutor's usage of Grand Jury  inditment; (1) it faild to meet the sta-
ndard for probable cause,(2) it was granted without oral testimony from
the accuser: whom never showed up for the Grand Jury.

(11)  It was ineffective assistance, incompetent trial strategy and, pre-
judicial for counsel not to argue insufficient evidence or, include in his
closing statements to the jury; in light of the motions he had f/a/i/l/d/ filed.
On 25 July 2000, trial counsel filed a Motion for Directed Verdict of
Acquittal for all allegations.(Motion-pursuant to 1118.1.)

On February 2,2001, he filed a Motion for retrial on the grounds of insu-
fficent evdiance. In both Motions, he a/r/u/g/s/  argued strongly that the
evidence to support receiving stolen property was insufficient. He adduced
this issue twice to the Court but, not once to the jury! He purposely faild
to render a deffense for receiving stolen property/address the absent of
theft or, any of the valid points he made in each motion (regarding stolen
property.), to the jury in his closing statements. He literally, allowed
the jury to make their own assumptions based on the prosecutor's circum-
stantial evidence and, conjectured-highly spectulated theory.

              SEE AMENDING PAGE FOR ADDUCIBLE INTRODUCTION
              OF FACTS SUPPORTING INSUFFICENT EVIDENCE.

(continuation of error.)                                    (Page 6)

Trial counsel should have included insufficent evidence
in his grounds for appeal; as in both motions.

### ADDUCING FACTS, PURSUANT TO COUNSEL'S ERROR'S.

INTRODUCTION.

It is petitioner claim that each element of receiving stolen property has
not been established by competent evidence nor, independent of his addmi-
ssion, but rather by conjecture and spectulation mended with circumstan-
tial evidence. To support claim, petitioner logically focuses on all evi-
dence adduced at trial concerning this allegation, that should not only
have established facts to sustain thus conviction, but also proved every
essential element of the crime. In addressing the elements of this, petit-
ioner follows the same guidelines given to his jury. It is through this
scope he illustrates his claim and supporting facts.

(1) No evidence adduced at trial pinpoints petitioner receing or, posse-
ssing alleged stolen property. (2) However, the trial records does show
the attempts and, failure, to prove the elements of receiving stolen
property. Petitioner hereby directs the attention to an illustration of
such reflection.

Petitioner's sister, Selena Jimenez, testified at trial that she ꭗꭗ
gave the police some jewelry that she received from petitioner.
(Exhibit #38,people's.RT.P-272.) Here, the prosecutor is suggesting the
jewelry belongs to the victim.(Joyce Ruger.) The prosecutor asked the
witness a question regarding another piece of jewelry. Question: "okay.
Now what about people's #39? Where did that come from?" Answer: "I have
never seen this." (RT.P273.) (No one ever gave testimony to the idenity
of exhibit #38.)

(Continued Facts.)                                            (Page 7)

In the testimony of Christina Palma, (RT.P-326.) at trial the prosecutor brought forth this witness to identify the victims property, and to establish the element of theft. The prosecutor showed this witness three yellow chains, marked as people's exhibit #38. The ending question was of the following: "but you can't say for sure that they were her's?"(Refering to the victim.) Answer: "yes."

Christina Palma, could not identify exhibit #38 as property of the victim. As for exhibit #39, it was never mentioned again.

In the midst of each of these witnesses testimony, the prosecutor ~~established~~ extracted information of a pendant. Ms.Palma, described a pendant that belong to the Joyce Ruger. Ms.Jimenez, gave a similar description of a pendant that she claimed to have seen petitioner with. With these combined testimonies, the prosecutor insinuates to the jury that petitioner possessed property that belong to the victim.(Ms.Ruger.) However, there is no record of a pendant ever being submitted or, obtained as evidence for identification. Hence, the prosecutor's insinuation is without the legal support necessery to complete the element of possession in receiving stolen property.

At petitioners trial, in the testimony of Theresa Yee Ting, the prosecutor attempts to establish dominion or control of alleged stolen credit cards. (Id.RT.P-294.) He asked the following question: did either one of them seem to be in charge of what was going on? Answer: no, I don't recall that.

In regards to the testimony of Charrisse Wells, the prosecutor's witness. Ms.Wells made a deal with the prosecutor out-side of petitioners trial. (Id.RT.P-136.) The deal consisted of excluding her from the responsibility of her crimes surrounding petitioners case, in exchange that she give testimony that would include petitioner in her own crimes. However, at trial Ms.Wells elected to reject the prosecutors deal, by refusing to testify.

(Continued Facts.)                              (Page 8)

She then pled the Fifth Amendment, in fear that she would incriminate herself
without the prosecutors deal to protect her. The prosecutor then submitted a
petition of immunity, hereby forcing her to testify through the order of the
court.(Id.RT.P-137.) After being assured by the prosecutor that nothing she
said in court would ever be used against her, Ms.Wells then proceeded to take
full responsibility for her criminal activities surrounding petitioners case.
Ms.Wells admitted to placing the blame on petitioner to take the heat off
herself.(Id.RT.P-220.) Throughout her testimony, she confirmed petitioners
innocence of the alleged crime of receiving stolen property. The prosecutor
acknowledged through his own statement, that Ms.Wells was the only one seen
in possession and usage of alleged stolen credit cards.(Id.RT.P-228.) The
prosecutor brought forth this witness not by force, but by his own willful
choice with hopes of extracting testimony that would implicate petitioner in
alleged crimes, discriminate his character and incriminate him in the alleged
crime of receiving stolen property; to no avail.

In regards to petitioners statement made outside of his trial, where he gave
an asumption to the nature of the property he claimed to have found, the
prosecutor moves to turn this asumption into an established fact.
In doing so, he presented to the jury a two-way theory that composed two
reasonable interpretation, and two reflections of the matter.

(Continued Facts.)                                    (Page 9)

From here, petitioner shines a brighter light on the facts, through a finer scope of the matter. Starting with petitioners concept of a two-way theory, presented by the prosecutor, and the existing inconsistent facts with the theory. The prosecutor draws the first fact to his theory from two pieces of circumstantial evidence: Ms. Wells and petitioners statement made outside of trial. His theory reflects the two statements corroberating, hence establishing a fact that is consistent with the theory, and closing the door to any other rational conclusion.

Then the prosecutor uses the same theory to draw his second fact from one of the two pieces of circumstances, the petitioners statement. Combined with circumstantial evidence, he establishs that petitioners statement is false. In doing so, his theory then begins to interpretate specific reasonable plausibilities, such as: petitioner did not find the property in the manner he stated, and, if he did in fact ever possess any property at all, then it was obtained in another manner. This is where the prosecutor re-opens the door to his own theory, and allows inconsistency to enter. He logically attempts to establish guilt to other crimes, by proving petitioners statement is false. Hereby introducing, a rational conclusion that is inconsistent with his own theory. However, since the prosecutor could not adduce sufficent evidence to establish that petitioner was guilty of other alledged crimes, in collaboration with petitioners proven false statement, he again attempts to close the door to his theory and displayed rational conclusion; then he simply urges the jury to find petitioner guilty of receiving stolen property, based on his own statement out side of trial.

(Continued Facts.)                              (Page 16)

The final and most important fact that in itself, reflects the insufficiency

of evidence is the absent of essential facts; from whom, where, or how was

such property allegenly received or, obtained. Moreover, every theft case

includes the elements necessarily of somebody testifying that the property

is stolen, either the victim, or someone who knows that that was the victims

property. The prosecutor did not produce such evidence. Nobody was able to

testify to facts showing that such property was taken away from Joyce Ruger

without her consent. No one stated that such property was not given to some-

body or that there was not permission to hold or use the property. There is no

substantial evidence shown that any property was received, conceald or with-

eld by petitioner. The prosecutor offers presence and access to alleged stol-

en property as a sufficient basis for establishing possession, rather then

dominion or control, which are essential of possession.


(Conclusion of Facts.)

The prosecutors case against petitioner is so circumstancially speculated,

that he is compelled to take leaps into assumptions that are not bridged

with competent evidence. Leaps, over the petitioners constitutional right to

presumption of innocence, without sufficient evidence of proof reflecting

guilt to every existing element of receiving stolen property. Without such

evidence, the petitioners conviction can not stand.



For the forgoing reasons, petitioner ask's for a retrial.

8. Did you appeal from the conviction, sentence, or commitment?  [X] Yes.  [ ] No.    If yes, give the following information:
   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
      Court of Appeal.

   b. Result:  Appeal denied.                          c. Date of decision:  3 Jan 2003

   d. Case number or citation of opinion, if known: _____

   e. Issues raised:  (1)  Vindictive prosecution.

         (2) _____

         (3) _____

   f. Were you represented by counsel on appeal?  [X] Yes.  [ ] No.  If yes, state the attorney's name and address, if known:

      William D. Farber.

9. Did you seek review in the California Supreme Court?  [X] Yes.  [ ] No.   If yes, give the following information:

   a. Result:  Review denied.                          b. Date of decision:  9 April 2003

   c. Case number or citation of opinion, if known: _____

   d. Issues raised:  (1)  Vindictive prosecution.

         (2) _____

         (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal,
    explain why the claim was not made on appeal:

    Ineffective assistance by appellate counsel.
    _____

11. Administrative Review:
    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust
       administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975)
       52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such
       review:

    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____

    b. Did you seek the highest level of administrative review available?  [ ] Yes.  [ ] No.
       *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

         (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

         (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

        Petitioner needed time to research claimed grounds.

_____

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 6-7-2004
     5-7-2004

▶ _Troy Hayler_
            (SIGNATURE OF PETITIONER)

# VERIFICATION

STATE OF CALIFORNIA
COUNTY OF IMPERIAL
_____

(C.C.P. SEC. 446 & 2015.5; 28 U.S.C. 1746)

I, _Troy Hayles_____ DECLARE UNDER PENALTY OF PERJURY THAT:
I AM THE _____ IN THE ABOVE ENTITLED ACTION. I HAVE
READ THE FOREGOING DOCUMENTS AND KNOW THE CONTENTS THEREOF AND
THE SAME IS TRUE OF MY OWN KNOWLEDGE, EXCEPT AS TO MATTERS STATED
THEREIN UPON INFORMATION, AND BELIEF, AND AS TO THOSE MATTERS, I
BELIEVE THEM TO BE TRUE.

EXECUTED THIS _____7_____ DAY OF _June_____ 2004,
AT CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002

(SIGNATURE) _Troy Hayles_____
(DECLARANT/PRISONER)
_____

## PROOF OF SERVICE BY MAIL

(C.C.P. SEC. 1013 (a) & 2015.5; 28 U.S.C. SEC. 1746)

I _____ AM A RESIDENT OF CALIPATRIA STATE
PRISON, IN THE COUNTY OF IMPERIAL, STATE OF CALIFORNIA. I AM OVER THE AGE OF
EIGHTEEN (18) YEARS OF AGE AND AM / AM NOT A PARTY OF THE ABOVE INTITLED
ACTION. MY STATE PRISON ADDRESS IS P.O. BOX 5002, CALIPATRIA, CALIFORNIA
92233-5002.

ON ____7-June_____, 2004 IS SERVED THE FOREGOING.
_____

(SET FORTH EXACT TITLE OF DOCUMENTS SERVED)
ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY(S) THEREOF, ENCLOSED IN A
SEALED ENVELOPE(S), WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES
MAIL, IN A DEPOSIT BOX SO PROVIDED AT CALIPATRIA STATE PRISON, CALIPATRIA,
CALIFORNIA, 92233-5002.

_Petition - Habeas corpus._

_To: First Appellate District, Div-4_

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED,
AND THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING
AND THE PLACE SO ADDRESSED, I DECLARE UNDER PENALTY OF PERJURY THAT THE
FOREGOING IS TRUE AND CORRECT.

DATE: _7-June_____, 2004

_Troy Hayles_____
(DECLARANT/PRISONER)

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE CITY AND COUNTY OF SAN FRANCISCO

Department No. 22

FILED
San Francisco County Superior Court

JAN 2 3 2004

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

IN THE MATTER OF THE APPLICATION )
OF )
)                    WRIT NO. 4810
___ )
)                    SUPERIOR COURT NO. 177096
**TROY HAYLES,** )
)
Petitioner, )
)
FOR A WRIT OF **HABEAS CORPUS** )
)

A petition for habeas corpus has been received.

Petitioner was convicted in a jury trial in the Superior
Court, San Francisco County, of receiving stolen property. He was
sentenced under Three Strikes Law to state prison for a term of 25
years to life. Petitioner appealed, and the Court of Appeal, First
District, affirmed the judgment of conviction on January 30, 2003.

Petitioner complains he is unlawfully detained because the
prosecution failed to prove all the elements of receiving stolen
property at trial, and because he received ineffective assistance
of trial and appellate counsel. He requests a new trial.

As to his first claim, the issue of insufficiency of the
evidence to support a conviction is not cognizable in and of itself
in a habeas corpus proceeding. (In re Spears (1984) 157 Cal.App.3d
157; In re Lindley (1947) 29 Cal.2d 709, 723.)

As to Petitioner's claims of ineffective assistance of trial
and appellate counsel, Petitioner does not provide a copy of the
trial transcript, the appellate brief filed on his behalf, or the
entire unpublished decision of the Court of Appeal. Petitioner has
the burden of providing documentary evidence to support his claim.
Without these documents a decision regarding the ineffective
assistance of his trial and appellate counsel is impossible. A
petition for writ of habeas corpus should both (1) state fully and
with particularity the facts upon which relief is sought, and (2)
include copies of reasonably available documentary evidence
supporting the claim, including affidavits or declarations.
(People v. Duvall (1995) 9 Cal.4th 464, 474.) "Conclusory
allegations made without any explanation of the basis for the
allegations do not warrant relief, let alone an evidentiary
hearing." (Ibid., quoting People v. Karis (1988) 46 Cal.3d 612,
656.)

1

For the foregoing reason(s), Petitioner's writ of habeas corpus is DENIED.

Dated: __January 23, 2004__    _____
Judge of the Superior Court

2

Court of Appeal, First Appellate District, Division Four - No. A094429
**S114068**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

TROY HAYLES, Defendant and Appellant.

Petition for review DENIED.

SUPREME COURT
F I L E D

APR - 9 2003

Frederick K. Ohlrich Clerk

DEPUTY

Chief Justice

# TOPICAL INDEX

|  | Page |
|---|---|
| TABLE OF CASES | ii |
| TABLE OF STATUTES | iv |
| STATEMENT OF THE CASE | 1 |
| STATEMENT OF APPEALABILITY | 3 |
| USE OF HEADINGS | 3 |
| STATEMENT OF FACTS | 4 |
|     A. Prosecution Case | 4 |
|     B. Defense Case | 10 |
| ASSIGNMENT OF ERROR | 12 |
| I. THE ACTION OF THE PEOPLE IN PURSUING A THREE-STRIKES CASE AGAINST APPELLANT AFTER HE HAD BEEN CONVICTED OF A NONVIOLENT FELONY, CONTRARY TO THE PEOPLE'S POLICY IN ALL OTHER CASES INVOLVING CURRENT NONVIOLENT FELONIES, CREATED A PRESUMPTION OF VINDICTIVE PROSECUTION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 15 OF THE CALIFORNIA CONSTITUTION | 12 |
|     A. Factual and Procedural Background | 12 |
|     B. The Refusal to Dismiss Prior Strikes Allegations Following Appellant's Conviction of a Nonviolent Felony Created a Presumption of Vindictiveness | 15 |
|     C. Standard of Review | 18 |
|     D. The People Failed to Rebut the Presumption of Vindictiveness | 19 |
| CONCLUSION | 25 |
| PROOF OF SERVICE | 26 |

# TABLE OF CASES

Page

*Barajas v. Superior Court*
 (1983) 149 Cal.App.3d 30            23

*Blackledge v. Perry*
 (1974) 417 U.S. 21          15, 16, 17, 20

*Bordenkircher v. Hayes*
 (1978) 434 U.S. 357           16

*Colton v. Kentucky*
 (1972) 407 U.S. 104          18, 19

*In re Bower* ← (Rebut)
 (1985) 38 Cal.3d 865          Passim

*In re David B.*
 (1977) 68 Cal.App.3d 931         16, 17

*North Carolina v. Pearce*
 (1969) 395 U.S. 711         15, 18, 20

*People v. Cromer*
 (2001) 24 Cal.4th 889          19

*People v. Superior Court (Romero)*
 (1994) 13 Cal.4th 497          2

*Twiggs v. Superior Court*
 (1983) 34 Cal.3d 360         17, 20, 22

*United States v. Burt*
 (9th Cir. 1980) 619 F.2d 831        20

*United States v. Goodwin*
 (1982) 457 U.S. 368          16

*United States v. Griffin*
 (9th Cir. 1980) 617 F.2d 1342       20

*United States v. Jackson*
 (1968) 390 U.S. 570          15

TABLE OF CASES (CONTINUED)

Page

*United v. Preciado-Gomez*
    (9th Cir. 1976) 529 F.2d 935                              21, 22

*United States v. Ruesga-Martinez*
    (9th Cir. 1976) 534 F.2d 1367                                20

# TABLE OF STATUTES

| | Page |
|---|---|
| **United States Constitution** | |
| Fourteenth Amendment | 2, 12, 24 |
| **California Constitution** | |
| Article I, section 15 | 12, 24 |
| **Penal Code** | |
| Section 187 | 1 |
| Section 190.2, subd. (a)(17)(A) | 1 |
| Section 190.2, subd. (a)(17)(G) | 1 |
| Section 212.5, subd. (a) | 2 |
| Section 451, subd. (b) | 2 |
| Section 459.1 | 2 |
| Section 496, subd. (a) | Passim |
| Section 667, subd. (a)(1) | 1 |
| Section 667, subd. (d) | 1, 25 |
| Section 667, subd. (e) | 1, 25 |
| Section 1170.12, subd. (b) | 1, 25 |
| Section 1170.12, subd. (c) | 1, 25 |
| Section 1202.4 | 2 |
| Section 1202.45 | 2 |
| Section 1237 | 3 |
| **Cal Rules of Court** | |
| Rule 15(a) | 6 |

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT, DIVISION FOUR

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br>    Plaintiff and Respondent,<br><br>        vs.<br><br>TROY HAYLES,<br>    Defendant and Appellant. | A094429 |

## STATEMENT OF THE CASE

By amended information filed January 5, 2000, Troy Hayles, hereafter appellant, was charged with first degree murder (Pen. Code section 187) (count 1) and two special circumstances -- robbery-murder (Pen. Code section 190.2, subd. (a)(17)(A)) and burglary-murder (Pen. Code section 190.2, subd. (a)(17)(G)). The information also charged appellant with robbery in an inhabited dwelling (Pen. Code section 212.5, subd. (a)) (count 2), burglary of an inhabited dwelling (Pen. Code section 459.1) (count 3), arson of an inhabited structure (Pen. Code section 451, subd. (b)) (count 4), and receiving stolen property (Pen. Code section 496, subd. (a)) (count 5). The information alleged four prior serious felony convictions or juvenile adjudications within the meaning of the Three Strikes law (Pen. Code sections 1170.12, subds. (b) and (c) and section 667, subds. (d) and (e)) and three prior serious convictions within the meaning of Penal Code section 667, subdivision (a)(1). (CT 161-164.)

Trial by jury commenced July 11, 2000. (CT 208.) On August 2, 2000, the jury returned verdicts finding appellant guilty on count 5 of receiving stolen property in

1

violation of Penal Code section 496, subdivision (a). (CT 326, 333.) The jury acquitted appellant on all other counts. (CT 326, 328-332.) Following trial to the jury of the alleged prior felony convictions, the jury found three prior serious felony convictions or juvenile adjudications to be true. (CT 327.)

On February 2, 2001, appellant moved to strike the prior serious felony convictions or juvenile adjudications on grounds of prosecutorial vindictiveness in violation of due process and equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and California constitutional counterparts. (CT 368.) Appellant also moved for a new trial for insufficiency of the evidence. (CT 376-379.) Appellant's new trial motion was denied on the same date. (CT 380.)

Following evidentiary proceedings on February 23, 2001, the trial court denied appellant's motion to strike the prior serious felony convictions or juvenile adjudications and declined to exercise discretion, as additionally urged by appellant, by striking the prior serious felony juvenile adjudications pursuant to *People v. Superior Court (Romero)* (1994) 13 Cal.4th 497. (CT 380.)

The court sentenced appellant on count 1 (receiving stolen property in violation of Pen. Code section 496, subd. (a)) to 25-years-to-life imprisonment pursuant to the three-strikes law (Pen. Code section 1170.12). (CT 381.) The court imposed a restitution fine in the amount of $200 pursuant to Penal Code section 1202.4 and imposed, but suspended, a parole revocation fine in an equal amount pursuant to Penal Code section 1202.45. (CT 381, 383-384.)

## STATEMENT OF APPEALABILITY

Appellant filed a timely notice of appeal from the judgment and sentence on February 26, 2001. (CT 385-387-301.) This appeal is from a final judgment following a trial by jury and is thus authorized by Penal Code section 1237.


## USE OF HEADINGS

Pursuant to California Rules of Court, rule 15(a), the headings used in this brief are not intended to be construed as "technical 'assignments of error,'" but rather, as specified in Rule 15(a), "are generally descriptive of the subject matter covered" under each such heading.

## STATEMENT OF FACTS

### A. Prosecution Case

On the morning of August 16, 1998, Joyce Ruger, an elderly woman, was found murdered in her home at 719 Webster Street in San Francisco. Ruger had been bound and her home set on fire. (RT 52-62, 89-95, 336.) She died from asphyxiation. (RT 91, 96.)

On the night of August 15, 1998, Christina Palma, Joyce Ruger's granddaughter, visited her grandmother between 7:00 and 7:30 p.m. (RT 308-309.) Palma overhead a telephone conversation between her grandmother and a person whom she addressed as "Troy." (RT 318.) Palma heard her grandmother say, "No, Troy, I don't have any money. I haven't had a dime on me for weeks." (RT 318.) Ruger ended the conversation, telling "Troy" that her granddaughter was visiting at the time, that she was pleased to hear about his job, and that she would talk to him later. (RT 318-319.) Palma and her husband returned to Ruger's home between 10:00 and 11:30 p.m. to pick up their daughter for whom Ruger had been baby-sitting. (RT 321.)

Palma had previously been aware that her grandmother was acquainted with a person named "Troy." (RT 319.) Ruger had spoken of "Troy" in Palma's presence on many occasions. Palma, however, had never met "Troy." (RT 320.)

Palma frequently saw and traveled with her grandmother. She was aware of her possessions, including both valuable and inexpensive items of jewelry that her grandmother owned. (RT 310.) The jewelry was kept in a jewelry box in Ruger's bedroom. (RT 332-333.) Palma was aware that her grandmother, among other items, owned a gold pendant, worn as a necklace, with a lion's head and diamonds in the mouth and eyes. (RT 310, 316.) At trial, Palma identified various items of jewelry, including

4

gold rings, necklaces, and bracelets, owned and worn by her grandmother prior to her death. (RT 311-313.)

Palma was notified of her grandmother's death by Michael Phalen at approximately 9:00 a.m. on the morning of August 16. (RT 321.) She went to her grandmother's home; firefighters and police were still at the residence. (RT 321-322.)

Dennis Setlock, a neighbor and trustee of Ruger's living trust and estate, inventoried Ruger's home and property after her death. Christina Palma accompanied Setlock on these occasions. (RT 323-324.) Most of Ruger's jewelry, including the gold lion's head with diamonds and colored stones, was missing from her home and could not be found. (RT 99-104, 324.)

Ruger's credit card bills, sent to Setlock after her death, revealed American Express credit card purchases made on August 16 after the time of Ruger's death. (RT 104-105.) Setlock notified the police that it appeared that Ruger's credit card had been used after her death. (RT 105.)

Palma subsequently was shown by police, and she identified, various items of jewelry owned by her grandmother, including an antique watch (People's Exhibit 36-B), costume jewelry (Exhibits 36-D), and various items that could have belonged to her grandmother (People's Exhibit 38).[1]/ (RT 325-326.)

Father Michael Phalen had been Ruger's close friend and neighbor for over three years. (RT 126-128.) He was familiar with jewelry that Ruger customarily wore. (RT 128.) While working at Ruger's apartment building prior to her death, Phelan was introduced to appellant by Ruger. (RT 129.) At the time, Ruger was giving appellant a

---

[1]/ People's and defense exhibits were admitted into evidence at the conclusion of trial. (RT 700.)

tour of her apartment and showing him her art collection and other objects that she kept in the apartment. (RT 130-131.)

Charrisse Wells testified pursuant to a grant of testimonial immunity. (RT 135, 138.) Wells, who lived in San Francisco, was appellant's first cousin. (RT 140.) On the morning of August 16, 1998, appellant came to Wells' house. While appellant was at Wells' house, she was telephoned by a couple of acquaintances whose names she did not know. (RT 142, 144-145.) The acquaintances told her about some credit cards and loot from a robbery. Wells drove appellant drove to a telephone booth on Buchanan and Hayes where they retrieved a bag containing credit cards, costume jewelry, and other items. (RT 150-151.)

Wells and appellant then drove to San Bruno where they used an American Express card in Joyce Ruger's name to purchase gas at 8:43 a.m. at a gas station on El Camino Real (RT 368-370), a meal at 9:24 a.m. at an IHOP restaurant in San Bruno (RT 287-288), clothing and other items at 10:03 a.m. at a Target store (RT 299-301, 337), various items of clothing and shoes at 10:32 a.m. at a Big 5 Sporting Goods store (RT 291), and three separate purchases between 10:57 a.m. and 11:21 a.m. at J.C. Penney totaling $588.79, all at the Tanforan Mall. (RT 152-165, 434-436.) Appellant never mentioned to Wells that he knew Joyce Ruger. (RT 1612.) Wells signed all of the credit card receipts at the time the purchases were made. (RT 188-190.)

Appellant was photographed by a security camera standing next to and behind Wells at the register at the Target store at 10:03 a.m. on August 16. (RT 185-186.)

Proceeding to Walgreens on San Bruno Avenue, Wells and appellant again attempted to use Joyce Ruger's American Express card, but the transaction was rejected.

6

(RT 177, 293-295.)  Wells and appellant left the credit card in the store when the transaction was rejected. (RT 179.)

Wells subsequently pawned and then sold an 18 karat yellow gold bracelet with 12 diamonds at the Pacific Loan Company in San Francisco on August 19, 1998.  On August 18 and 24, 1998, Wells pawned a gold bracelet and another item of jewelry at Best Collateral on Mission Street in San Francisco.  (RT 194-195, 302, 307, 344-347.)  Wells testified at trial that she found the jewelry she pawned in the bag with Joyce Ruger's credit card. (RT 193-194.)

On September 21, 1998, Wells gave a videotaped statement to police; that statement differed substantially from her testimony at trial. (RT 196-197, 338-339.)  The videotaped statement (People's Exhibit 37) was admitted into evidence and played for the jury. (RT 197, 337.)  A transcript of the tape (People's Exhibit 37-A) was provided to the jury. (RT 198-199.)  At trial, Well said she lied in her statement to police, wrongly blaming everything on appellant. (RT 143, 219.)

In her September 21 videotaped statement to police, Wells said that appellant called her early on the morning of August 16, 1998.  He told Wells to pick him up. (RT 220.)  When she met appellant, he told her that he had just broken up with his girlfriend. Appellant said that his girlfriend tore up his stuff; he took from his girlfriend jewelry that he had purchased for her and credit cards that belonged to both of them. (RT 220, 340-341.)  Wells and appellant then went shopping, using a credit card that appellant said he got from his girlfriend.  After shopping, Wells dropped appellant off at a BART station. (RT 220-221.)

After giving the September 21 statement, Wells accompanied police officers to

7

various pawnshops at which she pawned items given to her by appellant that belonged to

Joyce Ruger. (RT 341.) Among the items pawned and recovered was a gold bracelet with

floating diamonds, a belt buckle, and antique watch. (RT 341-342.)

On October 6, 1998, Wells spoke with San Francisco Police Inspector Gordon and

reaffirmed her statement of September 21, 1998. (RT 224-225, 341.) At trial, Wells also

testified that she lied in her October 6, 1998 conversation to Inspector Gordon. (RT 225.)

Wanda Martinez testified pursuant to a grant of testimonial immunity. (RT 211-

213, 230.) Martinez met appellant in Richmond in August or September 1998. She

cashed two checks for appellant that did not belong to him. (RT 232.) The checks were

not in Ruger's name. (RT 242.) Appellant told Martinez that he was staying in Richmond

because he had gotten into some trouble with someone in San Francisco; he said someone

got hurt, and he did not intend to be caught alive. (RT 232, 234-238, 247.) Appellant also

told Martinez that the trouble was gang-related and that there had been a shooting or

stabbing. (RT 242.)

Appellant's father, Donald Hamilton, testified pursuant to a grant of testimonial

immunity. (RT 370-371.) On December 16, 1999, Hamilton was interviewed by police

about a conversation he had with appellant after his arrest. Hamilton's interview was

videotaped and subsequently admitted into evidence and played for the jury at trial. (RT

412.) At trial, Hamilton denied the truth of his videotaped statement. (RT 378.) Hamilton

spoke with the police solely in order to see appellant who was then in jail. (RT 378-380.)

He was nervous and had been drinking. (RT 380-381, 389.)

In his videotaped statement, Hamilton reported that appellant told him that he had

met and visited an elderly white lady about 70 years old who lived near Hayes and

Fillmore in San Francisco. (RT 374-376.) Appellant said that he was the only guy she

ever let into her home. (RT 377.) Appellant told his father that he had gotten himself in

some "shit" that he could not get out of; he said he did not "intend for it to happen like

that." (RT 378.) Appellant also told his father that he was there when the lady was killed

and that they were trying to rob her. (RT 384, 386-387.)

Selena L. Jimenez was appellant's sister. (RT 253.) Appellant came to live with

her in Richmond on a Sunday in August 1998. Appellant came from San Francisco on

BART. (RT 255, 279.) Wanda Martinez lived with Selena's neighbors in an upstairs

duplex. (RT 261.) Appellant arrived with a backpack. Later, Selena saw some jewelry in

appellant's backpack. Appellant showed Selena a lion's head pendant with diamonds and

colored stones, an opal necklace, a garnet necklace, and a ring with reversible stones. (RT

256, 258-261, 266, 282-283.) Appellant told Selena that he bought the pendant on the

street in Hunter's Point. (RT 259-260.)

Appellant asked Selena if she knew anyone who would buy the jewelry; Selena

referred him to some nearby pawnshops. (RT 263, 282.) The next day, appellant told

Selena he pawned the lion's head for $250. (RT 265.) Selena purchased a small chain

from appellant for $25. (RT 269-2170.)

Appellant lived in Selena's house for about two months until October 5, 1998. (RT

264.) Learning that appellant might be in some kind of trouble and that the police were

looking for him, she asked appellant to leave. (RT 273-274.) After appellant's arrest, the

police retrieved a small box that appellant had given to Selena's daughter. (RT 270.)

Selena gave police three chains, including a garnet necklace and another with an opal, that

appellant had given to Selena's daughter or had left in Selena's house. These items were

introduced into evidence as People's Exhibit 38. (RT 272.)

### B. Defense Case

At approximately 6:45 a.m. on August 16, 1998, Gail Jackson was driving along the 700 block of Webster Street on her way to work. She observed a statue (identical to that portrayed in People's Exhibit 1) at the top of the stairs and a suspicious-looking Black man, carrying a bag, coming down the stairs of one of the houses on that block. (RT 464-465, 476-477, 480.) The man looked back over his shoulder several times. (RT 476.)

In a statement to police, Jackson described the man as a light-skinned Black man, 25 to 30 years old, husky, muscled, with a pot belly, and light-brown or sandy-colored, receding hair. (RT 467-473, 475.) She identified a photograph of MoJo Dumetz as very similar to the man she observed on August 16. (RT 483.) At trial, Jackson testified that appellant's skin color was darker than the man she observed on August 16, 1998. She testified that the man was much heavier in appearance than appellant. (RT 483.)

Kendra Bell Rodriguez had been acquainted with MoJo Dumetz for 15 years. (RT 485.) She lived at Webster and Buchanan in San Francisco. (RT 509.) In August 1998, Dumetz wore his hair short; the color of his hair had been dyed blond or red. (RT 486.) On one occasion, Dumetz told Rodriguez that he liked to strangle people because it did not leave fingerprints. (RT 487.)

In a statement to police, Rodriguez reported that in the early morning hours of August 16, 1998, she saw Dumetz coming out of an alley that might have led to Joyce Ruger's house; at the time, Dumetz was carrying some stuff. (RT 492-493, 559.) She indicated in her statement to police that she found it funny to see Dumetz's "fat ass moving so fast." (RT 494.) She told police that Dumetz was carrying a big bag of

10

jewelry. (RT 513.) She also said that she saw appellant who appeared to be under the influence of crack cocaine about 10 minutes after she saw Dumetz. Appellant was not with Dumetz; appellant was a couple of blocks away from where she had seen Dumetz. (RT 499, 560-561.) She also told police that Dumetz was a strangler, liked to strangle people, and had tried to kill her. (RT 557.) At trial, Rodriguez said she was lying in her statement to police. (RT 499.)

Police Inspector Curtis Cashen testified that none Joyce Ruger's expensive jewelry had been recovered. (RT 531.) Inspector Cashen testified that a composite drawing based on information provided by Gail Jackson matched the appearance of MoJo Dumetz. (RT 533.) Cashen testified that Jackson positively identified a photograph of Dumetz and stated he looked most like the subject that she observed on August 16, 1998 running down the stairs of 719 Webster Street. (RT 534-536.)

Inspector Cashen's investigation revealed that Dumetz had a relative who lived at 709 Webster Street on August 16, 1998. (RT 540.) In Cashen's opinion, the 700 block of Webster Street was notorious for the sale or use of crack cocaine. (RT 541.) Early in his investigation, Inspector Cashen focused on MoJo Dumetz as a suspect in Joyce Ruger's murder. (RT 545.) Cashen acknowledged preparing and circulating a police bulletin on March 16, 1999, or six months after appellant was arrested, stating that suspects in Ruger's murder were unknown at that time. (RT 554-555.)

Mojo Dumetz testified under subpoena. (RT 585.) In August 1998, Dumetz's hair was dyed blond. (RT 586.) Dumetz had relative who lived at 709 Webster Street. (RT 586, 588.) In response to virtually all other questions, Dumetz asserted his Fifth Amendment privilege against self-incrimination and refused to testify. (RT 592.)

11

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | ANN P. WATHEN, State Bar No. 189314
Deputy Attorney General
6 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
7 | Telephone:  (415) 703-5972
Fax:  (415) 703-1234
8 | Email:  Ann.Wathen@doj.ca.gov

9 | Attorneys for Respondent

10

IN THE UNITED STATES DISTRICT COURT

11

FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO DIVISION

13

14 | **TROY HAYLES,**

C 06-6909 MJJ (PR)

15 | Petitioner,

**EXHIBITS**

16 | v.

17 | **ROSANN CAMBLE, Warden,**

18 | Respondent.

19

20

21

22

23

24 | # EXHIBIT 9 (PART 2 OF 2)

25

26

27

28

**EXHIBIT 9 (PART 2 OF 2)**

I

**THE ACTION OF THE PEOPLE IN PURSUING A THREE-STRIKES CASE AGAINST APPELLANT AFTER HE HAD BEEN CONVICTED OF A NONVIOLENT FELONY, CONTRARY TO THE PEOPLE'S POLICY IN ALL OTHER CASES INVOLVING CURRENT NONVIOLENT FELONIES, CREATED A PRESUMPTION OF VINDICTIVE PROSECUTION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 15 OF THE CALIFORNIA CONSTITUTION**

**A. Factual and Procedural Background**

Prior to sentencing, appellant moved to strike the prior serious felony convictions or juvenile adjudications. (CT 368.) In his motion, appellant asserted that for several years the District Attorney of the City and County of San Francisco consistently applied a policy in every case of declining to prosecute a current felony as a three-strikes case if the current felony were nonviolent. Appellant asserted that he was the only defendant during the administration of the current District Attorney to whom that policy had not been applied. The action of the People in pursuing a three-strikes prosecution following appellant's conviction of a nonviolent felony created the presumption of vindictive prosecution and violated appellant's rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. (CT 370-375.)

In support of his motion, appellant introduced the testimony Paul Cummins, an Assistant District Attorney for the City and County of San Francisco. (See RT (Feb. 2, 2001) 7.) Cummins testified that he was the Chief Assistant District Attorney and Chief of the District Attorney's Criminal Division. He was a members of the Three Strikes Committee; since 1994, all three strikes cases were reviewed and personally approved by the District Attorney. (RT (Feb. 2, 2001) 7-10, 19.)

12

Cummins testified that the policy of the District Attorney and his office since 1994 was not to prosecute current nonviolent felonies as three-strikes cases. (RT (Feb. 2, 2001) 10, 20, 28.) Cummins testified that the circumstances of the present case had never before occurred where the defendant, although charged with both current violent and nonviolent felonies, was eventually convicted of but a single nonviolent felony. (RT (Feb. 2, 2001) 35.) Cummins testified that this case was the only one of which he was aware in the last 6 or 7 years that deviated from the District Attorney's policy not to pursue three strikes in a case involving a current nonviolent felony.

Cummins testified that the intention of the District Attorney's office was to treat appellant's case as a three strikes case regardless of the jury's verdict in this case. (RT (Feb. 2, 2001) 17-18.) Cummins acknowledged that in all other cases the felony of which appellant was convicted would not be treated as a three strikes case; appellant's case was the only exception to the District Attorney's general policy since 1994. (RT (Feb. 2, 2001) 11.) Cummins also testified that the District Attorney's office consistently dismissed or agreed to strike allegations of prior serious felony convictions in current section 496 cases even in cases where the prior felony convictions involved very serious felonies. (RT (Feb. 2, 2001) 12.) The strike allegations would either be dismissed or reduced to a single strike. (RT (Feb. 2, 2001) 15.)

Deputy District Attorney Gerald Norman testified that he was the prosecutor assigned to this case. (RT (Feb. 2, 2001) 38.) He took over this case approximately 6 weeks before trial. (RT (Feb. 2, 2001) 38.) Before and after trial, Norman was informed that regardless of the outcome of trial, the decision whether to proceed as a three-strikes case had to be reviewed by the District Attorney. (RT (Feb. 2, 2001) 40.) After the jury

convicted appellant solely of a nonviolent felony, he told defense counsel that despite the District Attorney's policy of not prosecuting such cases as a three-strikes case, he would have to discuss the matter with his supervisors. (RT (Feb. 2, 2001) 39.)

Norman personally met with the District Attorney after appellant's conviction to discuss this case. (RT (Feb. 2, 2001) 40-42.) At that meeting, the District Attorney expressed the view that appellant participated in the "totality of the crimes" -- obviously meaning those of which he had been acquitted -- and thus instructed Norman to "proceed with all strikes." (RT (Feb. 2, 2001) 47.)

Appellant's trial counsel testified that he and the original prosecutor assigned to the case discussed a disposition of the case; the prosecutor agreed to a non-strikes disposition if appellant would testify against MoJo Dumetz believed by the prosecutor to have been the actual killer. (RT (Feb. 2, 2001) 49.) The prosecutor told defense counsel that if appellant did not testify against Dumetz, the People were going to proceed with a three-strikes prosecution. Defense counsel strenuously objected at the time, asserting that the People were punishing appellant for going to trial. (RT (Feb. 2, 2001) 50.)

John Dwyer, a San Francisco prosecutor for approximately 30 years, testified that he was unaware of any current nonviolent felony that was prosecuted as a three-strikes case in San Francisco under the administration of the current District Attorney. (RT (Feb. 2, 2001) 58-59.)

The trial court considered the issue of vindictive prosecution solely from the perspective of whether the case initially had been properly charged as a three-strikes case. "I looked very carefully at the question of whether or not the case was properly charged as a three strikes case in the beginning. That is where the question of the vindictive

14

prosecution comes in, ... ." (RT (Feb. 23, 2001) 111; see also RT 115.) The trial court denied appellant's motion to strike the prior serious felony convictions or juvenile adjudications on grounds of vindictive prosecution at the conclusion of the evidentiary proceedings. (CT 380.)

### B. The Refusal to Dismiss Prior Strikes Allegations Following Appellant's Conviction of a Nonviolent Felony Created a Presumption of Vindictiveness

The constitutional protection against prosecutorial vindictiveness is based on the fundamental notion that it would be "patently unconstitutional" to "chill the assertion of constitutional rights by penalizing those who choose to exercise them." (*United States v. Jackson* (1968) 390 U.S. 570, 581.) In *North Carolina v. Pearce* (1969) 395 U.S. 711, the United States Supreme Court held that the due process clause of the United States Constitution protects a defendant from both actual vindictiveness and the *apprehension of retaliation* for exercising a fundamental constitutional right. (*Id.* at p. 669 [emphasis added].)

In *Blackledge v. Perry* (1974) 417 U.S. 21, the High Court held that due process required that a person convicted of an offense is entitled to pursue his right to a trial de novo without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration. (*Id.* at p. 28.) Although noting that due process is not offended by all possibilities of increased punishment, the Court found such a violation in *Perry* because the circumstances in that case presented a "realistic likelihood" of vindictiveness. (*Id.* at p. 27.) Significantly, the High Court recognized that the rationale underpinning a finding of vindictiveness is not grounded upon the proposition that actual retaliatory

motivation must inevitably exist. The Supreme Court emphasized in *Perry* that no evidence of bad faith or maliciousness on the part of the prosecutor was produced or required. "Due process of law requires that such a potential for vindictiveness must not enter" into the process. (*Ibid.*)

In later cases, a presumption of vindictiveness was held not to arise where charges were increased prior to the attachment of jeopardy. (See *Bordenkircher v. Hayes* (1978) 434 U.S. 357, 362.) In *United States v. Goodwin* (1982) 457 U.S. 368, the Supreme Court found prosecutorial vindictiveness inapplicable in the context of pre-jeopardy plea negotiations. The Court declined to apply a presumption of vindictiveness in such cases deeming the presumption to apply "only in cases in which a reasonable likelihood of vindictiveness exists." (*Id.* at p. 373.)

The California Supreme Court has also recognized a due process protection of a similar scope under the state constitution. Thus, the due process clause of the California Constitution has been interpreted to prohibit increased charges motivated by prosecutorial vindictiveness. (*In re Bower* (1985) 38 Cal.3d 865, 873.) In *Bower*, the Court discussed with approval *In re David B.* (1977) 68 Cal.App.3d 931 in which the due process guarantee was similarly held to preclude a prosecutor from seeking a hearing on a juvenile's fitness to stand trial as an adult after the minor successfully challenged the juvenile court hearings and orders. The appellate court found that the prosecutor clearly retaliated and thereby exposed the minor to a significantly increased potential period of incarceration. (*Id.* at p. 936.)

The Supreme Court on discussing *In re David B.* in *Bower* significantly observed that the Court of Appeal did not discuss whether there was any evidence of retaliation or

16

apprehension but noted, as had the United States Supreme Court, that the rationale underpinning the doctrine of prosecutorial vindictiveness "was not grounded upon the proposition that actual retaliatory motive must inevitably exist." (*In re Bower, supra*, 38 Cal.3d at p. 876, quoting *In re David B., supra*, 68 Cal.App.3d at p. 935.)

In *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, the defendant's first trial resulted in a mistrial. After the defendant declined a proffered plea bargain and invoked his right to a retrial, the prosecution amended the information to include prior felony convictions as sentence enhancements. These convictions did not constitute new information; the prosecution knew of the convictions before the first trial and showed no interest in them until after the retrial. The Supreme Court concluded that these were circumstances that plainly gave rise to a presumption of vindictiveness. (*Id.* at p. 372.) The presumption was applicable because the "prophylactic rule enunciated [by the United States Supreme Court] in *Perry* [was needed to] protect against both the possibility that defendant will be deterred from exercising a legal right, as well as the danger that the state might be retaliating against defendant for maintaining his innocence and facing a retrial." (*Id.* at pp. 369-370.) Significantly, the Supreme Court in *Twiggs* observed that no new facts had been developed through the preliminary hearing or trial. (*Id* at p. 373.)

In *In re Bower, supra*, the petitioner was charged with a more severe crime after he moved for a mistrial. As in the present case, jeopardy had attached. The prosecution offered no new facts but, as in *Twiggs*, relied upon facts available at the time of the first trial. The Supreme Court ruled that those circumstances presented a reasonable likelihood of vindictiveness and that the increase in the severity of charges gave rise to a presumption of vindictiveness which had not been rebutted by the prosecution It is

17

noteworthy that the Court also held that "[r]egardless of the actual motive of the individual prosecutor, a judicial process which permitted the prosecution to increase the charges against a defendant who successfully exercised a constitutional or procedural right at trial would have a chilling effect upon the assertion of those rights and could undermine the integrity of the entire proceedings." (*In re Bower, supra*, 38 Cal.3d at p. 878.)

In light of the above authority, and as more fully discussed in Subsections A and D, the action of the People in pursuing a three-strikes case against appellant after he elected to proceed to trial by jury, after he had been acquitted of all charges except a single nonviolent felony, and contrary to the People's consistently applied policy not to pursue a three-strikes prosecution in every other case involving a current nonviolent felony, created a presumption of vindictiveness in this case.

## C. Standard of Review

The issue of prosecutorial vindictiveness involves fundamental constitutional due process rights under the United States and California Constitutions. (*North Carolina v. Pearce, supra*, 395 U.S. at p. 725; *In re Bower, supra*, 38 Cal.3d at p. 876.) In *Pearce*, the United States Supreme Court suggested that de novo or an independent standard of review should apply in cases involving proseuctorial vindictiveness. In respect to reviewing the imposition of a more severe sentence on retrial, the High Court stressed that the reasons must affirmatively appear and must be based upon objective information. The Court also stressed that the factual data must be made part of the record "so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." (*Id.* at p. 2081.) The Court's language is fully consistent with de novo or independent review. The High Court also appeared independently to review the entire record in *Colton v. Kentucky*

(1972) 407 U.S. 104, 116, another case involving vindictiveness.

The California Supreme Court in *In re Bower, supra*, 38 Cal.3d at p. 877 independently reviewed the prosecutor's conduct and statements, finding that the circumstances in that case presented a reasonable likelihood of vindictiveness.

More recently, in an analogous situation involving a different mixed question of law and fact, the Supreme Court in *People v. Cromer* (2001) 24 Cal.4th 889 adopted the independent or de novo standard of review. The Supreme Court ruled that a trial court's due diligence determination -- a similar mixed question of law and fact -- was subject to independent, de novo review rather than the more deferential abuse of discretion test. Relying as well on United States Supreme Court analyses of the standard of review for mixed questions of law and fact, the Court held that due diligence was also a mixed question involving a fundamental constitutional right. The Court concluded that independent review fully comported with its usual practice for review of other mixed question determinations affecting constitutional rights. Here, of course, the legal question involves a fundamental due process right under the United States and California Constitutions. While a deferential standard of review applies to the trial court's pure factual findings, whether a presumption of vindictiveness arose and whether the People rebutted the presumption of vindictiveness are mixed question of law and fact, requiring application of an objective, constitutionally based legal test which, on appeal, should be de novo or independent review.

### D. The People Failed to Rebut the Presumption of Vindictiveness

The Supreme Court went into great detail in *In re Bower, supra,* as to the manner by which the prosecution may rebut the presumption of vindictiveness. First, the Court

noted that prior cases "sometime referred to the prosecutor's burden of rebutting the presumption with 'an explanation that adequately eliminates actual vindictiveness'" (*Twiggs*), or to the burden of proving that the increase in the severity of the charges did not result from any vindictive motive (*United States v. Burt* (9th Cir. 1980) 619 F.2d 831, 836), or to the need to show that the more severe charge was "justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness." (*United States v. Griffin* (9th Cir. 1980) 617 F.2d 1342, 1347.)

The Court stressed, however, that courts have "consistently refused to attempt to ascertain the subjective intent of the prosecutor." (*In re Bower, supra,* 38 Cal.3d at p. 878.) In *Blackledge v. Perry, supra,* 417 U.S. at p. 28, the United States Supreme Court emphasized that the rationale is not grounded upon the proposition that actual retaliatory motivation must inevitably exist.

In *United States v. Ruesga-Martinez* (9th Cir. 1976) 534 F.2d 1367, 1369, the Court of Appeals for the Ninth Circuit explained that its conclusion in that case that a significant possibility that prosecutorial discretion may have been exercised with a vindictive motive or purpose was not intended to impugn the actual motives of the prosecuting office. Emphasizing that both *North Carolina v. Pearce* and *Blackledge v. Perry* sought to reduce or eliminate the apprehension on the part of an accused that he may be subjected to retaliatory or vindictive punishment only for attempting to exercise his procedural rights, the Court in *Ruesga-Martinez* explained that "the mere *appearance* of vindictiveness is enough to place the burden on the prosecution." (*Id.* at p. 1369 [italics in original].)

The Supreme Court in *In re Bower* has held:

20

It is thus apparent that the presumption of unconstitutional vindictiveness is a legal presumption which arises when the prosecutor increases the criminal charge against a defendant under the circumstances which ... are deemed to present a "reasonable likelihood of vindictiveness." The presumption is not based on the subjective state of mind of the individual prosecutor and does not imply that he or she individually harbors an improper motive." (*In re Bower, supra*, 38 Cal.3d at p. 879.)

The Court in *Bower* further held that the legal presumption cannot be rebutted by the prosecutor's declaration that he or she was motivated by a reassessment of the evidence against the defendant rather than by any desire to punish the exercise of a protected right. In order to rebut the presumption of vindictiveness, the prosecution must demonstrate "that (1) the increase in charge was justified by some objective change in circumstances or in the state of the evidence which legitimately influenced the charging process and (2) that the new information could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge." (*In re Bower, supra*, 38 Cal.3d at p. 879.)

In *United v. Preciado-Gomez* (9th Cir. 1976) 529 F.2d 935, the defendant was charged in a two-count indictment with making an illegal reentry into the United States and with making a false representation of United States citizenship at the time of that reentry. A mistrial was declared after the jury could not reach a verdict. The government reindicted the defendant on four counts: the two counts previously charged plus two additional counts charging earlier similar violations. The government's explanation for the added charges was the defendant claimed at the first trial that he had been issued a resident citizen card in a different name on the date of the alleged earlier illegal entry, a defense that the government considered to be misleading. The government therefore

21

sought to prove that the earlier entry was also illegal. The Court of Appeals concluded that prosecutorial vindictiveness decisional law of the United States Supreme Court did not prevent such charging conduct that was "unknown to the prosecutor or unproved by competent evidence prior to [defendant's] arrest or original indictment." (*Id.* at p. 941.) The Court of Appeals reasoned that such circumstances eliminate any per se assumption of vindictiveness. (*Id.* at p. 940.)

Even if *Preciado-Gomez* is now "out-of-line" with current authority of the Ninth Circuit, as noted by the Supreme Court in *Twiggs* (34 Cal.3d at p. 372), the facts are certainly distinguishable from the situation of the present case. The facts developed in *Preciado-Gomez* were "unknown" to the prosecutor prior to the first trial. Thus, when the defendant asserted a misleading defense during trial, the prosecutor legitimately reconsidered the charges. As noted by the Supreme Court in *Twiggs v. Superior Court, supra*, 34 Cal.3d at p. 360, the "prosecution had a rare but legitimate reason" in *Preciado-Gomez* "for adding the new charges; to strengthen, in its view, its case against defendant on the original charges."

In the present case, no new facts were developed at trial to justify the deviation in this case from the consistently applied policy not to pursue three-strikes in cases involving current nonviolent felonies. Appellant elected a trial by jury. He was acquitted of all alleged violent felonies. Nevertheless, the People sought to increase appellant's punishment solely because the District Attorney -- despite the jury's verdict -- reassessed the case after the jury trial and deemed that appellant had been involved in the totality of the crimes despite his acquittals. The Supreme Court has explicitly rejected such a justification as offered by the People in this case. (See *In re Bower, supra*, 36 Cal.3d at p.

22

880, fn. 7.) The evidence of vindictiveness is apparent in the record.

The situation in the present case is somewhat akin to the circumstances in *Barajas v. Superior Court* (1983) 149 Cal.App.3d 30 where the defendant was originally charged with a misdemeanor and then charged and convicted of a felony on retrial. The Court of Appeal found in that case that the prosecutor himself had caused a mistrial and then filed greater charges against the defendant. The appellate court held that "[t]o require [defendant] to now face a felony charge would in effect reward the prosecutor for his . . . conduct." (*Id.* at p. 34.)

Certainly, the prosecutor did not cause appellant's conviction of but a single nonviolent felony. As in *Barajas*, however, the prosecutor here sought to gain advantage over appellant after he was convicted of a nonviolent felony. To permit the People to pursue a three-strikes case against appellant, contrary to its consistently applied policy in other current nonviolent felony cases, after the jury rejected the original rationale for the three-strikes prosecution, would be grossly unfair. *Barajas* is cited not because it is controlling or because the factual circumstances are identical to those in the present case. *Barajas* is instructive rather in showing how unfair use by the prosecutor of crimes -- crimes in this case of which appellant was acquitted -- may support a finding of or illustrate vindictiveness, or preclude a finding that the presumption of vindictiveness has been rebutted.

Under the circumstances of this case, and in light of all the facts as revealed in the record on appeal, there was a reasonable likelihood of vindictiveness. The prosecution failed to rebut the presumption of vindictiveness. The prosecution failed to demonstrate that its decision to pursue three-strikes against appellant after he had been convicted of a

23

single nonviolent felony was justified by some objective change in circumstances or in the state of the evidence which legitimately influenced the People's decision. Accordingly, it was not constitutionally permissible under the Fourteenth Amendment to the United States Constitution and Article I, section 15 of the California Constitution for the state to respond to appellant's exercise of his right to trial by jury and his acquittals of all current violent felonies by pursuing three-strikes in a current nonviolent felony case contrary to the People's policy in every other nonviolent felony case in the City and County of San Francisco under the administration of its current District Attorney.

# CONCLUSION

By reason of the foregoing, appellant Troy Hayles respectfully requests that the prior serious felony convictions or juvenile adjudications within the meaning of the Three Strikes law (Pen. Code sections 1170.12, subds. (b) and (c) and section 667, subds. (d) and (e)) be vacated or stricken (*In re Bower, supra*, 38 Cal.3d at p. 865 (due process violation only affected increased charges)) and the matter remanded to the trial court for resentencing.

DATED:  July 31, 2002.

Respectfully submitted,

WILLIAM D. FARBER

Attorney for Appellant

## PROOF OF SERVICE

People v. Hayles
A094429

    I, William D. Farber, declare under penalty of perjury that I am counsel of record for defendant and appellant **Troy Hayles** in this case, and further that my business address is William D. Farber, Attorney at Law, P.O. Box 2026, San Rafael, CA 94912-2026-2026. On July 31, 2002, I served the within **Appellant's Opening Brief** by depositing copies each in a sealed envelope with postage thereon fully prepaid, in the United States Postal Service, at San Rafael, California, addressed respectively as follows:

**BILL LOCKYER**
Attorney General
State of California
455 Golden Gate Ave.
Suite 11000
San Francisco, CA 94102-3664

**TERENCE HALLINAN, ESQ.**
District Attorney
City and County of San Francisco
850 Bryant Street
San Francisco, CA 94102

**FIRST DISTRICT APPELLATE PROJECT**
730 Harrison Street
Suite 201
San Francisco, CA 94107

**TROY HAYLES**
E-16711
High Desert State Prison
P.O. Box 3030
Susanville, CA 96127

**CLERK**
City and County of San Francisco
Criminal Appeals
850 Bryant Street
San Francisco, CA 94103

I declare under penalty of perjury that the foregoing is true and correct.

DATED: July 31, 2002.

WILLIAM D. FARBER
Declarant

# TOPICAL INDEX

| | Page |
|---|---|
| TABLE OF CASES | ii |
| TABLE OF STATUTES | iii |
| PETITION FOR REVIEW | 1 |
| ISSUE PRESENTED | 1 |
| STATEMENT OF THE CASE | 2 |
| STATEMENT OF FACTS | 3 |
| POINTS AND AUTHORITIES IN SUPPORT OF THE PETITION FOR REVIEW | 4 |
| I. THE PETITION FOR REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER THE ACTION OF THE PEOPLE IN PURSUING A THREE-STRIKES CASE AGAINST APPELLANT, CONTRARY TO THE PEOPLE'S POLICY IN ALL OTHER CASES INVOLVING CURRENT NONVIOLENT FELONIES, CREATED A PRESUMPTION OF VINDICTIVENESS IN VIOLATION OF DUE PROCESS OF LAW AND EQUAL PROTECTION GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 15 OF THE CALIFORNIA CONSTITUTION | 4 |
|    A. Factual and Procedural Background | 4 |
|    B. The Refusal to Dismiss Prior Strikes Allegations Following Appellant's Conviction of a Nonviolent Felony Created a Presumption of Vindictiveness | 7 |
| CONCLUSION | 12 |
| RULE 28.1(e)(1) CERTIFICATION | 12 |

i

# TABLE OF CASES

Page

*Blackledge v. Perry*
    (1974) 417 U.S. 21                                    7, 9, 10


*Bordenkircher v. Hayes*
    (1978) 434 U.S. 357                                          8

*In re Bower*
    (1985) 38 Cal.3d 865                                 8, 9, 10, 11

*In re David B.*
    (1977) 68 Cal.App.3d 931                                     8

*North Carolina v. Pearce*
    (1969) 395 U.S. 711                                          7

*People v. Superior Court (Romero)*
    (1994) 13 Cal.4th 497                                        2

*Twiggs v. Superior Court*
    (1983) 34 Cal.3d 360                                    8, 9, 10

*United States v. Burt*
    (9th Cir. 1980) 619 F.2d 831                                10

*United States v. Goodwin*
    (1982) 457 U.S. 368                                          8

*United States v. Griffin*
    (9th Cir. 1980) 617 F.2d 1342                               10

*United States v. Jackson*
    (1968) 390 U.S. 570                                          7

## TABLE OF STATUTES

| | Page |
|---|---|
| **United States Constitution** | |
| Fourteenth Amendment | Passim |
| **California Constitution** | |
| Article I, section 15 | Passim |
| **Penal Code** | |
| Section 187 | 2 |
| Section 190.2, subd. (a)(17)(A) | 2 |
| Section 190.2, subd. (a)(17)(G) | 2 |
| Section 212.5, subd. (a) | 2 |
| Section 451, subd. (b) | 2 |
| Section 459.1 | 2 |
| Section 496, subd. (a) | 2 |
| Section 667, subd. (a)(1) | 2 |
| Section 667, subd. (d) | 1, 2 |
| Section 667, subd. (e) | 1, 2 |
| Section 1170.12, subd. (b) | 1, 2 |
| Section 1170.12, subd. (c) | 1, 2 |
| **California Rules of Court** | |
| Rule 29 | 1 |
| Rule 28.1(e)(1) | 12 |

PETITION FOR REVIEW

TO THE HONORABLE RONALD GEORGE, CHIEF JUSTICE, AND TO

THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF

THE STATE OF CALIFORNIA:

Troy Hayles, hereafter appellant, petitions this Honorable Court for review of the

trial court's ruling denying appellant's motion to dismiss or strike at least two prior

serious felony convictions or juvenile adjudications within the meaning of the Three

Strikes law (Pen. Code section 667, subds. (d) and (e); section 1170.12, subds. (b) and (c))

on the ground of vindictive prosecution in violation of due process of law and equal

protection of the laws guaranteed by the Fourteenth Amendment to the United States

Constitution and Article I, section 15 of the California Constitution.


ISSUE PRESENTED

Pursuant to California Rules of Court, rule 29, appellant petitions for review on the

following grounds of statewide and constitutional importance:

1. Whether the action of the People in pursuant a three-strikes case against

appellant, contrary to the People's policy in all other cases involving current nonviolent

felonies, created a presumption of vindictiveness in violation of due process of law and

equal protection of the laws guaranteed by the Fourteenth Amendment to the United

States Constitution and Article I, Section 15 of the California Constitution.

## STATEMENT OF THE CASE

Appellant was charged with first degree murder (Pen. Code section 187) (count 1) and two special circumstances -- robbery-murder (Pen. Code section 190.2, subd. (a)(17)(A)) and burglary-murder (Pen. Code section 190.2, subd. (a)(17)(G)). Appellant was also charged with robbery in an inhabited dwelling (Pen. Code section 212.5, subd. (a)) (count 2), burglary of an inhabited dwelling (Pen. Code section 459.1) (count 3), arson of an inhabited structure (Pen. Code section 451, subd. (b)) (count (4), and receiving stolen property (Pen. Code section 496, subd. (a)) (count 5). The information alleged four prior serious felony convictions or juvenile adjudications within the meaning of the Three Strikes law (Pen. Code sections 1170.12, subds. (b) and (c) and section 667, subds. (d) and (e)) and three prior serious convictions within the meaning of Penal Code section 667, subdivision (a)(1).

After a trial by jury, appellant was found guilty on count 5 of receiving stolen property (Pen. Code section 496, subd.(a)). The jury acquitted appellant on all other counts. Following trial to the jury of the alleged prior felony convictions, the jury found three prior serious felony convictions or juvenile adjudications to be true.

Appellant moved to strike the prior serious felony convictions or juvenile adjudications on grounds of prosecutorial vindictiveness in violation of due process and equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 15 of the California Constitution. Following evidentiary, the trial court denied appellant's motion and declined to exercise discretion, as additionally urged by appellant, by striking the prior serious felony convictions pursuant to *People v. Superior Court (Romero)* (1994) 13 Cal.4th 497. The court

sentenced appellant to 25-years-to-life imprisonment pursuant to the Three Strikes law.

On appeal to the Court of Appeal, First Appellate District, Division Four, in an opinion dated January 30, 2003, per Kay, P.J., with Sepulveda and Rivera, JJ., concurring, the Court of Appeal held that a presumption of vindictiveness did not occur in this case and affirmed the judgment of conviction. The Court of Appeal's opinion has not been certified for publication. A copy of the court's slip opinion is attached to this petition as Appendix A.

Appellant filed a petition for rehearing in the Court of Appeal on February 3, 2003. The petition of rehearing was denied by the Court of Appeal on February 14, 2003.

## STATEMENT OF FACTS

Appellant adopts for purposes of this petition, generally, the procedural facts summarized by the Court of Appeal. (See Slip Opinion at pp. 1-4.)

3

POINTS AND AUTHORITIES IN SUPPORT OF THE PETITION FOR REVIEW

I

THE PETITION FOR REVIEW SHOULD BE GRANTED TO DETERMINE
WHETHER THE ACTION OF THE PEOPLE IN PURSUING A THREE-STRIKES
CASE AGAINST APPELLANT, CONTRARY TO THE PEOPLE'S POLICY IN
ALL OTHER CASES INVOLVING CURRENT NONVIOLENT FELONIES,
CREATED A PRESUMPTION OF VINDICTIVENESS IN VIOLATION OF DUE
PROCESS OF LAW AND EQUAL PROTECTION GUARANTEED BY THE
FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
AND ARTICLE I, SECTION 15 OF THE CALIFORNIA CONSTITUTION

### A. Factual and Procedural Background

For several years the District Attorney of the City and County of San Francisco

has consistently applied a policy in every case of declining to prosecute a current felony as

a three-strikes case if the current felony were nonviolent. Appellant was the only

defendant during the administration of the current District Attorney to whom that policy

has not been applied. The action of the People in pursuing a three-strikes prosecution

following appellant's conviction of a nonviolent felony created the presumption of

vindictive prosecution and violated appellant's rights to due process and equal protection

under the Fourteenth Amendment to the United States Constitution.

At trial, appellant introduced the testimony Paul Cummins, an Assistant District

Attorney for the City and County of San Francisco. Cummins testified that he was the

Chief Assistant District Attorney and Chief of the District Attorney's Criminal Division.

He was a members of the Three Strikes Committee; since 1994, all three strikes cases

were reviewed and personally approved by the District Attorney. Cummins testified that

the policy of the District Attorney and his office since 1994 was not to prosecute current

nonviolent felonies as three-strikes cases. Cummins testified that the circumstances of the

present case had never before occurred where the defendant, although charged with both

current violent and nonviolent felonies, was eventually convicted of but a single

nonviolent felony. Cummins testified that this case was the only one of which he was

aware in the last 6 or 7 years that deviated from the District Attorney's policy not to

pursue three strikes in a case involving a current nonviolent felony.

Cummins testified that the intention of the District Attorney's office was to treat

appellant's case as a three strikes case regardless of the jury's verdict in this case.

Cummins acknowledged that in all other cases the felony of which appellant was

convicted would not be treated as a three strikes case; appellant's case was the only

exception to the District Attorney's general policy since 1994. Cummins also testified

that the District Attorney's office consistently dismissed or agreed to strike allegations of

prior serious felony convictions in current section 496 cases even in cases where the prior

felony convictions involved very serious felonies. The strike allegations would either be

dismissed or reduced to a single strike.

Deputy District Attorney Gerald Norman testified that he was the prosecutor

assigned to this case. He took over this case approximately 6 weeks before trial. Before

and after trial, Norman was informed that regardless of the outcome of trial, the decision

whether to proceed as a three-strikes case had to be reviewed by the District Attorney.

After the jury convicted appellant solely of a nonviolent felony, he told defense counsel

that despite the District Attorney's policy of not prosecuting such cases as a three-strikes

case, he would have to discuss the matter with his supervisors.

Norman personally met with the District Attorney after appellant's conviction to

discuss this case. At that meeting, the District Attorney expressed the view that appellant

participated in the "totality of the crimes" -- obviously meaning those of which he had been acquitted -- and thus instructed Norman to "proceed with all strikes."

Appellant's trial counsel testified that he and the original prosecutor assigned to the case discussed a disposition of the case; the prosecutor agreed to a non-strikes disposition if appellant would testify against MoJo Dumetz believed by the prosecutor to have been the actual killer. The prosecutor told defense counsel that if appellant did not testify against Dumetz, the People were going to proceed with a three-strikes prosecution. Defense counsel strenuously objected at the time, asserting that the People were punishing appellant for going to trial.

John Dwyer, a San Francisco prosecutor for approximately 30 years, testified that he was unaware of any current nonviolent felony that was prosecuted as a three-strikes case in San Francisco under the administration of the current District Attorney.

Both the trial court and the Court of Appeal (see Slip Opinion at pp. 4-5) considered the issue of vindictive prosecution solely from the perspective of whether the case initially had been properly charged as a three-strikes case. As stated by the trial court, for example, "I looked very carefully at the question of whether or not the case was properly charged as a three strikes case in the beginning. That is where the question of the vindictive prosecution comes in, ... ." The trial court denied appellant's motion to strike the prior serious felony convictions or juvenile adjudications on grounds of vindictive prosecution at the conclusion of the evidentiary proceedings. The trial court's ruling was affirmed by the Court of Appeal.

### B. The Refusal to Dismiss Prior Strikes Allegations Following Appellant's Conviction of a Nonviolent Felony Created a Presumption of Vindictiveness

The constitutional protection against prosecutorial vindictiveness is based on the fundamental notion that it would be "patently unconstitutional" to "chill the assertion of constitutional rights by penalizing those who choose to exercise them." (*United States v. Jackson* (1968) 390 U.S. 570, 581.) In *North Carolina v. Pearce* (1969) 395 U.S. 711, the United States Supreme Court held that the due process clause of the United States Constitution protects a defendant from both actual vindictiveness and the *apprehension of retaliation* for exercising a fundamental constitutional right. (*Id.* at p. 669 [emphasis added].)

In *Blackledge v. Perry* (1974) 417 U.S. 21, the High Court held that due process required that a person convicted of an offense is entitled to pursue his right to a trial de novo without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration. (*Id.* at p. 28.) Although noting that due process is not offended by all possibilities of increased punishment, the Court found such a violation in *Perry* because the circumstances in that case presented a "realistic likelihood" of vindictiveness. (*Id.* at p. 27.) Significantly, the High Court recognized that the rationale underpinning a finding of vindictiveness is not grounded upon the proposition that actual retaliatory motivation must inevitably exist. The Supreme Court emphasized in *Perry* that no evidence of bad faith or maliciousness on the part of the prosecutor was produced or required. "Due process of law requires that such a potential for vindictiveness must not enter" into the process. (*Ibid.*)

7

In later cases, a presumption of vindictiveness was held not to arise where charges were increased prior to the attachment of jeopardy. (See *Bordenkircher v. Hayes* (1978) 434 U.S. 357, 362.) In *United States v. Goodwin* (1982) 457 U.S. 368, the Supreme Court found prosecutorial vindictiveness inapplicable in the context of pre-jeopardy plea negotiations. The Court declined to apply a presumption of vindictiveness in such cases deeming the presumption to apply "only in cases in which a reasonable likelihood of vindictiveness exists." (*Id.* at p. 373.)

This Court has also recognized a due process protection of a similar scope under the state constitution. Thus, the due process clause of the California Constitution has been interpreted to prohibit increased charges motivated by prosecutorial vindictiveness. (*In re Bower* (1985) 38 Cal.3d 865, 873.) In *Bower*, the Court discussed with approval *In re David B.* (1977) 68 Cal.App.3d 931 in which the due process guarantee was similarly held to preclude a prosecutor from seeking a hearing on a juvenile's fitness to stand trial as an adult after the minor successfully challenged the juvenile court hearings and orders. The appellate court found that the prosecutor clearly retaliated and thereby exposed the minor to a significantly increased potential period of incarceration. (*Id.* at p. 936.)

On discussing *In re David B.*, the Court in *Bower* significantly observed that the Court of Appeal in that case did not discuss whether there was any evidence of retaliation or apprehension but noted, as had the United States Supreme Court, that the rationale underpinning the doctrine of prosecutorial vindictiveness "was not grounded upon the proposition that actual retaliatory motive must inevitably exist." (*In re Bower, supra*, 38 Cal.3d at p. 876, quoting *In re David B., supra*, 68 Cal.App.3d at p. 935.)

In *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, the defendant's first trial

resulted in a mistrial. After the defendant declined a proffered plea bargain and invoked his right to a retrial, the prosecution amended the information to include prior felony convictions as sentence enhancements. These convictions did not constitute new information; the prosecution knew of the convictions before the first trial and showed no interest in them until after the retrial. The Court concluded that these were circumstances that plainly gave rise to a presumption of vindictiveness. (*Id.* at p. 372.) The presumption was applicable because the "prophylactic rule enunciated [by the United States Supreme Court] in *Perry* [was needed to] protect against both the possibility that defendant will be deterred from exercising a legal right, as well as the danger that the state might be retaliating against defendant for maintaining his innocence and facing a retrial." (*Id.* at pp. 369-370.) Significantly, the Court in *Twiggs* observed that no new facts had been developed through the preliminary hearing or trial. (*Id* at p. 373.)

In *In re Bower, supra*, the petitioner was charged with a more severe crime after he moved for a mistrial. As in the present case, jeopardy had attached. The prosecution offered no new facts but, as in *Twiggs*, relied upon facts available at the time of the first trial. This Court ruled that those circumstances presented a reasonable likelihood of vindictiveness and that the increase in the severity of charges gave rise to a presumption of vindictiveness which had not been rebutted by the prosecution It is noteworthy that the Court also held that "[r]egardless of the actual motive of the individual prosecutor, a judicial process which permitted the prosecution to increase the charges against a defendant who successfully exercised a constitutional or procedural right at trial would have a chilling effect upon the assertion of those rights and could undermine the integrity of the entire proceedings." (*In re Bower, supra*, 38 Cal.3d at p. 878.)

9

Here, the action of the People in pursuing a three-strikes case against appellant after he elected to proceed to trial by jury, after he had been acquitted of all charges except a single nonviolent felony, and contrary to the People's consistently applied policy not to pursue a three-strikes prosecution in every other case involving a current nonviolent felony, created a presumption of vindictiveness in this case.

This Court went into great detail in *In re Bower, supra,* as to the manner by which the prosecution may rebut the presumption of vindictiveness. The Court noted that prior cases "sometime referred to the prosecutor's burden of rebutting the presumption with 'an explanation that adequately eliminates actual vindictiveness'" (*Twiggs*), or to the burden of proving that the increase in the severity of the charges did not result from any vindictive motive (*United States v. Burt* (9th Cir. 1980) 619 F.2d 831, 836), or to the need to show that the more severe charge was "justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness." (*United States v. Griffin* (9th Cir. 1980) 617 F.2d 1342, 1347.) The Court stressed, however, that courts have "consistently refused to attempt to ascertain the subjective intent of the prosecutor." (*In re Bower, supra,* 38 Cal.3d at p. 878.) Similarly, in *Blackledge v. Perry, supra,* 417 U.S. at p. 28, the United States Supreme Court emphasized that the rationale is not grounded upon the proposition that actual retaliatory motivation must inevitably exist.

This Court in *Bower* further held that the presumption of vindictiveness cannot be rebutted by the prosecutor's declaration that he or she was motivated by a reassessment of the evidence against the defendant rather than by any desire to punish the exercise of a protected right. To rebut the presumption of vindictiveness, the prosecution must demonstrate "that (1) the increase in charge was justified by some objective change in

10

circumstances or in the state of the evidence which legitimately influenced the charging

process and (2) that the new information could not reasonably have been discovered at the

time the prosecution exercised its discretion to bring the original charge." (*In re Bower,*

*supra,* 38 Cal.3d at p. 879.)

In the present case, no new facts were developed at trial to justify the deviation in

this case from the consistently applied policy not to pursue three-strikes in cases involving

current nonviolent felonies. Appellant elected a trial by jury. He was acquitted of all

alleged violent felonies. Nevertheless, the People sought to increase appellant's

punishment solely because the District Attorney -- despite the jury's verdict -- reassessed

the case after the jury trial and deemed that appellant had been involved in the totality

of the crimes despite his acquittals. This Court explicitly rejected such a justification as

offered by the People in this case. (See *In re Bower, supra,* 36 Cal.3d at p. 880, fn. 7.)

Under the circumstances of this case, there was a reasonable likelihood of

vindictiveness. The prosecution failed to demonstrate that its decision to pursue three-

strikes against appellant after he had been convicted of a single nonviolent felony was

justified by some objective change in circumstances or in the state of the evidence which

legitimately influenced the People's decision. Accordingly, it should not have been

constitutionally permissible under the Fourteenth Amendment to the United States

Constitution and Article I, section 15 of the California Constitution for the state to respond

to appellant's exercise of his right to trial by jury and his acquittals of all current violent

felonies by pursuing three-strikes in a current nonviolent felony case contrary to the

People's policy in every other nonviolent felony case in the City and County of San

Francisco under the administration of its current District Attorney.

11

## CONCLUSION

By reason of the foregoing, appellant Troy Hayles respectfully requests that the petition for review be granted and the judgment of the Court of Appeal reversed.

DATED: February 24, 2003.

Respectfully submitted,

WILLIAM D. FARBER

Attorney for Appellant

## RULE 28.1(e)(1) CERTIFICATION

I, William D. Farber, certify that the number of words in this petition, excluding tables, Court of Appeal opinion, proof of service, and cover, as authorized by Cal. Rules of Court, rule 28.1(e)(3), total 3,134 words. In counting the words, I have relied on the word count of the computer program used to prepare this document as authorized by rule 28.1(e)(1).

I declare under penalty of perjury that the foregoing is true and correct.

DATED: February 24, 2003.

WILLIAM D. FARBER

APPENDIX A

*COPY*

Filed 1/30/03

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

**FILED**

Court of Appeal - First App. Dist.

JAN 3 0 2003

RON D. BARROW, CLERK

By _____

DEPUTY

THE PEOPLE,

      Plaintiff and Respondent,

v.

TROY HAYLES,

      Defendant and Appellant.

A094429

(San Francisco County
Super. Ct. No. 177096)

    The sole issue on this timely appeal is whether defendant Troy Hayles was the victim of prosecutorial vindictiveness.

    The District Attorney of San Francisco filed an information by which defendant was charged with first degree murder with special circumstances, robbery, burglary, arson, and receiving stolen property. It was also alleged in the information that defendant had four prior felony convictions (three for robbery, one for attempted robbery) for purposes of the three strikes statutes (Pen. Code, §§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)). A jury found defendant guilty of receiving stolen property, but acquitted him of the other charges. Thereafter the jury found three of the allegations of prior felony convictions (two of the robberies and the attempted robbery) to be true.

    In addition to moving for a new trial, defendant moved for "a dismissal of the allegations of prior convictions ['strikes'] on the ground that the prosecution's conduct in charging them after Mr. Hayles was convicted only of a non-violent and non-serious

1

felony is vindictive, an abuse of discretion, and violative of the due process and equal protection clauses of the United States and California Constitutions."

The dismissal motion was the basis of a hearing conducted by the trial court on the date set for sentencing. The evidence received at that hearing may be summarized as follows: Since Terence Hallinan became district attorney in 1994 it has been general office policy that if a defendant is currently charged with only a nonserious, nonviolent felony, it is not prosecuted as a three strikes case. Individual deputies with the appropriate authority may make the decision to *charge* three strikes, but the decision to actually proceed to trial as a three strikes case comes from the three strikes committee within the office, subject to approval by District Attorney Hallinan. The policy is not immutable, and the office's three strikes committee may make case-by-case exceptions depending on the circumstances of the latest offense and the nature of the defendant's criminal history. After the jury's verdicts were returned, the deputy who tried the case reported to Mr. Hallinan, who directed the deputy to "Proceed with all strikes."

The office's three strikes policy has never been reduced to writing. Exceptions to the policy are "few and far between." The policy did not address defendant's situation— an accused charged with violent and nonviolent felonies who is convicted only of a single nonviolent felony—which had never occurred before defendant's trial. In fact, he is the only person not convicted of a violent or serious felony the San Francisco District Attorney's Office has elected to prosecute under the three strikes statutes.

The trial court continued the hearing in order to allow the defense time to search court records to discover if defendant's situation truly was unique. When the hearing resumed, defendant's counsel advised that the situation had no precedent. The court heard argument and then ruled as follows: "We have never had a case like this before. The evidence was that even after the . . . jury came back and found the defendant not guilty of all the violent crimes but guilty of the nonviolent one, that the matter went before the Three Strikes Committee again. It was faced for the very first time with the issue that we have before us right now. They [*sic*] said we will continue to assert three strikes. The Court cannot find that this is abuse of discretion or vindictive or anything.

2

It's the first time they have ever done it. Nobody was being singled out at all and all of your argument that Mr. Hayles is being singled out are not persuasive. He is not. He has not been singled out for anything. He is in a position where having won a trial on . . . the violent crimes, we now find ourselves in a posture that has never been confronted in this system before. Nobody is being singled out. It just is not factually correct." The court then denied defendant's other motions and sentenced him to state prison for a term of 25 years to life.

At the outset it must be established that defendant is not asserting the usual type of prosecutorial vindictiveness (which is also known as discriminatory prosecution.) "[A] defendant's claim of discriminatory prosecution goes not to the nature of the charged offense, but to a defect of constitutional dimension in the initiation of the prosecution. [Citation.] The defect lies in the denial of equal protection to persons who are singled out for a prosecution that is 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' [Citation.] . . . [¶] Unequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement." (*Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 831-832.) The familiar settings for vindictiveness claims are singling out select groups or persons for prosecution (e.g., *Murgia v. Municipal Court* (1975) 15 Cal.3d 286 [harassing prosecution of UFW members]) or increasing the charges after the defendant either rejects a plea bargain (*Bordenkircher v. Hayes* (1978) 434 U.S. 357) or invokes a statutory remedy (*Blackledge v. Perry* (1974) 417 U.S. 21 [after defendant convicted of misdemeanor and asks for trial de novo, prosecutor gets felony indictment for same conduct]; *In re Bower* (1985) 38 Cal.3d 865 [after defendant charged with second degree murder successfully moves for mistrial, prosecutor retries for

3

first degree murder]). Defendant does not claim that any of these categories apply to him.[1]

Having shown that defendant's situation does not have an established slot in the analytical template, it remains to be determined what is the precise nature of defendant's complaint. Defendant's motion to dismiss the strikes referred to them as having been charged after defendant's conviction of the non-violent felony. This is incorrect. The allegations that he had prior convictions that qualified as strikes were in the case from the outset, so it cannot be maintained their introduction into the case was in any sense retaliatory. Because the prosecution did not "up the ante" by filing new charges in response to any action taken by defendant, either before or after the trial, there is no occasion to apply a presumption that the prosecution was acting vindictively. (See, e.g., *In re Bower, supra,* 38 Cal.3d 865, 876-878; *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 368-372; *People v. Bracey, supra,* 21 Cal.App.4th 1532, 1544-1547.) On the contrary, the focus of defendant's contention is not on what the prosecution did, but

---

[1] At the hearing on defendant's dismissal motion, his attorney testified that he discussed a possible plea bargain with the prosecutor prior to trial. The prosecutor was interested in getting defendant to testify against someone else. According to defendant's attorney, "the essence of it was if Troy will testify against Mojo Dumetz, he can have a nonstrike disposition, that is a determinate sentence. We did not get down to a period of years." Counsel also testified that the prosecutor told him, "If he does not testify against Mojo, . . . we are going to three strike him," to which defendant's counsel replied, "That is punishing him for going to trial on a very weak murder case." Although in arguing defendant's dismissal motion his counsel mentioned this incident, he never explicitly tied rejection of the inchoate "bargain" to the concept of vindictiveness. The trial court found "no evidence" of a completed bargain. Defendant does not rely on this pretrial event in his briefs. Moreover, our Supreme Court has stated that "a presumption of prosecutorial vindictiveness ordinarily would not arise from a prosecutor's failure to reinstate an offer." (*In re Alvernaz* (1992) 2 Cal.4th 924, 943; see *People v. Bracey* (1994) 21 Cal.App.4th 1532, 1546-1547 and authorities cited.)

Although not mentioned in his moving papers, at the hearing defendant asked the court to consider dismissing some of the strikes pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. This is another issue that defendant has not renewed for purposes of this appeal.

rather on what it did *not* do—discontinue the prosecution as a three strikes case once the jury returned its verdicts. He implicitly concedes that no reported decision addresses the subject of such inaction by a prosecutor amounting to vindictiveness. Our own research has found no similar or analogous situation. Nevertheless, we believe the trial court had ample justification for finding that no prosecutor vindictiveness was shown.

Defendant appears to be arguing that when District Attorney Hallinan and the three strikes committee reviewed the case and found that it still qualified as one appropriate for three strikes treatment—and when the trial court upheld that decision—a sort of end-run around the jury's acquittals was accomplished. We disagree. Defendant was not sentenced for murder, arson, robbery, or burglary. He was sentenced on the receiving count, plus the strike enhancement allegations, which the jury found true. Those allegations were completely independent of the substantive charges on which defendant was acquitted. Nor do we think it improper for District Attorney Hallinan and his staff to consider the state of the evidence in the case regarding murder even if the jury had determined that the same evidence was not sufficient to prove guilt beyond a reasonable doubt. A trial court is entitled to make decisions based on the facts of acquitted charges. (See, e.g., *In re Coughlin* (1976) 16 Cal.3d 52 [probation revocation allowed on same facts as criminal trial acquittal]; *In re Dunham* (1976) 16 Cal.3d 63 [parole revocation allowed on same facts as criminal trial acquittal]; *People v. Gragg* (1989) 216 Cal.App.3d 32, 42-46 [probation denial allowed on same facts as acquittal].) If it is permissible for a court to take account of the circumstances underlying acquitted charges, there is no reason why it should be impermissible for a prosecutor to do the same.

A final comment concerns the essence of prosecutorial vindictiveness—the denial of equal protection. In order to warrant judicial intervention, there must be a threshold showing that persons are "similarly situated" and are being treated differently before the law demands they be treated alike. (E.g., *In re Eric J.* (1979) 25 Cal.3d 522, 530-531; *People v. Poe* (1999) 74 Cal.App.4th 826, 835.) In this case, however, defendant has no point of comparison. Because he is the first and only person in his situation—charged

with violent and nonviolent offenses, convicted only of a single nonviolent charge, for which the prosecution asks for the maximum three strikes sentence—he cannot demonstrate that someone else was not treated in the same manner as he was. Nothing in the district attorney's unwritten policy covered defendant's situation. Without an actual instance of another defendant standing in the same situation who has been treated differently, no violation of equal protection, and thus prosecutorial vindictiveness, has been established.

The judgment of conviction is affirmed.

_____
Kay, P.J.

We concur:

_____
Sepulveda, J.

_____
Rivera, J.

*People v. Hayles*
A094429

## PROOF OF SERVICE

**People v. Hayles**
A094429

    I, William D. Farber, declare under penalty of perjury that I am counsel of record for defendant and appellant Troy Hayles in this case, and further that my business address is William D. Farber, Attorney at Law, P.O. Box 2026, San Rafael, CA 94912-2026. On February 24, 2003, I served the within **Petition for Review** by depositing copies each in a sealed envelope with postage thereon fully prepaid, in the United States Postal Service, at San Rafael, California, addressed respectively as follows:

Bill Lockyer, Esq.
Attorney General
State of California
455 Golden Gate Ave.
Suite 11000
San Francisco, CA 94102-3664

Terrance Hallinan, Esq.
District Attorney
City and County of San Francisco
850 Bryant Street
San Francisco, CA 94102

First District Appellate Project
730 Harrison Street
Suite 201
San Francisco, CA 94107

Clerk, Court of Appeal
First Appellate District, Div. 4
350 McAllister Street
San Francisco, CA 94102

Troy Hayles
E-16711
Calipatria State Prison
P.O. Box 5001
Calipatria, CA 92233

Clerk
City and County of San Francisco
Criminal Appeals
850 Bryant Street
San Francisco, CA 94103

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  February 24, 2003.

WILLIAM D. FARBER
Declarant

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ANN P. WATHEN, State Bar No. 189314
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5972
    Fax:  (415) 703-1234
8   Email:  Ann.Wathen@doj.ca.gov

9  Attorneys for Respondent

10
                    IN THE UNITED STATES DISTRICT COURT
11
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
12
                         SAN FRANCISCO DIVISION
13

14  **TROY HAYLES,**                              C 06-6909 MJJ (PR)

15                              Petitioner,       **EXHIBITS**

16           **v.**

17  **ROSANN CAMBLE, Warden,**

18                              Respondent.

19

20

21

22

23

24            # EXHIBITS 10 - 13

25

26

27

28

Exhibits - *Hayles v. Camble* - C 06-6909 MJJ (PR)

                              1

**EXHIBIT 10**

# ORIGINAL

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

# FILED

JUN 1 7 2004

Court of Appeal - First App. Dist.
DIANA HERBERT

By_____
DEPUTY

In re TROY HAYLES,

     on Habeas Corpus.

A106747

(San Francisco County
Super. Ct. No. 177096)

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Kay, P.J., and Sepulveda, J., joined in the decision.)

Date: _____JUN 1 7 2004_____   _____ P.J.

                                         KAY, P.J.

AFFIDAVIT OF TRANSMITTAL

I am a citizen of the United States, over 18 years of age, and not a party to the within action; that my business address is 350 McAllister Street, San Francisco, CA 94102; that I served a copy of the attached material in envelopes addressed to those persons noted below.

That said envelopes were sealed and shipping fees fully paid thereon, and thereafter were sent as indicated via the U.S. Postal Service from San Francisco, CA 94102 or, alternatively, served via inter-office mail.

I certify under penalty of perjury that the foregoing is true and correct.

Diana Herbert, Clerk of the Court

P. AGUILAR                          JUN 17 2004
_____         _____
Deputy Clerk                        Date

CASE NUMBER: A106747

Office of the Clerk                          Material Sent YES: _____
San Francisco Hall of Justice - Criminal Division
Attention: Criminal Appeals
850 Bryant Street - Room 306
San Francisco, CA  94103


Troy Hayles                                  Material Sent YES: ✓
E-16711
P.O. Box 5002   D-4 113
Calipatria, CA  92233


Office of the Attorney General               Material Sent YES: ✓
455 Golden Gate Avenue - Suite 1100
San Francisco, CA  94102

serv

**EXHIBIT 11**

MC-275

Name _Troy Hayles_

Address _P.O. Box 5002 104/113_

_Calipatria, CA, 92233_

CDC or ID Number _E-16711_

_Supreme_
_California Superior Court_

_____
(Court)

PETITION FOR WRIT OF HABEAS CORPUS

_Troy Hayles_
Petitioner
                    vs.
_California Supreme Court_
                    _Supreme_
Respondent

No. **S127064**

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

PETITION FOR WRIT OF HABEAS CORPUS    WEST GROUP
Official Publisher    Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

[x] A conviction          [ ] Parole

[ ] A sentence            [ ] Credits

[ ] Jail or prison conditions    [ ] Prison discipline

[ ] Other (specify): _____

1. Your name: Troy Hayles

2. Where are you incarcerated? Calipatria S̶t̶ State Prison

3. Why are you in custody? [X] Criminal Conviction  [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Receiving stolen property. Three Strikes law, enhancement/25 years-life

b. Penal or other code sections: P.C. Section 1170.12,subds./Section 667,subds.

c. Name and location of sentencing or committing court: Superior Court,Dept.26 850 Bryant st

San Francisco,California,94103

d. Case number: 177096

e. Date convicted or committed: February 27, 2001

f. Date sentenced: February 23,2001

g. Length of sentence: 25 years-life

h. When do you expect to be released? 2024

i. Were you represented by counsel in the trial court? [y] Yes.  [ ] No.  If yes, state the attorney's name and address:

Kenneth M. Quigley 650 Fifth st,Suite 502 San Francisco California

94107-1521

4. What was the LAST plea you entered? *(check one)*

[X] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[X] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

6. GROUNDS FOR RELIEF
   Ground 1:  State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal
   enhancement."  *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four.  For
   additional grounds, make copies of page four and number the additional grounds in order.)*

   Plain Error: COURT ERROR.

   SEE AMENDED PAGE.

   a.  Supporting facts:
      Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon
      which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For
      example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or
      failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re
      Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at *what time (when)* or
      place *(where).* (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

   SEE AMENDED PAGE.

   b.  Supporting cases, rules, or other authority (optional):
      *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary,
      attach an extra page.)*

MC-275 [Rev. January 1, 1999]                  PETITION FOR WRIT OF HABEAS CORPUS          WEST GROUP        Page three of six
                                                                                           Official Publisher

PITITIONER IS CLAIMING
INEFFECTIVE COUNSEL IN
VIOLATION OF THE 6TH AMENDMENT.

<u>Supporting case.</u>
Citing:

People V. Williams.
137 Cal,R 70.


"A person chargered with a felony by complaint subscribed under penalty

of perjury and on file in a Court in the County where the felony is

triable SHALL be taken without unnecessary delay before a Magistrate

of that Court." (Article I,Sec. 14 of the California Constitution.)

7. Ground 2 or Ground _____ *(if applicable):*

Ineffective Appellate Counsel.

a. Supporting facts: Appellate counsel was ineffective when failed to rase
maritting issues on appeal, that arguably could have resulted in
reversal. The assignment of errors not rased by appellate counsel are
of the following: (1) Insufficient evidence in the conviction of
receiving stolen property: in pursuant to Motion filed by trial counsel.
(2) Abuse of discretion, by prosecutor. (3) The merger of Equal Protec-
tion. Moreover, appellate counsel failed to acknowledge and rase vital
errors made by trial counsel, that by themselves subjected petitioner
to an unfair trial, and had they been rased, arguably might have
resulted in reversal. Evevn more so, the existence of so many trial
errors, harmless or not, in petitioner's case amounted to a collective
of errors that reflected a fundamental miscarriage of justice and an
unfair trial.

b. Supporting cases, rules, or other authority:

Because these errors are on the records, petitioner rely's on
the application of the law by reviewing Court.

(Page 1)

COURT ERROR.

DELAY IN ARRAIGMENT WAS CONSTITUTIONALLY
IMPROPER, AND WAS PREJUDICIAL, AND CREATED
A PROCEDURAL DEFAULT IN VIOLATION OF THE FOUR-
TEENTH AMENDMENT TO THE UNITED STATES CONSTITU-
TION AND ARTICLE L, SECTION 14 OF THE CALIFORNIA
CONSTITUTION.

A. Factual and procedural background.

Petitioner was arrested on October 6,1999, for the following allegation:
Murder, Robbery, Burglary, Arson and Receiving Stolen Property.
Petitioner's arraigment was held around/about October 8,1999, for all
the above allegations except...receiving stolen property.
(The Court errored in failing to render an oral reading in open Court
for the allegation of receiving stolen property, wherein, petitioner was
not afforded an opportunity to enter a plea for thus charge.)

Assumedly, error went unnoticed until preliminary hearing was held, (Nov,19,
1999.) where at the end of the hearing, the Judge stated the charges
neede to be re-read, for the purpose of correcting the Court error.
Two things happen here: (1) trial counsel objected to the reading, arguing
that the charges had already been read in arraigment; wherein, the Judge
over ruled trial counsel's objection, and stipulated the objection would
be noted for the records. (2) Trial counsel waved the right to the oral
re-read, and avised petitioner to do like wise.

B. Error Intervened With Trial Strategy.

Petitioner has no factual knowledge of reason, the Judge elected to re-read
the allegations; it is his assumption, to correct the error. If so, the
court should have stated the neccessity for the re-reading to assure
petitioner fully understood that he was now also, being charged with
receiving stolen property.
With the waving of the re-read, combined with the Court error, petitioner
entered trial in a state of uncertainty towards the actual allegation.
This error delivered a crucial blow to a competent trial strategy: the ele-
ction to re-read the allegation, came after petitioner waved his confront-
ational rights to face his accuser, (for the allegations of: murder, robbery,
burglary and arson.) and elected a speedy trial, based on the infirmness
in the prosecutor's case.
Had the error been corrected in an earlier stage, that was in accordance
with Court Procedures, petitioner would have been presented with an
opportunity to re-evaluate trial strategy(S), such as: petitioner might not
have waved confrontation right, wherein, accuser where abouts were unknown
to prosecutor.

C. Error Proceurally Effected trial.

Moreover, had a reading for receiving stolen property been given
at petitioner's initial arraigment, he would have been afforded his const-
itional right to enter a plea of guilty or, not guilty; wherein, he could
have decided it to be an effective/competent trial strategy to enter a plea
of guilt to receiving stolen property, hereby severing the allegations.
Thence, petitioner would have waved sentence, pending trial outcome for
the remaining allegations.

(continued Error.)                    (Page 2)

Never a less, a guilty plea for receiving stolen property solely, would
have been favorable to San Francisco's 3-strike policy:  not to pursue 3-strik-
es against non-violent offenses.
It is reasonable and likely, that this would/could have effected the prosec-
utor's decision to pursue 3-strike liability for a non-violent crime, for the
first time. Moreover, an assessment of the matter, before the forthcoming
of petitioner's an acquittal, would have been based solely on receiving sto-
len property-absent the evidence adduced at trial; in which inferrences
were drawn from other circumstances and applied. Specific testimony, not
only strengthen the inferrences, they also supported and persuade the deci-
sion to pursue 3-strikes in a reassessment of the matter after petitioner's
acquittal for the violent allegations; such as the constradictions in the
testimony of: Charrisse Wells, Donald Hamilton, and Kendra Rodriguez.

With a guilty plea entered, presumably along with a delayed sentencing,
even if prosecutor still elected to pursue 3-strikes against petitioner, he
could/would have withdrew his plea, justifiably declaring unfairness in
light of the 3-strike policy, and elected a trial solely for receiving
stolen property; in which alot of the circumstances surrounding the other
allegations would not have been adduced.

Hence, it is petitioner's claim that such a procedural error on behalf of
the Court was not harmless, and in fact so damaging, that it not only interv-
ened on competent trial strategies, but, subjected petitioner to a prejudicial
and unfair trial that concluded in a fundamental miscarriage of justice.


By the reason of the foregoing, petitioner respectfully request that
his sentence be reversed.

## STATEMENT OF THE CASE.

Petitioner was charged with first degree murder and two special circum-
stances--robbery-murder, burglary-murder, robbery, arson and receiving
stolen property. Allegations of prior convictions were found to be true.
Petitioner was acquitted at jury trial of all charges except the last;
he was found guilty of receiving stolen property. Trial by jury commenced
July 11, 2000.

The evidence showed that petitioner was present at the time the credit cards
of the deceased were being used on the morning of her death. (Joyce Ruger)
The evidence also showed his relative Charrisse Wells, in possession
and control of credit cards and jewelry; but not petitioner.

(Continued , supporting facts.)                    (Page 2)

It was ineffective assistence for trial counsel not to object to the following

issues for the purpose of preserving them for appeal:

(1) Trial counsel should have objected to allowing juror member to remain a

jury participant after admitting to the judge that he had read partial pub-

lication concerning matters in petitioners trial, in the news papers.

Specifically, because the juror was the foreman, which boosted his influen-

ce in  weighing the facts and, he held in his mind information the other

members did not. The fairness of the system is based on 12 unbiased, and

impartial people making a decision based on the same information. The app-

earance or possibility of such an influence based on personal information,

no matter how unintentional, should have compelled trial counsel to ask

that the juror be excused. The juror was no longer in compliance with the

fairness of the system, and the court or, trial counsel should have never

allowed ONE juror to enjoin nor enter deliberation with priviledged inform-

ation.

(2) It was ineffective assistance, for trial counsel not to object to juror

reuniting with the rest of the jury members, after expressing her concerns

to the judge in regards to her encounterment out side of the court room,

with prosecutors witness Ms.Wells. (The next day.) The juror told the court

that she had been addressed by Ms.Wells as she was exiting the court house,

and Ms.Wells whom had just finished testifying, expressed words to her (the-
juror.) or, within her hearing range, that left her very concern for her

safty. The judge, at first allowed her to remain a juror and excused her

to her duty. Then the judge held a court conference (absent the juror.) in

which all parties expressed their concerns as to the nature of the matter,

and in conclusion, the judge decided to excuse the juror based on the possi

bility of the influence such an impact may have instilled in the juror.

However, this decision was made "after" the juror was allowed to reunite

with the jury. Trial counsel should have ask that the juror remain in the

(Continued Facts.)                                                    (Page 3)

conference until the conclusion of the judges decision. Hence, arose the
strong probability that the juror's impact and concerns influenced the remain-
ing jury members in their decision to convicted petitioner of receiving stolen
property. For this reason, trial counsel should have asked for a mistrial.
(3) It was incompetent trial strategy and forther ineffective assistance for
counsel to introduce petitioners priors to the jury in his opening arguement.
In doing so, he argued the case against petitioner.
(4) It was incompetent trial stategy for counsel to bring forth Kendra Rodig-
uez as a witness, after the prosecutor had excluded her from his own witness
list. The prosecutor, and trial counsel were well aware of the contents of her
testimony, and considering the nature of it,the strong probability existed
that her statements made outside of court were obtained illegally. Her testi-
mony was more damaging than rewarding for petitioner. More so, because the
circumstances surrounding Ms.Rodriguez testimony became strong factors for infer
ences to be drawn from by the jury, and by the prosecutor in his reassessment
of the totality of the case and in his decision to pursue 3-strikes against
petitioner. The same inferences were adduced by the judge in his consideration
of the mitigating and aggravating factors. More over, trial consel failed to
adduce the video tape of Ms.Rodriguez statements to Homicide Detectives for
the purpose of contradicting or, supporting her claim that she was given
information, (by Homicide Detectives.) rather than held actual knowledge about
any aspects of the case. Even farther, in his closing arguements he insinuates
that she is lying. Again, he argued against petitioner.
(5) It was incompettent trial strategy and ineffective assistance, for trial
counsel to inform the jury in his opening arguement of the 3-strike sentence
petitioner would be subjected to upon being found guilty of receiving stolen
property, in correlation with the information he had already given them regard-
ing petitioners priors; despite the judges instruction for the jury to disrega-
rd his statements.

(Continued Facts)                                    (Page 4)

(6) In considering the amount of publicity and politics surrounding petit-
ioner's case, it was incompetent trial strategy for counsel not  to ask
for a change of vender to insure petitioner a fair and impartial trial.

(7) It was Open incompetent trial strategy and ineffective assistance
for counsel not to cross examine prosecutor's witness Ms.Wells, after she
had admitted to placing all the blame on petitioner to save herself.
Trial counsel should have confronted her testimony, rather than allow it
to rest entirely in the hands of the jury. In Ms.Wells testimony, arose an
opportunity for counsel to shine light on a much speculated and circumstant-
ial case; an opportunity to exstract a defending theory, equally, one that
contradicted the prosecutor's theory in regards to receiving stolen property.
Moreover, in counsel's closing statements, for him to suggest that Ms.Wells
entire testimony was a lie, was a prejudicial statement that by itself
influenced the jury to disregard Ms.Wells testimony.

(8) It was incompetent trial strategy and ineffective assistance for trial
counsel to suppress "half" of petetioner's statements made outside of Court
to Homicide Detectives; Wherein, petitioner Miranda rights were igmored
when he decline to answer farther questions without representation.
Trial counsel suppressed the Miranda violation part of the statements.
In doing so, he paved a path for the prosecutor to introduce petitioner's
self-incriminating statements; which was the foundation in the prosecutor's
theory for receiving stolen property, and the primary basis for the jury's
guilty verdict. Without such suppression, it is likely the entire tapped
statements would have been deemed inadmissiable because of the Miranda
violation, or, counsel could have objected to its admission based on such
grounds. AgAIN, counsel argued the case against petitioner.

(9)It was incompetent trial strategy for counsel to advise petitioner to
wave confrontational rights for his accuser, because the accuser's where-

(Continued Facts.)                                      (Page 5)

abouts were unknown to the prosecutor, and remain so for at least 6 months.
Had petitioner not waved his rights, prosecutor would have been compelled
to dismiss charges after a reasonable amount of time.

(10) Trial counsel was ineffective when he faild to address/object to
prosecutor's usage of Grand Jury  inditment; (1) it faild to meet the sta-
ndard for probable cause,(2) it was granted without oral testimony from
the accuser: whom never showed up for the Grand Jury.

(11)  It was ineffective assistance, incompetent trial strategy and, pre-
judicial for counsel not to argue insufficent evidence or, include in his
closing statements to the jury; in light of the motions he had ~~failed~~ filed.
On 25 July 2000, trial counsel filed a Motion for Directed Verdict of
Acquittal for all allegations.(Motion-pursuant to 1118.1.)
On February 2,2001, he filed a Motion for retrial on the grounds of insu-
fficent evdience. In both Motions, he ~~argued~~ argued strongly that the
evidence to support receiving stolen property was insufficient. He adduced
this issue twice to the Court but, not once to the jury! He purposely faild
to render a deffense for receiving stolen property/address the absent of
theft or, any of the valid points he made in each motion (regarding stolen
property.), to the jury in his closing statements. He literally, allowed
the jury to make their own assumptions based on the prosecutor's circum-
stantial evidence and, conjectured-highly spectulated theory.

SEE AMENDING PAGE FOR ADDUCIBLE INTRODUCTION
OF FACTS SUPPORTING INSUFFICENT EVIDENCE.

(continuation of error.)                                    (Page 6)

Trial counsel should have included insufficent evidence
in his grounds for appeal; as in both motions.

ADDUCING FACTS, PURSUANT TO COUNSEL'S ERROR'S.

INTRODUCTION.

It is petitioner claim that each element of receiving stolen property has
not been established by competent evidence nor, independent of his addmi-
ssion, but rather by conjecture and spectulation mended with circumstan-
tial evidence. To support claim, petitioner logically focuses on all evi-
dence adduced at trial concerning this allegation, that should not only
have established facts to sustain thus conviction, but also proved every
essential element of the crime. In addressing the elements of this, petit-
ioner follows the same guidelines given to his jury. It is through this
scope he illustrates his claim and supporting facts.

(1) No evidence adduced at trial pinpoints petitioner receing or, posse-
ssing alleged stolen property. (2) However, the trial records does show
the attempts and, failure, to prove the elements of receiving stolen
property. Petitioner hereby directs the attention to an illustration of
such reflection.

Petitioner's sister, Selena Jimenez, testified at trial that she XX
gave the police some jewelry that she received from petitioner.
(Exhibit #38,people's.RT.P-272.) Here, the prosecutor is suggesting the
jewelry belongs to the victim.(Joyce Ruger.) The prosecutor asked the
witness a question regarding another piece of jewelry. Question: "okay.
Now what about people's #39? Where did that come from?" Answer: "I have
never seen this." (RT.P273.) (No one ever gave testimony to the idenity
of exhibit #38.)

(Continued Facts.)                                    (Page 7)

In the testimony of Christina Palma, (RT.P-326.) at trial the prosecutor
brought forth this witness to identify the victims property, and to estab-
lish the element of theft. The prosecutor showed this witness three yellow
chains, marked as people's exhibit #38. The ending question was of the fo-
llowing: "but you can't say for sure that they were her's?" (Refering to the
victim.) Answer: "yes."
Christina Palma, could not identify exhibit #38 as property of the victim.
As for exhibit #39, it was never mentioned again.
In the midst of each of these witnesses testimony, the prosecutor ~~solicited~~ extracted
information of a pendant. Ms.Palma, described a pendant that belong to the
Joyce Ruger. Ms.Jimenez, gave a similar description of a pendant that she
claimed to have seen petitioner with. With these combined testimonies, the
prosecutor insinuates to the jury that petitioner possessed property that
belong to the victim. (Ms.Ruger.) However, there is no record of a pendant
ever being submitted or, obtained as evidence for identification. Hence,
the prosecutor's insinuation is without the legal support necessery to com-
plete the element of possession in receiving stolen property.
At petitioners trial, in the testimony of Theresa Yee Ting, the prosecutor
attempts to establish dominion or control of alleged stolen credit cards.
(Id.RT.P-294.) He asked the following question: did either one of them seem
to be in charge of what was going on? Answer: no, I don't recall that.

In regards to the testimony of Charrisse Wells, the prosecutor's witness.
Ms.Wells made a deal with the prosecutor out-side of petitioners trial.
(Id.RT.P-136.) The deal consisted of excluding her from the responsibility
of her crimes surrounding petitioners case, in exchange that she give test-
imony that would include petitioner in her own crimes. However, at trial
Ms.Wells elected to reject the prosecutors deal, by refusing to testify.

(Continued Facts.)                                    (Page 8)

She then pled the Fifth Amendment, in fear that she would incriminate herself
without the prosecutors deal to protect her. The prosecutor then submitted a
petition of immunity, hereby forcing her to testify through the order of the
court.(Id.RT.P-137.) After being assured by the prosecutor that nothing she
said in court would ever be used against her, Ms.Wells then proceeded to take
full responsibility for her criminal activities surrounding petitioners case.
Ms.Wells admitted to placing the blame on petitioner to take the heat off
herself.(Id.RT.P-220.) Throughout her testimony, she confirmed petitioners
innocence of the alleged crime of receiving stolen property. The prosecutor
acknowledged through his own statement, that Ms.Wells was the only one seen
in possession and usage of alleged stolen credit cards.(Id.RT.P-228.) The
prosecutor brought forth this witness not by force, but by his own willfull
choice with hopes of extracting testimony that would implicate petitioner in
alleged crimes, discriminate his character and incriminate him in the alleged
crime of receiving stolen property; to no avail.

In regards to petitioners statement made outside of his trial, where he gave
an asumption to the nature of the property he claimed to have found, the
prosecutor moves to turn this asumption into an established fact.
In doing so, he presented to the jury a two-way theory that composed two
reasonable interpretation, and two reflections of the matter.

(Continued Facts.)                                              (Page 9)

From here, petitioner shines a brighter light on the facts, through a finer
scope of the matter. Starting with petitioners concept of a two-way theory,
presented by the prosecutor, and the existing inconsistent facts with the
theory. The prosecutor draws the first fact to his theory from two pieces
of circumstantial evidence: Ms.Wells and petitioners statement made outside
of trial. His theory reflects the two statements corroberating, hence esta-
blishing a fact that is consistent with the theory, and closing the door to
any other rational conclusion.

Then the prosecutor uses the same theory to draw his second fact from one of
the two pieces of circumstances, the petitioners statement. Combined with
circumstantial evidence, he establishs that petitioners statement is false.
In doing so, his theory then begins to interpretate specific reasonable
plausibilities, such as: petitioner did not find the property in the manner
he stated, and, if he did in fact ever possess any property at all, then it
was obtained in another manner. This is where the prosecutor re-opens the
door to his own theory, and allows inconsistency to enter. He logically att-
empts to establish guilt to other crimes, by proving petitioners statement
is false. Hereby introducing, a rational conclusion that is inconsistent
with his own theory. However, since the prosecutor could not adduce suffic-
ent evidence to establish that petitioner was guilty of other alledged crimes,
in collaboration with petitioners proven false statement, he again attempts
to close the door to his theory and displayed rational conclusion; then he
simply urges the jury to find petitioner guilty of receiving stolen property,
based on his own statement out side of trial.

(Continued Facts.)                                    (Page 16)

The final and most important fact that in itself, reflects the insufficiency
of evidence is the absent of essential facts; from whom, where, or how was
such property allegenly received or, obtained. Moreover, every theft case
includes the elements necessarily of somebody testifying that the property
is stolen, either the victim, or someone who knows that that was the victims
property. The prosecutor did not produce such evidence. Nobody was able to
testify to facts showing that such property was taken away from Joyce Ruger
without her consent. No one stated that such property was not given to some-
body or that there was not permission to hold or use the property. There is no
substantial evidence shown that any property was received, conceald or with-
eld by petitioner. The prosecutor offers presence and access to alleged stol-
en property as a sufficient basis for establishing possession, rather then
dominion or control, which are essential of possession.

(Conclusion of Facts.)

The prosecutors case against petitioner is so circumstancially speculated,
that he is compelled to take leaps into assumptions that are not bridged
with competent evidence. Leaps, over the petitioners constitutional right to
presumption of innocence, without sufficient evidence of proof reflecting
guilt to every existing element of receiving stolen property. Without such
evidence, the petitioners conviction can not stand.

For the forgoing reasons, petitioner ask's for a retrial.

Ground 3

SEE Amended Page.

I

## THE ACTION OF THE PEOPLE IN PURSUING A THREE-STRIKES CASE AGAINST APPELLANT AFTER HE HAD BEEN CONVICTED OF A NONVIOLENT FELONY, CONTRARY TO THE PEOPLE'S POLICY IN ALL OTHER CASES INVOLVING CURRENT NONVIOLENT FELONIES, CREATED A PRESUMPTION OF VINDICTIVE PROSECUTION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 15 OF THE CALIFORNIA CONSTITUTION

### A. Factual and Procedural Background

Prior to sentencing, appellant moved to strike the prior serious felony convictions or juvenile adjudications. (CT 368.) In his motion, appellant asserted that for several years the District Attorney of the City and County of San Francisco consistently applied a policy in every case of declining to prosecute a current felony as a three-strikes case if the current felony were nonviolent. Appellant asserted that he was the only defendant during the administration of the current District Attorney to whom that policy had not been applied. The action of the People in pursuing a three-strikes prosecution following appellant's conviction of a nonviolent felony created the presumption of vindictive prosecution and violated appellant's rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. (CT 370-375.)

In support of his motion, appellant introduced the testimony Paul Cummins, an Assistant District Attorney for the City and County of San Francisco. (See RT (Feb. 2, 2001) 7.) Cummins testified that he was the Chief Assistant District Attorney and Chief of the District Attorney's Criminal Division. He was a members of the Three Strikes Committee; since 1994, all three strikes cases were reviewed and personally approved by the District Attorney. (RT (Feb. 2, 2001) 7-10, 19.)

Cummins testified that the policy of the District Attorney and his office since 1994 was not to prosecute current nonviolent felonies as three-strikes cases. (RT (Feb. 2, 2001) 10, 20, 28.) Cummins testified that the circumstances of the present case had never before occurred where the defendant, although charged with both current violent and nonviolent felonies, was eventually convicted of but a single nonviolent felony. (RT (Feb. 2, 2001) 35.) Cummins testified that this case was the only one of which he was aware in the last 6 or 7 years that deviated from the District Attorney's policy not to pursue three strikes in a case involving a current nonviolent felony.

Cummins testified that the intention of the District Attorney's office was to treat appellant's case as a three strikes case regardless of the jury's verdict in this case. (RT (Feb. 2, 2001) 17-18.) Cummins acknowledged that in all other cases the felony of which appellant was convicted would not be treated as a three strikes case; appellant's case was the only exception to the District Attorney's general policy since 1994. (RT (Feb. 2, 2001) 11.) Cummins also testified that the District Attorney's office consistently dismissed or agreed to strike allegations of prior serious felony convictions in current section 496 cases even in cases where the prior felony convictions involved very serious felonies. (RT (Feb. 2, 2001) 12.) The strike allegations would either be dismissed or reduced to a single strike. (RT (Feb. 2, 2001) 15.)

Deputy District Attorney Gerald Norman testified that he was the prosecutor assigned to this case. (RT (Feb. 2, 2001) 38.) He took over this case approximately 6 weeks before trial. (RT (Feb. 2, 2001) 38.) Before and after trial, Norman was informed that regardless of the outcome of trial, the decision whether to proceed as a three-strikes case had to be reviewed by the District Attorney. (RT (Feb. 2, 2001) 40.) After the jury

13

convicted appellant solely of a nonviolent felony, he told defense counsel that despite the District Attorney's policy of not prosecuting such cases as a three-strikes case, he would have to discuss the matter with his supervisors. (RT (Feb. 2, 2001) 39.)

Norman personally met with the District Attorney after appellant's conviction to discuss this case. (RT (Feb. 2, 2001) 40-42.)  At that meeting, the District Attorney expressed the view that appellant participated in the "totality of the crimes" -- obviously meaning those of which he had been acquitted -- and thus instructed Norman to "proceed with all strikes." (RT (Feb. 2, 2001) 47.)

Appellant's trial counsel testified that he and the original prosecutor assigned to the case discussed a disposition of the case; the prosecutor agreed to a non-strikes disposition if appellant would testify against MoJo Dumetz believed by the prosecutor to have been the actual killer. (RT (Feb. 2, 2001) 49.)  The prosecutor told defense counsel that if appellant did not testify against Dumetz, the People were going to proceed with a three-strikes prosecution.  Defense counsel strenuously objected at the time, asserting that the People were punishing appellant for going to trial. (RT (Feb. 2, 2001) 50.)

John Dwyer, a San Francisco prosecutor for approximately 30 years, testified that he was unaware of any current nonviolent felony that was prosecuted as a three-strikes case in San Francisco under the administration of the current District Attorney. (RT (Feb. 2, 2001) 58-59.)

The trial court considered the issue of vindictive prosecution solely from the perspective of whether the case initially had been properly charged as a three-strikes case. "I looked very carefully at the question of whether or not the case was properly charged as a three strikes case in the beginning.  That is where the question of the vindictive

14

prosecution comes in, ... ." (RT (Feb. 23, 2001) 111; see also RT 115.)  The trial court
denied appellant's motion to strike the prior serious felony convictions or juvenile
adjudications on grounds of vindictive prosecution at the conclusion of the evidentiary
proceedings. (CT 380.)

### B.  The Refusal to Dismiss Prior Strikes Allegations Following Appellant's Conviction of a Nonviolent Felony Created a Presumption of Vindictiveness

The constitutional protection against prosecutorial vindictiveness is based on the
fundamental notion that it would be "patently unconstitutional" to "chill the assertion of
constitutional rights by penalizing those who choose to exercise them." (*United States v.
Jackson* (1968) 390 U.S. 570, 581.)  In *North Carolina v. Pearce* (1969) 395 U.S. 711, the
United States Supreme Court held that the due process clause of the United States
Constitution protects a defendant from both actual vindictiveness and the *apprehension of
retaliation* for exercising a fundamental constitutional right. (*Id.* at p. 669 [emphasis
added].)

In *Blackledge v. Perry* (1974) 417 U.S. 21, the High Court held that due process
required that a person convicted of an offense is entitled to pursue his right to a trial de
novo without apprehension that the State will retaliate by substituting a more serious
charge for the original one, thus subjecting him to a significantly increased potential
period of incarceration. (*Id.* at p. 28.)  Although noting that due process is not offended by
all possibilities of increased punishment, the Court found such a violation in *Perry*
because the circumstances in that case presented a "realistic likelihood" of vindictiveness.
(*Id.* at p. 27.)  Significantly, the High Court recognized that the rationale underpinning a
finding of vindictiveness is not grounded upon the proposition that actual retaliatory

motivation must inevitably exist. The Supreme Court emphasized in *Perry* that no evidence of bad faith or maliciousness on the part of the prosecutor was produced or required. "Due process of law requires that such a potential for vindictiveness must not enter" into the process. (*Ibid.*)

In later cases, a presumption of vindictiveness was held not to arise where charges were increased prior to the attachment of jeopardy. (See *Bordenkircher v. Hayes* (1978) 434 U.S. 357, 362.) In *United States v. Goodwin* (1982) 457 U.S. 368, the Supreme Court found prosecutorial vindictiveness inapplicable in the context of pre-jeopardy plea negotiations. The Court declined to apply a presumption of vindictiveness in such cases deeming the presumption to apply "only in cases in which a reasonable likelihood of vindictiveness exists." (*Id.* at p. 373.)

The California Supreme Court has also recognized a due process protection of a similar scope under the state constitution. Thus, the due process clause of the California Constitution has been interpreted to prohibit increased charges motivated by prosecutorial vindictiveness. (*In re Bower* (1985) 38 Cal.3d 865, 873.) In *Bower*, the Court discussed with approval *In re David B.* (1977) 68 Cal.App.3d 931 in which the due process guarantee was similarly held to preclude a prosecutor from seeking a hearing on a juvenile's fitness to stand trial as an adult after the minor successfully challenged the juvenile court hearings and orders. The appellate court found that the prosecutor clearly retaliated and thereby exposed the minor to a significantly increased potential period of incarceration. (*Id.* at p. 936.)

The Supreme Court on discussing *In re David B.* in *Bower* significantly observed that the Court of Appeal did not discuss whether there was any evidence of retaliation or

16

apprehension but noted, as had the United States Supreme Court, that the rationale

underpinning the doctrine of prosecutorial vindictiveness "was not grounded upon the

proposition that actual retaliatory motive must inevitably exist." (*In re Bower, supra*, 38

Cal.3d at p. 876, quoting *In re David B., supra*, 68 Cal.App.3d at p. 935.)

In *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, the defendant's first trial

resulted in a mistrial. After the defendant declined a proffered plea bargain and invoked

his right to a retrial, the prosecution amended the information to include prior felony

convictions as sentence enhancements. These convictions did not constitute new

information; the prosecution knew of the convictions before the first trial and showed no

interest in them until after the retrial. The Supreme Court concluded that these were

circumstances that plainly gave rise to a presumption of vindictiveness. (*Id.* at p. 372.)

The presumption was applicable because the "prophylactic rule enunciated [by the United

States Supreme Court] in *Perry* [was needed to] protect against both the possibility that

defendant will be deterred from exercising a legal right, as well as the danger that the state

might be retaliating against defendant for maintaining his innocence and facing a retrial."

(*Id.* at pp. 369-370.) Significantly, the Supreme Court in *Twiggs* observed that no new

facts had been developed through the preliminary hearing or trial. (*Id* at p. 373.)

In *In re Bower, supra,* the petitioner was charged with a more severe crime after he

moved for a mistrial. As in the present case, jeopardy had attached. The prosecution

offered no new facts but, as in *Twiggs,* relied upon facts available at the time of the first

trial. The Supreme Court ruled that those circumstances presented a reasonable likelihood

of vindictiveness and that the increase in the severity of charges gave rise to a

presumption of vindictiveness which had not been rebutted by the prosecution  It is

17

noteworthy that the Court also held that "[r]egardless of the actual motive of the individual prosecutor, a judicial process which permitted the prosecution to increase the charges against a defendant who successfully exercised a constitutional or procedural right at trial would have a chilling effect upon the assertion of those rights and could undermine the integrity of the entire proceedings." (*In re Bower, supra*, 38 Cal.3d at p. 878.)

In light of the above authority, and as more fully discussed in Subsections A and D, the action of the People in pursuing a three-strikes case against appellant after he elected to proceed to trial by jury, after he had been acquitted of all charges except a single nonviolent felony, and contrary to the People's consistently applied policy not to pursue a three-strikes prosecution in every other case involving a current nonviolent felony, created a presumption of vindictiveness in this case.

## C. Standard of Review

The issue of prosecutorial vindictiveness involves fundamental constitutional due process rights under the United States and California Constitutions. (*North Carolina v. Pearce, supra*, 395 U.S. at p. 725; *In re Bower, supra*, 38 Cal.3d at p. 876.) In *Pearce*, the United States Supreme Court suggested that de novo or an independent standard of review should apply in cases involving proseuctorial vindictiveness. In respect to reviewing the imposition of a more severe sentence on retrial, the High Court stressed that the reasons must affirmatively appear and must be based upon objective information. The Court also stressed that the factual data must be made part of the record "so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." (*Id.* at p. 2081.) The Court's language is fully consistent with de novo or independent review. The High Court also appeared independently to review the entire record in *Colton v. Kentucky*

18

(1972) 407 U.S. 104, 116, another case involving vindictiveness.

The California Supreme Court in *In re Bower, supra,* 38 Cal.3d at p. 877 independently reviewed the prosecutor's conduct and statements, finding that the circumstances in that case presented a reasonable likelihood of vindictiveness.

More recently, in an analogous situation involving a different mixed question of law and fact, the Supreme Court in *People v. Cromer* (2001) 24 Cal.4th 889 adopted the independent or de novo standard of review. The Supreme Court ruled that a trial court's due diligence determination -- a similar mixed question of law and fact -- was subject to independent, de novo review rather than the more deferential abuse of discretion test. Relying as well on United States Supreme Court analyses of the standard of review for mixed questions of law and fact, the Court held that due diligence was also a mixed question involving a fundamental constitutional right. The Court concluded that independent review fully comported with its usual practice for review of other mixed question determinations affecting constitutional rights. Here, of course, the legal question involves a fundamental due process right under the United States and California Constitutions. While a deferential standard of review applies to the trial court's pure factual findings, whether a presumption of vindictiveness arose and whether the People rebutted the presumption of vindictiveness are mixed question of law and fact, requiring application of an objective, constitutionally based legal test which, on appeal, should be de novo or independent review.

### D. The People Failed to Rebut the Presumption of Vindictiveness

The Supreme Court went into great detail in *In re Bower, supra,* as to the manner by which the prosecution may rebut the presumption of vindictiveness. First, the Court

19

noted that prior cases "sometime referred to the prosecutor's burden of rebutting the presumption with 'an explanation that adequately eliminates actual vindictiveness'" (*Twiggs*), or to the burden of proving that the increase in the severity of the charges did not result from any vindictive motive (*United States v. Burt* (9th Cir. 1980) 619 F.2d 831, 836), or to the need to show that the more severe charge was "justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness." (*United States v. Griffin* (9th Cir. 1980) 617 F.2d 1342, 1347.)

The Court stressed, however, that courts have "consistently refused to attempt to ascertain the subjective intent of the prosecutor." (*In re Bower, supra*, 38 Cal.3d at p. 878.) In *Blackledge v. Perry, supra*, 417 U.S. at p. 28, the United States Supreme Court emphasized that the rationale is not grounded upon the proposition that actual retaliatory motivation must inevitably exist.

In *United States v. Ruesga-Martinez* (9th Cir. 1976) 534 F.2d 1367, 1369, the Court of Appeals for the Ninth Circuit explained that its conclusion in that case that a significant possibility that prosecutorial discretion may have been exercised with a vindictive motive or purpose was not intended to impugn the actual motives of the prosecuting office. Emphasizing that both *North Carolina v. Pearce* and *Blackledge v. Perry* sought to reduce or eliminate the apprehension on the part of an accused that he may be subjected to retaliatory or vindictive punishment only for attempting to exercise his procedural rights, the Court in *Ruesga-Martinez* explained that "the mere *appearance* of vindictiveness is enough to place the burden on the prosecution." (*Id.* at p. 1369 [italics in original].)

The Supreme Court in *In re Bower* has held:

20

It is thus apparent that the presumption of unconstitutional vindictiveness is a legal presumption which arises when the prosecutor increases the criminal charge against a defendant under the circumstances which ... are deemed to present a "reasonable likelihood of vindictiveness." The presumption is not based on the subjective state of mind of the individual prosecutor and does not imply that he or she individually harbors an improper motive." (*In re Bower, supra,* 38 Cal.3d at p. 879.)

The Court in *Bower* further held that the legal presumption cannot be rebutted by the prosecutor's declaration that he or she was motivated by a reassessment of the evidence against the defendant rather than by any desire to punish the exercise of a protected right. In order to rebut the presumption of vindictiveness, the prosecution must demonstrate "that (1) the increase in charge was justified by some objective change in circumstances or in the state of the evidence which legitimately influenced the charging process and (2) that the new information could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge." (*In re Bower, supra,* 38 Cal.3d at p. 879.)

In *United v. Preciado-Gomez* (9th Cir. 1976) 529 F.2d 935, the defendant was charged in a two-count indictment with making an illegal reentry into the United States and with making a false representation of United States citizenship at the time of that reentry. A mistrial was declared after the jury could not reach a verdict. The government reindicted the defendant on four counts: the two counts previously charged plus two additional counts charging earlier similar violations. The government's explanation for the added charges was the defendant claimed at the first trial that he had been issued a resident citizen card in a different name on the date of the alleged earlier illegal entry, a defense that the government considered to be misleading. The government therefore

21

sought to prove that the earlier entry was also illegal. The Court of Appeals concluded that prosecutorial vindictiveness decisional law of the United States Supreme Court did not prevent such charging conduct that was "unknown to the prosecutor or unproved by competent evidence prior to [defendant's] arrest or original indictment." (*Id.* at p. 941.) The Court of Appeals reasoned that such circumstances eliminate any per se assumption of vindictiveness. (*Id.* at p. 940.)

Even if *Preciado-Gomez* is now "out-of-line" with current authority of the Ninth Circuit, as noted by the Supreme Court in *Twiggs* (34 Cal.3d at p. 372), the facts are certainly distinguishable from the situation of the present case. The facts developed in *Preciado-Gomez* were "unknown" to the prosecutor prior to the first trial. Thus, when the defendant asserted a misleading defense during trial, the prosecutor legitimately reconsidered the charges. As noted by the Supreme Court in *Twiggs v. Superior Court, supra,* 34 Cal.3d at p. 360, the "prosecution had a rare but legitimate reason" in *Preciado-Gomez* "for adding the new charges; to strengthen, in its view, its case against defendant on the original charges."

In the present case, no new facts were developed at trial to justify the deviation in this case from the consistently applied policy not to pursue three-strikes in cases involving current nonviolent felonies. Appellant elected a trial by jury. He was acquitted of all alleged violent felonies. Nevertheless, the People sought to increase appellant's punishment solely because the District Attorney -- despite the jury's verdict -- reassessed the case after the jury trial and deemed that appellant had been involved in the totality of the crimes despite his acquittals. The Supreme Court has explicitly rejected such a justification as offered by the People in this case. (See *In re Bower, supra,* 36 Cal.3d at p.

22

880, fn. 7.)  The evidence of vindictiveness is apparent in the record.

The situation in the present case is somewhat akin to the circumstances in *Barajas v. Superior Court* (1983) 149 Cal.App.3d 30 where the defendant was originally charged with a misdemeanor and then charged and convicted of a felony on retrial.  The Court of Appeal found in that case that the prosecutor himself had caused a mistrial and then filed greater charges against the defendant.  The appellate court held that "[t]o require [defendant] to now face a felony charge would in effect reward the prosecutor for his . . . conduct." (*Id.* at p. 34.)

Certainly, the prosecutor did not cause appellant's conviction of but a single nonviolent felony.  As in *Barajas*, however, the prosecutor here sought to gain advantage over appellant after he was convicted of a nonviolent felony.  To permit the People to pursue a three-strikes case against appellant, contrary to its consistently applied policy in other current nonviolent felony cases, after the jury rejected the original rationale for the three-strikes prosecution, would be grossly unfair.  *Barajas* is cited not because it is controlling or because the factual circumstances are identical to those in the present case. *Barajas* is instructive rather in showing how unfair use by the prosecutor of crimes -- crimes in this case of which appellant was acquitted -- may support a finding of or illustrate vindictiveness, or preclude a finding that the presumption of vindictiveness has been rebutted.

Under the circumstances of this case, and in light of all the facts as revealed in the record on appeal, there was a reasonable likelihood of vindictiveness.  The prosecution failed to rebut the presumption of vindictiveness.  The prosecution failed to demonstrate that its decision to pursue three-strikes against appellant after he had been convicted of a

single nonviolent felony was justified by some objective change in circumstances or in the state of the evidence which legitimately influenced the People's decision. Accordingly, it was not constitutionally permissible under the Fourteenth Amendment to the United States Constitution and Article I, section 15 of the California Constitution for the state to respond to appellant's exercise of his right to trial by jury and his acquittals of all current violent felonies by pursuing three-strikes in a current nonviolent felony case contrary to the People's policy in every other nonviolent felony case in the City and County of San Francisco under the administration of its current District Attorney.

AMENDED
By, Petitioner: TROY HAYLES

To consider the circumstances surrounding the crimes Petioner was acquitted of, and then to allow them to be a bases to pursue 3-strikes, is in itself vindictive prosecution.

It is one thing to reassess a case, it is another to reassemble into a second Jury, disregard the judgement of acquittal and apply personal Judgment.

The people were afforded an equal and fair opportunity to pled there case; to bridge speculated gaps with competent evidence. Instead, they produce to the jury an unconvincing personal theory, which resulted in an acquittal of all violent offenses; they were unable to bridge the gaps with facts. In their reassessment of the case, they elected to diveate from their long established policy, not to 3-strike non-violent offenses, and decided to use discretion as a subsuted means to bridge the gaps in there case, and award them a successful prosecution based on personal theory; the same theory that a jury found unconvincing. This one of the areas where presumption of vindictiveness arises; here, the people use discretion as an excuse to diveate from policy, and a cover to prosecute vindictively.

For the foregoing reasons, Petitioner hereby request
that 3rd strike be removed and remanded for resentencing.


Troy Hayles

TABLE OF CASES

Barajas v. Superior Court (1983) 149 Cal.App.3d 30

Blackledge v. Perry (1974) 417 U.S. 21

Bordenkircher v. Hayes (1978) 434 U.S. 357

Colton v. Kentucky (1972) 407 U.S. 104

In re Bower (1985) 38 Cal.3d 865

North Calolinia v. Pearce (1969) 395 U.S. 711

In re David B (1977) 68 Cal.App.3d 931

People v. Cromer (2001) 24 Cal 4th 889

People v. Superior Court(Romero)(1994) 13 Cal.4th 497

Twiggs v. Superior Court (1983)34 Cal.3d 360

United States v. Burt (ХХ 9th Cir.1980)619 F.2d 831

United States v. Goodwin (1982)457 U.S. 368

United States v. Griffin (9th Cir. 1980) 617 F.2d 1342

United States v. Jackson (1968) 390 U.S. 570

United States v. Ruesga-Martinez (9th Cir.1976) 534 F.2d 1367

United v. Preciado-Gomez (9thCir. 1976) ХХХ 529 F.2d 935

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No.    If yes, give the following information:

  a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

    Court of Appeal.

  b.  Result:  Appeal denied.    c.  Date of decision:  3 Jan 2003

  d.  Case number or citation of opinion, if known:

  e.  Issues raised:  (1) Vindictive prosecution.

               (2)

               (3)

  f.  Were you represented by counsel on appeal?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

    William D. Farber.

9. Did you seek review in the California Supreme Court?  ☒ Yes.  ☐ No.    If yes, give the following information:

  a.  Result:  Review denied.    b.  Date of decision:  9 April 2003

  c.  Case number or citation of opinion, if known:

  d.  Issues raised:  (1) Vindictive prosecution.

               (2)

               (3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

  Ineffective assistance by appellate counsel.

11. Administrative Review:

  a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

  b.  Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.

  *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_Petitioner needed time to research claimed grounds._

_____

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:

_8 August 2004_

▶ _Tray Haytes_
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]          PETITION FOR WRIT OF HABEAS CORPUS          WEST GROUP Official Publisher          Page six of six

# VERIFICATION

STATE OF CALIFORNIA
COUNTY OF IMPERIAL

(C.C.P. SEC. 446 & 2015.5; 28 U.S.C. 1746)

I, _Troy Hayles_ DECLARE UNDER PENALTY OF PERJURY THAT:
I AM THE _____ IN THE ABOVE ENTITLED ACTION. I HAVE
READ THE FOREGOING DOCUMENTS AND KNOW THE CONTENTS THEREOF AND
THE SAME IS TRUE OF MY OWN KNOWLEDGE, EXCEPT AS TO MATTERS STATED
THEREIN UPON INFORMATION, AND BELIEF, AND AS TO THOSE MATTERS, I
BELIEVE THEM TO BE TRUE.

EXECUTED THIS _____7_____ DAY OF _June_ 2004,
AT CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002

(SIGNATURE) _Troy Hayles_
(DECLARANT/PRISONER)

## PROOF OF SERVICE BY MAIL

(C.C.P. SEC. 1013 (a) & 2015.5; 28 U.S.C. SEC. 1746)

I _____ AM A RESIDENT OF CALIPATRIA STATE
PRISON, IN THE COUNTY OF IMPERIAL, STATE OF CALIFORNIA, I AM OVER THE AGE OF
EIGHTEEN (18) YEARS OF AGE AND AM / AM NOT A PARTY OF THE ABOVE INTITLED
ACTION. MY STATE PRISON ADDRESS IS P.O. BOX 5002, CALIPATRIA, CALIFORNIA
92233-5002.

ON _____7- June_____, 2004 IS SERVED THE FOREGOING.

(SET FORTH EXACT TITLE OF DOCUMENTS SERVED)
ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY(S) THEREOF, ENCLOSED IN A
SEALED ENVELOPE(S), WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES
MAIL, IN A DEPOSIT BOX SO PROVIDED AT CALIPATRIA STATE PRISON, CALIPATRIA,
CALIFORNIA, 92233-5002.

_Petition - Habeas corpus._
_To: First Appellate District, Div-4_

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED,
AND THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING
AND THE PLACE SO ADDRESSED, I DECLARE UNDER PENALTY OF PERJURY THAT THE
FOREGOING IS TRUE AND CORRECT.

DATE: _7- June_, 2004                    _Troy Hayles_
                                          (DECLARANT/PRISONER)

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE CITY AND COUNTY OF SAN FRANCISCO

FILED
San Francisco County Superior Court

JAN 2 3 2004

GORDON PARK-LI, Clerk
BY: _____ Deputy Clerk

Department No. 22

---

IN THE MATTER OF THE APPLICATION )
OF                                )
          __                      )    WRIT NO. 4810
                                  )
TROY HAYLES,                      )    SUPERIOR COURT NO. 177096
                                  )
          Petitioner,             )
                                  )
FOR A WRIT OF HABEAS CORPUS       )
                                  )

---

A petition for habeas corpus has been received.

Petitioner was convicted in a jury trial in the Superior Court, San Francisco County, of receiving stolen property. He was sentenced under Three Strikes Law to state prison for a term of 25 years to life. Petitioner appealed, and the Court of Appeal, First District, affirmed the judgment of conviction on January 30, 2003.

Petitioner complains he is unlawfully detained because the prosecution failed to prove all the elements of receiving stolen property at trial, and because he received ineffective assistance of trial and appellate counsel. He requests a new trial.

As to his first claim, the issue of insufficiency of the evidence to support a conviction is not cognizable in and of itself in a habeas corpus proceeding. (In re Spears (1984) 157 Cal.App.3d 157; In re Lindley (1947) 29 Cal.2d 709, 723.)

As to Petitioner's claims of ineffective assistance of trial and appellate counsel, Petitioner does not provide a copy of the trial transcript, the appellate brief filed on his behalf, or the entire unpublished decision of the Court of Appeal. Petitioner has the burden of providing documentary evidence to support his claim. Without these documents a decision regarding the ineffective assistance of his trial and appellate counsel is impossible. A petition for writ of habeas corpus should both (1) state fully and with particularity the facts upon which relief is sought, and (2) include copies of reasonably available documentary evidence supporting the claim, including affidavits or declarations. (People v. Duvall (1995) 9 Cal.4th 464, 474.) "Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing." (Ibid., quoting People v. Karis (1988) 46 Cal.3d 612, 656.)

1

For the foregoing reason(s), Petitioner's writ of habeas corpus is DENIED.

Dated: _January 23, 2004_                    _[signature] Mary C. Morgan_
                                             Judge of the Superior Court

Court of Appeal, First Appellate District, Division Four - No. A094429
**S114068**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

TROY HAYLES, Defendant and Appellant.

Petition for review DENIED.

SUPREME COURT
FILED

APR - 9 2003

Frederick K. Ohlrich Clerk

DEPUTY

Chief Justice

*COPY*

Filed 1/30/03

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

**FILED**

Court of Appeal · First App. Dist

JAN 3 0 2003

RON D. BARROW, CLERK

By _____

DEPUTY

THE PEOPLE,

    Plaintiff and Respondent,

v.

TROY HAYLES,

    Defendant and Appellant.

A094429

(San Francisco County
Super. Ct. No. 177096)

    The sole issue on this timely appeal is whether defendant Troy Hayles was the victim of prosecutorial vindictiveness.

    The District Attorney of San Francisco filed an information by which defendant was charged with first degree murder with special circumstances, robbery, burglary, arson, and receiving stolen property. It was also alleged in the information that defendant had four prior felony convictions (three for robbery, one for attempted robbery) for purposes of the three strikes statutes (Pen. Code, §§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)). A jury found defendant guilty of receiving stolen property, but acquitted him of the other charges. Thereafter the jury found three of the allegations of prior felony convictions (two of the robberies and the attempted robbery) to be true.

    In addition to moving for a new trial, defendant moved for "a dismissal of the allegations of prior convictions ['strikes'] on the ground that the prosecution's conduct in charging them after Mr. Hayles was convicted only of a non-violent and non-serious

1

felony is vindictive, an abuse of discretion, and violative of the due process and equal protection clauses of the United States and California Constitutions."

The dismissal motion was the basis of a hearing conducted by the trial court on the date set for sentencing. The evidence received at that hearing may be summarized as follows: Since Terence Hallinan became district attorney in 1994 it has been general office policy that if a defendant is currently charged with only a nonserious, nonviolent felony, it is not prosecuted as a three strikes case. Individual deputies with the appropriate authority may make the decision to *charge* three strikes, but the decision to actually proceed to trial as a three strikes case comes from the three strikes committee within the office, subject to approval by District Attorney Hallinan. The policy is not immutable, and the office's three strikes committee may make case-by-case exceptions depending on the circumstances of the latest offense and the nature of the defendant's criminal history. After the jury's verdicts were returned, the deputy who tried the case reported to Mr. Hallinan, who directed the deputy to "Proceed with all strikes."

The office's three strikes policy has never been reduced to writing. Exceptions to the policy are "few and far between." The policy did not address defendant's situation— an accused charged with violent and nonviolent felonies who is convicted only of a single nonviolent felony—which had never occurred before defendant's trial. In fact, he is the only person not convicted of a violent or serious felony the San Francisco District Attorney's Office has elected to prosecute under the three strikes statutes.

The trial court continued the hearing in order to allow the defense time to search court records to discover if defendant's situation truly was unique. When the hearing resumed, defendant's counsel advised that the situation had no precedent. The court heard argument and then ruled as follows: "We have never had a case like this before. The evidence was that even after the . . . jury came back and found the defendant not guilty of all the violent crimes but guilty of the nonviolent one, that the matter went before the Three Strikes Committee again. It was faced for the very first time with the issue that we have before us right now. They [*sic*] said we will continue to assert three strikes. The Court cannot find that this is abuse of discretion or vindictive or anything.

2

It's the first time they have ever done it. Nobody was being singled out at all and all of your argument that Mr. Hayles is being singled out are not persuasive. He is not. He has not been singled out for anything. He is in a position where having won a trial on . . . the violent crimes, we now find ourselves in a posture that has never been confronted in this system before. Nobody is being singled out. It just is not factually correct." The court then denied defendant's other motions and sentenced him to state prison for a term of 25 years to life.

At the outset it must be established that defendant is not asserting the usual type of prosecutorial vindictiveness (which is also known as discriminatory prosecution.) "[A] defendant's claim of discriminatory prosecution goes not to the nature of the charged offense, but to a defect of constitutional dimension in the initiation of the prosecution. [Citation.] The defect lies in the denial of equal protection to persons who are singled out for a prosecution that is 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' [Citation.] . . . [¶] Unequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement." (*Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 831-832.) The familiar settings for vindictiveness claims are singling out select groups or persons for prosecution (e.g., *Murgia v. Municipal Court* (1975) 15 Cal.3d 286 [harassing prosecution of UFW members]) or increasing the charges after the defendant either rejects a plea bargain (*Bordenkircher v. Hayes* (1978) 434 U.S. 357) or invokes a statutory remedy (*Blackledge v. Perry* (1974) 417 U.S. 21 [after defendant convicted of misdemeanor and asks for trial de novo, prosecutor gets felony indictment for same conduct]; *In re Bower* (1985) 38 Cal.3d 865 [after defendant charged with second degree murder successfully moves for mistrial, prosecutor retries for

3

first degree murder]). Defendant does not claim that any of these categories apply to him.[1]

Having shown that defendant's situation does not have an established slot in the analytical template, it remains to be determined what is the precise nature of defendant's complaint. Defendant's motion to dismiss the strikes referred to them as having been charged after defendant's conviction of the non-violent felony. This is incorrect. The allegations that he had prior convictions that qualified as strikes were in the case from the outset, so it cannot be maintained their introduction into the case was in any sense retaliatory. Because the prosecution did not "up the ante" by filing new charges in response to any action taken by defendant, either before or after the trial, there is no occasion to apply a presumption that the prosecution was acting vindictively. (See, e.g., *In re Bower, supra,* 38 Cal.3d 865, 876-878; *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 368-372; *People v. Bracey, supra,* 21 Cal.App.4th 1532, 1544-1547.) On the contrary, the focus of defendant's contention is not on what the prosecution did, but

---

[1] At the hearing on defendant's dismissal motion, his attorney testified that he discussed a possible plea bargain with the prosecutor prior to trial. The prosecutor was interested in getting defendant to testify against someone else. According to defendant's attorney, "the essence of it was if Troy will testify against Mojo Dumetz, he can have a nonstrike disposition, that is a determinate sentence. We did not get down to a period of years." Counsel also testified that the prosecutor told him, "If he does not testify against Mojo, . . . we are going to three strike him," to which defendant's counsel replied, "That is punishing him for going to trial on a very weak murder case." Although in arguing defendant's dismissal motion his counsel mentioned this incident, he never explicitly tied rejection of the inchoate "bargain" to the concept of vindictiveness. The trial court found "no evidence" of a completed bargain. Defendant does not rely on this pretrial event in his briefs. Moreover, our Supreme Court has stated that "a presumption of prosecutorial vindictiveness ordinarily would not arise from a prosecutor's failure to reinstate an offer." (*In re Alvernaz* (1992) 2 Cal.4th 924, 943; see *People v. Bracey* (1994) 21 Cal.App.4th 1532, 1546-1547 and authorities cited.)

Although not mentioned in his moving papers, at the hearing defendant asked the court to consider dismissing some of the strikes pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. This is another issue that defendant has not renewed for purposes of this appeal.

4

rather on what it did *not* do—discontinue the prosecution as a three strikes case once the jury returned its verdicts. He implicitly concedes that no reported decision addresses the subject of such inaction by a prosecutor amounting to vindictiveness. Our own research has found no similar or analogous situation. Nevertheless, we believe the trial court had ample justification for finding that no prosecutor vindictiveness was shown.

Defendant appears to be arguing that when District Attorney Hallinan and the three strikes committee reviewed the case and found that it still qualified as one appropriate for three strikes treatment—and when the trial court upheld that decision—a sort of end-run around the jury's acquittals was accomplished. We disagree. Defendant was not sentenced for murder, arson, robbery, or burglary. He was sentenced on the receiving count, plus the strike enhancement allegations, which the jury found true. Those allegations were completely independent of the substantive charges on which defendant was acquitted. Nor do we think it improper for District Attorney Hallinan and his staff to consider the state of the evidence in the case regarding murder even if the jury had determined that the same evidence was not sufficient to prove guilt beyond a reasonable doubt. A trial court is entitled to make decisions based on the facts of acquitted charges. (See, e.g., *In re Coughlin* (1976) 16 Cal.3d 52 [probation revocation allowed on same facts as criminal trial acquittal]; *In re Dunham* (1976) 16 Cal.3d 63 [parole revocation allowed on same facts as criminal trial acquittal]; *People v. Gragg* (1989) 216 Cal.App.3d 32, 42-46 [probation denial allowed on same facts as acquittal].) If it is permissible for a court to take account of the circumstances underlying acquitted charges, there is no reason why it should be impermissible for a prosecutor to do the same.

A final comment concerns the essence of prosecutorial vindictiveness—the denial of equal protection. In order to warrant judicial intervention, there must be a threshold showing that persons are "similarly situated" and are being treated differently before the law demands they be treated alike. (E.g., *In re Eric J.* (1979) 25 Cal.3d 522, 530-531; *People v. Poe* (1999) 74 Cal.App.4th 826, 835.) In this case, however, defendant has no point of comparison. Because he is the first and only person in his situation—charged

5

with violent and nonviolent offenses, convicted only of a single nonviolent charge, for which the prosecution asks for the maximum three strikes sentence—he cannot demonstrate that someone else was not treated in the same manner as he was. Nothing in the district attorney's unwritten policy covered defendant's situation. Without an actual instance of another defendant standing in the same situation who has been treated differently, no violation of equal protection, and thus prosecutorial vindictiveness, has been established.

The judgment of conviction is affirmed.

_____
Kay, P.J.

We concur:


_____
Sepulveda, J.


_____
Rivera, J.

*People v. Hayles*
A094429

7

# PROOF OF SERVICE

**People v. Hayles**
A094429

    I, William D. Farber, declare under penalty of perjury that I am counsel of record for defendant and appellant Troy Hayles in this case, and further that my business address is William D. Farber, Attorney at Law, P.O. Box 2026, San Rafael, CA 94912-2026.  On February 24, 2003, I served the within **Petition for Review** by depositing copies each in a sealed envelope with postage thereon fully prepaid, in the United States Postal Service, at San Rafael, California, addressed respectively as follows:

Bill Lockyer, Esq.
Attorney General
State of California
455 Golden Gate Ave.
Suite 11000
San Francisco, CA 94102-3664

Terrance Hallinan, Esq.
District Attorney
City and County of San Francisco
850 Bryant Street
San Francisco, CA 94102

First District Appellate Project
730 Harrison Street
Suite 201
San Francisco, CA 94107

Clerk, Court of Appeal
First Appellate District, Div. 4
350 McAllister Street
San Francisco, CA 94102

Troy Hayles
E-16711
Calipatria State Prison
P.O. Box 5001
Calipatria, CA 92233

Clerk
City and County of San Francisco
Criminal Appeals
850 Bryant Street
San Francisco, CA 94103

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  February 24, 2003.

WILLIAM D. FARBER
Declarant

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

**FILED**

JUN 1 7 2004

Court of Appea. - First App. Dist.
DIANA HERBERT

By_____
                  DEPUTY

In re TROY HAYLES,

    on Habeas Corpus.

A106747

(San Francisco County
Super. Ct. No. 177096)

BY THE COURT:

    The petition for writ of habeas corpus is denied.

        (Kay, P.J., and Sepulveda, J., joined in the decision.)

Date: __JUN 1 7 2004_____     _____KAY, P.J.,P.J._____

# VERIFICATION

STATE OF CALIFORNIA
COUNTY OF IMPERIAL

_____

(C.C.P. SEC. 446 & 2015.5; 28 U.S.C. 1746)

I,_____ DECLARE UNDER PENALTY OF PERJURY THAT:
I AM THE _DECLARANT_ IN THE ABOVE ENTITLED ACTION. I HAVE
READ THE FOREGOING DOCUMENTS AND KNOW THE CONTENTS THEREOF AND
THE SAME IS TRUE OF MY OWN KNOWLEDGE, EXCEPT AS TO MATTERS STATED
THEREIN UPON INFORMATION, AND BELIEF, AND AS TO THOSE MATTERS, I
BELIEVE THEM TO BE TRUE.

EXECUTED THIS _10th_ DAY OF _August_ 2004,
AT CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002

(SIGNATURE) _Terry Hayles_
(DECLARANT/PRISONER)

_____

## PROOF OF SERVICE BY MAIL

(C.C.P. SEC. 1013 (a) & 2015.5; 28 U.S.C. SEC. 1746)

I _Monta Lee_ AM A RESIDENT OF CALIPATRIA STATE
PRISON, IN THE COUNTY OF IMPERIAL, STATE OF CALIFORNIA, I AM OVER THE AGE OF
EIGHTEEN (18) YEARS OF AGE AND AM / AM NOT A PARTY OF THE ABOVE INTITLED
ACTION. MY STATE PRISON ADDRESS IS P.O. BOX 5002, CALIPATRIA, CALIFORNIA
92233-5002.

ON _August 10th_, 2004 IS SERVED THE FOREGOING.

_____

(SET FORTH EXACT TITLE OF DOCUMENTS SERVED)
ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY(S) THEREOF, ENCLOSED IN A
SEALED ENVELOPE(S), WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES
MAIL, IN A DEPOSIT BOX SO PROVIDED AT CALIPATRIA STATE PRISON, CALIPATRIA,
CALIFORNIA, 92233-5002. _petition._
_Submitted to California Supreme Courts_

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED,
AND THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING
AND THE PLACE SO ADDRESSED, I DECLARE UNDER PENALTY OF PERJURY THAT THE
FOREGOING IS TRUE AND CORRECT.

DATE: _10th August_, 2004             _Terry Hayles_
                                      (DECLARANT/PRISONER)

Filed 1/30/03  P. v. Hayles CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b).  This opinion has not been certified for publication or ordered published for purposes of rule 977.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>TROY HAYLES,<br><br>      Defendant and Appellant. | A094429<br><br>(San Francisco County<br>Super. Ct. No. 177096) |

      The sole issue on this timely appeal is whether defendant Troy Hayles was the victim of prosecutorial vindictiveness.

      The District Attorney of San Francisco filed an information by which defendant was charged with first degree murder with special circumstances, robbery, burglary, arson, and receiving stolen property.  It was also alleged in the information that defendant had four prior felony convictions (three for robbery, one for attempted robbery) for purposes of the three strikes statutes (Pen. Code, §§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)).  A jury found defendant guilty of receiving stolen property, but acquitted him of the other charges.  Thereafter the jury found three of the allegations of prior felony convictions (two of the robberies and the attempted robbery) to be true.

      In addition to moving for a new trial, defendant moved for "a dismissal of the allegations of prior convictions ['strikes'] on the ground that the prosecution's conduct in charging them after Mr. Hayles was convicted only of a non-violent and non-serious

felony is vindictive, an abuse of discretion, and violative of the due process and equal protection clauses of the United States and California Constitutions."

The dismissal motion was the basis of a hearing conducted by the trial court on the date set for sentencing. The evidence received at that hearing may be summarized as follows: Since Terence Hallinan became district attorney in 1994 it has been general office policy that if a defendant is currently charged with only a nonserious, nonviolent felony, it is not prosecuted as a three strikes case. Individual deputies with the appropriate authority may make the decision to *charge* three strikes, but the decision to actually proceed to trial as a three strikes case comes from the three strikes committee within the office, subject to approval by District Attorney Hallinan. The policy is not immutable, and the office's three strikes committee may make case-by-case exceptions depending on the circumstances of the latest offense and the nature of the defendant's criminal history. After the jury's verdicts were returned, the deputy who tried the case reported to Mr. Hallinan, who directed the deputy to "Proceed with all strikes."

The office's three strikes policy has never been reduced to writing. Exceptions to the policy are "few and far between." The policy did not address defendant's situation— an accused charged with violent and nonviolent felonies who is convicted only of a single nonviolent felony—which had never occurred before defendant's trial. In fact, he is the only person not convicted of a violent or serious felony the San Francisco District Attorney's Office has elected to prosecute under the three strikes statutes.

The trial court continued the hearing in order to allow the defense time to search court records to discover if defendant's situation truly was unique. When the hearing resumed, defendant's counsel advised that the situation had no precedent. The court heard argument and then ruled as follows: "We have never had a case like this before. The evidence was that even after the . . . jury came back and found the defendant not guilty of all the violent crimes but guilty of the nonviolent one, that the matter went before the Three Strikes Committee again. It was faced for the very first time with the issue that we have before us right now. They [*sic*] said we will continue to assert three strikes. The Court cannot find that this is abuse of discretion or vindictive or anything.

2

It's the first time they have ever done it. Nobody was being singled out at all and all of your argument that Mr. Hayles is being singled out are not persuasive. He is not. He has not been singled out for anything. He is in a position where having won a trial on . . . the violent crimes, we now find ourselves in a posture that has never been confronted in this system before. Nobody is being singled out. It just is not factually correct." The court then denied defendant's other motions and sentenced him to state prison for a term of 25 years to life.

At the outset it must be established that defendant is not asserting the usual type of prosecutorial vindictiveness (which is also known as discriminatory prosecution.) "[A] defendant's claim of discriminatory prosecution goes not to the nature of the charged offense, but to a defect of constitutional dimension in the initiation of the prosecution. [Citation.] The defect lies in the denial of equal protection to persons who are singled out for a prosecution that is 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' [Citation.] . . . [¶] Unequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement." (*Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 831-832.) The familiar settings for vindictiveness claims are singling out select groups or persons for prosecution (e.g., *Murgia v. Municipal Court* (1975) 15 Cal.3d 286 [harassing prosecution of UFW members]) or increasing the charges after the defendant either rejects a plea bargain (*Bordenkircher v. Hayes* (1978) 434 U.S. 357) or invokes a statutory remedy (*Blackledge v. Perry* (1974) 417 U.S. 21 [after defendant convicted of misdemeanor and asks for trial de novo, prosecutor gets felony indictment for same conduct]; *In re Bower* (1985) 38 Cal.3d 865 [after defendant charged with second degree murder successfully moves for mistrial, prosecutor retries for

first degree murder]). Defendant does not claim that any of these categories apply to him.[1]

Having shown that defendant's situation does not have an established slot in the analytical template, it remains to be determined what is the precise nature of defendant's complaint. Defendant's motion to dismiss the strikes referred to them as having been charged after defendant's conviction of the non-violent felony. This is incorrect. The allegations that he had prior convictions that qualified as strikes were in the case from the outset, so it cannot be maintained their introduction into the case was in any sense retaliatory. Because the prosecution did not "up the ante" by filing new charges in response to any action taken by defendant, either before or after the trial, there is no occasion to apply a presumption that the prosecution was acting vindictively. (See, e.g., *In re Bower, supra,* 38 Cal.3d 865, 876-878; *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 368-372; *People v. Bracey, supra,* 21 Cal.App.4th 1532, 1544-1547.) On the contrary, the focus of defendant's contention is not on what the prosecution did, but

---

1 At the hearing on defendant's dismissal motion, his attorney testified that he discussed a possible plea bargain with the prosecutor prior to trial. The prosecutor was interested in getting defendant to testify against someone else. According to defendant's attorney, "the essence of it was if Troy will testify against Mojo Dumetz, he can have a nonstrike disposition, that is a determinate sentence. We did not get down to a period of years." Counsel also testified that the prosecutor told him, "If he does not testify against Mojo, . . . we are going to three strike him," to which defendant's counsel replied, "That is punishing him for going to trial on a very weak murder case." Although in arguing defendant's dismissal motion his counsel mentioned this incident, he never explicitly tied rejection of the inchoate "bargain" to the concept of vindictiveness. The trial court found "no evidence" of a completed bargain. Defendant does not rely on this pretrial event in his briefs. Moreover, our Supreme Court has stated that "a presumption of prosecutorial vindictiveness ordinarily would not arise from a prosecutor's failure to reinstate an offer." (*In re Alvernaz* (1992) 2 Cal.4th 924, 943; see *People v. Bracey* (1994) 21 Cal.App.4th 1532, 1546-1547 and authorities cited.)

Although not mentioned in his moving papers, at the hearing defendant asked the court to consider dismissing some of the strikes pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. This is another issue that defendant has not renewed for purposes of this appeal.

4

rather on what it did *not* do—discontinue the prosecution as a three strikes case once the jury returned its verdicts. He implicitly concedes that no reported decision addresses the subject of such inaction by a prosecutor amounting to vindictiveness. Our own research has found no similar or analogous situation. Nevertheless, we believe the trial court had ample justification for finding that no prosecutor vindictiveness was shown.

Defendant appears to be arguing that when District Attorney Hallinan and the three strikes committee reviewed the case and found that it still qualified as one appropriate for three strikes treatment—and when the trial court upheld that decision—a sort of end-run around the jury's acquittals was accomplished. We disagree. Defendant was not sentenced for murder, arson, robbery, or burglary. He was sentenced on the receiving count, plus the strike enhancement allegations, which the jury found true. Those allegations were completely independent of the substantive charges on which defendant was acquitted. Nor do we think it improper for District Attorney Hallinan and his staff to consider the state of the evidence in the case regarding murder even if the jury had determined that the same evidence was not sufficient to prove guilt beyond a reasonable doubt. A trial court is entitled to make decisions based on the facts of acquitted charges. (See, e.g., *In re Coughlin* (1976) 16 Cal.3d 52 [probation revocation allowed on same facts as criminal trial acquittal]; *In re Dunham* (1976) 16 Cal.3d 63 [parole revocation allowed on same facts as criminal trial acquittal]; *People v. Gragg* (1989) 216 Cal.App.3d 32, 42-46 [probation denial allowed on same facts as acquittal].) If it is permissible for a court to take account of the circumstances underlying acquitted charges, there is no reason why it should be impermissible for a prosecutor to do the same.

A final comment concerns the essence of prosecutorial vindictiveness—the denial of equal protection. In order to warrant judicial intervention, there must be a threshold showing that persons are "similarly situated" and are being treated differently before the law demands they be treated alike. (E.g., *In re Eric J.* (1979) 25 Cal.3d 522, 530-531; *People v. Poe* (1999) 74 Cal.App.4th 826, 835.) In this case, however, defendant has no point of comparison. Because he is the first and only person in his situation—charged

5

with violent and nonviolent offenses, convicted only of a single nonviolent charge, for which the prosecution asks for the maximum three strikes sentence—he cannot demonstrate that someone else was not treated in the same manner as he was. Nothing in the district attorney's unwritten policy covered defendant's situation. Without an actual instance of another defendant standing in the same situation who has been treated differently, no violation of equal protection, and thus prosecutorial vindictiveness, has been established.

     The judgment of conviction is affirmed.


                                         _____

                                         Kay, P.J.


We concur:


_____

Sepulveda, J.


_____

Rivera, J.

**EXHIBIT 12**

S127064

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re TROY HAYLES on Habeas Corpus

---

Petition for writ of habeas corpus is DENIED.

Brown, J., was absent and did not participate.

SUPREME COURT
FILED

JUN 2 9 2005

Frederick K. Ohlrich Clerk

DEPUTY

_____
Chief Justice

**EXHIBIT 13**

TROY HAYLES, #E-16711
SAC-4/CSP. A8-105
P.O. Box-290066
Represa,CA 95671

In Pro Per.

# DIVISION FOUR

Court of Appeals of The State of California
FOR THE CITY AND COUNTY OF SAN FRANCISCO

TROY HAYLES
Petitioner,                              )        NO. 1880412/177096
                                         )        MOTION TO VACATE JUDGMENT.
**A111534**                              )
                                         )
                                         )        Date: 5/27/05
                                         )        DEPT: 26.
                                         )
PEOPLE OF THE STATE OF CALIFORNIA.)
Plaintiff.                               |

A106747

FILED
SEP 2 9 2005
Court of Appeal - First App. Dist
By DIANA HERBERT
DEPUTY

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO VACATE JUDGMENT.

### I. STATEMENT OF FACTS AND OF THE CASE.

Petitioner was charged with murder, robbery, burglary, arson, and
receiving stolen property. He was acquitted at trial of all charges
exccept the last; he was found guilty of receiving stolen property.
Allegations of prior convictions were found to be true.

On October 5, 1998, petitioner was interviewed by Inspectors A. Gordon,
and C. Cashen. Petitioner agreed to speak to them after he was read
his Rights. Petitioner made incriminating statements regarding some
property that belong to victem of the alledged murder mentioned above.
However, when petitioner was asked about the murder of Joyce Ruger,
he decline to talk and asked for an attorney. His request for an attorney
was ignored, and the questioning continue.
A Miranda violation was clearly committed. The      charges were dropped,
and then pick up again on October 4, 1999; wherein, petitioner's statements
made on October 5, 1998, became evidence against him. But, sometime before
trial the prosecutor and trial counsel agreed to suppress half of petitioner's
statements; they agreed to cut out the Miranda Violation.

1.

This was done without petitioner's knowledge or consent, nor do the records show a Motion to suppress any part of his statements; this agreement between trial counsel and prosecutor was made outside of court. Petitioner never stipulated that he agreed to such an act.

This is a clear violation of petitioner's constitutional rights, due process and equal protection.


II.                          (Ground Two)

Petitioner's arrest was based on a Grand jury indictment, on October 4, 1999. The indictment was granted solely on the statement of an informant, who agreed to testify in exchange of his release from the County jail. (Which was granted) Mr. Brown, the informant, never showed up at the Grand Jury hearing, although he was subponena. (Id.RT. of Plem: p-130 or 141) Mr. Brown was Petitioner's sole accuser for the alledged crime of murder, robbery, burglary, arson, and receiving stolen property. Petitioner looked forward to confronting Mr. Brown, and hearing his testimony under cross examination. However, again Mr. Brown did not show up at petitioner's preliminary. (See-Prelim: p130 or 141) Petitioner has a constitutional right to face and confront his accuser, and he was not aforded this right at his preliminary, nor does he recall ever waiving this right; the record is void of such evidence.


III. Introduction.

          By this motion, petitioner asks that his conviction be set aside, and granted a new trial for receiving stolen property. The grounds are that petitioner was harmed by prejudicial conduct that resulted in a fundamental miscarrage of justice, executed by Trail counsel, and prosecutor, in their illegal act of suppressing evidence outside of court; and that petitioner was not aforded the right to confront his accuser, because the accuser where about were unknown to the prosecuotr.


IV. The introduction in evidence of a confession obtained in violation of constitutional guarantees was prejudicial per se, and this error alone compels reversal of a judgment of conviction. People v. Fioritto, 68 Cal.2d 714,720. Homicide Inspectors violated petitioner's miranda rights by ignoring his request for an attorney. Miranda V. Arizona, 384 U.S. 436.

(2)

In doning so, the interrogation became a "tree that bore fruits of poison."
Like this, it likely that petitioner's statements would have been deemed
inadmisable based on the fact it was "damaged goods," in violation
of the Fifth Amendment. The agreement to suppress the tainted evidence
by prosecutor and trial counsel was a prejudicial act agianst petitioner
and therefore, in violation of the Fourteenth Amendment; because it was
done without petitioner's consent or, acknowledgement, nor was there ever
a motion to suppress filed before a court for the records.
Hence,the introduction of his statements were in error of law, and subject-
ed him to an unfair trial.
Although the improper introduction of a confession is reversible error
per se, People v. Randall, (1970) 1 Cal.3d 948, 958, the wrongful
introduction of an admission is not reversible "if the people can show
beyond a reasonable doubt that the error complained of did not contribute
to the verdict." In the present complaint, the verdict is at rest on
the error.

Sixth Amendment confrontation clause. See Coy v. Iowa, 487 U.S.

The clause "guarantees the defendant a face to face meeting with witness
appearing before the trier of fact."(Id. at 1016, 108 S.Ct. at 2801)
This physical confrontation "enhances the accuracy the risk that a
witness will wrongfully implicate an innocent person." Maryland v. Craig,
497 U.S. 836,846. See also Coy, 487 U.S. at 1019, 108 S. Ct at 2802.
(A witness may feel quite differently when he has to repeat his story
looking at the man whom he will harm greatly by distorting or mistaking
the facts.) (Quoting Z Chafee: The blessing of liberty 35(1956)
The confrontation clause thus gives the defendant the right to be present
and to confront witness giving testimony during a pretrisl desposition,
where the deposition is intended for use at trial. Don v. Nix, 886 F.2d
203(8th Cir. 1989); United States V. Benfield, 593 F.2d 815(8th Cir. 1979)

(3)

Conclusion.
            (ERROR OF LAW OR PREJUDICIAL MISCONDUCT)

When  the court has misdirected the jury in a matter of law, or has errored
in the decision of any question of law arrising during the course of
trial, and when the District attorney or others prosecuing the case has
been guilty of prejudicial misconduct during the trial thereof before
a jury.

        Verdict contrary of law, or evidence, In People v. Oliver, 120 CR,
368. The court said: "The duty of a trial court to afford every defendant
in a criminal case a fair and impartial is of constitutional dimension,
where the procedure has fallen short of that standard, an accused has
been denied due process, and inherent power of the court to correct matters
by granting a new trial transcends statutory limitations." (46 Cal 3rd 751)


            For the foregoing reasons,
petitioner asks that this court    vacate judgement, and or,
grant him a new trial as to the charge of receiving stolen propety.



Dated: September 27, 2005.


                                Respectfully Submitted;

                                *Troy Hayles*
                                TROY HAYLES.

I Troy Hayles, declare under the penalty of perjury under the laws
that the above statements are true and correct. *Troy Hayles*
                                TROY HAYLES. Pro_ Per.



                                (4)

# EXHIBIT "A"

Critical Expression Technology

SAN FRANCISCO

◆ MIRANDA from A-1

## Warning to police to respect Miranda

cautioning cops that deliberate violations may land them on the wrong side of the courtroom.

"And when the bailiff announces, 'Will the defendants please rise,' don't look to the suspect that (sic) was arrested to stand up," said the San Mateo County district attorney's office in a July 13 memo. "The bailiff is asking to you."

San Francisco District Attorney Terence Hallinan, a long-time supporter of Miranda, told police in a July 17 memo: "Failure to adhere to this rule ... may result in the personal civil liability of the officers involved."

But prosecutors say the high court's ruling still lets them use evidence that police obtained from interrogations in which they violated Miranda rights, as long as they did not coerce the suspect.

And defense lawyers were not convinced police would honor Miranda.

"Old habits die hard," said Kenneth M. Quigley, a San Francisco defense lawyer. "If there's a true change in this particular area by the Police Department, I'll eat my socks."

In a series of articles in June, The Examiner documented widespread police violations of Miranda that, along with other improper interrogation tactics, caused costly court hearings, hindered criminal investigations, helped accused criminals go free, or produced allegedly false confessions that threatened innocents with jail.

Scores of people are interrogated each day in California, typically in isolation and under intense police pressure. While out of public view, interrogations can profoundly shape the course of justice.

The U.S. Supreme Court's 1966 Miranda ruling examined what the court called the "inherently compelling" nature of custodial interrogation, and became its best-known decision on criminal procedure.

To counterbalance psychological pressure against suspects and to protect the Fifth Amendment right against self-incrimination, the court required police to give the equivalent of what has become known as the Miranda warning:

You have the right to remain silent. ... You have the right to the presence of an attorney. ... If you cannot afford an attorney one will be appointed for you. ... Anything you say can and will be used against you.

To enforce the rule, the court said that if police violated it, "no evidence obtained as a result of the confession can be used."

In later years, the high court narrowed that exclusionary measure. The court still punished police violations of Miranda by barring prosecutors from introducing

the subsequent confession in court to prove the suspect's guilt.

But the court said police could use the confession — if it was not the result of coercion — to find other evidence and witnesses. Prosecutors could also use the statement to challenge the credibility of defendants who took the witness stand and contradicted their confessions.

The court said in 1975 it was only "a speculative possibility" that police would breach Miranda to gain such advantages.

But in training sessions certified by the state Commission on Peace Officer Standards & Training, thousands of officers were told that — as long as they did not threaten or coerce suspects — they could choose when to honor a suspect's Miranda rights.

POST sets minimum standards for more than 580 police agencies.

Devallis Rutledge, a former POST commissioner and deputy district attorney in Orange County, was a leading proponent of "questioning outside Miranda." Rutledge contended that since Miranda rights were not specified in the U.S. Constitution, they were merely a rule of evidence and police could choose whether to follow it.

The state Justice Department gave similar advice in its Peace Officers Legal Sourcebook, the state's most widely used police legal manual. It said the Miranda rule "must be observed only if you are wanting anything the suspect may say later to be admissible against him at trial."

**Training outside Miranda**

San Francisco police were among those trained that way, said Lt. Henry Hunter.

A recent San Francisco murder case shows how police ignored a suspect's Miranda rights in an attempt to extract a confession.

Inspectors Armand Gordon and Curtis Cashen interrogated Troy Hayles about the August 1998 murder of Joyce Ruger, a 70-year-old Western Addition widow who was strangled and robbed.

They advised Hayles of his Miranda rights, and he agreed to talk, saying he'd found and used Ruger's credit cards.

But when the inspectors pressed him about the murder, Hayles invoked his Miranda rights. "I've made my statement. And I'm through with that. And I want to see my attorney," he said, according to a transcript.

Gordon told Hayles his request for legal help was "a rash decision." Gordon also disparaged his lawyers' ability to help him and said he was better off cooperating.

"... your lawyers are going to try to work their magic," he said,

"but the only ones who can really put in a good word for you, you know, and tell the judge and tell the district attorney's office that there was some remorse and that there was some caring, is us."

Hayles denied killing Ruger, saying, "It ain't me."

In court, Quigley, Hayles' lawyer, argued that the police ignored Hayles' assertion of his Miranda rights and that any statements he made after that should not be used to prove his guilt at trial. Assistant District Attorney Gerald Norman agreed. Both Quigley and Norman said the suppression of that part of the statement did not affect the outcome of the case.

On Aug. 3, a jury acquitted Hayles of the killing and convicted him of receiving stolen property.

Police spokesman Sherman Ackerson said department policy is to comply with Hallinan's directive to honor suspects' Miranda rights. But Norman noted the law lets prosecutors use evidence obtained as a result of noncoercive interrogations that violate Miranda.

Daly City police deliberately violated the Miranda rights of a juvenile suspect in the April 24, 1999, beating and stabbing death of William Tejada, 17, of San Francisco.

Sgt. Donald Griggs said in a police report that after the youth refused to talk, he questioned him outside Miranda. Griggs took a lengthy statement in which the suspect denied a role in the murder but discussed his gang activities, information police could use to find other evidence against him.

Griggs told The Examiner he was trained to question suspects outside Miranda, but his department had since been told to stop. The case is pending in San Mateo County Superior Court.

Several defense lawyers contended judges were reluctant to force Miranda rights by excluding unlawful confessions, because they could be labeled as soft on crime.

"Judges typically don't want to let a dangerous guy go merely because of the U.S. Constitu-

### SAN FRANCISCO POLICE
**MIRANDA WARN**
1. You have the right to remain s
   *Do you understand?*
2. Anything you say may be used
   *Do you understand?*
3. You have the right to the prese
   before and during any questi
   *Do you understand?*
4. If you cannot afford an attorn
   appointed for you free of char
   questioning, if you want. *Do*

San Francisco police officers carry a card
from to inform suspects of their Miranda

**Tired Of Getting Up At Night To**

# Urinate

# PROOF OF SERVICE

### (C.C.P. §§1013(a); 2015.5; 28 U.S.C. §1746)

I, TROY HAYLES _____, am over the age of eighteen (18) years, and I (am) (am not) a party to the within cause of action.  My address is:

#E-16711/A8-105.

SAC-4/CSP. P.O. Box-290066

Represa,CA 95671

_____

On, 27 September            2005            , I    served    the    following documents:    Motion to vacate judgment.

_____

_____ on the below named individuals by depositing true and correct copies thereof in the United State mail in Represa, California, with postage fully prepaid thereon, addressed as follows:

1. FIRST DISTRICT COURT            2._____

OF APPEAL, OFFICE OF THE CLERK. _____

350 McAllister St.            _____
SAN FRANCISCO,CA 94102            _____

_____            _____

I have read the above statements and declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this __27_____ day of SEPTEMBER____, 2005____, at California State Prison at Sacramento, Represa, California.

(Signature) *[signature]*
Declarant

A111534

ORIGINAL

TROY HAYLES.#E-16711.
  SAC-4/CSP. A8-105.
  P.O.BOX-290066
  REPRESA,CA 95671.

In Pro Per.

FILED
Court of Appeal First Appellate District

OCT - 6 2005

Diana Herbert, Clerk
By_____Deputy Clerk

COURT OF APPEALS OF THE STATE OF CALIFORNIA

FOR THE CITY AND COUNTY OF SAN FRANCISCO.

| | |
|---|---|
| TROY HAYLES<br>PETITIONER,<br><br><br>        VS.<br><br><br><br>PEOPLE OF THE STATE OF CALIFORNIA.<br>PLAINTIFF. | NO. 1880412/177096.<br><br>MOTION TO VACATE JUDGMENT.<br><br>Date:9/28/2005. |

(1)

<u>INTRODUCTION</u>

<u>PETITIONER'S SEIZURE WITHOUT PROBABLE CAUSE
WAS FOR THE PURPOSE OF CUSTODIAL INTERROGATION AND
THEREFORE, IN VIOLATION OF THE FOURTH AMENDMENT,
AND THE USAGE OF FRUITS SO OBTAINED IS THEREFORE,
IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED
STATES CONSTITUTION AND ARTICL I, SECTION 7, AND ARTICLE I,
SECTION 15 OF THE CALIFORNIA CONSTITUTION.</u>

FACTUAL and PROCEDURAL BACK GROUND;
AMENDED PAGE.

(1)

## STATEMENT OF THE FACTS.

On 8/16/98, from 1600 to 8/16/98 at 7:00 a.m., the following occurred at Webster Street, an apartment house.

At 0648 hours, S.F.P.D. officers were dispatched to 719 Webster on the request of S.F.P.D. personnel to assist on a working fire..Upon arrival, officers learned that the victim, a 70 year old, white female, who had been removed from 719 Webster, was deceased.

A crime scene log was initiated and the streets was closed to traffic.

At 0700 hours, a sergeant and Crime Scene investigators arrived on the scene, as well as a Crime Scene photographer.

Neigbors were inteviewed.

An officer went to 747 Webster, Apt. A, and contacted a Michael Phelan, who stated that the name of the deceased was Joyce A. Ruger. Mr. phelan stated that Ms. Ruger was a friend of his and that he had seen her the day before at 1600 hours. Mr. Phelan stated that Ms. Ruger had been trying to help a person by the name of Troy. Troy had been at 719 Webster on several occasions. According to Mr. Phelan, Troy was released from prison within the last six weeks.

Parole agents were called in an attempt to find the man named Troy. It was revealed that this person was Troy Hayles, the petitioner.

Officers went to 727 Webster Street and contacted people living there who stated that they were awakened by the smell of smoke and that they both knew the victem.

Officers interviewed Firefighter Hipp hwo stated he was the first on the scene to go up into the apartment and he noticed that the front door of the flat was already open when he arrived. There appeared to be a bundle of cloths in the first room as he entered, and he then learned that the clothing were the victem's body. He grabbed the body to get it out of the smoke filled flat. He noticed that the face was bound with a scarf and that the body was tied up at the feet and hands. The body was taken to the street.

At 845 hours, Homicide Inspectors Cashen and Gordon arrived to take over the investigation. 719 Webster was boarded up and secured.

At Northern Station, a person who wanted to remain confidential came in and wanted to provide information regarding the incident at 719 Webster. This person told the Inspectors that a black male, approximately 18 to 21 years of age, named "Sean Evans" who is also known as "Black hat" had killed the vitem. This witness told the police that the victem had 35,000 in her home. This witness stated Evans knocked on the door of 719 Webster, brandished a gun, and entered the flat. Onece inside, Evans tied up the victem, strangled her, shot her in the head, and then set fire to the apartment. The witness stated that Evans resides on Buchanan between Turk and Golden Gate. The witness said that the witness knew Sean Evans's father, Calvin Evans, Jr. The confidential witness

(STATEMENT OF FACTS)

was transported to Homicide Detail for further investigation.

Officers interviewed a citizen named Diana Barnett who lives at 709 Webster Street. Barnett stated that there was a black male in his 20s-30s, approximately 5'7", approximately 150 lbs with a mole on the tip of his nose wearing a black hat with flaps in the area of the fire when the firefighters arrived at the scean. This witness stated that the male was acting suspiciously and was asking a lot of questions and information from firefighters.

Alvin Brown, who lives at 740 Webster Street, Apt. B, stated that he heard a car's squealing tires at 2030 hours on 8/15/98, but had not seen anything unusual.

Another witness, Wilson, who lives at 740 Webster, Apt. F, stated that she had heard someone knocking loudly on her back door at 0300 hours on 8/16/98, but did not know if it was a man or woman. She was afraid to answer the door or to look out.

Joella Barnett, who resides at 709 Webster Street, stated that she was sitting on the corner of Webster and Grove when she was approached by a young black male and asked where there any black families living in the same building as the victem. She informed the male that a black family had been living in the building but had moved out. she further stated that the victem was a white, 70-year old female. The unknown male then stated to Ms. Barnett that he was wondering because last night at 8:15, he observed a black male walking up the stairs of the victem's residence. Ms. Barnett was unable to give any further information regarding the identity of the unknown male.

Mr. Mcpherson at 829 Laguna stated that he was dropping off his girlfriend at 0600 hours on 8/16/98 when he observed smoke coming from the front door of 719 Webster Street. He went to the fire box and pulled the alarm.

Michael Phalen at 747 Webster Street, Apt. 8, stated that he had known the victem as a friend and knew that she possessed many expensive pieces of jewelry and valuable art work. Mr. Phalen said that the victem had befriended a young black male in the last six weeks. His name is troy. He gave a description. he said the victem had met Troy in the neighborhood and had invited him into her house. He stated that victem had told him that he had just gotten out of prison six weeks ago. Mr. Phalen said he was skeptical about Troy. He then gave the name of the victem's granddaughter, Chritina Palma, as the person to be notified of the victem's death.

According to San Bruno Police incident reprot #98-03-45, the following occurred on 8/20/98 at 1830 hours in the vicinity of 590 El Camino Real in San Bruno. This is four days after the homicide, arson, burglary, and robbery at the victem's apartment. Officers had a suspect concerning the use of the deceased victem credit card.

(STATMENTS OF THE FACT)

Based on the information in this investigation, on 9/19/98, at 0800 hours,
in conjuction with San Francisco Police Department, and petitioner's
parole Agent Marlena Taira and Agent Martinez Giger executed a search
warrent on Annette Spikes and her daughter, Orphelia Williams. The search
Warrent WAS TARGETED at Charries Wells and petitioner. Ms. Spikes lived
at 908 Hayes Street. She informed the officers and Agents that Charries
Wells and petitioner did not live there. Ms. Wells address was later
located in Ms. Spikes phone book.

On 9/24/98, at 1235 hours, Ms. Wells went into the S.F.P.D. Homicide and
was advised of her rights. Ms. Wells stated that early Sunday morning
on 8/16/98, petitioner telephoned her and then met her on 3rd Street.
She said that petitioner told her that he had broken up with his girl-
friend and had taken her jewelry and credit cards. She said she then
took him shoppen at Tanforan Shoppign center, where she used and signed
the credit card that later turned out to belong to the victem Joyce
Rugur. Ms. Wells said that she pawned the jewelry in pawn shops on 6th
and Mission Street and gave the pawn slips to the officers. Ms. Wells
was then released after agreeing to later testify in court that petitioner
had given her the jewelry and credit cards.

On 8/16/98,, at 6:30 a.m., a witness Gayle Jackson was driving northbound
on Webster Street on her way to work at the Safeway. She stated that she
saw a black male running down the stairs at 719 Webster Street; he was
carring a tan bag under his arm and looking back up the stairs; that
there was something odd about him and she slowed down to see what he was
doing; that he was in such a hurry he stumbled down the stairs.
When Ms. Jackson got to work, she heard customers and co-workers talking
about the fire down the street. Ms. Jackson gave a description of the
suspect, between 25-30 years old, medium height, having a full belly; 180
+ pounds, sandy brown hair, and carrying a tan bag. (The description
did not match petitioner.)

On 8/28/98, Ms. Jackson viewed a photo line-up and picked out the photo
of "Mojo Dumetz," stating "this looks like the man I saw."

Inspectors were later contacted by Mojo Dumetz, who stated that he had
            heard on the streets that they were looking for him concerning
            the arson and homicide which had occured on 8/16/98.
He was asked to report to the ID Bureau to take a mug shot. He agreed to
the request, and was released per 489(b) PC after the photo was taken.

On 8/21/98, petitioner's parole officer, along with S.F.P.D. and
homcide Inspectors, executed a parole search warrent at the home of
Joyce Jordan, an aunt of petitioner, at 10 Osceola Lane #1. Joyce Jordan's
front door was knocked down by officers, her and two other family members
were ordered to lay down on the floor at gun point. They were then hand
cuffed, detained in the house, and a search was carried out.
Ms. Jordan told them that petitioner did not reside there, and had only
been using her address.

(4)

(STATEMENTS OF THE FACYS)

On 10/5/98, petitioner was "seized and held" by the Oakland Police Department on a parole warrent. He was kept on the scene until the S.F.P.D. ARRIVED AND THEN HANDED OVER TO THEM. His rights were read to him, and then all of his property was taken from his pockets and placed in a plastic-evidence-bag. Petitioner was then immediately transported to the Homicide Investigation room. (Items in his pockets consisted of: money, phone book, and piece of papers with names and addresses)

Homicide detectives used the parole warrent as a mere guise to secure evidence for the investigation of the Ruger homicide. This is clearly demonstrated to be the situation in light of their conduct throughout their investigation. Their intentions were high-lighted once petitioner was in custody.

Although his agreement to answer the questions of Inspector Gordon and Cashen was at petitioner's free will, to be in their presence was not. Petitioner was "seized and detained" for the purpose of questioning about the Ruger homicide. Onec petitioner was inside the investigation room, he was hand-cuffed to a chair, and read his rights—again.

petitioner agreed *To* talk. (See exhibit A) However, when asked about the Ruger homicide he invoked his right to an attorney. This right was ignored, and they continued to presse him. (At trial, this part of the interview was suppressed.)

After receiving self-incriminating statements from petitioner, his cloths were seized and taken into evidence, and he was processed into the County jail for: murder, robbery, burglary, arson and receiving stolen property. (Crimes in the homicide of Ruger) 72 hours later, the charges were eihter dropped or just not picked up by the people because of lack of evidence against petitioner, and he was processed on a parole violation. One year later, on 10/4/99, petitioner was served a warrent for his arrest, a day before he was to parole from prison. He was charged with: murder, robbery, burglary, arson, and receiving stoln property. The self incriminating statemnts he had made a year before to the Homicide Detective was enter into evidence and used against him. At trial petitioner was acquitted for all the above crimes except receiving stolen property. The verdict rested on petition-er's self-incriminating statement. The pro*secutor* encouraged the jury to find petitioner guilty based on such statement.

Petitioner's seizure without probable cause, on 10/5/98, was for the purpose of custodial interrogation and therefore in violation of the Fourth Amenmdment, and the use of the statements were illegal and therefore in violation of the Fouteenth Amendment.

Hence, petitioner requst that the court grant him a new trial for the crime of receiving stolen property, absent the admission of so obtained unlawful fruit .

## MEMORANDUM OF POINTS AND AUTHORITIES.

I

### PETITIONER WAS ILLEGALLY ARRESTED FOR THE HOMICIDE
### OF VICTEM Ruger on OCTOBER 5, 1998.

California courts are bound by Federal search and seizure law(In re Lance W.(1985) 37 Cal.3d 873(210 Cal Rptr. 873, 694 p.2d 744|), People v. Brown (1985) 169 Cal.App. 3d 159?|215 Cal Rptr. 101|), including Dunaway v. Superior court (1987) 189 Cal.App.3d 1332|235 Cal Rptr. 77|)

An encounter between a police officer and a citizen implicates the Fourth Amendment when the officer seizes the citizen(Terry v. Ohio (1968) 392 U.S. 1 |29 L.Ed.2d 889, 88 S.Ct. 1868|).

A suspect is seized within the meaning of the Fourth Amendment if the police officers act to compel a response, act in coercive manner, or restrict a person's freedom of movement. This includes a suspect who is forcibly stopped by police officers.(Brown v. Texas (1979) 443 U.S. 47|61 L.Ed.2d 357, 99 S.Ct. 2637|.) A seizur occurs when a reasonable person would believe he or she is not free to leave. (United States v.Mendenhall (1980) 446 U.S. 544, 554|64 L.Ed.2d 497, 100 S.Ct. 1870|) A forcible stop of a car constitutes a seizure (Delaware v. Prouse (1979) 440 U.S. 648,653 |59 L.Ed.2d 660, 99 S.Ct. 1391|) as does the surrounding of a suspect by three police cars (United States v. Pavelski (7th Cir. 1986) 789 F.2d. 485, 488-489) ( See also United States v. Ceballos (1981) 654 F.2d 177, 184).

A seizure must be supported by probable Cause, with narrowly defined exception not herein applicable.

Here, the seizure and conduct by the San Francisco Police department constituted an arrest. The evidence supports the fact that petitioner was seized on a parole warrent by the S.F.P.D. AND THEN ARRESTED by Homicide Detctive/S.F.P.D.; such arrest was premature, without probable cause and illegal.

When the S.F.P.D. arrested petitioner on 10/5/98, they did so knowing

(POINTS & AUTHORITIES)

little more than that he had been seen in and around the victem's home; that he had been seen shoppen with Cherries Wells, whom was using the victems credit cards on the morning of her death; and that a piece of paper with two of petitioner's aunts name, address and phone number had been found in the victems home. Homicide detectives needed testimony or a confession from petitioner, so upon his arrest he was immediately transported to the custody of Homicide Detectives and detained for questioning. His statements and his possessions were seized, and he was arrested for the homicide of Joyce Ruger. 72 hours later, he was processed on a parole violation.

On 10/5/99, petitioner was arrested for murder, burglary, robbery, arson, receiving stolen property, in regards of joyce Ruger. This time there was probable cause, but it was in violation of Due Process to use the fruits of, obtained from petitioner's arrest on 10/5/98.


II


PETITIONER's Seizure Without Probable Cause was for the
PURPOSE OF CUSTODIAL INTERROGATION AND THEREFORE,
IN VIOLATION OF THE FOURTH AMENDMENT, and the USAGE OF FRUITS
SO OBTAINED IS THEREFORE, IN VIOLATION OF THE FOURTEENTH AMENDMENT.


There is no conflict between the Federal and California law on the issue of Seizures without probable cause for the purpose of custodial interrogation. Dunaway v. New york (1979) 442 U.S. 200| 60 L.Ed.2d 824, 99 S.Ct 2248| condemns as a violation of the Fourth Amendment police seizures without probable cause, for the purpose of custodial interrogation.
In Blazak v.Eyman (D.C.Az. 1971) 339 F.Supp.40 the court noted that: When an arrest is made solely for the purpose of discovering evidence to support another charge, such arrest is a sham and illegal and any evidence obtained as a result must be suppressed. (Id. at 42)
The exclusionary rule has been held to be very appropriate in cases involving pretexual arrests. As stated by Justices Powell and Rehnquist:

(3)

(POINTS & AUTHORITIES)

|T|he deterrent value of the exclusionary rule is most likely to be
effective, and the corresponding mandate to preserve judicial integrity...
most clearly demends the fruits of official misconduct be denied.
(Brown v. Illinois (1975) 422 U.S. 590 at 611, Powell, J., concurring).

(Accord, United States v. Keller (N.D. Ill. 1980) 499 F. Supp. 415.)

Strikingly similar to the instant case is a case out of Missouri.
In State v. Blair (1985) 691 S.W.2d 259, a murder was discovered.
There was a palm print at the murder scene. An informant gave a tip
implicating Zola Blair. A homicide detective wanted to get her palm
print so as to check it against the one at the homicide scene. But he
didn't have probable cause to arrest Miss Blair. He checked and found
she had a traffic warrent.
He had Miss Blair arrested on the traffic warrent, got her palm print,
matched it with the one at the murder scene, told her of the match
and got from her inculpatory statements. The courts held the print
and statements must be suppressed, as the product of a pretext arrest.

In Richardson v. State (1986) 706 S.W.2d 363, the Arkansas Supreme Court
reversed the arson and murder conviction of Richardson, because of the
pretext. An officer working the investigation of the arson-murder of
Richardson's uncle arrested Richardson for public intoxication and
search him incident to that arrest. Found in the search: a bullet match-
ing the one used to kill the decedent and drops of the decendent's
blood on Richardson's shoes.
In that case, there was probable cause for arrest on intoxication,
but the court found the circumstances to be pretextual and a mere
guise to secure evidence for a homicide.

"EXHIBT"

"A"

"Warning to police to respect Miranda"

"EXHIBT"
"B"

**PAROLEE'S STATEMENT:**  Subject stated to Inspector Cashen that he found a bag on the street.  The bag contained the credit card which he admitted he used in a fraudulent manner.

_**CHARGES #6 and 7**_:  On 06-18-98, Subject reported to Agent Geiger and claimed he resided at 10 Osceola Lane #1.  On 06-30-98, Agent Geiger visited the residence and saw Subject and his aunt, Joyce.  On 08-21-98, Agent Geiger, along with SFPD, went to 10 Osceola Lane #1.  Subject was not there nor were his belongings.  Joyce Jordan told Agent Geiger Subject did not reside there and was merely using her address.

On 08-31-98, the Board of Prison Terms suspended parole effective 08-27-98.  Subject was arrested in Oakland on 10-05-98 on the Parolee At-Large Warrant.

**ATTACHMENT:**  SFPD Report #981040846

**WITNESS:**  Homicide Inspector Cashen

**COURT INFORMATION:**  The District Attorney will be filing charges but has not done so at the time of this report.

| PAROLEES NAME | | CDC NUMBER | |
|---|---|---|---|
| | HAYLES, TROY | | E16711 |

I, Troy Hayles declare under the penalty of perjury that
the foregoing is true and correct.

DATED: September 29, 2005.

Respectfully Submitted,

TROY HAYLES. PRO PER.

# PROOF OF SERVICE

## (C.C.P. §§1013(a); 2015.5; 28 U.S.C. §1746)

I, *T Hayles* _____, am over the age of eighteen (18) years, and I (am) (am not) a party to the within cause of action.  My address is:

*SAC-H/CSP/A8-105*
*P.O. Box - 290066*
*Represa, CA 95671*

On, *October 4, 2005* _____, I served the following documents:

*Motion to Vacate judgment.*
_____ on the below named individuals by depositing true and correct copies thereof in the United State mail in Represa, California, with postage fully prepaid thereon, addressed as follows:

1. *Court of Appeals*
*350 McAllister st*
*San Francisco, CA, 94102*

2. _____

I have read the above statements and declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this ____*4*____ day of *October*, *2005*, at California State Prison at Sacramento, Represa, California.

(Signature) *T Hayles*
                    Declarant

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
5   ANN P. WATHEN, State Bar No. 189314
    Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5972
    Fax:  (415) 703-1234
8    Email:  Ann.Wathen@doj.ca.gov

9   Attorneys for Respondent

10

            IN THE UNITED STATES DISTRICT COURT
11
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
12
              SAN FRANCISCO DIVISION
13

14   **TROY HAYLES,**                     C 06-6909 MJJ (PR)

15                  Petitioner,    **EXHIBITS**

16       **v.**

17   **ROSANN CAMBLE, Warden,**

18                  Respondent.

19

20

21

22

23

24              **EXHIBITS 14 - 16**

25

26

27

28

Exhibits - *Hayles v. Camble* - C 06-6909 MJJ (PR)

**EXHIBIT 14**



# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

### DIVISION FOUR

```
                                    ┌─────────────────────────────────┐
                                    │              FILED               │
                                    │ Court of Appeal First Appellate District │
                                    │                                  │
                                    │          OCT - 6 2005            │
                                    │                                  │
                                    │        Diana Herbert, Clerk       │
                                    │ By_____Deputy Clerk  │
                                    └─────────────────────────────────┘
```

THE PEOPLE,

      Plaintiff and Respondent,

v.

TROY HAYLES,

      Defendant and Appellant.

A111534

(San Francisco County
Super. Ct. No. 1880412/177096)

BY THE COURT:

The motion to vacate judgment is denied.

(Reardon, Acting P.J., Sepulveda, J., and Rivera, J., joined in the decision.)

Date:     OCT - 6 2005                              P.J.

REARDON, ACTING P.J.

## AFFIDAVIT OF TRANSMITTAL

I am a citizen of the United States, over 18 years of age, and not a party to the within action; that my business address is 350 McAllister Street, San Francisco, CA 94102; that I served a copy of the attached material in envelopes addressed to those persons noted below.

That said envelopes were sealed and shipping fees fully paid thereon, and thereafter were sent as indicated via the U.S. Postal Service from San Francisco, CA 94102 or, alternatively, served via inter-office mail.

I certify under penalty of perjury that the foregoing is true and correct.

Diana Herbert, Clerk of the Court

I. CALANOC                    OCT – 6 2005

Deputy Clerk                  Date

CASE NUMBER: A111534

Office of the Clerk                                    Material Sent YES: ✓
San Francisco Hall of Justice - Criminal Division
Attention: Criminal Appeals
850 Bryant Street - Room 306
San Francisco, CA  94103


Troy Hayles                                            Material Sent YES: ✓
E-16711
SAC-4  CSP  A8-105
P.O. Box 290066
Represa, CA  95671


Office of the Attorney General                         Material Sent YES: ✓
455 Golden Gate Avenue - Suite 1100
San Francisco, CA  94102

serv

# EXHIBIT 15

MC-275

Name  TROY HAYLES    A8-105    ~~ORIGINAL~~

Address  SAC-4/CSP. POB-290066

Represa,CA 95671

CDC or ID Number  E-16711

**SUPREME COURT FILED**

NOV 0 7 2005

Frederick K. Ohlrich Clerk

DEPUTY

CALIFORNIA SUPREME COURT.

_____
(Court)

| | |
|---|---|
| TROY HAYLES | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Petitioner | **S138648** |
| vs. | No. 1880412/177096 |
| California Supreme Court. | *(To be supplied by the Clerk of the Court)* |
| Respondent | |

## INSTRUCTIONS — READ CAREFULLY

€ If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

€ If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

€ Read the entire form *before* answering any questions.

€ This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

€ Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

€ If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

€ If you are filing this petition in the Court of Appeal, file the original and four copies.

€ If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

€ Notify the Clerk of the Court in writing if you change your address after filing your petition.

€ In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

**RECEIVED**

NOV - 7 2005

CLERK SUPREME COURT

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]
Optional Form

**PETITION FOR WRIT OF HABEAS CORPUS**    THOMSON ← WEST    Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

**This petition concerns:**

☒ A conviction        ☐ Parole

☐ A sentence        ☐ Credits

☐ Jail or prison conditions        ☐ Prison discipline

☐ Other (specify): _____

1. Your name: Troy Hayles

2. Where are you incarcerated? SAC-4/CSP

3. Why are you in custody? ☒ Criminal Conviction      ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Receiving stolen property; under the 3-strike law, ehancement 25-years to life.

   b. Penal or other code sections: 1170.12, subds./section 667, subds.

   c. Name and location of sentencing or committing court: Superior Court. Dept #26
      850 Bryant st. San francisco.CA 94103

   d. Case number: 1880412/177096

   e. Date convicted or committed: February 26, 2001

   f. Date sentenced: ~~16/////////////////~~ February 23, 2001

   g. Length of sentence: ~~2024~~ 25-years to life.

   h. When do you expect to be released? 2024

   i. Were you represented by counsel in the trial court? ☒ Yes.     ☐ No.  If yes, state the attorney's name and address:

      Kennth Quiggley. San Francisco, CA

      _____

4. What was the LAST plea you entered? *(check one)*

   ☒ Not guilty     ☐ Guilty     ☐ Nolo Contendere     ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury     ☐ Judge without a jury     ☐ Submitted on transcript     ☐ Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Ineffective Assistance by appellate counsel, whom faild to acknowledge and raise a vital error made by trial counsel, whom fail to object to damning evidence obtained during an unlawful detention; which resulted in a predjudicial trial and foundamental miscarriage of justice, in violation of the Six Amendment and Fourteenth Amendment To the United States Consti- tution And the California Constitution.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

See Amendment.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

See Amendment.

<u>INTRODUCTION</u>

<u>PETITIONER'S SEIZURE WITHOUT PROBABLE CAUSE</u>
<u>WAS FOR THE PURPOSE OF CUSTODIAL INTERROGATION AND</u>
<u>THEREFORE, IN VIOLATION OF THE FOURTH AMENDMENT,</u>
<u>AND THE USAGE OF FRUITS SO OBTAINED IS THEREFORE,</u>
<u>IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED</u>
<u>STATES CONSTITUTION AND ARTICL I, SECTION 7, AND ARTICLE I,</u>
<u>SECTION 15 OF THE CALIFORNIA CONSTITUTION.</u>

FACTUAL and PROCEDURAL BACK GROUND;
AMENDED PAGE.

(1)

## STATEMENT OF THE FACTS.

On 8/16/98, from 1600 to 8/16/98 at 7:00 a.m., the following occurred at Webster Street, an apartment house.

At 0648 hours, S.F.P.D. officers were dispatched to 719 Webster on the request of S.F.P.D. personnel to assist on a working fire. Upon arrival, officers learned that the victim, a 70 year old, white female, who had been removed from 719 Webster, was deceased.

A crime scene log was initiated and the streets was closed to traffic.

At 0700 hours, a sergeant and Crime Scene investigators arrived on the scene, as well as a Crime Scene photographer.

Neigbors were inteviewed.

An officer went to 747 Webster, Apt. A, and contacted a Michael Phelan, who stated that the name of the deceased was Joyce A. Ruger. Mr. phelan stated that Ms. Ruger was a friend of his and that he had seen her the day before at 1600 hours. Mr. Phelan stated that Ms. Ruger had been trying to help a person by the name of Troy. Troy had been at 719 Webster on several occasions. According to Mr. Phelan, Troy was released from prison within the last six weeks.

Parole agents were called in an attempt to find the man named Troy. It was revealed that this person was Troy Hayles, the petitioner.

Officers went to 727 Webster Street and contacted people living there who stated that they were awakened by the smell of smoke and that they both knew the victem.

Officers interviewed Firefighter Hipp hwo stated he was the first on the scene to go up into the apartment and he noticed that the front door of the flat was already open when he arrived. There appeared to be a bundle of cloths in the first room as he entered, and he then learned that the clothing were the victem's body. He grabbed the body to get it out of the smoke filled flat. He noticed that the face was bound with a scarf and that the body was tied up at the feet and hands. The body was taken to the street.

At 845 hours, Homicide Inspectors Cashen and Gordon arrived to take over the investigation. 719 Webster was boarded up and secured.

At Northern Station, a person who wanted to remain confidential came in and wanted to provide information regarding the incident at 719 Webster. This person told the Inspectors that a black male, approximately 18 to 21 years of age, named "Sean Evans" who is also known as "Black hat" had killed the vitem. This witness told the police that the victem had 35,000 in her home. This witness stated Evans knocked on the door of 719 Webster, brandished a gun, and entered the flat. Onece inside, Evans tied up the victem, strangled her, shot her in the head, and then set fire to the apartment. The witness stated that Evans resides on Buchanan between Turk and Golden Gate. The witness said that the witness knew Sean Evans's father, Calvin Evans, Jr. The confidential witness

(STATEMENT OF FACTS)

was transported to Homicide Detail for further investigation.

Officers interviewed a citizen named Diana Barnett who lives at 709 Webster Street. Barnett stated that there was a black male in his 20s-30s, approximately 5'7", approximately 150 lbs with a mole on the tip of his nose wearing a black hat with flaps in the area of the fire when the firefighters arrived at the scean. This witness stated that the male was acting suspiciously and was asking a lot of questions and information from firefighters.

Alvin Brown, who lives at 740 Webster Street, Apt. B, stated that he heard a car's squealing
tires at 2030 hours on 8/15/98, but had not seen anything unusual.

Another witness, Wilson, who lives at 740 Webster, Apt. F, stated that she had heard someone knocking loudly on her back door at 0300 hours on 8/16/98, but did not know if it was a man or woman. She was afraid to answer the door or to look out.

Joella Barnett, who resides at 709 Webster Street, stated that she was sitting on the corner of Webster and Grove when she was approached by a young black male and asked where there any black families living in the same building as the vic̣tem. She informed the male that a black family had been living in the building but had moved out. she further stated that the victem was a white, 70-year old female. The unknown male then stated to Ms. Barnett that he was wondering because last night at 8:15, he observed a black male walking up the stairs of the victem's residence. Ms. Barnett was unable to give any further information regarding the identity of the unknown male.

Mr. Mcpherson at 829 Laguna stated that he was dropping off his girlfriend at 0600 hours on 8/16/98 when he observed smoke coming from the front door of 719 Webster Street. He went to the fire box and pulled the alarm.

Michael Phalen at 747 Webster Street, Apt. 8, stated that he had known the victem as a friend and knew that she possessed many expensive pieces of jewelry and valuable art work. Mr. Phalen said that the victem had befriended a young black male in the last six weeks. His name is troy. He gave a description.  he said the victem had met Troy in the neighborhood and had invited him into her house. He stated that victem had told him that he had just gotten out of prison six weeks ago. Mr. Phalen said he was skeptical about Troy. He then gave the name of the victem's granddaughter, Chritina Palma, as the person to be notified of the victem's death.

According to San Bruno Police incident reprot #98-03-45, the following occurred on 8/20/98 at 1830 hours in the vicinity of 590 El Camino Real in San Bruno. This is four days after the homicide, arson, burglary, and robbery at the victem's apartment. Officers had a suspect concerning the use of the deceased victem credit card.

( 3 )

(STATMENTS OF THE FACT)

Based on the information in this investigation, on 9/19/98, at 0800 hours,
in conjuction with San Francisco Police Department, and petitioner's
parole Agent Marlena Taira and Agent Martinez Giger executed a search
warrent on Annette Spikes and her daughter, Orphelia Williams. The search
warrent WAS TARGETED at Charries Wells and petitioner. Ms. Spikes lived
at 908 Hayes Street. She informed the officers and Agents that Charries
Wells and petitioner did not live there. Ms. Wells address was later
located in Ms. Spikes phone book.

On 9/24/98, at 1235 hours, Ms. Wells went into the S.F.P.D. Homicide and
was advised of her rights. Ms. Wells stated that early Sunday morning
on 8/16/98, petitioner telephoned her and then met her on 3rd Street.
She said that petitioner told her that he had broken up with his girl-
friend and had taken her jewelry and credit cards. She said she then
took him shoppen at Tanforan Shoppign center, where she used and signed
the credit card that later turned out to belong to the victem Joyce
Rugur. Ms. Wells said that she pawned the jewelry in pawn shops on 6th
and Mission Street and gave the pawn slips to the officers. Ms. Wells
was then released after agreeing to later testify in court that petitioner
had given her the jewelry and credit cards.

On 8/16/98,, at 6:30 a.m., a witness Gayle Jackson was driving northbound
on Webster Street on her way to work at the Safeway. She stated that she
saw a black male running down the stairs at 719 Webster Street; he was
carring a tan bag under his arm and looking back up the stairs; that
there was something odd about him and she slowed down to see what he was
doing; that he was in such a hurry he stumbled down the stairs.
When Ms. Jackson got to work, she heard customers and co-workers talking
about the fire down the street. Ms. Jackson gave a description of the
suspect, between 25-30 years old, medium height, having a full belly; 180
+ pounds, sandy brown hair, and carrying a tan bag. (The description
did not match petitioner.)

On 8/28/98, Ms. Jackson viewed a photo line-up and picked out the photo
of "Mojo Dumetz," stating "this looks like the man I saw."

Inspectors were later contacted by Mojo Dumetz, who stated that he had
           heard on the streets that they were looking for him concerning
           the arson and homicide which had occured on 8/16/98.
He was asked to report to the ID Bureau to take a mug shot. He agreed to
the request, and was released per 489(b) PC after the photo was taken.

On 8/21/98, petitioner's parole officer, along with S.F.P.D. and
homcide Inspectors, executed a parole search warrent at the home of
Joyce Jordan, an aunt of petitioner, at 10 Osceola Lane #1. Joyce Jordan's
front door was knocked down by officers, her and two other family members
were ordered to lay down on the floor at gun point. They were then hand
cuffed, detained in the house, and a search was carried out.
Ms. Jordan told them that petitioner did not reside there, and had only
been using her address.

*(4)*

## (STATEMENTS OF THE FACTS)

On 10/5/1998, petitioner was "seized and heild" by the Oakland Police Department on a parole warrent. He was kept on the scene until the S.F.P.D. arrived and handed over to them. He was read his rights, and then all of his property was taken from his person and placed in a plastic-evidence-bag. Thence, petitioner was immediately transported to the Homicide Investigation Detention room.(Actions of law enforucement.)

Homicide detectives *used* a parole warrent as a mere guise to secure evidence for the homicide of Joyce Ruger. This was clearly demonstrated to be the situation in light of their conduct throughout their investigation. Their intention were highlighted once petitioner was in their custody.

Although he offered to answer their questions was willful, to be heild in their detention was not of petitioner's free will. Petitioner was handcuffed to a chair, and again read his rights. When petitioner was asked about the homicide of Ruger, he asked for an attorney. This right was ignored, and they continued to press him for information. (see exhibit A.) This part was suppressed at trial.

After receiving self-incriminating statements from petitioner, his cloths were seized and taken into evidence, and he was processed into the County jail for murder, robbery, burglary, arson, and receiving stolen property, in regards to the homicide against Ruger. However, the people did not have enough evidence to prosecute petitioner, and he was processed on a parole violation after 72 hours.

On 10/4/1999, petitioner was arrested on prison grounds a day before he was to parole, again for the same crimes mentioned above. The evidence obtained during petitioner's unlawful detention on 10/5/98, was entered into evidence for trail. At trial petitioner did not take the stand, and was acquitted of crimes accept receiving stolen property. The prosecutor encouraged the jury to find petitioner guilty based on his incriminating statements, and their verdict rested on this.

Trail counsel should have invetigated these facts herein, and objected to their use, by filing a motion to suppress the tainted evidence. His failur to do so withdrew a potentially meritorious defense, prevented direct attact on appeal, and resulted in a conviction of receiving stolen property.

## MEMORANDUM OF POINTS AND AUTHORITIES.

I

## PETITIONER WAS ILLEGALLY ARRESTED FOR THE HOMICIDE
## OF VICTEM Ruger on OCTOBER 5, 1998.

California courts are bound by Federal search and seizure law(In re
Lance W.(1985) 37 Cal.3d 873(210 Cal Rptr. 873, 694 p.2d 744|),
People v. Brown (1985) 169 Cal.App. 3d 159°|215 Cal Rptr. 101|),
including Dunaway v. Superior court (1987) 189 Cal.App.3d 1332|235
Cal Rptr. 77|)
An encounter between a police officer and a citizen implicates the
Fourth Amendment when the officer seizes the citizen(Terry v. Ohio
(1968) 392 U.S. 1 |29 L.Ed.2d 889, 88 S.Ct. 1868|).
A suspect is seized within the meaning of the Fourth Amendment if the
police officers act to compel a response, act in coercive manner, or
restrict a person's freedom of movement. This includes a suspect who
is forcibly stopped by police officers.(Brown v. Texas (1979) 443
U.S. 47|61 L.Ed.2d 357, 99 S.Ct. 2637|.) A seizur occurs when a
reasonable person would believe he or she is not free to leave.
(United States v.Mendenhall (1980) 446 U.S. 544, 554|64 L.Ed.2d 497,
100 S.Ct. 1870|) A forcible stop of  a car constitutes a seizure
(Delaware v. Prouse (1979) 440 U.S.  648,653 |59 L.Ed.2d 660, 99 S.Ct.
1391|) as does the surrounding of a suspect by three police cars
(United States v. Pavelski (7th Cir. 1986) 789 F.2d. 485, 488-489)
( See also United States v. Ceballos (1981) 654 F.2d 177, 184).

A seizure must be supported by probable Cause, with narrowly defined
exception not herein applicable.
Here, the seizure and conduct by the San Francisco Police department
constituted an arrest. The evidence supports the fact that petitioner
was  seized  on a parole warrent by the S.F.P.D. AND THEN ARRESTED
by Homicide Detctive/S.F.P.D.; such arrest was premature, without
probable cause and illegal.
When the S.F.P.D. arrested petitioner on 10/5/98, they did so knowing

(2)

(Points & Authorities)

little more than that he had been seen in and around the victem's home; that he had been seen shoppen with cherries Wells, whom was using the victem's credit cards on the morning of her death; and that a piece of paper with two of petitioner's aunts name, address and phone number had been found in the victem's home.

II

PETITIONER'S SEIZURE WITHOUT PROBABLES CAUSE WAS FOR THE
PURPOSE OF CUSTODIAL INTERROGATION AND THEREFORE, IN
VIOLATION OF THE FOURTH AMENDMENT, AND THE USAGE OF FRUITS
SO OBTAINED IS THEREFORE, IN VIOLATION OF THE FOURTEENTH
AMENDMENT.

There is no conflict between the Federal and California law on the issue of seizures without probable cause for the purpose of custodial interrogation. See Dunaway v. New York, (1979) 442 U.S. 200 60 L.Ed.2d 824, 99 S.Ct 2248 condemns as a violation of the Fourth Amendment police seizure without probable cause, for the purpose of custodial interrogation.

In Blazak v. Eyman, (D.C Az. 1971) 339 F.Supp.40, the courts noted that: "When an arrest is made solely for the purpose of discovering evidence to support another charge, such arrest is a sham and illegal and any evidence obtained as a result must be suppressed . (Id. at 42) The exclusionary rule has been heild to be very appropreiate in cases involving pretexual arrests. As stated by Justices Powell and Rehnquist:

(POINTS & AUTHORITIES)

|T|he deterrent value of the exclusionary rule is most likely to be
effective, and the corresponding mandate to preserve judicial integrity...
most clearly demends the fruits of official misconduct be denied.
(Brown v. Illinois (1975) 422 U.S. 590 at 611, Powell, J., concurring).

(Accord, United States v. Keller (N.D. Ill. 1980) 499 F. Supp. 415.)

Strikingly similar to the instant case is a case out of Missouri.
In State v. Blair (1985) 691 S.W.2d 259, a murder was discovered.
There was a palm print at the murder scene. An informant gave a tip
implicating Zola Blair. A homicide detective wanted to get her palm
print so as to check it against the one at the homicide scene. But he
didn't have probable cause to arrest Miss Blair. He checked and found
she had a traffic warrent.
He had Miss Blair arrested on the traffic warrent, got her palm print,
matched it with the one at the murder scene, told her of the match
and got from her inculpatory statements. The courts held the print
and statements must be suppressed, as the product of a pretext arrest.

In Richardson v. State (1986) 706 S.W.2d 363, the Arkansas Supreme Court
reversed the arson and murder conviction of Richardson, because of the
pretext. An officer working the investigation of the arson-murder of
Richardson's uncle arrested Richardson for public intoxication and
search him incident to that arrest. Found in the search: a bullet match-
ing the one used to kill the decedent and drops of the decendent's
blood on Richardson's shoes.
In that case, there was probable cause for arrest on intoxication,
but the court found the circumstances to be pretextual and a mere
guise to secure evidence for a homicide.

(4)

(POINTS & ATHORITES.)

Citing: <u>People v.Coffman</u>, 82 Cal.Rptr. 688.(6),
"A parolee is not stripped of his constitutional protection."

Petitioner was *properly* arrested on 10/5/98, on a parole warrent; but
accordenly, he should have been processed into the County jail
incident to his arrest, rather than seized and detained by Homicide
Detectives for questioning absent juicial authorization, defining
probale cause. The records show through clear and convincing facts,
that Detectives intended to disregard petitioner's constitutional rights
form the start of thier investigation: due process & equal protection.

III

## PETITIONER WAS DENIED EFFECTIVE ASSISSTANCE
## BY TRIAL COUNSEL.

See <u>Douglas v.California</u>, 372 U.S. 353, 9 L.Ed 2d 811, 83 S.Ct 814(1963).

Also See <u>Evitts v.Lucey</u>, 469 U.S. 397, 396 (1985). Appointed counsel on
appeal, has a duty to present the defendant's case to the best of his or
her ability: See <u>In RE Clark</u> , 5 Cal 4th 705.

Citing: <u>People v. Pope</u>,23 Cal 3d 412: "Where the records show that
counsel has faild to research the law or investigate the facts in a
manner of a diligent and conscientious advocate, the conviction should be
reversed since the defendant has been deprived of adequate assisstance
of counsel."
Had trial counsel investigated the facts mentioned herein, and researched
the law, he would have found that petitioner's statements obtained on
10/5/1998, while in custody pursuant to an unlawful detention was
proper grounds for a motion to suppress at premliminary hearing.
See <u>Davis v. Mississippi</u>, (1969) 394 U.S. 721,724.

See <u>People v. Pope</u>, 23 Cal 3d, 412, 425. Citint: <u>Pope</u>, <u>Supra</u>, specifically
states that failure to research the law satisfies the first pong of
the incompetence test,i.e., whether "trial counsel failed to act in a
manner to be expected of reasonbley compentent attorney's acting
diligent advocates."

(5)

(Conclusion)

For the foregoing reasons mentioned herein Petitioner ask that

the judgement be set aside, and he be granted a new trial for the
charge of receiving stolen property.

Thank you for your time and consideration.

I, Troy Hayles declare under the penalty of perjury that
the foregoing is true and correct.

Dated: <u>November 4, 2005.</u>

Respectfully Submitted,

<u>Troy Hayles</u>
TROY HAYLES.Pro Per.

"EXHIBT"

"A"

SAN FRANCISCO

A version of the San Francisco Sunday Examiner and Chronicle

◆ *MIRANDA from A-1*

## Warning to police to respect Miranda

cautioning cops that deliberate violations may land them on the wrong side of the courtroom.

"And when the bailiff announces, 'Will the defendants please rise,' don't look to the suspect that (sic) was arrested to stand up," said the San Mateo County district attorney's office in a July 13 memo. "The bailiff is talking to you."

San Francisco District Attorney Terence Hallinan, a long-time supporter of Miranda, told police in a July 17 memo: "Failure to adhere to this rule ... may result in the personal civil liability of the officers involved."

But prosecutors say the high court's ruling still lets them use evidence that police obtained from interrogations in which they violated Miranda rights, as long as they did not coerce the suspect.

And defense lawyers are not convinced police would honor Miranda.

"Old habits die hard," said Kenneth M. Quigley, a San Francisco defense lawyer. "If there's a true change in this particular area by the Police Department, I'll eat my socks."

In a series of articles in June, The Examiner documented widespread police violations of Miranda that, along with other improper interrogation tactics, caused costly court hearings, hindered criminal investigations, helped accused criminals go free, or produced allegedly false confessions that threatened innocents with jail.

Scores of people are interrogated each day in California, typically in isolation and under intense police pressure. While out of public view, interrogations can profoundly shape the course of justice.

The U.S. Supreme Court's 1966 Miranda ruling examined what the court called the "inherently compelling" nature of custodial interrogation, and became its best-known decision on criminal procedure.

To counterbalance psychological pressure against suspects and to protect the Fifth Amendment right against self-incrimination, the court required police to give the equivalent of what has become known as the Miranda warning:

*You have the right to remain silent. ... You have the right to the presence of an attorney. ... If you cannot afford an attorney one will be appointed. ... Anything you say can and will be used against you.*

To enforce the rule, the court said that if police violated it, "no evidence obtained as a result of the confession can be used."

In later years, the high court narrowed that exclusionary measure. The court still punished police violations of Miranda by bar-

the subsequent confession in court to prove the suspect's guilt.

But the court said police could use the confession — if it was not the result of coercion — to find other evidence and witnesses. Prosecutors could also use the statement to challenge the credibility of defendants who took the witness stand and contradicted their confessions.

The court said in 1975 it was only "a speculative possibility" that police would breach Miranda to gain such advantages.

But in training sessions certified by the state Commission on Peace Officer Standards & Training, thousands of officers were told that — as long as they did not threaten or coerce suspects — they could choose when to honor a suspect's Miranda rights.

POST sets minimum standards for more than 380 police agencies.

Devallis Rutledge, a former POST commissioner and deputy district attorney in Orange County, was a leading proponent of "questioning outside Miranda." Rutledge contended that since Miranda rights were not specified in the U.S. Constitution, they were merely a rule of evidence and police could choose whether to follow it.

The state Justice Department gave similar advice in its Peace Officers Legal Sourcebook, the state's most widely used police legal manual. It said the Miranda rule "must be observed only if you are wanting anything the suspect may say later to be admissible against him at trial."

### Training outside Miranda

San Francisco police were among those trained that way, said Lt. Henry Hunter.

A recent San Francisco murder case shows how police ignored a suspect's Miranda rights in an attempt to extract a confession.

Inspectors Armand Gordon and Curtis Cashen interrogated Troy Hayles about the August 1998 murder of Joyce Rugar, a 70-year-old Western Addition widow who was strangled and robbed.

They advised Hayles of his Miranda rights, and he agreed to talk, saying he'd found and used Rugar's credit cards.

But when the inspectors pressed him about the murder, Hayles invoked his Miranda rights. "I've made my statement. And I'm through with that. And I want to see my attorney," he said, according to a transcript.

Gordon said Hayles his request for legal help was "a rash decision." Gordon also disparaged his lawyers' ability to help him and said he was better off cooperating.

"... your lawyers are going to try to work their magic," he said,

SAN FRANCISCO POLICE
MIRANDA WARN

1. You have the right to remain s
   *Do you understand?*
2. Anything you say may be used
   *Do you understand?*
3. You have the right to the prese
   before and during any questio
   *Do you understand?*
4. If you cannot afford an attorn
   appointed for you free of char
   questioning, if you want. De

San Francisco police officers carry a card with a from to inform suspects of their Miranda

"but the only ones who can really put in a good word for you, you know, and tell the judge and tell the district attorney's office that there was some remorse and that there was some caring, is us."

Hayles denied killing Rugar, saying, "It ain't me."

In court, Quigley, Hayles' lawyer, argued that the police ignored Hayles' assertion of his Miranda rights and that any statements he made after that should not be used to prove his guilt at trial. Assistant District Attorney Gerald Norman agreed. Both Quigley and Norman said the suppression of that part of the statement did not affect the outcome of the case.

On Aug. 3, a jury acquitted Hayles of the killing and convicted him of receiving stolen property.

Police spokesman Sherman Ackerson said department policy is to comply with Hallinan's directive to honor suspects' Miranda rights. But Norman noted the law lets prosecutors use evidence obtained as a result of noncoercive interrogations that violate Miranda.

Daly City police deliberately violated the Miranda rights of a juvenile suspect in the April 24, 1999, beating and stabbing death of William Tejada, 17, of San Francisco.

Sgt. Donald Griggs said in a police report that after the youth refused to talk, he questioned him outside Miranda. Griggs took a lengthy statement in which the suspect played a role in the murder but discussed the gang activities information police could use to find other evidence against him.

Griggs told The Examiner he was trained to question suspects outside Miranda, but his department had since been told to stop. The case is pending in San Mateo County Superior Court.

Several defense lawyers contended judges were reluctant to enforce Miranda rights by excluding unlawful confessions, because they could be labeled as soft on crime.

"Judges typically don't want to let a dangerous guy go merely because of the U.S. Constituti

Tired Of Getting Up At Night To

**Urinate**

"EXHIBT"
"B"

PAROLEE'S STATEMENT:   Subject stated to Inspector Cashen that he found a
bag on the street.  The bag contained the credit card which he admitted he
used in a fraudulent manner.


*CHARGES #6 and 7*:   On 06-18-98, Subject reported to Agent Geiger and
claimed he resided at 10 Osceola Lane #1.   On 06-30-98, Agent Geiger
visited the residence and saw Subject and his aunt, Joyce.  On 08-21-98,
Agent Geiger, along with SFPD, went to 10 Osceola Lane #1.   Subject was
not there nor were his belongings.  Joyce Jordan told Agent Geiger Subject
did not reside there and was merely using her address.

On 08-31-98, the Board of Prison Terms suspended parole effective
08-27-98.   Subject was arrested in Oakland on 10-05-98 on the Parolee
At-Large Warrant.

ATTACHMENT:  SFPD Report #981040846

WITNESS:  Homicide Inspector Cashen

COURT INFORMATION:  The District Attorney will be filing charges but has
not done so at the time of this report.

| PAROLEE'S NAME | CDC NUMBER |
|---|---|
| HAYLES, TROY | E16711 |

7. **Ground 2** or **Ground** _____ *(if applicable):*

_____

_____

_____

a.  Supporting facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b.  Supporting cases, rules, or other authority:

_____

_____

_____

_____

_____

**PETITION FOR WRIT OF HABEAS CORPUS**

8. Did you appeal from the conviction, sentence, or commitment?    [XX] Yes.    [ ] No.    If yes, give the following information:

   a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
     Appeal/Supreme court.

   b.  Result: Denied.                      c.  Date of decision: see amendment.

   d.  Case number or citation of opinion, if known:    See amendment

   e.  Issues raised:  (1) Vindictive Prosecution, Court error, Ineffective counsel.

            (2)

            (3)

   f.  Were you represented by counsel on appeal?  [XX] Yes.  [ ] No.  If yes, state the attorney's name and address, if known:

     William D Farber.

9. Did you seek review in the California Supreme Court?  [XX] Yes.  [ ] No.    If yes, give the following information:

   a.  Result: Denied.                     b.  Date of decision: 9 April 2003

   c.  Case number or citation of opinion, if known:

   d.  Issues raised:  (1) Vindictive Prosecution.

            (2)

            (3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal: Ineffective assistance by appellate Counsel.

11. Administrative Review:

   a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

   b.  Did you seek the highest level of administrative review available?  [ ] Yes.  [ ] No.
     *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  [X] Yes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a. (1) Name of court: Appeallate court/Supreme court.

   (2) Nature of proceeding (for example, "habeas corpus petition"): Habeas curpus/Motion

   (3) Issues raised: (a) Motion to vacate; Vindictive Prosecution; Court Error:

   (b) Ineffective counsel.

   (4) Result (Attach order or explain why unavailable): See amendment.

   (5) Date of decision: _____

 b. (1) Name of court: _____

   (2) Nature of proceeding: _____

   (3) Issues raised: (a) _____

   (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

 c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
   Petitioner was apart of the Mental health program, wherein he surred from mental and emtional stress and to receive counsel treatment.

16. Are you presently represented by counsel?  [XX] Yes.  [ ] No.  If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?  [ ] Yes.  [X] No.  If yes, explain:
   Not to petitioner knowledge.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  November 4, 2005

_(signature)_
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]    **PETITION FOR WRIT OF HABEAS CORPUS**    Page six of six

# PROOF OF SERVICE

(C.C.P. §§1013(a); 2015.5; 28 U.S.C. §1746)

I, _Tony Hayier_, am over the age of eighteen (18) years, and I (am) (am not) a party to the within cause of action.  My address is:

_SGT-4 /C&P/A8-105_
_P.O. BOX-290066_
_Repress, CA, 95671_

On, _November 3 05, 2005_, I served the following documents: _Petition_

_____ on the below named individuals by depositing true and correct copies thereof in the United State mail in Represa, California, with postage fully prepaid thereon, addressed as follows:

1. _California, Supreme Court_          2. _____

I have read the above statements and declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this ___3___ day of _November_, _2005_, at California State Prison at Sacramento, Represa, California.

(Signature) _Hayier_
Declarant

_____
Kay, P.J.

We concur:


_____
Sepulveda, J.


_____
Rivera, J.


*People v. Hayles*
A094429

7

## PROOF OF SERVICE

People v. Hayles
A094429

I, William D. Farber, declare under penalty of perjury that I am counsel of record for defendant and appellant Troy Hayles in this case, and further that my business address is William D. Farber, Attorney at Law, P.O. Box 2026, San Rafael, CA 94912-2026. On February 24, 2003, I served the within **Petition for Review** by depositing copies each in a sealed envelope with postage thereon fully prepaid, in the United States Postal Service, at San Rafael, California, addressed respectively as follows:

Bill Lockyer, Esq.
Attorney General
State of California
455 Golden Gate Ave.
Suite 11000
San Francisco, CA 94102-3664

Terrance Hallinan, Esq.
District Attorney
City and County of San Francisco
850 Bryant Street
San Francisco, CA 94102

First District Appellate Project
730 Harrison Street
Suite 201
San Francisco, CA 94107

Clerk, Court of Appeal
First Appellate District, Div. 4
350 McAllister Street
San Francisco, CA 94102

Troy Hayles
E-16711
Calipatria State Prison
P.O. Box 5001
Calipatria, CA 92233

Clerk
City and County of San Francisco
Criminal Appeals
850 Bryant Street
San Francisco, CA 94103

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  February 24, 2003.

WILLIAM D. FARBER
Declarant

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE CITY AND COUNTY OF SAN FRANCISCO

Department No. 22

FILED

San Francisco County Superior Court

JAN 2 3 2004

GORDON PARK-LI, Clerk

BY: _____
Deputy Clerk

IN THE MATTER OF THE APPLICATION )
OF                                )
           ___                    )
                                  )    WRIT NO. 4810
TROY HAYLES,                      )
                                  )    SUPERIOR COURT NO. 177096
           Petitioner,            )
                                  )
FOR A WRIT OF HABEAS CORPUS       )
                                  )

A petition for habeas corpus has been received.

Petitioner was convicted in a jury trial in the Superior Court, San Francisco County, of receiving stolen property. He was sentenced under Three Strikes Law to state prison for a term of 25 years to life. Petitioner appealed, and the Court of Appeal, First District, affirmed the judgment of conviction on January 30, 2003.

Petitioner complains he is unlawfully detained because the prosecution failed to prove all the elements of receiving stolen property at trial, and because he received ineffective assistance of trial and appellate counsel. He requests a new trial.

As to his first claim, the issue of insufficiency of the evidence to support a conviction is not cognizable in and of itself in a habeas corpus proceeding. (In re Spears (1984) 157 Cal.App.3d 157; In re Lindley (1947) 29 Cal.2d 709, 723.)

As to Petitioner's claims of ineffective assistance of trial and appellate counsel, Petitioner does not provide a copy of the trial transcript, the appellate brief filed on his behalf, or the entire unpublished decision of the Court of Appeal. Petitioner has the burden of providing documentary evidence to support his claim. Without these documents a decision regarding the ineffective assistance of his trial and appellate counsel is impossible. A petition for writ of habeas corpus should both (1) state fully and with particularity the facts upon which relief is sought, and (2) include copies of reasonably available documentary evidence supporting the claim, including affidavits or declarations. (People v. Duvall (1995) 9 Cal.4th 464, 474.) "Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing." (Ibid., quoting People v. Karis (1988) 46 Cal.3d 612, 656.)

1

For the foregoing reason(s), Petitioner's writ of habeas corpus is DENIED.

Dated: _January 23, 2004_            _Mary C. Morgan_
                                     Judge of the Superior Court

2

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

**FILED**

JUN 1 7 2004

Court of Appeal - First App. Dist.
DIANA HERBERT
By_____
DEPUTY

In re TROY HAYLES,

    on Habeas Corpus.

A106747

(San Francisco County
Super. Ct. No. 177096)

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Kay, P.J., and Sepulveda, J., joined in the decision.)

Date: JUN 1 7 2004 _____     KAY, P.J., P.J.

Court of Appeal, First Appellate District, Division Four - No. A094429
S114068

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

THE PEOPLE, Plaintiff and Respondent,

v.

TROY HAYLES, Defendant and Appellant.

Petition for review DENIED.

SUPREME COURT
FILED

APR - 9 2003

Frederick K. Ohlrich Clerk

Deputy

Chief Justice

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

# FILED

JUN 1 7 2004

Court of Appeal - First App. Dist.
**DIANA HERBERT**
By_____
DEPUTY

In re TROY HAYLES,

    on Habeas Corpus.

A106747

(San Francisco County
Super. Ct. No. 177096)

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Kay, P.J., and Sepulveda, J., joined in the decision.)

Date: ____JUN 1 7 2004____     _____KAY, P.J.____ P.J.

S127064

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re TROY HAYLES on Habeas Corpus

---

Petition for writ of habeas corpus is DENIED.

Brown, J., was absent and did not participate.

SUPREME COURT
**FILED**

JUN 2 9 2005

Frederick K. Ohlrich Clerk
_____
DEPUTY

_____
Chief Justice

Filed 1/30/03  P. v. Hayles CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b).  This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TROY HAYLES,<br><br>Defendant and Appellant. | A094429<br><br>(San Francisco County<br>Super. Ct. No. 177096) |

The sole issue on this timely appeal is whether defendant Troy Hayles was the victim of prosecutorial vindictiveness.

The District Attorney of San Francisco filed an information by which defendant was charged with first degree murder with special circumstances, robbery, burglary, arson, and receiving stolen property.  It was also alleged in the information that defendant had four prior felony convictions (three for robbery, one for attempted robbery) for purposes of the three strikes statutes (Pen. Code, §§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)).  A jury found defendant guilty of receiving stolen property, but acquitted him of the other charges.  Thereafter the jury found three of the allegations of prior felony convictions (two of the robberies and the attempted robbery) to be true.

In addition to moving for a new trial, defendant moved for "a dismissal of the allegations of prior convictions ['strikes'] on the ground that the prosecution's conduct in charging them after Mr. Hayles was convicted only of a non-violent and non-serious

1

felony is vindictive, an abuse of discretion, and violative of the due process and equal protection clauses of the United States and California Constitutions."

The dismissal motion was the basis of a hearing conducted by the trial court on the date set for sentencing. The evidence received at that hearing may be summarized as follows: Since Terence Hallinan became district attorney in 1994 it has been general office policy that if a defendant is currently charged with only a nonserious, nonviolent felony, it is not prosecuted as a three strikes case. Individual deputies with the appropriate authority may make the decision to *charge* three strikes, but the decision to actually proceed to trial as a three strikes case comes from the three strikes committee within the office, subject to approval by District Attorney Hallinan. The policy is not immutable, and the office's three strikes committee may make case-by-case exceptions depending on the circumstances of the latest offense and the nature of the defendant's criminal history. After the jury's verdicts were returned, the deputy who tried the case reported to Mr. Hallinan, who directed the deputy to "Proceed with all strikes."

The office's three strikes policy has never been reduced to writing. Exceptions to the policy are "few and far between." The policy did not address defendant's situation—an accused charged with violent and nonviolent felonies who is convicted only of a single nonviolent felony—which had never occurred before defendant's trial. In fact, he is the only person not convicted of a violent or serious felony the San Francisco District Attorney's Office has elected to prosecute under the three strikes statutes.

The trial court continued the hearing in order to allow the defense time to search court records to discover if defendant's situation truly was unique. When the hearing resumed, defendant's counsel advised that the situation had no precedent. The court heard argument and then ruled as follows: "We have never had a case like this before. The evidence was that even after the . . . jury came back and found the defendant not guilty of all the violent crimes but guilty of the nonviolent one, that the matter went before the Three Strikes Committee again. It was faced for the very first time with the issue that we have before us right now. They [*sic*] said we will continue to assert three strikes. The Court cannot find that this is abuse of discretion or vindictive or anything.

2

It's the first time they have ever done it. Nobody was being singled out at all and all of your argument that Mr. Hayles is being singled out are not persuasive. He is not. He has not been singled out for anything. He is in a position where having won a trial on . . . the violent crimes, we now find ourselves in a posture that has never been confronted in this system before. Nobody is being singled out. It just is not factually correct." The court then denied defendant's other motions and sentenced him to state prison for a term of 25 years to life.

At the outset it must be established that defendant is not asserting the usual type of prosecutorial vindictiveness (which is also known as discriminatory prosecution.) "[A] defendant's claim of discriminatory prosecution goes not to the nature of the charged offense, but to a defect of constitutional dimension in the initiation of the prosecution. [Citation.] The defect lies in the denial of equal protection to persons who are singled out for a prosecution that is 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' [Citation.] . . . [¶] Unequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement." (*Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 831-832.) The familiar settings for vindictiveness claims are singling out select groups or persons for prosecution (e.g., *Murgia v. Municipal Court* (1975) 15 Cal.3d 286 [harassing prosecution of UFW members]) or increasing the charges after the defendant either rejects a plea bargain (*Bordenkircher v. Hayes* (1978) 434 U.S. 357) or invokes a statutory remedy (*Blackledge v. Perry* (1974) 417 U.S. 21 [after defendant convicted of misdemeanor and asks for trial de novo, prosecutor gets felony indictment for same conduct]; *In re Bower* (1985) 38 Cal.3d 865 [after defendant charged with second degree murder successfully moves for mistrial, prosecutor retries for

first degree murder]). Defendant does not claim that any of these categories apply to him.[1]

Having shown that defendant's situation does not have an established slot in the analytical template, it remains to be determined what is the precise nature of defendant's complaint. Defendant's motion to dismiss the strikes referred to them as having been charged after defendant's conviction of the non-violent felony. This is incorrect. The allegations that he had prior convictions that qualified as strikes were in the case from the outset, so it cannot be maintained their introduction into the case was in any sense retaliatory. Because the prosecution did not "up the ante" by filing new charges in response to any action taken by defendant, either before or after the trial, there is no occasion to apply a presumption that the prosecution was acting vindictively. (See, e.g., *In re Bower, supra*, 38 Cal.3d 865, 876-878; *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 368-372; *People v. Bracey, supra,* 21 Cal.App.4th 1532, 1544-1547.) On the contrary, the focus of defendant's contention is not on what the prosecution did, but

---

[1] At the hearing on defendant's dismissal motion, his attorney testified that he discussed a possible plea bargain with the prosecutor prior to trial. The prosecutor was interested in getting defendant to testify against someone else. According to defendant's attorney, "the essence of it was if Troy will testify against Mojo Dumetz, he can have a nonstrike disposition, that is a determinate sentence. We did not get down to a period of years." Counsel also testified that the prosecutor told him, "If he does not testify against Mojo, . . . we are going to three strike him," to which defendant's counsel replied, "That is punishing him for going to trial on a very weak murder case." Although in arguing defendant's dismissal motion his counsel mentioned this incident, he never explicitly tied rejection of the inchoate "bargain" to the concept of vindictiveness. The trial court found "no evidence" of a completed bargain. Defendant does not rely on this pretrial event in his briefs. Moreover, our Supreme Court has stated that "a presumption of prosecutorial vindictiveness ordinarily would not arise from a prosecutor's failure to reinstate an offer." (*In re Alvernaz* (1992) 2 Cal.4th 924, 943; see *People v. Bracey* (1994) 21 Cal.App.4th 1532, 1546-1547 and authorities cited.)

Although not mentioned in his moving papers, at the hearing defendant asked the court to consider dismissing some of the strikes pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. This is another issue that defendant has not renewed for purposes of this appeal.

4

rather on what it did *not* do—discontinue the prosecution as a three strikes case once the jury returned its verdicts. He implicitly concedes that no reported decision addresses the subject of such inaction by a prosecutor amounting to vindictiveness. Our own research has found no similar or analogous situation. Nevertheless, we believe the trial court had ample justification for finding that no prosecutor vindictiveness was shown.

Defendant appears to be arguing that when District Attorney Hallinan and the three strikes committee reviewed the case and found that it still qualified as one appropriate for three strikes treatment—and when the trial court upheld that decision—a sort of end-run around the jury's acquittals was accomplished. We disagree. Defendant was not sentenced for murder, arson, robbery, or burglary. He was sentenced on the receiving count, plus the strike enhancement allegations, which the jury found true. Those allegations were completely independent of the substantive charges on which defendant was acquitted. Nor do we think it improper for District Attorney Hallinan and his staff to consider the state of the evidence in the case regarding murder even if the jury had determined that the same evidence was not sufficient to prove guilt beyond a reasonable doubt. A trial court is entitled to make decisions based on the facts of acquitted charges. (See, e.g., *In re Coughlin* (1976) 16 Cal.3d 52 [probation revocation allowed on same facts as criminal trial acquittal]; *In re Dunham* (1976) 16 Cal.3d 63 [parole revocation allowed on same facts as criminal trial acquittal]; *People v. Gragg* (1989) 216 Cal.App.3d 32, 42-46 [probation denial allowed on same facts as acquittal].) If it is permissible for a court to take account of the circumstances underlying acquitted charges, there is no reason why it should be impermissible for a prosecutor to do the same.

A final comment concerns the essence of prosecutorial vindictiveness—the denial of equal protection. In order to warrant judicial intervention, there must be a threshold showing that persons are "similarly situated" and are being treated differently before the law demands they be treated alike. (E.g., *In re Eric J.* (1979) 25 Cal.3d 522, 530-531; *People v. Poe* (1999) 74 Cal.App.4th 826, 835.) In this case, however, defendant has no point of comparison. Because he is the first and only person in his situation—charged

with violent and nonviolent offenses, convicted only of a single nonviolent charge, for which the prosecution asks for the maximum three strikes sentence—he cannot demonstrate that someone else was not treated in the same manner as he was. Nothing in the district attorney's unwritten policy covered defendant's situation. Without an actual instance of another defendant standing in the same situation who has been treated differently, no violation of equal protection, and thus prosecutorial vindictiveness, has been established.

The judgment of conviction is affirmed.

_____
Kay, P.J.


We concur:


_____
Sepulveda, J.


_____
Rivera, J.

TROY HAYLES
#E-16711,A3-123.
P.O. BOX-409020.
IONE,CA 95640.

RECEIVED

APR 3 – 2006

CLERK SUPREME COURT

In Pro-Per;

SUPREME COURT OF CALIFORNIA
COUNTY OF SAN FRANCISCO

#S138648

TROY HAYLES;

              Petitioner.

    vs.

California Supreme Court;

             Respondent.

Case #SCN-177096/1880412
NOTICE OF MOTON
MOTION FOR ENLARGEMENT OF
TOLLING TIME.
BASED ON EXORDINARY
CIRCUMSTANCES and FACTS.

Date: 29 March 2006.

INTRODUTION:

Petitioner humbly request that this court take in the following facts
for consideration and grant him equitable tolling time under the
clause of extraordinary circumstances.

(1)

## FACTUAL and PROCEEDURAL BACKGROUND.

In around and about August 2002, petitioner began experiencing mental health problems that resulted in a term of illness. In the midst, there is a possibilty that his tolling time may have expired.

Petitioner's illness affected his mental stability to a point that he was unable to suffiently research and apply the law with a reasonable degree of understanding and rational as well as factual understanding of tition petition and court ruls, statutory tolling, and general law.

Petitioner suffered from social disorder, postmatic stress, depression, suicidal tendenies, and the hearing of voices; which sometimes caused him to argue with himself. In mid 2003, petitioner became a full time participant in the prisons mental health programs. His competence and active ability remained unstable and inconsistent. He continued to decline, and in early 2005, he was placed, on medication; (anti-depression-drug) and kept under medical observation through weekly counselling.
However, his condition became worse and shortly after he was deemed in need of intensive-mental-care, based on his continuance display of irrational and bizarre conduct and hence, was placed in the prison's Enhanced-Out-Patient treatment program; where he began group therapy, and one on one case management.

Under aministrative, CDC medical rules, Enhanced Out Patients are segregated from the prison general population; because of their illness they are considered incompetent to function in a normal prison setting. This is to ensure the safty of other inmates, in respect to their con-stitutional rights: Due Process & Equal Protection.

As one is rendered incompetent to stand trial and protected under Due Process & Equal Portection, as described in <u>Dusky v.U.S.</u>, 362 U.S. 402 (1906), petitioner's mental illness rendered him incompetent to adequatly represent himself in a habeas proceedings. Despite this fact, he did pursue relief on a writ of habeas in the state courts with limited inmate assistance, and extended his best efforts under such conditions.

However, petitioner's writs filed in the state courts were full of pro-
cedural errors: lacking case citations to support claims; failur to
explain grounds for ineffective assistance...ect, and was, in some courts,
denied on such grounds, These errors are attributeable to petitioner's
unhealthy state of mind.
(Direct appeal ended: 9 April ∮;2003; First petition filed: December 2003;
State remedies exhausted: 14 July 2005.)(Note: at this time petitioner
has not filed in the Federal courts.)

Petioner has been deemed stable enough to function in a normal prison
setting and therefore, is no longer apart of the EOP program. He is still
a participant in the mental health program, receives one-one counselling
every 90 days, attends group therapy weekly, and limited help with his
legal concerns. Upon being released from EOP, petitioner sought to fix
up his impaired claims made during his time of illness, by filing a
second petition in the California Supreme Court: 7 November 2005, in
hope of having it adamended to his first petition before crossing into
the Federal courts, and to exhaust State remedies. (still pending)
(Amended are a few pages of assessments from petitioner's medical file,
offered as fruits of support in the matter herein. The entire file
consist of 50-80 pages and is readily available upon the request of
this court.

(C) Grant petitioner          **RELIEF SOUGHT:**

(A) Petitioner ask the this court accept jurisdiction over this matter
in the interest of justice.

(B) Allow petitioner's second petition that has been filed in this
court to be amended with his first petition.

(C) Grant petitoner equitable tolling time in the amount of 7 months,
to make up for elaps time during his placement in EOP, and for the
time that elaps between his second habeas filing: 7 November-2005-pending
decision; as to pervent petitioner from facing tolling-time issues
in the higher courts.

I Troy Hayles, declare under the penalty of perjury that the forgoing hereineisntrue.


Dated: 29 March 2006

                                          Respectfull submitted,

                                          *Troy Hayles*
                                          TROY HAYLES IN PRO_PER.

(84)

State of California, Department of Corrections – CSP-Sacramento    **Prior Page Number:**

**CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES**    All Staff, Clinicians, Treatment Teams

| Date/Time: | Use Name & Title Stamp |
|---|---|

| 7-27-05 | **EOP TREATMENT PLAN ADDENDUM – GROUPS** |
|---|---|

**The following groups may be assigned based on clinical need and/or interest:**

### A. CORE GROUPS – MENTAL HEALTH ISSUES

| ☐ Anger Management | ☐ Anxiety Management |
|---|---|
| ☐ Cognitive Behavior Therapy | ☒ Dialectical Behavior Therapy |
| ☐ Mood Management | ☐ Spirituality |
| ☐ Stress Management | ☐ |
| ☐ | |

### B. CORE GROUPS – SUBSTANCE ABUSE ISSUES

| ☐ Addictions | ☐ Drugs & Family |
|---|---|
| ☒ Relapse Prevention | ☐ |

### C. CORE GROUPS – SOCIAL SKILLS

| ☐ Assertiveness Training | ☒ Communication |
|---|---|
| ☐ Self-Care | ☐ |

### D. LEISURE GROUPS

| ☒ Creative Expression | ☐ Film Appreciation |
|---|---|
| ☐ Music Appreciation | ☐ Travel Adventures |
| ☐ | ☐ |

### E. PRE-RELEASE GROUP

| ☐ Community Transition |
|---|

*P. Spohn, LCSW*

P. Spohn, LCSW

---

| **MENTAL HEALTH** | **LEVEL OF CARE** | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| MH 2: Add-A-Page [08/24/04] | **EOP** | | | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | Inpatient | HAYLES, TROY | | |
| | | CDC # F 16711 | DOB | |

State of California, Department of Corrections -- Institution:    CSATF/SP    Prior Page Number : _____

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:    All Staff, Clinicians, Treatment Teams.

Date. Time:  Problem # #.  [✓].  Signature, Title & Print (or stamp).        Store & File Reverse Chronological Order.

| | |
|---|---|
| 03/17/05 | IDTT |
| 12:00 | (S) I/m participated in IDTT. Members present were: |
| | E. De Almeida, Ph.D.  Staff psychologist. |
| | D. Underwood Ph.D.  Staff psychologist |
| | N. Sharma, MD.  Psychiatrist |
| | Richard S    CCI |
| O- | Team discussed treatment plan with I/m regarding his diagnosis: |
| A- | AXIS I – 296.34 major Depression Disorder with Psychotic Features. |
| | It was discussed I/m actual Mental Health condition I/m reported that he "is taking one day at the time". That he is sleeping most of the time and missing meals. |
| | Team discussed feasibility of enhancing his level of care. |
| | Correctional Officer McQuiot reported that I/m behaves in a bizarre ways, such moving around self, raising his arms for no apparent reason. I/m reports that he does not drink water because the water is dirty. That he does not eat everything is given to him. |
| P- | Team agreed to change level of care TO EOP. |

Page # _____

E. DE ALMEIDA, Ph.D.
STAFF PSYCHOLOGIST
CSATF/SP

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | Last Name: HAYLES  TROY    MI: |
|---|---|---|
| CDC Form MH 3 [11/9/95] | Inpatient | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | (Outpatient) | CDC # E. - 16711    DOB 11/14/67 |

State of California   Department of Corrections        Calipatria State Prison              Prior Page Number:____ ___

CHRONOLOGICAL  INTERDISCIPLINARY  PROGRESS NOTES:                    All Staff, Clinicians, Treatment Teams.

| Date: | Time: | Staff: | Reason for Visit | Scheduled Length: |
|---|---|---|---|---|
| 9/24/2004 | 13:00 | MAGNER, J. Ph.D. | CM Contact | 0.5 |

| Housing: | FD0400000000113L | Release Date: | Current Diagnosis: 311 |

CONTACT:   [X] Case Manager   [ ] IDTT   [ ] Psychiatrist   [ ] Individual   [ ] Other

Completed?  [X] Yes/ No   [X] Out of Cell   [ ] Cell Front   Reason not Completed

REFERRED BY   [ ] MH   [ ] Custody   [ ] Medical   [ ] Emergency   [ ] I/M Request   [ ] Other

**Subjective:** "I ain't been doing too good lately, man." He notes that he has been having a problem c̄ the COs in his HU. He has been having a problem c̄ anger. He wonders if the Zoloft may be making him more agitated. He was informed that he could refuse the Rx.

**Objective:** Alert & oriented. Slowed speech and fair eye contact. Mood is depressed, anxious and irritable. Affect is flat. No psychotic process.

**Assessment:** MDD, Single Episode II ASPD

**Plan:** Discussed refusal of Rx and crisis mgmt. Asked the i/m to keep a log of agitation. Will continue to follow along c̄ Psychiatry. The i/m will RTC 1/wk.

**Education:** Log - crisis mgmt

MAGNER, PH. D.
PSYCHOLOGIST

Follow up:  1/wk.

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE: | Last Name: | First Name: |
|---|---|---|---|
| MH 3   [3/21/96] | CCCMS | HAYLES | TROY |
| Confidential Client/Patient Information See W _I Code, Section 5328 | | CDC #  E16711   DOB  11/12/196_ | |

State Of California, Department of Corrections -- Institution: _____ **CAL** _____ Prior Page Number: _____

## CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:    All Staff, Clinician Treatment Teams.

| • Date/Time: Problem & #. [✓]. Signature, Title & Print ( or stamp)    Store & File Reverse Chronological Order. |
|---|
| 1-14-03 5) 1:1 meeting at Hi Dest briefly on MH program 1413 that pt CO "playing games with ford. Arrival at Cal 9/Dec. Thinks "hard to cope" "with situation. Hard to manage |
| O) Quiet spoken speech limited, at x s clutter |
| 4) Depression - comes + goes. Perseverative thoughts of court room. In Sept 02 reported thought he was suicidal, denies. On this yd 2 whs, at x if C/o at Cal now with ford. Suspicious No hallucinatory experience. Thoughts limited but coherent. Avoidant |
| P) Attempt to establish rapport + define goals. Not wish medication at this time. MH 4 completed. |
| E) Discussed MH program. |
| J.P. Bellinger, PhD |
| J.P. BELLINGER, Ph.D. |
| PSYCHOLOGIST |
| CAL |

Page # _____

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | Last Name:    First Name:    MI: |
|---|---|---|
| CDC Form MH 3 [ 11/9/95 ] | Inpatient | Haylos,  Troy |
| Confidential Client/Patient Information See W & I Code, Section 5328 | Outpatient | CDC # E-16-711    DOB 11-12-67 |

# FOLLOW-UP SUICIDE WATCH/PRECAUTION OBSERVATION LOG

Date: Sept 24, 2002
Inmate Name: Hamba
CDC Number:
Date Returned to Housing Unit: 09-24-02

Housing Unit:
Cell Number: E 16 711
Original Date of Suicide Behavior:

| Time | Location | Activity | Behavior/Comments | Print Name | Monitored By Signature |
|---|---|---|---|---|---|
| 1600 | Neto D.o | Hold in cage | | SLDSS | |
| 2000 | D.o | cell slot | | SLDSS | |
| 2100 | D.o | | | | |
| 2200 | D.o | transport out | to Dr. | SLDSS | |
| 2300 | 06-218 | standing at door | talking | 123 P.M. SSI | |
| 0001 | 06-218 | standing at door | talking | 123 P.M. SSI | |
| 0035 | 06-218 | standing | ok | 123 P.M. SSI | |
| 0130 | 06-218 | standing by door | ok | 123 P.M. SSI | |
| 0230 | 06-218 | standing by door | ok | 123 P.M. SSI | |
| 0330 | 06-218 | laying in bunk | ok | 123 P.M. SSI | |
| 0430 | 06-218 | standing by bunk | ok | 123 P.M. SSI | |
| 0530 | 06-218 | standing by poor | ok | 123 P.M. SSI | |
| 0630 | 06-218 | eating breakfast | ok | 123 P.M. SSI | |
| 0730 | 06-218 | standing | ok | V. Zumbano | |
| 0830 | 06-218 | reading | ok | V. Zumbano | |
| 0930 | 06-218 | sitting | ok | | |
| 1030 | 06-218 | sitting | ok | | |
| 1130 | 06-218 | | | | |
| 1245 | D.o 218 | awake | suicide follow-up | | |
| 1400 | D.o 218 | | | | |
| 1600 | D.o 218 | | | | |
| 1800 | D.o 218 | | | | |
| 2000 | D.o 218 | | | | |
| 2200 | D.o 218 | | | | |

Mental Health Staff Recommendations:

Initial 24 hour checks
Patient will be extended to additional 24 hour check
Seventy-two (72) hour review will/will not be returned to CTC
Modify hourly checks to 2 or 4 hour intervals
This sheet must be turned into Medical at the end of the five-day period

Comments: every 2 hours

Comments: 9-25-02

STATE OF CALIFORNIA
CDC FORM 128C

DEPARTMENT OF CORRECTIONS
MHPCV2.0 (5-1-97)
Effective 6-1-97

MENTAL HEALTH PLACEMENT

NAME: _Hanlestron_    CDC#: _E16711_    INST: _MCSP_    □ HOUSING: _Ac-108U_
        LAST    FIRST        MI                    V II RC

THIS INMATE HAS COMPLETED A MENTAL HEALTH EVALUATION WITH THE FOLLOWING RESULTS (check box[es] below)

a) □ Does Not Meet Criteria for Inclusion in the Mental Health Treatment Population.

b) ☒ Meets Inclusion Criteria for the Mental Health Treatment Population (check Level of Care [LOC] below).

   ☒ No  □ Yes    Inclusion is for Medical Necessity (obtain Chief Psychiatrist signature below).

c) □ Presently included in MHSDS, new LOC below (check LOC below).

LOC:   □ Inpatient DMH   □ Crisis Beds (MHCB)   □ Enhanced Outpatient Program (EOP)/Cat J ☒   □ Clinical Case Management (CCCMS)

Level of Functioning Assessment (GAF score): _60_    Psychotropic Medication Prescribed: ☒ Yes  □ No

Behavioral Alerts: _____

_Olson_         _6541_           _[signature]_        _12/21/05_         _[signature]_
CLINICIAN'S LAST NAME (PRINT)  PHONE/EXTENSION  CLINICIAN'S SIGNATURE       DATE       CHIEF PSYCHIATRIST OR DESIGNEE SIGNATURE

Original to be placed in Central File within 48 hours; copies to:  CCI, Unit Health Record                    MCSP-518A

# EXHIBIT 16

S138648

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

In re TROY HAYLES on Habeas Corpus

Petition for writ of habeas corpus is DENIED. (See *In re Clark* (1993) 5 Cal.4th 750.)

SUPREME COURT
FILED

AUG 16 2006

Frederick K. Ohlrich, Clerk

DEPUTY

Chief Justice

# DECLARATION OF SERVICE BY U.S. MAIL

Case Name:     **Hayles v. Camble, Warden**

No.:     **C 06-6909 MJJ (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004.

On July 9, 2007, I served the attached **MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS AS UNTIMELY** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, California, addressed as follows:

Troy Hayles
Mule Creek State Prison
E-16711
P.O. Box 409020
Ione, CA  95640

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on July 9, 2007, at San Francisco, California.

| S. Agustin | /s/ S. Agustin |
|:---:|:---:|
| Declarant | Signature |

20095245.wpd