1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ANN P. WATHEN, State Bar No. 189314
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5972
     Fax:  (415) 703-1234
8    Email:  Ann.Wathen@doj.ca.gov

9  Attorneys for Respondent

10

11                 IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                          OAKLAND DIVISION

14

15

16  **TROY HAYLES,**                              C 06-6909 SBA

17                              Petitioner,       **ANSWER TO PETITION FOR**
                                                  **WRIT OF HABEAS CORPUS**
18         **v.**

19  **ROSANN CAMBLE, Warden,**

20                              Respondent.

21

22          Respondent provides this Answer to the Petition for Writ of Habeas Corpus and Order

23  to Show Cause:

24                                      **I.**

25          Petitioner is presently in lawful state custody in Mule Creek State Prison in Ione,

26  California.   On August 2, 2000, following a jury trial in San Francisco County Superior Court,

27

28

Answer - *Hayles v. Camble* (C 06-6909 SBA)

                                         1

petitioner was convicted of receiving stolen property (Cal. Penal Code[1/] § 496(a)).  CT[2/] 326.  In a separate proceeding, the jury also found true that petitioner had three prior felony strike convictions. CT 327.  On February 23, 2001, the trial court sentenced petitioner to 25 years to life in state prison under California's Three Strikes Law.  CT 383.

## II.

Petitioner has exhausted state remedies as to all his claims.  The petition is timely within the meaning of 28 U.S.C. § 2244(d).

## III.

Respondent denies that petitioner suffered any deprivation of constitutional rights supporting habeas corpus relief, or that he has made a showing that the state court decision adjudicating his claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  In support of the denial, respondent incorporates as though fully set forth the Memorandum of Points and Authorities which accompanies this Answer.

## IV.

Respondent has lodged the following state records with this Answer:

EXHIBIT 1     Reporter's Transcript (6 vols.), *People v. Hayles*, San Francisco County Superior Court, Case No. 177096

EXHIBIT 2     Clerk's Transcript (1 vol.), *People v. Hayles*, San Francisco County Superior Court, Case No. 177096

EXHIBIT 3     People's Exhibit 50a: Transcript of 10/5/98 Police Interview of Petitioner

EXHIBIT 4     Appellant's Opening Brief, California Court of Appeal, First Appellate District, Division Four, Case No. A094429

EXHIBIT 5     Respondent's Brief, *People v. Hayles*, California Court of Appeal, First Appellate District, Division Four, Case No. A094429

---

1.  All further statutory references are to the California Penal Code unless otherwise indicated.

2.     Exhibit references are to the state records lodged with this Answer.  References to "CT" and "RT" are to the Reporter's Transcript and Clerk's Transcript of state proceedings, Exhs.1 and 2, respectively.

Answer - *Hayles v. Camble* (C 06-6909 SBA)

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 6    January 30, 2003 Opinion, *People v. Hayles*, California Court of Appeal, First Appellate District, Division Four, Case No. A094429

EXHIBIT 7    Petition for Review, *People v. Hayles*, California Supreme Court, Case No. S114068

EXHIBIT 8    Denial of Petition for Review, *People v. Hayles*, California Supreme Court, Case No. S114068

EXHIBIT 9    Petition for Writ of Habeas Corpus, San Francisco County Superior Court, Case No. 177096, Writ No. 4810

EXHIBIT 10    Denial of Petition for Writ of Habeas Corpus, San Francisco County Superior Court, Case No. 177096, Writ No. 4810

EXHIBIT 11    Petition for Writ of Habeas Corpus, First Appellate District, Division Four, Case No. A106747

EXHIBIT 12    Denial of Petition for Writ of Habeas Corpus, First Appellate District, Division Four, Case No. A106747

EXHIBIT 13    Petition for Writ of Habeas Corpus, California Supreme Court, Case No. S127064

EXHIBIT 14    Denial of Petition for Writ of Habeas Corpus, California Supreme Court, Case No. S127064

EXHIBIT 15    Motion to Vacate Judgment, First Appellate District, Division Four, Case No. A111534

EXHIBIT 16    Denial of Motion to Vacate Judgment, First Appellate District, Division Four, Case No. A111534

EXHIBIT 17    Petition for Writ of Habeas Corpus, California Supreme Court, Case No. S138648

EXHIBIT 18    Denial of Petition for Writ of Habeas Corpus, California Supreme Court, Case No. S138648

///

///

///

Answer - *Hayles v. Camble* (C 06-6909 SBA)

3

1

**CONCLUSION**

2          Accordingly, respondent respectfully submits that the Petition for Writ of Habeas Corpus

3    should be denied.

4          Dated:  August 4, 2008

5                              Respectfully submitted,

6                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

7                              DANE R. GILLETTE
                               Chief Assistant Attorney General
8
                               GERALD A. ENGLER
9                              Senior Assistant Attorney General

                               PEGGY S. RUFFRA
10                             Supervising Deputy Attorney General

11

12                             /s/ Ann P. Wathen
13                             ANN P. WATHEN
                               Deputy Attorney General
14                             Attorneys for Respondent

15
     20129557.wpd
16   SF2007403010

17

18

19

20

21

22

23

24

25

26

27

28

Answer - *Hayles v. Camble* (C 06-6909 SBA)

4

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Hayles v. Camble, Warden**

No.:    **C 06-6909 SBA**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004.

On <u>August 4, 2008</u>, I served the attached

**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, California, addressed as follows:

Troy Hayles
Mule Creek State Prison
E-16711
P.O. Box 409020
Ione, CA  95640

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 4, 2008, at San Francisco, California.

| S. Agustin | /s/ S. Agustin |
|:---:|:---:|
| Declarant | Signature |

20129966.wpd

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ANN P. WATHEN, State Bar No. 189314
   Deputy Attorney General
6     455 Golden Gate Avenue, Suite 11000
      San Francisco, CA  94102-7004
7     Telephone:  (415) 703-5972
      Fax:  (415) 703-1234
8     Email:  Ann.Wathen@doj.ca.gov

9  Attorneys for Respondent

10                 IN THE UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                        OAKLAND DIVISION

13
   ┌─────────────────────────────────────────┬──────────────────────
   │ **TROY HAYLES,**                         │ C 06-6909 SBA
14 │                                          │
   │                            Petitioner,   │
15 │                                          │
   │            v.                            │
16 │                                          │
   │ **ROSANN CAMBLE, Warden,**               │
17 │                                          │
   │                            Respondent.   │
18 └─────────────────────────────────────────┴──────────────────────

19

20 **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2                                                                  **Page**

STATEMENT OF THE CASE          1

STATEMENT OF FACTS          3

     Defense          4

ARGUMENT          5

    I.     **STANDARD OF REVIEW ON THE MERITS**     5

    II.     **APPELLATE COUNSEL RENDERED EFFECTIVE ASSISTANCE**     6

        A.   Failure To Raise A Claim Of Insufficient Evidence     8

        B.   Failure To Raise A Claim Of Ineffective Assistance Of Trial Counsel     11

            1.   Relevant Background     11

            2.   Appellate Counsel's Performance Was Adequate     12

            3.   There Was No Prejudice     15

    III.     **TRIAL COUNSEL RENDERED EFFECTIVE ASSISTANCE**     15

    IV.     **THERE WAS NO VINDICTIVE PROSECUTION**     16

        A.   The Claim Is Untimely     16

        B.   Relevant Background     16

        C.   State Appellate Court's Ruling     17

        D.   The California Courts Did Not Unreasonably Apply United States Supreme Court Precedent In Denying Petitioner's Claim     18

CONCLUSION     22

1          **TABLE OF AUTHORITIES**

2                                                              **Page**

3   **Cases**

4   *Babbitt v. Calderon*
    151 F.3d 1170 (9th Cir. 1998)                              7
5
    *Baumoff v. United States*
6   200 F.2d 769 (10th Cir. 1952)                              13

7   *Bennett v. Mueller*
    322 F.3d 537 (9th Cir. 2003)                               6
8
    *Blackledge v. Perry*
9   417 U.S. 21 (1974)                                     17, 19

10  *Boag v. Raines*
    769 F.2d 1341 (9th Cir. 1985)                              12
11
    *Bordenkircher v. Hayes*
12  434 U.S. 357 (1978)                                17, 19, 21

13  *Brecht v. Abrahamson*
    507 U.S. 619 (1993)                                        6
14
    *Brown v. Illinois*
15  422 U.S. 590 (1975)                                        13

16  *Dunaway v. New York*
    442 U.S. 200 (1979)                                        13
17
    *Dunaway v. New York*
18  442 U.S. 200 (1979)                                        14

19  *Early v. Packer*
    537 U.S 3 (2002)                                           5
20
    *Evans v. United States*
21  504 U.S. 255 (1992)                                        12

22  *Evitts v. Lucey*
    469 U.S. 387 (1985)                                        7
23
    *Fisher v. Angelone*
24  163 F.3d 835 (4th Cir. 1998)                               15

25  *Fry v. Pliler*
    127 S.Ct. 2321 (2007)                                      6
26
    *Gray v. Greer*
27  800 F.2d 644 (7th Cir. 1986)                               8

28

TABLE OF AUTHORITIES  (continued)

1

**Page**

2
3
*Hayes v. Florida*
470 U.S. 811 (1985)                                                                    13

4
*Himes v. Thompson*
336 F.3d 848 (9th Cir. 2003)                                                        6

5
6
*Hudson v. Palmer*
468 U.S. 517 (1984)                                                                    13

7
*In re Anthony J.*
117 Cal.App.4th 718
8
(2004)                                                                                       9

9
*In re Bowers*
38 Cal.3d 865 (1985)                                                                 19

10
11
*In re Clark*
5 Cal.4th 750 (1993)                                                                   6

12
*In re Coughlin*
16 Cal.3d 52 (1976)                                                                   18

13
*In re Dunham*
14
16 Cal.3d 63 (1976)                                                                   18

15
*Jackson v. Virginia*
443 U.S. 307 (1979)                                                                    8

16
*James v. Borg*
17
24 F.3d 20 (9th Cir. 1994)                                                       12, 15

18
*Jenkins v. Currier*
514 F.3d 1030 (10th Cir. 2008)                                                 13

19
*Jones v. Barnes*
20
463 U.S. 745 (1983)                                                                     8

21
*King v. Lamarque*
464 F.3d 963 (9th Cir. 2006)                                                      6

22
*Lockyer v. Andrade*
23
538 U.S. 63 (2003)                                                                     20

24
*Mayle v. Felix*
545 U.S. 644 (2005)                                                                  16

25
*Mayo v. Henderson*
26
13 F.3d 528 (2d Cir. 1994)                                                           7

27
*Medley v. Runnels*
223 F.3d 976 (9th Cir. 2007)                                                      6

28

Memorandum of Points and Authorities - *Hayles v. Camble* - C 06-6909 SBA

**TABLE OF AUTHORITIES** (continued)

| | Page |
|---|---|
| *Miller v. Keeney*<br>882 F.2d 1428 (9th Cir. 1989) | 8, 15 |
| *Miranda v. Arizona*<br>384 U.S. 436 (1966) | 12 |
| *Morrison v. Estelle*<br>981 F.2d 425 (9th Cir. 1992) | 12 |
| *Murgia v. Municipal Court*<br>15 Cal.3d 286 (1975) | 17 |
| *Nunes v. Rameriz-Palmer*<br>485 F.3d 432 (9th Cir. 2007) | 20, 21 |
| *Oyler v. Boles*<br>368 U.S. 448 (1962) | 21 |
| *People v. Azevedo*<br>218 Cal.App.2d 483 (1963) | 9 |
| *People v. Frye*<br>18 Cal.4th 894 (1998) | 15 |
| *People v. Gragg*<br>216 Cal.App.3d 32 (1989) | 18, 20 |
| *People v. Jenkins*<br>122 Cal.App.4th 1160 (2004) | 14 |
| *People v. Johnson*<br>26 Cal.3d 557 (1980) | 8 |
| *People v. King*<br>81 Cal.App.4th 472 (2000) | 8 |
| *People v. Kunkin*<br>9 Cal.3d 245 (1973) | 8 |
| *People v. Land*<br>30 Cal.App.4th 220 (1994) | 8, 9 |
| *Pirtle v. Morgan*<br>313 F.3d 1160 (9th Cir. 2002) | 6 |
| *Robinson v. Ignacio*<br>360 F.3d 1044 (9th Cir. 2004) | 5 |
| *Sherman v. U.S. Parole Comm'n*<br>502 F.3d 869 (9th Cir. 2007) | 13 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES  (continued)

**Page**

*Smith v. Robbins*
528 U.S. 259 (2000)                                                                 8

*Strickland v. Washington*
466 U.S. 668 (1984)                                                                 7

*Twiggs v. Superior Court*
34 Cal.3d 360 (1983)                                                               19

*United States  v. Quintero-Barraza*
78 F.3d 1344 (1996)                                                                12

*United States v. Aguon*
851 F.2d 1158 (9th Cir. 1998)                                                      12

*United States v. Armstrong*
517 U.S. 456 (1996)                                                             19-21

*United States v. Butcher*
926 F.2d 811 (9th Cir. 1991)                                                       13

*United States v. Cook*
45 F.3d 388 (10th Cir. 1995)                                                        7

*United States v. Deberry*
430 F.3d 1294 (10th Cir. 2005)                                                     21

*United States v. Goodwin*
457 U.S. 368 (1982)                                                                19

*United States v. Hernandez-Herrera*
273 F.3d 1213 (9th Cir. 2001)                                                      19

*United States v. Mannino*
212 F.3d 835 (3d Cir. 2000)                                                         7

*United States v. Martinez*
785 F.2d 663 (9th Cir. 1986)                                                       19

*United States v. Polito*
583 F.2d 48 (2d Cir. 1978)                                                         13

*United States v. Rodriguez*
162 F.3d 135 (1st Cir. 1998)                                                       20

*United States v. Serafino*
281 F.3d 327 (1st Cir. 2002)                                                       21

*Wasman v. United States*
 468 U.S. 559 (1984)                                                               19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES  (continued)

|  |  | Page |
|---|---|---|
| *Wayte v. United States*<br>470 U.S. 598 (1985) |  | 20, 21 |
| *Williams v. Bartow*<br>481 F.3d 492 (7th Cir. 2007) |  | 19 |
| *Williams v. Taylor*<br>529 U.S. 362 (2000) |  | 5, 7 |
| *Wilson v. Henry*<br>185 F.3d 986 (9th Cir. 1999) |  | 10, 15 |
| *Wong Sun v. United States*<br>371 U.S. 471 (1963) |  | 13 |
| *Woodford v. Visciotti*<br>537 U.S. 19 (2002) |  | 5 |
| *Ylst v. Nunnemaker*<br>501 U.S. 797(1991) |  | 5 |

**Constitutional Provisions**

United States Constitution
    Fourth Amendment      2, 13, 14

**Statutes**

United States Code, Title 28
    § 2254      6
    § 2254(d)      5, 6, 16
    § 2254(e)(1)      5

Penal Code
    § 496(a)      1, 8

**Other Authorities**

Antiterrorist Effective Death Penalty Act of 1996 (AEDPA)      6

CALCRIM
    No. 1750      8

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | ANN P. WATHEN, State Bar No. 189314
Deputy Attorney General
6 |   455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 |   Telephone: (415) 703-5972
Fax: (415) 703-1234
8 | Email: Ann.Wathen@doj.ca.gov

9 | Attorneys for Respondent

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 | OAKLAND DIVISION

13 |

14 | **TROY HAYLES,**                                  C 06-6909 SBA

15 |                                    Petitioner,    **MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF ANSWER TO
PETITION FOR WRIT OF
HABEAS CORPUS**

16 |        **v.**

17 | **ROSANN CAMBLE, Warden,**

18 |                                    Respondent.

19 |

20 | **STATEMENT OF THE CASE**

21 |          On August 2, 2000, following a jury trial in San Francisco County Superior Court,

22 | petitioner was convicted of receiving stolen property (Cal. Pen. Code,[1] § 496(a)). CT[2] 326. In a

23 | separate proceeding, the jury found true that petitioner had three prior felony strike convictions. CT

24 |

25 |          1.    All further statutory references are to the California Penal Code unless otherwise

26 | indicated.

27 |          2.    Exhibit references are to the state records lodged with the Answer. References to "CT"

28 | and "RT" are to the Reporter's Transcript and Clerk's Transcript of state proceedings, Exhs.1 and
2, respectively.

1   327.  On February 23, 2001, the trial court sentenced petitioner to 25 years to life in state prison
2   under California's Three Strikes Law.  CT 383.

3       On August 1, 2002, petitioner appealed his conviction to the California Court of Appeal
4   (A094429), claiming vindictive prosecution.  Exh. 4.  On December 2, 2002, the People filed
5   respondent's brief.  Exh. 5.  On January 30, 2003, the California Court of Appeal affirmed the
6   judgment of conviction.  Exh. 6 at 6.

7       On March 4, 2003, petitioner filed a petition for review in the California Supreme Court
8   (S114068).  Exh. 7.  On April 9, 2003, the California Supreme Court denied the petition.  Exh. 8.

9       On December 24, 2003, petitioner filed a state habeas petition in the San Francisco County
10  Superior Court (177096, Writ No. 4810), which was denied on January 23, 2004.  Exhs. 9, 10.

11      On June 10, 2004, petitioner filed a state habeas petition in the California Court of Appeal
12  (A106747).  Exh. 11.  On June 17, 2004, the state appellate court denied the petition.  Exh. 12.

13      On August 13, 2004, petitioner filed a state habeas petition in the California Supreme
14  Court (S127064), which was denied on June 29, 2005.  Exhs. 13, 14.

15      On September 29, 2005, petitioner filed a "Motion to Vacate Judgment" in the California
16  Court of Appeal (A111534).  Exh. 15.  On October 6, 2005, the state appellate court denied that
17  motion.  Exh. 16.

18      On November 7, 2005, petitioner filed another state habeas petition in the California
19  Supreme Court (S138648), which was denied on August 16, 2006.  Exhs. 17, 18.

20      On November 6, 2006, petitioner timely filed the instant petition in this Court, claiming
21  that: (1) his appellate counsel had rendered ineffective assistance by not raising a claim of
22  insufficient evidence and ineffective assistance of counsel; and (2) his trial counsel failed to render
23  effective assistance because he did not raise a Fourth Amendment claim.  Petition at 10, 15.  On
24  April 13, 2007, petitioner moved to amend the petition to add a claim of vindictive prosecution.
25  Respondent moved to dismiss the petition as untimely.  On March 20, 2008, the Court denied the
26  motion to dismiss and granted petitioner's motion to amend the petition, adding a claim of vindictive
27  prosecution.  3/20/08 Order Denying Respondent's Motion to Dismiss.

28

**STATEMENT OF FACTS**

Sometime prior to August 15, 1998, Joyce Ruger showed [petitioner] her art collection and other objects that she had in her house. (RT 130-131.) Ruger owned both expensive and inexpensive jewelry. (RT 310, 332-333.) Included in her jewelry collection were the following: (1) a gold pendant lion's head which had diamonds in the mouth and eyes (RT 310, 316); (2) gold rings, necklaces, and bracelets (RT 311-313); (3) an antique watch (RT 325-326).

On August 15, 1998, Christina Palma overheard Ruger, who was her grandmother, talking on the phone with "Troy." Ruger told Troy that she did not have any money. (RT 318.)

On the morning of August 16, 1998, Ruger was found murdered in her San Francisco home located at 719 Webster Street. She had been bound and her home had been set on fire. (RT 52-62, 89-95, 336.) She had died from asphyxiation. (RT 91, 96.)

At 9 a.m., the police informed Palma of her grandmother's death. (RT 321.) An inventory of Ruger's house revealed that most of Ruger's jewelry had been taken. (RT 99-104, 323-324.)

That same morning, [petitioner] went to his cousin's, Charrisse Wells', house. (RT 140.) Unnamed acquaintances called Wells and told her about some credit cards and other stolen items from a robbery. (RT 142, 144-145.) Wells drove [petitioner] to a telephone booth on the corner of Buchanan and Hayes where they retrieved the stolen items. (RT 150-151.)

That same morning, Wells and [petitioner] used Ruger's American Express card to purchase gas, meals, clothing, and shoes. (RT 152, 165, 185-186, 291, 299-301, 337, 368-370, 434, 436.) [Petitioner] never told Wells that he knew Ruger. (RT 1612.) Wells and [petitioner] left the American Express card at a Walgreen's store where an attempted credit card transaction was rejected. (RT 177, 179, 293-295.) On August 19, 1998, Wells pawned and sold numerous pieces of Ruger's jewelry. (RT 193-195, 302, 307, 344-347.)

Sometime in August 1998, [petitioner] went to live with his sister, Selena Jimenez, in Richmond. (RT 253.) Jimenez saw some jewelry, including a lion's head pendant, in [petitioner]'s backpack. (RT 256, 258-261, 266, 282-283.) [Petitioner] told Jimenez that he bought the pendant on a street in the Hunter's Point area. (RT 259-260.) [Petitioner] asked Jimenez if she knew anyone who would buy the jewelry. (RT 263, 282.) Jimenez purchased a small chain from [petitioner] for $25, and [petitioner] sold the lion's head pendant to a nearby pawnshop for $250. (RT 265, 269-270.)

On September 21, 1998, Wells gave a statement to police which differed from her testimony at trial. (RT 196-197, 338-339.) She told police that she picked up [petitioner] at his request on the morning of August 16, 1998. (RT 220.) [Petitioner] told Wells that he had just broken up with his girlfriend and that he had taken the jewelry he had bought her and the credit cards that they shared. (RT 220, 340-341.) [Petitioner] and Wells then shopped using one of the credit cards. (RT 220-221.) After the interview, Wells took the police to the various pawnshops to which she had gone to pawn Ruger's jewelry. (RT 341-342.) On October 6, 1998, Wells reaffirmed her statement to police. (RT 224-225, 341.) At trial, Wells claimed that she lied to the police when she incriminated [petitioner] in the crimes. (RT 143, 219, 225.)

About September 1998, Wanda Martinez met [petitioner] in Richmond and cashed two checks for him that bore someone else's (not Ruger's) name. (RT 232, 242.)

1    [Petitioner] told Martinez that he was staying in Richmond because he had gotten into
     some trouble with someone in San Francisco, someone was hurt during the incident, and
2    he did not intend to be caught alive. (RT 232, 234-238, 247.)

3        On October 5, 1998, when Jimenez learned that the police were looking for
     [petitioner], she asked [petitioner] to leave.   (RT 264, 273-274.)  After [petitioner]'s
4    arrest, Jimenez gave the police some jewelry that [petitioner] had left at her house. (RT
     270-272.)
5
         On December 16, 1999, [petitioner]'s father, Donald Hamilton, was interviewed by
6    police about his conversation with [petitioner] after his arrest. (RT 412.) Hamilton said
     that [petitioner] had told him that he had visited an elderly white lady who lived near
7    Hayes and Fillmore in San Francisco. (RT 374-376.) [Petitioner] further told his father
     that he had gotten into some "shit" and that he did not "intend for it to happen like that."
8    (RT 378.)  [Petitioner] admitted to his father that they were trying to rob her when the
     elderly lady was killed. (RT 384, 386-387.)  At trial, Hamilton denied the truth of his
9    video-taped statement to police. (RT 378.)  He claimed he was nervous and had been
     drinking. (RT 380-381, 389.)
10
     **Defense**
11
         On August 16, 1998, at 6:45 a.m., Gail Jackson saw a statute that belonged to Ruger
12   at the top of Ruger's stairs and a suspicious-looking Black man who was carrying a bag
     down the stairs.  (RT 464-465, 476-477, 480.)  The Black man looked over his shoulder
13   several times.  (RT 476.)  Jackson later identified MoJo Dumetz as being similar in
     appearance (including having light-colored hair) to the Black man she saw on the morning
14   of August 16, 1998. (RT 467-473, 475, 483, 533-536.) According to Jackson, [petitioner]
     had a darker complexion and was much thinner than the man she saw on August 16, 1998.
15   (RT 483.)

16       Kendra [Bell] Rodriguez told police that she had seen Dumetz walking down an alley
     near Ruger's house in the early morning hours of August 16, 1998. (RT 492-493, 559.)
17   Dumetz was moving fast and carrying a big bag of jewelry. (RT 494, 513.) Ten minutes
     later, Rodriguez saw [petitioner] a couple blocks away; [petitioner] appeared to be under
18   the influence of crack cocaine. (RT 499, 557, 560-561.) Rodriguez had been acquainted
     with Dumetz for fifteen years. (RT 485.)  Rodriguez recalled that Dumetz had dyed his
19   hair either blonde or red in August 1998.  (RT 486.)  On one occasion, Dumetz told
     Rodriguez that he liked to strangle people because it did not leave fingerprints. (RT 487.)
20
         Dumetz confirmed that his hair was dyed blonde in August 1998, and that he had a
21   relative who lived at 709 Webster Street. (RT 586, 588.) Dumetz asserted his Fifth
     Amendment privilege against self-incrimination with respect to all other questions. (RT
22   592.)

23       Police Inspector Cashen testified that early in the investigation, he focused on
     Dumetz as a suspect in Ruger's murder. (RT 545.)
24

25   (Exh. 5 at 2-5.)

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ARGUMENT**

**I.**

**STANDARD OF REVIEW ON THE MERITS**

A federal court may grant a writ of habeas corpus to a state prisoner only if the state court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented" in the state courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a state court's decision is contrary to federal law if it "'contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *See Early v. Packer*, 537 U.S 3, 8 (2002), *quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). That test does "not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. at 8. The ultimate controlling authority is the holding of the Supreme Court's cases at the time of the relevant state-court decision, not the dicta. *Williams v. Taylor,* 529 U.S. at 412. The state courts are presumed to "know and follow the law," and the standard for evaluating state-court rulings, which are given the "benefit of the doubt," is "highly deferential." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). In order to warrant habeas relief, the state court's application of clearly established federal law must be not merely erroneous or incorrect but "objectively unreasonable." *Williams v. Taylor*, 529 U.S. at 409; *see also Woodford v. Visciotti*, 537 U.S. at 25. It is the habeas petitioner's burden to make that showing. *Id.* The state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

To determine whether a petitioner is entitled to habeas relief under § 2254(d), the federal court must look to the last reasoned state court decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state's highest court did not provide a reasoned decision, the district court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the state court decided the petitioner's claims on the merits, but did not provide

1  any reasoning for its decision, the federal habeas court must independently review the record to

2  determine whether habeas corpus relief is available to the petitioner under § 2254(d). *Himes v.*

3  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). If the state court denied the petitioner's claims on

4  procedural grounds or did not decide the petitioner's claims on their merits, the deferential standard

5  of the AEDPA does not apply and the federal court must review the petitioner's claims de novo.

6  *Medley v. Runnels*, 223 F.3d 976, 863 n. 3 (9th Cir. 2007); *Pirtle v. Morgan*, 313 F.3d 1160, 1167

7  (9th Cir. 2002).

8      Furthermore, even if the state court's ruling is contrary to or an unreasonable application

9  of Supreme Court precedent, that error justifies overturning the conviction only if the error had a

10  "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

11  *Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* standard applies to all § 2254 cases, regardless

12  of the type of harmless error review conducted by the state courts. *Fry v. Pliler*, 127 S.Ct. 2321

13  (2007).

14                                    **II.**

15             **APPELLATE COUNSEL RENDERED EFFECTIVE ASSISTANCE**

16      Petitioner contends that appellate counsel rendered ineffective assistance by failing to

17  claim on appeal: (a) there was insufficient evidence to support his receipt-of-stolen-property

18  conviction; and (b) his trial counsel rendered ineffective assistance by failing to file a motion to

19  suppress his statements because his arrest violated the Fourth Amendment. Petition at 10, 15-16.

20  We disagree.

21      When petitioner raised the foregoing claims in the habeas petitions that he filed with the

22  California Supreme Court, Exh. 13, 17, the court summarily denied the petitions, Exh. 14, 18, citing

23  *In re Clark*, 5 Cal.4th 750 (1993) with respect to the second petition.[3/] Accordingly, this Court

24  reviews petitioner's claims of ineffective assistance of counsel de novo. *Medley v. Runnels*, 506

25  F.3d at 863 n. 3; *Pirtle v. Morgan*, 313 F.3d at 1167. Here, as discussed in detail below, *see* Arg.

26

27      3. Because the Ninth Circuit does not recognize these state bars as valid, we do not rely on
   the procedural default doctrine here. *See King v. Lamarque*, 464 F.3d 963 (9th Cir. 2006); *Bennett*
28  *v. Mueller*, 322 F.3d 537 (9th Cir. 2003).

1  IIA-B, *infra*, petitioner was not denied his right to the effective assistance of counsel on appeal.

2          In *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the Supreme Court set forth a two-

3  prong test to evaluate a claim of ineffective assistance of counsel. Under the first prong, "the

4  defendant must show that counsel's representation fell below an objective standard of

5  reasonableness." *Id.* at 688. When assessing the performance of defense counsel under the first

6  prong of the *Strickland* test, a reviewing court must be "highly deferential" and "indulge a strong

7  presumption that counsel's conduct falls within the wide range of reasonable professional

8  assistance." *Id.* at 689. The reviewing court must not second-guess defense counsel's trial strategy,

9  keeping in mind that "[e]ven the best criminal defense attorneys would not defend a particular client

10 in the same way." *Id.* The relevant inquiry is therefore not what defense counsel could have done,

11 but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*,

12 151 F.3d 1170, 1173 (9th Cir. 1998). There is a "wide range of reasonable professional conduct,"

13 and a "strong presumption" that counsel's conduct fell within that range. *Strickland*, 466 U.S. at

14 689.

15          The second prong of the *Strickland* test is no less strict. The petitioner bears the "highly

16 demanding" and "heavy burden" of establishing actual prejudice. *Williams v. Taylor*, 529 U.S. at

17 394. A defendant must carry this burden by means of "affirmative" proof. *Strickland*, 466 U.S. at

18 693. It requires showing "a reasonable probability that but for counsel's unprofessional errors, the

19 result . . . would have been different." *Id.* at 694.    "A reasonable probability is a probability

20 sufficient to undermine confidence in the outcome." *Id.* It is insufficient to show only that the errors

21 had some conceivable effect on the outcome of the proceeding, because virtually every act or

22 omission of counsel would meet that test. *Id.* at 693. If the absence of prejudice is clear, a court

23 should dispose of the ineffectiveness claim without inquiring into the performance prong. *Id.* at 692.

24          The test under *Strickland v. Washington* applies with equal force to a claim of ineffective

25 assistance of appellate counsel as it does to a claim of ineffective assistance of trial counsel. *Evitts*

26 *v. Lucey,* 469 U.S. 387, 392-402 (1985); *United States v. Mannino,* 212 F.3d 835, 840 n.4 (3d Cir.

27 2000); *United States v. Cook,* 45 F.3d 388, 392 (10th Cir. 1995); *Mayo v. Henderson*, 13 F.3d 528,

28 533 (2d Cir. 1994). Appellate counsel, however, is not obligated to raise all issues; he may pick and

1    choose so as to maximize a petitioner's chance of success on direct appeal. *Smith v. Robbins,* 528

2    U.S. 259, 288 (2000); *Jones v. Barnes,* 463 U.S. 745, 754 (1983). "'Generally, only when ignored

3    issues are clearly stronger than those presented, will the presumption of effective assistance of

4    counsel be overcome.'" *Smith v. Robbins,* 528 U.S. at 288, *quoting Gray v. Greer,* 800 F.2d 644,

5    647 (7th Cir. 1986). Furthermore, petitioner must show that "there is a reasonable probability that,

6    but for counsel's unprofessional errors, [petitioner] would have prevailed on appeal." *Miller v.*

7    *Keeney,* 882 F.2d 1428, 1434 (9th Cir. 1989).

8    **A.    Failure To Raise A Claim Of Insufficient Evidence**

9          Initially, petitioner claims that his appellate counsel rendered ineffective assistance by not

10    claiming that there was insufficient evidence to support his receipt-of-stolen-property conviction.

11    Petition at 10. The standard of review for a claim of insufficient evidence is whether, viewing the

12    evidence in the light most favorable to the prosecution, a rational jury could have convicted the

13    defendant beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *People v. Johnson*,

14    26 Cal.3d 557, 578 (1980). In light of this standard, appellate counsel did not perform deficiently·

15    by not challenging petitioner's receipt-of-stolen property conviction, because based on this record,

16    it is evident that such a claim would have been rejected on appeal as there was more than sufficient

17    evidence to support petitioner's conviction.

18          Section 496(a) provides, in relevant part:

19          Every person who buys or receives any property that has been stolen or that has
            been obtained in any manner constituting theft . . ., knowing the property to be

20          so stolen or obtained, or who conceals, sells, withholds, or aids in concealing,
            selling, or withholding any property from the owner, knowing the property to

21          be so stolen or obtained, shall be punished . . .

22    § 496(a); *see also* CALCRIM No. 1750.

23          In order to sustain a conviction of receiving stolen property, the state must prove: (1) the

24    property was stolen; (2) the defendant knew it was stolen; and (3) the defendant had possession of

25    the stolen property. *People v. King,* 81 Cal.App.4th 472, 476 (2000); *People v. Land,* 30

26    Cal.App.4th 220, 223 (1994). Property is "stolen" if it was obtained by any type of theft. *People*

27    *v. Kunkin,* 9 Cal.3d 245, 250 (1973). Possession of stolen property, accompanied without

28    explanation or with an unsatisfactory one or under suspicious circumstances, justifies an inference

1   that the goods were received with knowledge of their stolen status. *People v. Azevedo*, 218

2   Cal.App.2d 483, 491 (1963). The requisite possession of the stolen property need not be exclusive

3   and may be actual or constructive. Physical possession is not required; it is sufficient if the

4   defendant acquires a measure of control or dominion over the property. *In re Anthony J.*, 117

5   Cal.App.4th 718, 728 (2004); *Land,* 30 Cal.App.4th at 223-24.

6          Here, there was more than sufficient evidence to support the jury's guilty verdict on the

7   receipt-of-stolen property offense. There is no doubt that Ruger's credit cards, jewelry, and erte

8   statute were stolen from her apartment. RT 105, 107-10, 531, 547. There was no evidence that

9   Ruger had given these items to anyone. To the contrary, these items went missing from Ruger's

10  apartment immediately after she was robbed and killed on August 16, 1998. Some of the items

11  (credit cards) were used the day of her homicide and other items (jewelry) were found in pawn shops

12  and other suspicious locations, evidencing that someone had stolen these items from Ruger on

13  August 16, 1998. RT 99-100, 102-05, 107-10, 305-06, 310-16, 324, 327-28, 337, 547.

14         In addition, there was more than sufficient evidence that petitioner had possession of the

15  stolen property. A few hours after the various items were taken from Ruger's apartment, petitioner

16  went on a shopping spree with his cousin Charrisse Wells, and Wells used Ruger's credit cards to

17  make a number of purchases at various stores as petitioner accompanied her inside the stores and to

18  the front registers. RT 141, 155-56, 159-79, 186-87, 227-28, 288-89, 291, 293, 300-01, 336-38, 369-

19  70, 435-36. Petitioner also had possession of Ruger's stolen jewelry. On the evening of August 16,

20  1998, petitioner showed his sister, Selena Jimenez, various pieces of the stolen jewelry and asked

21  if her if she knew anybody who would want to buy the jewelry. RT 256, 258-61, 263, 266, 281.

22  Petitioner sold some of the jewelry to his sister and Kendra Bell Rodriguez, and pawned other pieces

23  of the jewelry or gave it to Wells to pawn. RT 193-94, 265, 270, 272-73, 282, 341-42, 347, 565.

24  Petitioner also admitted that he had been in possession of the stolen items. Exh. 3.

25         There was also sufficient evidence that petitioner knew the items had been stolen.

26  Petitioner admitted to police that he knew the credit cards and jewelry were stolen. Exh. 3. There

27  was also other evidence that pointed to petitioner's knowledge about the stolen status of the items.

28  Ruger had shown petitioner many of the stolen items before they were stolen from her on August 16,

1  1998. RT 131. Significantly, petitioner told people varying stories as to how he had obtained the

2  stolen items. For example, petitioner told the police that after he saw an unidentified Black man hide

3  the bag of jewelry and credit cards "down the hill" from Fillmore and Hayes Streets, he took the bag,

4  used the credit cards, and "asked around" about the jewelry to determine if it was "real or fake."

5  Exh. 3 at 4-9. Petitioner told his sister that he purchased the jewelry on the street by a liquor store

6  at Hunter's Point. RT 259. Petitioner indicated to his father that there was a "robbery" of a 70-year-

7  old white woman and he had been there. RT 384-86. Petitioner told Wells on August 16, 1998 that

8  he had broken up with his girlfriend, had taken jewelry that he had given her, as well as credit cards

9  that belonged to both of them, and subsequently went on a shopping spree with Wells using Ruger's

10  credit cards.[4]    RT 340-41. Notably, when the last credit card transaction was unsuccessful at

11  Walgreen's, the store clerk called the manager, and petitioner and Wells immediately left the store,

12  leaving Ruger's American Express credit card behind. RT 293-94. Thereafter, petitioner fled to

13  Richmond and stayed at his sister's house for about a month. RT 255, 264, 529-30. During that

14  time, petitioner told others that he was "hiding" from police and did not want to go back to jail. RT

15  235, 238, 249-51, 268-69. Based on the foregoing, it is evident that a claim of insufficient evidence

16  would have been rejected. Thus, petitioner's appellate counsel was not ineffective for not raising

17  a claim of insufficient evidence on appeal.

18         Moreover, there was no prejudice to petitioner. Appellate counsel's failure to raise a

19  sufficiency of the evidence claim does not establish prejudice, absent showing a reasonable

20  probability that had appellate counsel made the claim, it would have resulted in an outcome more

21  favorable to petitioner. *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999). As explained above,

22  such a claim lacked merit and would have undoubtedly been rejected on appeal. Furthermore, in

23  light of the foregoing evidence, which overwhelming demonstrated petitioner's guilt, any error was

24  harmless. Thus, petitioner's first claim of ineffective assistance of appellate counsel should be

25

26         4. At trial, Wells testified differently, stating that on the morning of Ruger's death, she and

27  petitioner received Ruger's credit cards from some unnamed acquaintances who informed her that
   the credit cards were "hot" and had been taken from a "house . . . being robbed." RT 142, 144-45,

28  150, 178. This evidence also showed that petitioner knew the credit cards were stolen.

1 | rejected.

2 | **B.    Failure To Raise A Claim Of Ineffective Assistance Of Trial Counsel**

3 | Next, petitioner claims that his appellate counsel rendered ineffective assistance by not

4 | claiming on appeal that his trial counsel had rendered ineffective assistance by not filing a motion

5 | to suppress his incriminating statements based on the police officer's unlawful arrest of him.

6 | Petition at 10.

7 | **1.    Relevant Background**

8 | On or about June 18, 1998, petitioner was released on parole and gave his parole agent his

9 | aunt's address as his place of residence.  Petitioner's last contact with his parole agent was on June

10 | 30, 1998.  Exh. B attached to Exh. 17.

11 | After Ruger's murder on August 16, 1998, Dennis Setlock, Ruger's friend, determined that

12 | many pieces of Ruger's valuable jewelry were missing from her apartment.  RT 107, 109-10.  At the

13 | end of August 1998, Setlock contacted the police to report that someone had stolen and used Ruger's

14 | credit card on August 16, 1998, the day of Ruger's murder.  RT 104-05.

15 | On September 21, 1998, Wells gave a statement to police.  RT 143, 222.  Wells told the

16 | police that when she picked up petitioner on August 16, 1998, he had told her that he had just broken

17 | up with his girlfriend and had taken the jewelry he had bought her, as well as the credit cards that

18 | they shared.  RT 220, 340-41.  Wells stated that she and petitioner shopped using Ruger's credit

19 | cards.  RT 220-21.  That same day, Wells took the police to two pawnshops where she had pawned

20 | the jewelry, which petitioner had given to her.  The police were able to recover some of Ruger's

21 | jewelry at the pawnshops.  RT 341.

22 | On October 5, 1998, the police arrested petitioner on a parole violation (failure to report

23 | to his probation officer).  RT 549-50; *see also* Exh. B attached to Exh. 17 (indicating that petitioner

24 | was arrested in Oakland pursuant to the parolee at-large warrant).  That same day, at 8:00 p.m., San

25 | Francisco Police Inspectors Gordon and Cashen interviewed petitioner.  Exh. 3 at 1-10.  Inspector

26 | Gordon informed petitioner that he was "in custody on a parole violation," and they were

27 |

28 |

1  investigating a homicide. Exh. 3 at 2-3. Inspector Gordon read petitioner his *Miranda*[5] rights, and

2  petitioner agreed to waive them. Exh. 3 at 2-3. Petitioner admitted that he knew Ruger. Exh. 3 at

3  3. He told the inspectors that he had seen an unidentified Black man hide a bag of jewelry and credit

4  cards "down the hill" from Fillmore and Hayes Streets. Exh. 3 at 4-7. Petitioner said that he took

5  the bag and decided to go shopping with his cousin Wells, using the stolen credit cards. Exh. 3 at

6  6-7. Petitioner said the he knew that if he was going to use the credit cards, he had to use them

7  immediately, "[b]efore they g[o]t hot." Exh. 3 at 7. Petitioner admitted that he left a credit card at

8  Walgreen's when "[t]he thing went off." Exh. 3 at 8. Afterwards, petitioner threw the rest of the

9  credit cards away. Exh. 3 at 8. With respect to the jewelry, petitioner stated that he took some of

10  it and "asked around" to find out if it was real. Exh. 3 at 8-9. By the time petitioner got to Fillmore

11  Street with the jewelry, "it was the talk of the town" and he was able to "put two and two together."

12  Exh. 3 at 9.

13  In October 1999, the police arrested petitioner in connection with the instant case. RT 550.

14  **2.    Appellate Counsel's Performance Was Adequate**

15  Appellant counsel's performance was not deficient because trial counsel did not err by not

16  filing a motion to suppress petitioner's statements as they were not the product of an illegal arrest

17  in violation of the Fourth Amendment. *See Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992)

18  (where a claim of ineffective assistance of trial counsel is without merit, a claim of ineffective

19  assistance of appellate counsel for not raising the issue on appeal also fails). A counsel's failure to

20  make a motion does not constitute ineffectiveness if making the motion would have been futile.

21  *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994). There is no requirement that counsel bring meritless

22  motions on behalf of his client. *United States v. Quintero-Barraza*, 78 F.3d 1344, 1349 (1996); *see*

23  *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) (a defense counsel's failure to make a meritless

24  argument does not constitute ineffectiveness); *see also United States v. Aguon*, 851 F.2d 1158, 1172

25  (9th Cir. 1998) (defense counsel's failure to object does not constitute ineffectiveness where the

26  objection would have been overruled), overruled on other grounds in *Evans v. United States*, 504

27

28  5. *Miranda v. Arizona*, 384 U.S. 436 (1966).

1 | U.S. 255 (1992).

2   The trial court here would have undoubtedly denied a motion to suppress petitioner's

3 | statements had petitioner's trial counsel filed such a motion. This is because petitioner's arrest was

4 | lawful, and thus, his statements were not the product of an illegal arrest. The Fourth Amendment

5 | exclusionary rule is designed to deter police misconduct. Consequently, a statement that is the direct

6 | product of an illegal arrest or detention must be suppressed. *Dunaway v. New York*, 442 U.S. 200,

7 | 216-17 (1979); *see Brown v. Illinois*, 422 U.S. 590, 602-04 (1975) (a confession may be suppressed

8 | where there has been an illegal arrest); *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963)

9 | (evidence obtained from an unlawful search or seizure is generally subject to exclusion as "fruit of

10 | the poisonous tree"). By prohibiting seizures without probable cause to arrest, the Fourth

11 | Amendment guards against the police tactic of "investigative detention." *Hayes v. Florida*, 470 U.S.

12 | 811, 815-16 (1985); *see Brown v. Illinois*, 422 U.S. at 602-04 (disapproving of arrests made for

13 | "investigatory" purposes on less than probable cause).

14   Parolees, however, have more limited Fourth Amendment rights. *Hudson v. Palmer*, 468

15 | U.S. 517, 526 (1984); *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 873 (9th Cir. 2007). Courts

16 | which have considered the Fourth Amendment implications of seizing a parolee who has violated

17 | his parole have generally held that a parolee remains in legal custody during his parole period, and

18 | thus, "the retaking of a parole violator does not constitute an arrest for Fourth Amendment

19 | purposes." *Jenkins v. Currier*, 514 F.3d 1030, 1033 (10th Cir. 2008), *citing United States v. Polito*,

20 | 583 F.2d 48, 54-56 (2d Cir. 1978) and *Baumoff v. United States*, 200 F.2d 769, 770 (10th Cir. 1952).

21 | In *United States v. Butcher*, 926 F.2d 811 (9th Cir. 1991), the Ninth Circuit indicated that the full

22 | protections of the Fourth Amendment do not apply to parolees, stating: "[P]robable cause is not

23 | required to arrest a parolee for a violation of parole. Warrantless arrests of parole violators are also

24 | valid. The arrest of a parolee is more like a mere transfer of the subject from constructive custody

25 | into actual or physical custody." *Id.* at 814, citations and internal quotation marks omitted.

26   Here, the police did not unlawfully arrest petitioner. Petitioner was a parolee who had

27 | violated his parole by not reporting to his parole officer. RT 549-50. When Parole Agent Geiger

28 | and the police went to petitioner's last-reported address on August 21, 1998, they discovered that

Memorandum of Points and Authorities - *Hayles v. Camble* - C 06-6909 SBA

1   petitioner was not residing there. As a consequence, the Board of Prison Terms suspended

2   petitioner's parole, and the police took petitioner into custody in Oakland on October 5, 1998

3   pursuant to the parolee at-large warrant. Exh. B attached to Exh. 17.

4       There was no "investigative detention" and petitioner's reliance on *Dunaway v. New York,*

5   442 U.S. 200 (1979) and *People v. Jenkins,* 122 Cal.App.4th 1160 (2004), is misplaced. In

6   *Dunaway,* the Court held that a confession elicited by the police after an arrest that was not

7   supported by probable cause must be suppressed. *Dunaway v. New York,* 442 U.S. at 216. In that

8   case, the police had taken petitioner into custody with "the hope that something might turn up."

9   *Dunaway v. New York,* 442 U.S. at 218.

10      In *Jenkins,* the police officer observed the defendant drive through a stop sign and

11   subsequently arrested him for driving without a license. The police officer who had arrested the

12   defendant had been advised to be on the lookout for a car driven by a person who had been involved

13   in a shooting earlier that evening. The defendant's car matched the description of the shooting

14   suspect's vehicle. *People v. Jenkins,* 122 Cal.App.4th at 1166. The police detained the defendant

15   for over 16 hours and questioned him primarily about the shooting, not the traffic violation, although

16   they did not have probable cause to detain him for the shooting. *Id.* On appeal, the *Jenkins* court

17   noted that the "officers were not engaged in necessary administrative functions related to the traffic

18   offense," and the detention had been used solely to question the defendant about the shooting in

19   violation of his Fourth Amendment rights. *Id.* at 1175-76. Consequently, the appellate court

20   concluded that the defendant's incriminating statements regarding the shooting should have been

21   suppressed. *Id.* at 1178.

22      Petitioner's case is distinguishable from *Jenkins* and *Dunaway.* Most significantly,

23   petitioner was a *parolee* who was in violation of his parole and who had an outstanding warrant for

24   his arrest, giving the police the authority to retake him into physical custody. RT 549-50; Exh. B

25   attached to Exh. 17. Moreover, the police also had probable cause to arrest petitioner for receiving

26   stolen property. By the time of petitioner's arrest, the police were aware that petitioner had used

27   Ruger's stolen credit cards the day of her murder and had given some of Ruger's jewelry to Wells

28   so she could pawn it. RT 104-10, 143, 220-22, 340-41. Based on the foregoing, it is evident that

1   appellate counsel did not perform deficiently by not claiming on appeal that trial counsel had

2   rendered ineffective assistance for failing to file a motion to suppress.

3       **3.   There Was No Prejudice**

4       Even assuming, arguendo, that appellate counsel erred by not claiming that trial counsel

5   had rendered ineffective assistance for failing to file a motion to suppress, there was no prejudice

6   to petitioner. As indicated above, in order to establish prejudice based on appellate counsel's failure

7   to raise a particular claim on appeal, petitioner must show that there is a reasonable probability that,

8   but for his counsel's error, he would have prevailed on appeal. *Miller v. Keeney*, 882 F.2d at 1434;

9   *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999); *People v. Frye*, 18 Cal.4th 894, 989 (1998).

10       Petitioner cannot establish prejudice here. As explained above (see Arg. IIB2, *supra*),

11   there is nothing to indicate that the trial court would have granted such a meritless motion, and thus,

12   petitioner's claim of ineffective assistance would not have been successful on appeal. Moreover,

13   aside from petitioner's incriminating statements, there was overwhelming evidence establishing

14   petitioner's guilt. *See* Arg.IIA, *supra*; *Fisher v. Angelone*, 163 F.3d 835, 849 (4th Cir. 1998) (finding

15   no ineffective assistance of counsel where the "tapes were but a small part of the prosecution's

16   overwhelming case" against the defendant). Thus, petitioner's second claim of ineffective assistance

17   of appellate counsel should also be rejected.

18                       **III.**

19          **TRIAL COUNSEL RENDERED EFFECTIVE ASSISTANCE**

20       In an overlapping claim, petitioner contends that his trial counsel rendered ineffective

21   assistance by failing to file a motion to suppress his incriminating statements to police. Petition at

22   15. As discussed in detail above, *see* Arg. IIB, *supra*, petitioner was not denied his right to the

23   effective assistance of counsel.

24       To reiterate, a trial counsel's failure to make a motion does not constitute ineffectiveness

25   if making the motion would have been futile. *James v. Borg*, 24 F.3d at 27. Here, it is evident that

26   such a motion would have been futile as petitioner's statements were clearly not the product of an

27   illegal arrest. Petitioner was a parolee who was in violation of his parole, and the police had

28   probable cause to arrest him for receiving stolen property. *See* Arg. IIB2, *supra*. Moreover, there

1  was no prejudice to petitioner, especially in light of the overwhelming evidence supporting his

2  receipt-of-stolen-property conviction. *See* Args. IIA, IIB3, *supra*. Thus, this Court should reject

3  petitioner's claim of ineffective assistance of trial counsel.

4  **IV.**

5  **THERE WAS NO VINDICTIVE PROSECUTION**

6  Lastly, petitioner claims that he was the victim of vindictive prosecution in violation of

7  his due process and equal protection rights. Petitioner's Motion for Amendment at 1. The state

8  appellate court's ruling is not contrary to, nor an unreasonable application of, United States Supreme

9  Court precedent.

10  **A.    The Claim Is Untimely**

11  Initially, we move to dismiss this claim as untimely under 28 U.S.C. § 2244(d). This Court

12  previously found that, after accounting for tolling, the statute of limitations had run for 312 days as

13  of November 6, 2006, when petitioner filed the original federal habeas petition. *See* 3/20/08 Order

14  Denying Respondent's Motion to Dismiss at 11. Under that calculation, the one-year period expired

15  53 days later, on December 29, 2006. Petitioner did not add the vindictive prosecution claim to his

16  federal petition until April 13, 2007. Accordingly, that claim was filed more than three months after

17  the limitations period expired.

18  Further, the vindictive prosecution claim does not relate back under Fed. R. Civ. P.

19  15(c)(2) to any of the timely filed claims in the original petition. In *Mayle v. Felix*, 545 U.S. 644

20  (2005), the Supreme Court held that new claims filed after the statute of limitations has run relate

21  back only where the original and amended petitions state claims that are "tied to a common core of

22  operative facts." *Id.* at 664. It barred relation back where the amended petition asserts a new claim

23  that differs in "both time and type" from the original petition. *Id.* at 657. Vindictive prosecution is

24  factually and legally distinct from the Sixth Amendment claims raised in petitioner's original federal

25  habeas petition. Thus, the claim must be dismissed as untimely.

26  **B.    Relevant Background**

27  On February 2, 2001, petitioner moved the trial court to strike his prior strike convictions

28  based on vindictive prosecution and violation of his due process and equal protection rights. CT

1   368-75. Ultimately, the trial court denied petitioner's motion. 2/23/01 RT 115, 117. Following a

2   hearing on the matter, the trial court first found that there was no precedent for this type of case. It

3   was the only case in San Francisco County in which violent and non-violent felonies had been

4   charged with two prior strike convictions and the jury had acquitted petitioner of all charges, except

5   the one non-violent felony, and then subsequently found all the prior strike convictions true. 2/23/01

6   RT 110.

7           Second, the trial court found there was insufficient evidence to show that the original

8   prosecuting attorney (Mr. Farrell) had agreed to pursue "a sentence that would reflect only a receipt

9   of stolen property," or that he had indicated that he intended to proceed against petitioner in a way

10  that was different than the way he would normally proceed against another defendant to whom he

11  had made a plea offer. 2/23/01 RT 111.

12          Third, the trial court found that, based upon the evidence which was initially available to

13  the San Francisco District Attorney and his staff, the prosecutor had the right to pursue petitioner's

14  case under the Three Strikes law, and emphasized that no charges or allegations were added after

15  petitioner rejected the plea offered by the state. 2/23/01 RT 111-15.

16      **C.   State Appellate Court's Ruling**

17          On January 30, 2003, the state appellate court rejected petitioner's claim of vindictive

18  prosecution, stating that "the trial court had ample justification for finding that no prosecutor

19  vindictiveness was shown." Exh. 6 at 5. Initially, the state appellate court pointed out that there was

20  no presumption of prosecutorial vindictiveness because there was no evidence that the prosecutor

21  filed new charges in response to any action taken by petitioner, either before or after his jury trial.

22  Exh. 6 at 4. The state appellate court emphasized this was not the "usual type" of prosecutorial

23  vindictiveness claim as there was no contention that what the prosecutor *did* was vindictive, e.g.,

24  singling out a person for prosecution (*Murgia v. Municipal Court*, 15 Cal.3d 286, 297 (1975)),

25  increasing the charges after the rejection of a plea bargain (*Bordenkircher v. Hayes*, 434 U.S. 357,

26  363-65 (1978)), or increasing the charges after the defendant invoked a right (*Blackledge v. Perry*,

27  417 U.S. 21, 27 (1974)). Exh 6 at 4-5. Rather, the focus of petitioner's claim was what the

28  prosecutor "did *not* do—discontinue the prosecution as a three strikes case once the jury returned

1 | its verdicts" of guilty on the non-violent felony count (receiving stolen property) and not guilty on
2 | the violent felony counts (murder, arson, robbery, and burglary).  Exh. 6 at 5.

3       The state appellate court concluded that the prosecutor did not do an "end-run around the
4 | jury's acquittals" by reviewing the case after the jury rendered its verdicts and finding it still suitable
5 | for "three strikes treatment."  The state appellate court pointed out that the trial court did not
6 | sentence petitioner on any of the acquitted counts.  Rather, it sentenced petitioner only on the
7 | receiving count in addition to the strike enhancement allegations, which the jury found true and
8 | which were "completely independent of the substantive charges on which [petitioner] was
9 | acquitted."  Exh. 6 at 5.  The state appellate court stated that the trial court was "entitled to make
10 | decisions based on the facts of acquitted charges" (*See* Exh. 6 at 5, citing *In re Coughlin,* 16 Cal.3d
11 | 52, 58-61 (1976), *In re Dunham,* 16 Cal.3d 63, 66-69 (1976), and *People v. Gragg,* 216 Cal.App.3d
12 | 32, 42-46 (1989)), and there was no reason why a prosecutor could not do the same in deciding
13 | whether to continue to treat a case as a Three Strikes case.

14       The state appellate court also found that there was no equal protection violation, stating:

15-21 |
> In order to warrant judicial intervention, there must be a threshold showing that persons are "similarly situated" and are being treated differently before the law demands they be treated alike.  (E.g., *In re Eric J.* (1979) 25 Cal.3d 522, 530-531; *People v. Poe* (1999) 74 Cal.App.4th 826, 835.)  In this case, however, defendant has no point of comparison.  Because he is the first and only person in his situation—charged with violent and nonviolent offenses, convicted only of a single nonviolent charge, for which the prosecution asks for the maximum three strikes sentence—he cannot demonstrate that someone else was not treated in the same manner he was.  Nothing in the district attorney's unwritten policy covered defendant's situation.  Without an actual instance of another defendant standing in the same situation who has been treated differently, no violation of equal protection, and thus prosecutorial vindictiveness, has been established.

22 | Exh. 6 at 5-6.

23-24 | **D.  The California Courts Did Not Unreasonably Apply United States Supreme Court Precedent In Denying Petitioner's Claim**

25       The state appellate court properly found that there was no prosecutorial vindictiveness in
26 | violation of petitioner's due process rights.  In *Blackledge v. Perry,* 417 U.S. 21, the United States
27 | Supreme Court interpreted the Due Process Clause of the Fourteenth Amendment to prohibit
28 | prosecutions under circumstances suggesting a "realistic likelihood of 'vindictiveness'" on the

1  prosecutor's part. *Blackledge,* 417 U.S. at 27. When a states uses the tools in its prosecutorial

2  arsenal to retaliate against a defendant, or punish him for exercising a federally protected right, its

3  action is unconstitutional. *Bordenkircher v. Hayes,* 434 U.S. 357, 363 (1974); *see United States v.*

4  *Hernandez-Herrera,* 273 F.3d 1213, 1217 (9th Cir. 2001) ("a prosecutor violates due process when

5  he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory

6  right"). In the post-trial context, a presumption of vindictiveness follows certain prosecutorial

7  actions. For example, where, following a successful appeal, the prosecutor charges the defendant

8  with heightened charges on the basis of the same underlying conduct, a presumption of

9  vindictiveness arises. *Blackledge,* 417 U.S. at 25-29. In other cases, the presumption is inapplicable.

10 *See, e.g., United States v. Goodwin,* 457 U.S. 368, 381-82 (1982) (no presumption of vindictiveness

11 where the prosecutor added felony charges to an original misdemeanor indictment following the

12 defendant's decision to reject the plea offer and face a jury trial); *Williams v. Bartow,* 481 F.3d 492,

13 502-03 (7th Cir. 2007) (there is no presumption of vindictiveness where the defendant is charged,

14 post appeal, on the basis of *different* criminal conduct); *United States v. Martinez,* 785 F.2d 663,

15 669 (9th Cir. 1986) (if the second charge is not related to the first charge, the presumption of

16 vindictiveness does not arise). If the presumption applies, the prosecutor must rebut it; where the

17 presumption is inapplicable, the defendant must affirmatively prove actual vindictiveness. *Wasman*

18 *v. United States,* 468 U.S. 559, 569 (1984). Because there is a presumption that "public officials

19 have properly discharged their official duties" (*Banks v. Dretke,* 540 U.S. 668, 696), the defendant's

20 "standard [of proof] is a demanding one" where he contends that the prosecutor made a charging

21 decision that violated his constitutional rights. *United States v. Armstrong,* 517 U.S. 456, 463

22 (1996).

23        Here, the state appellate court reasonably concluded that there was no presumption of

24 vindictiveness under the circumstances. The prosecutor prosecuted petitioner's case under the Three

25 Strikes law from the onset (CT 148-50, 161-64), and not after petitioner was acquitted of the various

26 violent felonies or had rejected the plea bargain (2/23/01 RT 53-54). As such, the prosecutor never

27 sought to "up the ante," and thus, no presumption of vindictiveness arose. *Cf. Blackledge,* 417 U.S.

28 at 28-29; *In re Bowers,* 38 Cal.3d 865, 877-88 (1985); *Twiggs v. Superior Court,* 34 Cal.3d 360, 372

1   (1983).

2        The state appellate court also properly concluded that there was no evidence of actual

3   vindictiveness.  There was absolutely no indication that the prosecutor pursued the case as a Three

4   Strikes case for any improper reason, e.g., because petitioner decided to exercise his right to a jury

5   trial.  The prosecutor's pre-trial decision to pursue petitioner's case under the Three Strikes law was

6   appropriate, given petitioner's present criminal conduct and past criminal history.  *See Nunes v.*

7   *Rameriz-Palmer*, 485 F.3d 432, 442-43 (9th Cir. 2007) (finding it objectively reasonable for the state

8   court to conclude that the government had met its counter burden of justifying its charging decision

9   based upon the defendant's "criminal history and the prosecutors' routine use of the recidivist

10  statute").  The prosecutor's post-trial decision to continue to treat petitioner's case as a Three Strikes

11  case was proper for these same reasons (2/23/01 RT 17-18, 21-22, 24-27, 39-41, 46-47, 70-71), and

12  there was nothing that prevented the prosecutor from considering the facts of the acquitted charges

13  in making its final decision in that regard.  *See, e.g., People v. Gragg*, 216 Cal.App.3d at 42-46

14  (probation denial allowed on same facts as acquittal).

15        Moreover, petitioner was sentenced solely on the receiving count and his prior strike

16  convictions, which the jury had found true and which were distinct from the charges upon which

17  petitioner had been acquitted.  CT 327.  Such a sentence under the Three Strikes law was not

18  constitutionally prohibited.  *See Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (concluding that the

19  state court's finding that a sentence of 50 years to life for theft with prior convictions for residential

20  burglary was not an unreasonable application of the gross disproportionality principle); *Nunes v.*

21  *Rameriz-Palmer*, 485 F.3d at 430 (upholding a 25 years to life sentence for the underlying offense

22  of petty theft with a prior conviction).

23        The state appellate court also properly found that there was no prosecutorial vindictiveness

24  in violation of petitioner's equal protection rights.  A state has broad discretion in deciding whom

25  it will prosecute.  *Armstrong*, 517 U.S. at 464; *Wayte v. United States*, 470 U.S. 598, 607 (1985).

26  If, however, the state uses impermissible criteria (e.g., race or religion) in determining whom to

27  prosecute, its decision will be subject to judicial review.  *United States v. Rodriguez*, 162 F.3d 135,

28  153 (1st Cir. 1998).  A claim of selective prosecution is reviewed under "'ordinary equal protections

1  standards.'" *Armstrong*, 517 U.S. at 465, *quoting Wayte*, 470 U.S. at 608. A defendant who claims

2  that he was singled out for prosecution must demonstrate that similarly situated individuals were not

3  prosecuted. *Armstrong*, 517 U.S. at 465. He must also demonstrate that the "prosecutorial policy

4  had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.*; *United States*

5  *v. Deberry*, 430 F.3d 1294, 1299 (10th Cir. 2005); *United States v. Serafino*, 281 F.3d 327, 331 (1st

6  Cir. 2002). "'[T]he conscious exercise of some selectivity in enforcement is not in itself a federal

7  constitutional violation' so long as 'the selection was not deliberately based upon an unjustifiable

8  standard such as race, religion, or other arbitrary classification.'" *Nunes v. Rameriz-Palmer*, 485

9  F.3d at 441, *citing Bordenkircher v. Hayes*, 434 U.S. at 364, *quoting Oyler v. Boles*, 368 U.S. 448,

10  456 (1962).

11          Here, petitioner failed to meet the threshold requirement because he did not establish that

12  he was similarly situated to others who were not prosecuted under the Three Strikes law. Petitioner

13  had no one to compare himself to because he was the first and only person in his situation, and the

14  unwritten policy of the San Francisco District Attorney's Office did not cover his particular situation.

15  Because there was no point of comparison available to petitioner then, and petitioner does not

16  attempt to make any comparison here, he cannot establish any discriminatory effect. Moreover, the

17  record shows that the prosecutor was motivated by a proper, non-discriminatory purpose: petitioner's

18  present criminal conduct and past criminal recidivist behavior. 2/23/01 RT 17-18, 21-22, 24-27, 39-

19  41, 46-47, 70-71. Thus, the state appellate court appropriately concluded that there no violation of

20  petitioner's equal protection rights. Consequently, his claim of prosecutorial vindictiveness was

21  properly rejected by the state appellate court.

22

23

24

25

26

27

28

1

**CONCLUSION**

2    For the foregoing reasons, respondent respectfully requests that the order to show cause

3    be discharged, the petition be denied, and the proceedings be terminated.

4    Dated: August 4, 2008

5    Respectfully submitted,

6    EDMUND G. BROWN JR.
Attorney General of the State of California

7    DANE R. GILLETTE
Chief Assistant Attorney General

8

9    GERALD A. ENGLER
Senior Assistant Attorney General

10    PEGGY S. RUFFRA
Supervising Deputy Attorney General

11

12    /s/ Ann P. Wathen
ANN P. WATHEN
13    Deputy Attorney General

14    Attorneys for Respondent

15    20129668.wpd
SF2007400171

16

17

18

19

20

21

22

23

24

25

26

27

28