IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY HAYLES,<br><br>       Petitioner,<br>v.<br><br>ROSANN CAMBLE,<br><br>       Respondent. | No. C 06-6909 SBA (pr)<br><br>**ORDER DENYING PETITION FOR**<br>**WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2000 conviction in San Francisco County Superior Court. Respondent Rosann Camble, Warden of Mule Creek State Prison, opposes the petition. Petitioner filed a traverse. For the reasons discussed below, the petition is DENIED as to all claims.

## BACKGROUND

**I.   Case History**

Petitioner was charged in San Francisco County Superior Court of first degree murder with special circumstances, robbery, burglary, arson, and receiving stolen property. On August 2, 2000, a jury in San Francisco County Superior Court convicted Petitioner of receiving stolen property (Cal. Pen. Code § 496(a)) and acquitted him of the other charges. In a bifurcated proceeding, the jury found that Petitioner had three prior "strike" felony convictions – two robberies and one attempted robbery. The trial court sentenced Petitioner to a term of 25 years to life in state prison pursuant to California's "Three Strikes" Law.

On appeal, the California Court of Appeal affirmed the conviction and sentence in an unpublished opinion on January 30, 2003. (Resp't Ex. 6.) Petitioner filed a petition for review in the California Supreme Court which was denied on April 9, 2003. (Resp't Ex. 8.) Petitioner filed a petition for a writ of habeas corpus in San Francisco County Superior Court, which was denied on January 23, 2004. (Resp't Exs. 9, 10.) He then filed a petition for a writ of habeas corpus in the

California Court of Appeal, which was denied on June 17, 2004. (Resp't. Exs. 11, 12.) Thereafter, he filed a petition in the California Supreme Court, which was denied on June 29, 2005. (Resp't. Exs. 13, 14.) On October 6, 2005, his motion to vacate judgment was denied by the California Court of Appeal. (Resp't. Exs. 15, 16.) Finally, the California Supreme Court denied his last state habeas petition on August 16, 2006. (Resp. Exs. 17, 18.)

The instant petition was filed on November 6, 2006, setting forth claims of ineffective assistance of trial and appellate counsel. The Court issued an order to show cause on January 6, 2007. Thereafter, Petitioner filed a motion to "amend" the petition to add a third claim of vindictive prosecution. Respondent filed a motion to dismiss the petition as untimely, which Petitioner opposed. The Court denied Respondent's motion to dismiss and granted Petitioner's motion to amend the petition. After being granted two extensions of time, Respondent filed an Answer and Memorandum of Points and Authorities in Support of Answer to Petition for Writ of Habeas Corpus on August 4, 2008. Petitioner filed a traverse on October 10, 2008, after also receiving an extension of time. The matter has been fully briefed and is now ready for review on the merits.

## II.     Statement of Facts[1]

On August 16, 1998, Joyce Ruger, aged 70, was tied up in her home, robbed, and died from asphyxiation when her home was set on fire. Ruger had recently become acquainted with Petitioner, who lived in her neighborhood in San Francisco, and she had shown him her art collection, her jewelry, some of which was expensive, and other valuable objects she owned. Ruger's granddaughter, Christina Palma, had been at Ruger's home the night day before the murder and had overheard Ruger telling someone named "Troy" on the telephone that she did not have any money. Most of the jewelry had been taken from the house, including a gold pendant of a lion's head with diamonds in the mouth and eyes, an antique watch, gold rings, bracelets and necklaces. Ruger's American Express credit card was used to make purchases on August 16, after Ruger's death.

---

[1] The following factual summary is derived from the briefs of Petitioner and the State of California filed in connection with Petitioner's direct appeals in the state courts. (Resp't. Exs. 4, 5, & 7.) The Court will supply additional facts as necessary in its discussion of the specific issues that are raised in the petition.

Petitioner went to the home of his cousin, Charisse Wells, on the morning of August 16. She testified that while he was there she received a call informing her where to find some stolen credit cards and other stolen items. Wells and Petitioner drove to a telephone booth nearby and retrieved a bag containing Ruger's American Express card, costume jewelry and other items. That morning, they drove to San Bruno and used Ruger's credit card to buy gas, food, clothing and other items at various stores in the area. Eventually, the credit card was declined at a Walgreens store, where Wells and Petitioner left the credit card and left. Later, Wells pawned and sold two gold bracelets that she had found in the bag with Ruger's credit card. A security camera captured Petitioner and Wells making one of the purchases with Ruger's credit card. At trial, Wells further testified that she had lied in previous statements to the police regarding the incident in which she blamed Petitioner for everything. She had told the police that Petitioner had told her that he had taken the jewelry and obtained the credit card from his girlfriend.

Wanda Martinez testified that she met Petitioner in Richmond in August or September 1998. She cashed two checks for Petitioner that were not in his name, and were not Ruger's. Petitioner told Martinez that he had been in trouble in San Francisco and someone had been hurt in a gang-related shooting or stabbing.

Petitioner's father, Donald Hamilton, told the police that he spoken with Petitioner after Petitioner's arrest. Hamilton reported that Petitioner had told him that he met and visited an elderly while lady near Hayes Street in San Francisco. Petitioner said he had gotten himself into a mess because he was present when the lady was killed during a robbery. At trial, Hamilton disavowed this statement to the police, saying he had been drinking, was nervous and made the statement in order to be allowed to see his son.

Selena Jimenez, Petitioner's sister, testified that Petitioner came from San Francisco to live with her in Richmond in August 1998. Jimenez saw jewelry in Petitioner's backpack, including a gold pendant with a lion's head and diamonds, as well as necklaces and a ring. Petitioner told her he had bought the pendant on the street. The next day, he told her that he pawned the pendant, and Selena bought a small chain from him. She asked him to leave the house in October, when she

learned that he might be in trouble with the police. After the police arrested Petitioner, they retrieved a small box and several necklaces that Petitioner had given to Jimenez's daughter. Palma identified these necklaces as belonging to Ruger.

The defense called Gail Jackson who testified that in the early morning of August 16, 1998, she drove by Ruger's house and saw a statue at the top of Ruger's stairs and a man carrying a bag coming down the stairs. The man looked over his shoulders several times. The statue resembled one belonging to Ruger. She described the man as a light-skinned black man, 25 to 30 years old, husky, muscled, with a pot belly and light brown or sandy receding hair. She testified that he resembled a person named MoJo Dumetz, and that the man was heavier and had lighter skin than Petitioner.

Kendra Rodriguez testified that she knew MoJo Dumetz, and in August 1998 he had dyed his hair blond or Brown. She further testified that Dumetz said that he liked to strangle people because it left no fingerprints. She told the police that on August 16, 1998, she had seen Dumetz carrying a big bag of jewelry out of an alley that could have led to Ruger's apartment. About ten minutes later, she saw Petitioner, a couple of blocks away, and he appeared to have smoked crack cocaine. At trial, she disavowed this statement.

Police Inspector Curtis Cashen testified that Ruger's expensive jewelry had not been recovered. He further testified that Jackson had positively identified a photograph of Dumetz as the man she saw at Ruger's house. He also testified that he had initially focused on Dumetz as a suspect in her murder. Dumetz testified that in August 1998 his hair was dyed blond, and that he had a relative who lived near Ruger.

## DISCUSSION

**I.    Legal Standard**

    **A.    Standard of Review for State Court Decisions**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim:

4

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

### 1.  Section 2254(d)(1)

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States." Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

#### a.  Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is

5

no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### b. "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### c. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway.  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it.  Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard.  Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point).  After Andrade,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise.  While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

Id.  In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result.  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

### 2. Sections 2254(d)(2), 2254(e)(1)

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative,

relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004). In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1). Id. First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000. The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings. Id. Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1). Id. According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error. See 28 U.S.C. § 2254(e)(1). "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." Taylor, 366 F.2d at 1000.

### 3.  **Claims Not Considered in a Reasoned State Court Decision**

Where a state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Greene v. Lambert, 288 F.3d 1081, 1088 (9th Cir.

2002). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. Himes, 336 F.3d at 853; accord Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004).

## II. Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987). It is undisputed that Petitioner exhausted his state court remedies as to the claims raised in his petition. Specifically, Petitioner exhausted his first two claims in state habeas petitions, and he exhausted his third claim on direct appeal.

## III. Legal Claims

Petitioner raises three claims: (1) he received ineffective assistance of appellate counsel; (2) he received ineffective assistance of trial counsel; and (3) the prosecutor engaged in vindictive prosecution by charging him with sentence enhancements for his previous strike convictions.

### A. Ineffective Assistance of Appellate Counsel

Petitioner claims that appellate counsel was ineffective in failing to argue on appeal that there was insufficient evidence to convict Petitioner of receiving stolen goods, and that Petitioner's trial counsel had been ineffective.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668 (1984). Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's

9

unprofessional errors, he would have prevailed on appeal. Miller, 882 F.2d at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694).

It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. See Jones v. Barnes, 463 U.S. 745, 751-54 (1983). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. Miller, 882 F.2d at 1434. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason--because he declined to raise a weak issue. Id. Pursuant to this authority, Petitioner's claim fails if the claims of insufficiency of evidence and ineffective assistance of trial counsel had little merit.

### 1. **Insufficient Evidence Claim**

Petitioner claims that appellate counsel should have argued on appeal that there was insufficient evidence to support his conviction for receiving stolen property pursuant to California Penal Code § 496(a). A defendant's right to due process is violated if the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 321 (1979). In analyzing such a claim, the reviewing court determines whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004) (credibility contest between victim alleging sexual molestation and defendant vehemently denying allegations of wrongdoing not a basis for revisiting jury's obvious credibility determination).

A violation of California Penal Code § 496(a) occurs for:

> [e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft . . ., knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling or withholding any property from the owner, knowing the property to be so stolen or

obtained . . .

Cal. Pen. Code § 496(a). The elements for a conviction for receiving stolen property are: (1) that the property was stolen; (2) that the defendant knew it was stolen; and (3) that the defendant had possession of the stolen property. People v. King, 81 Cal. App. 4th 472, 476 (2000). If there is no satisfactory explanation for possession of the stolen property, or there are suspicious circumstances, an inference that the possessor knew the property was stolen is warranted. People v. Azevedo, 218 Cal. App. 2d 483, 491 (1963).

The Court finds no merit to Petitioner's due process claim based on insufficient evidence. First, there was more than sufficient evidence for a rational jury to find that Ruger's property was stolen. Uncontradicted testimony established that her credit cards, jewelry, and a statue were missing after her apartment was set afire and she was killed, and that Petitioner and Wells used her American Express credit card in a shopping spree after her death. There were also statements from witnesses that a number of Ruger's possessions were seen being taken out of her house, at pawnshops, in Petitioner's backpack, and in a bag stashed in a phone booth nearby.

Second, Petitioner admitted that he possessed the stolen credit cards and jewelry in a recorded interview with the police after his arrest, and that he and Wells used one of the credit cards in a shopping spree. (Resp't. Ex. 3 at 6-9.) Wells also testified to using the stolen card in the shopping spree, testimony that was corroborated by store employees and a store security camera picture of Petitioner. In addition, Petitioner's sister and friend testified to seeing Petitioner in possession of jewelry resembling Ruger's, including some of Ruger's jewelry that Petitioner sold to them, gave to his niece, and pawned.

Finally, there was sufficient evidence that Petitioner knew the credit cards and jewelry were stolen. He admitted to the police that he "knew they were stolen" and that they had to use the credit cards quickly "before they got hot." (Resp't. Ex. 3 at 7.) Further, the evidence that Petitioner had been shown the items at Ruger's house before her death indicated that he would have known they were stolen. In addition, a number of suspicious circumstances surrounding Petitioner's possession of Ruger's that could rationally lead to an inference that he knew it to be stolen. Petitioner kept

changing his story as to how he obtained Ruger's property, i.e. he told the police that he found it in a bag on the street, he told his sister that he bought it on the street in Hunter's Point, he told his father that there had been a "robbery" of an elderly woman, and he told his cousin that he took it from an old girlfriend. Petitioner also told witnesses that he was staying away from San Francisco because he was avoiding trouble and did not want to return to jail.

In sum, there was more than sufficient evidence for a rational jury to find each element of the offense of receiving stolen goods. As a result, a claim that Petitioner's conviction under California Penal Code § 469(a) was supported by insufficient evidence would have been meritless. Appellate counsel was not ineffective in failing to argue such a claim.

### 2.  **Ineffective Assistance of Trial Counsel Claim**

Petitioner claims that appellate counsel was ineffective because he did not argue on appeal that trial counsel had been ineffective. In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish that counsel's performance fell below an "objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 686-88, 694 (1984).

Petitioner contends that trial counsel should have filed a motion to suppress his statements to the police as the product of an unlawful arrest. Specifically, Petitioner argues that he was arrested without probable cause, in violation of the Fourth Amendment. Trial counsel cannot have been ineffective for failing to raise a meritless motion, however, nor can the failure to raise a meritless motion be prejudicial to a defendant. Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005); see, e.g., Lowry v. Lewis, 21 F.3d at 346 (failure to file suppression motion not ineffective assistance where counsel investigated filing motion and no reasonable possibility evidence would have been suppressed). Petitioner was on parole at the time of his arrest, and he was arrested because he had violated his parole by not reporting to his parole officer. (Resp't Ex. 1 at 549-50; Resp't. Ex. 3.) Probable cause is not required to arrest a parolee for a violation of parole. United States v. Butcher, 926 F.2d 811, 814 (9th Cir. 1991). In addition, Petitioner was arrested pursuant to a parolee-at large

1  warrant based on the fact that had not reported to his parole officer.  (Resp't. Ex. 17 at Ex. B; Resp.
2  Ex. 3.)² Consequently, Petitioner's arrest was lawful, and the motion to suppress his statements on
3  the grounds of an unlawful arrest would have failed.  Trial counsel's failure to file such a meritless
4  motion, therefore, was not ineffective, and had appellate counsel attempted to argue trial counsel's
5  ineffectiveness on appeal, such an argument would have failed.
6      Accordingly, Petitioner's claim of ineffective assistance of appellate counsel fails.

**II.    Ineffective Assistance of Trial Counsel**.

Petitioner claims that trial counsel was ineffective in failing to file a motion to suppress his statements to the police on the grounds that they were obtained following an unlawful arrest.  For the reasons described above, his arrest was lawful, a suppression motion would have failed,, and trial counsel was not ineffective in failing to file such a motion.  Petitioner is not entitled to habeas relief on this claim.

**III.   Vindictive Prosecution**

Petitioner claims that the prosecution engaged in vindictive prosecution, in violation of his rights to due process and equal protection, by failing to dismiss the prior strike allegations after Petitioner was only convicted of receiving stolen property and acquitted of the burglary, robbery, arson and murder charges.  The trial court held a hearing on this issue in which testimony was provided that the San Francisco County District Attorney's Office had a policy of not seeking a Three Strikes sentence where the current felony charge did not involve violence.  The trial court determined that Petitioner's case was different than those falling under such a policy because at the outset of Petitioner's case, when the prosecutor decided to charge the prior strikes, there were charges of both violent and non-violent felonies.  The trial court found that there had been no precedent in San Francisco County of a case involving charges of violent and non-violent felonies where the defendant was acquitted of all of the violent felonies but convicted of the non-violent

---

²The Court further notes that even if Petitioner had not been on parole or had not violated his parole, there to have been  sufficient evidence of his involvement in Ruger's crime, specifically the statements by Palma and Wells, to lawfully arrest him.

13

felonies and the prior strike allegations had proven true. The trial court found no evidence of vindictive or selective prosecution.

A prosecutor violates a defendant's due process rights when he brings additional charges solely to punish the defendant for exercising a constitutional or statutory right. See Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978). The defendant has the burden of showing that "charges of increased severity were filed because the accused exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." United States v. Gallegos-Curiel, 681 F.2d 1164, 1168 (9th Cir. 1982). The defendant must show that the prosecutorial conduct would not have occurred "but for" the prosecutor's "hostility or punitive animus towards the defendant because he has exercised his specific legal rights." Id. at 1168-69. The burden then shifts to the prosecutor to show a non-vindictive reason for bringing the charges. Id. at 1168.

There is no basis for presuming vindictiveness in this case because there was no increase in Petitioner's charges following Petitioner's exercise of a constitutional right. The prosecution charged Petitioner with four prior strike convictions at the outset of the case, before he exercised his right to a jury and was acquitted of the violent felonies. The prosecutor did not charge Petitioner with any additional strikes following the jury's verdict. Thus, there is no evidence that the prosecutor would not have charged Petitioner with the prior strikes "but for" Petitioner's exercise of his constitutional rights. See, e.g., United States v. Frega, 179 F.3d 793, 802 (9th Cir. 1999) (no vindictiveness where defendant could not show that but for animus prosecutor would not have filed superseding indictment).

Petitioner also alleges that the prosecutor sought a Three Strikes sentence because of the evidence that Petitioner was involved in the crimes of which he was acquitted and because he did not testify against Dumetz, whom the prosecutor suspected was the murderer. The state court found, however, that these were not, in fact, the reasons behind the prosecutor's decision not to dismiss the strike allegations. Rather, the prosecutor continued to seek the Three Strikes sentence because Petitioner had a substantial criminal history of robbery and a current conviction of receiving stolen goods. This factual finding is an certainly reasonable reading of the record. See Section 2254(d)(2).

Even if the prosecutor's decision were based on the evidence of Petitioner's involvement in other crimes and his refusal to testify against Dumetz, this does not constitute prosecutorial retaliation for Petitioner's *exercise of a federal right*, as Petitioner had no federal right to engage in criminal activity or to refuse to testify against Dumetz. As a result, the motives Petitioner attributes to the prosecutorial decision does not establish vindictive prosecution  See, e.g., United States v. Noushfar, 78 F.3d 1442, 1446 (9th Cir. 1998) (prosecutor may threaten during plea bargaining to bring additional charges and may carry out that threat, but that alone does not violate defendant's due process rights or create presumption of vindictiveness).

The state appellate court also reasonably concluded that seeking the Three Strikes sentence did not violate Petitioner's equal protection rights. Although the decision whether to prosecute and what charges to bring generally rests entirely in the prosecutor's discretion, the prosecutorial decision may not violate equal protection by resting on "'an unjustifiable standard such as race, religion, or other arbitrary classification.'" United States v. Armstrong, 517 U.S. 456, 464 (1996) (citation omitted). Courts presume that prosecutors have properly discharged their official duties. See id. In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present "'clear evidence" that similarly situated individuals were not similarly prosecuted. Id. at 464-65. "Absent a similarly situated control group, the government's prosecution of a defendant exercising his constitutional rights proves nothing." United States v. Aguilar, 883 F.2d 662, 706 (9th Cir. 1989). Petitioner was not similarly situated to others who received different or more favorable treatment. The San Francisco County District Attorney's policy applied to defendants who, unlike Petitioner, were not charged with a violent felony. The trial court made the factual finding, undisputed and unrebutted by Petitioner, that he was in a unique position in that his was the first case in which a defendant, originally charged with both violent and nonviolent felonies, was acquitted of the violent felonies but convicted of both the nonviolent felony and the prior strike convictions. As there were no other defendants in Petitioner's situation, let alone any who received different or more favorable treatment from the prosecutor, Petitioner's claim of selective prosecution in violation of his equal protection rights fails.

15

Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 8/31/09

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAYLES et al, | Case Number: CV06-06909 SBA |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| CAMBLE et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 31, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Troy Hayles
Mule Creek State Prison
Prisoner Id E-16711
P.O. Box 409020
Ione, CA 95640

Dated: August 31, 2009

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk